**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                              |   |                     |
|:-----------------------------|:-:|:--------------------|
| UNITED STATES OF AMERICA     | : | No. 23-cr-257-TSC   |
|                              | : |                     |
| v.                           | : |                     |
|                              | : |                     |
| DONALD J. TRUMP,             | : |                     |
|                              | : |                     |
| Defendant.                   | : |                     |

_____

**RESPONSE IN OPPOSITION TO
<u>GOVERNMENT'S MOTION FOR PROTECTIVE ORDER</u>**

President Donald J. Trump, through counsel, submits this Response in Opposition to the Government's Motion for a Protective Order. Docs. 10, 10-1 (the "Motion" and "Proposed Order").

**INTRODUCTION**

Fed. R. Crim. P. 16(d)(1) allows the Court to enter protective orders limiting the use of sensitive discovery materials that present particularized safety or security concerns. Instead of hewing to this narrow framework, the government requests the Court restrict all documents produced by the government, regardless of sensitivity, contrary to established law and President Trump's First Amendment rights. To resolve this issue, President Trump respectfully requests the Court adopt the attached redline, Ex. A (the "Proposed Redline"), which narrows the Proposed Order to shield only genuinely sensitive materials from public view. This more measured approach is consistent with other protective orders entered by this Court in cases concerning the events of January 6, 2021, and appropriately balances the government's claimed desire to "protect [] highly sensitive categories of material" and "expedite the flow of discovery," Motion at 3, with the rights of President Trump and the public to free speech and an open proceeding.

1

Additionally, the Proposed Redline addresses several important definitional and procedural issues. The parties have reached agreement on a small number of these revisions, as indicated in the Proposed Redline. We discuss certain additional revisions in Section B, below.[1]

Finally, to the extent the Court overrules President Trump's objection to restricting the use of non-sensitive documents produced by the government, we attach an alternative redline, Ex. B, that removes edits directed to that issue, while retaining all other proposed revisions.

## ARGUMENT

### A.    The Proposed Order is Overbroad

In a trial about First Amendment rights, the government seeks to restrict First Amendment rights. Worse, it does so against its administration's primary political opponent, during an election season in which the administration, prominent party members, and media allies have campaigned on the indictment and proliferated its false allegations. *See, e.g.*, Press Release, *Special Counsel*

---

[1] In accordance with the Court's August 5, 2023, minute orders, counsel worked under extraordinary time pressure to prepare this brief and our Proposed Redline over the weekend, while at the same time attempting to confer with the government. We provided the government draft revisions at 1:56 PM on Sunday, following a conferral. On a subsequent 5:30 PM call, the government declined to advise which of our proposed edits, if any, the government would accept. The government further indicated it would attempt to provide us its position Monday morning, given our 5:00 PM filing deadline. The government ultimately responded at 11:51 AM on Monday, giving us just hours to review its comments and brief our position, with no time to seek further compromise.

These chaotic events underscore why LCrR 47(b) allows 14 days to respond to motions, and why Courts generally disfavor the filing of Motions before the parties have solidified the parameters of their dispute through good faith conferral. Without doubt, the Court's decision to vary from the default Local Rules and allow President Trump less than one business day to respond to this important Motion is a concerning development, inconsistent with his due process rights.

President Trump respectfully requests the Court allow the parties 14 days to respond to all written motions, as LCrR 47(b) provides and fundamental fairness requires.

Additionally, our truncated briefing deadline and the government's lack of response has prejudiced our ability to fully brief our proposed revisions. Therefore, President Trump respectfully renews his request for a hearing at the earliest convenient date, which will allow the Court to better understand and decide significant legal and factual questions presented by the Motion.

*Jack Smith Delivers Statement* (August 1, 2023) (gratuitous, out-of-court statement to media regarding allegations in this case);[2] *Schumer, Jeffries Joint Statement On The Federal Indictment Of Donald Trump Related To The Events Of January 6th* (August 1, 2023) (repeating allegations and claiming President Trump engaged in a "criminal plot");[3]  Glenn Kirschner, *Why this Trump indictment is the most important*, MSNBC (August 1, 2023) (falsely claiming, based on this case, that President Trump "attempt[ed] to end our representative democracy altogether.").[4]

President Biden has likewise capitalized on the indictment, posting a thinly veiled reference to his administration's prosecution of President Trump just hours before arraignment:



---

[2] https://www.justice.gov/sco-smith/speech/special-counsel-jack-smith-delivers-statement-0 (last accessed August 6, 2023).

[3] https://www.democrats.senate.gov/newsroom/press-releases/schumer-jeffries-joint-statement-on-the-federal-indictment-of-donald-trump-related-to-the-events-of-january-6th (last accessed August 6, 2023).

[4] https://www.msnbc.com/opinion/msnbc-opinion/trump-indictment-jan-6-election-special-counsel-democracy-rcna96037 (last accessed August 6, 2023).

https://twitter.com/JoeBiden/status/1687120734793986048 (last accessed August 6, 2023); *see also* Kwan Wei Kevin Tan, *Joe Biden appeared to throw major shade at a thrice-indicted Trump with a new Dark Brandon meme, and Twitter loved it*, Business Insider (August 3, 2023).[5] Indeed, President Biden promised from the outset that his administration would ensure President Trump "does not become the next President again," adding an unprecedented political dimension to this prosecution. *Remarks by President Biden in Press Conference* (November 9, 2022).[6] Moreover, the Biden Justice Department waited over two-and-a-half years to seek this indictment, during an election cycle in which President Trump is the leading candidate.

Against this backdrop, the government requests the Court assume the role of censor and impose content-based regulations on President Trump's political speech that would forbid him from publicly discussing or disclosing *all* non-public documents produced by the government, including both purportedly sensitive materials, Proposed Order at ¶ 8, and non-sensitive, potentially exculpatory documents, Proposed Order at ¶ 1 (restricting "[a]ll materials provided by the United States in preparation for, or in connection with, any stage of this case . . .").

This untargeted method offends both the First Amendment, which requires a compelling government interest and narrow tailoring to justify a prior restraint, *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 363 F. Supp. 3d 94, 100 (D.D.C. 2019), and Rule 16, which "places no express limits on the purposes for which discoverable material can be used," *United States v. Johnson*, 314 F. Supp. 3d 248, 255 (D.D.C. 2018).

---

[5] https://www.businessinsider.com/joe-biden-major-shade-indicted-trump-new-dark-brandon-meme-2023-8 (last accessed August 6, 2023).

[6] https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/11/09/remarks-by-president-biden-in-press-conference-8/ (last accessed August 6, 2023).

With respect to speech, the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office," and a restriction on "political speech [that] does not avoid unnecessary abridgement of First Amendment rights . . . cannot survive 'rigorous' review." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191–92, 199 (2014). Thus, to the extent the government seeks to restrain President Trump's ability to speak about documents it produces, it must demonstrate: (1) a compelling reason for the restraint; and (2) that no narrower alternative is available. *Id.*

Here, President Trump does not contest the government's claimed interest in restricting some of the documents it must produce, such as those containing Rule 49.1 information and Rule 6 grand jury materials. However, the need to protect that information does not require a blanket gag order over *all* documents produced by the government. Rather, the Court can, and should, limit its protective order to genuinely sensitive materials—a less restrictive alternative that would satisfy any government interest in confidentiality while preserving the First Amendment rights of President Trump and the public. *Cf. Pursuing Am.'s Greatness*, 363 F. Supp. 3d at 100 ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the [g]overnment's obligation to prove that the alternative will be ineffective to achieve its goals. The government must present more than anecdote and supposition to support [its] regulation subject to strict scrutiny." (citations and quotation marks omitted)).

The government does not, and cannot, explain why this protocol would be insufficient. It can easily designate the subset of documents it believes are sensitive and has apparently already done so. *See* Doc. 10-1 at ¶ 8 (confirming the government will identify sensitive documents "prior

to or concurrent with disclosure"); Doc. 12 at 2 (advising the government is "ready to press send

on a discovery production," which presumably includes the promised designations).[7]

Nor does this District regularly prevent the disclosure of non-sensitive documents, as the

government suggests. Motion at 3. Just the opposite, the Court recognizes that a protective order

should be limited to documents implicating the "safety of witnesses and others, a particular danger

of perjury or witness intimidation, and the protection of information vital to national security."

---

[7] The government quotes *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070 (1991) for the proposition that "[t]he outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial . . . obviously threaten to undermine this basic tenet." Motion at 3–4. However, the government omits that *Gentile* concerned extrajudicial statements by counsel, who, as officers of the Court, are subject to "restrictions on speech to which an ordinary citizen would not be." *Gentile*, 501 U.S. at 1071.

Moreover, the government ignores the very next paragraph of *Gentile*, which recognizes a First Amendment right to make public statements regarding criminal proceedings, such that the government must demonstrate a "clear and present danger" to the functioning of the justice system before speech may be restricted based on that concern:

> At the same time, however, the criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system, and, if sufficiently informed about those happenings, might wish to make changes in the system. The way most of them acquire information is from the media. The First Amendment protections of speech and press have been held, in the cases cited above, to require a showing of "clear and present danger" that a malfunction in the criminal justice system will be caused before a State may prohibit media speech or publication about a particular pending trial. . . .

*Id*. at 1070–71.

Here, the government has made no showing that statements by President Trump regarding non-sensitive documents would affect the outcome of the trial in any way, let alone cause a "malfunction" of the type necessary to abridge the First Amendment. *Id*.

Conversely, restrictions on such statements would deny the public and the press the right to be "informed about happenings in the criminal justice system" in the context of this unprecedented and enormously important case. *Id*.; *see also Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty*., 457 U.S. 596, 603, 606 (1982) ("[T]he press and general public have a constitutional right of access to criminal trials. . . . in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government").

*Johnson*, 314 F. Supp. 3d at 251. At all times, the "burden of showing good cause" for blocking

the disclosure or use of a document "lies squarely on the government," which must make a

particularized showing of the need to protect the documents at issue. *Id.* at 253 (citation omitted);

*See also id.* at 251 ("Ordinarily, [b]road allegations of harm, unsubstantiated by specific examples

or articulated reasoning, do not support a good cause showing." (citation omitted)).

Here again, the government does not explain how the existence of some potentially

sensitive materials presents "good cause" for the closure of all non-public materials it produces,

regardless of sensitivity. Instead, the government states only that:

> Here, good cause exists because issuance of the Government's proposed order
> would expedite the flow of discovery in this case, give the defendant prompt access
> to a large portion of the discovery he ultimately will receive, and protect the highly
> sensitive categories of material described above.

Motion at 3.

But, as noted above, the government has apparently already identified the documents it

believes are sensitive (at least with respect to its first production), meaning that restricting non-

designated documents would provide no benefit to the "flow of production." Likewise, even if

such benefits existed (and they do not) it would not justify indefinite closure of non-designated

documents. At most, it would counsel only a brief period of closure to allow the government time

to make designations (which would then be subject to challenge). But, because the government's

sensitivity designations appear substantially complete, any closure based on efficiency is

unnecessary. Finally, it is axiomatic that the government's claimed need to protect "highly

sensitive categories of material" cannot support restrictions on non-sensitive materials.[8]

---

[8] Notwithstanding the government's claims otherwise, President Trump's August 4, 2023, Truth
Social post, cited on page 3 of the Motion, does nothing to support the Proposed Order. The
government argues that, based on this post, there is a danger that President Trump might publish

Accordingly, President Trump respectfully requests the Court adopt the Proposed Redline, Ex. A, which removes the Proposed Order's general restrictions on "[a]ll materials provided by the United States," while maintaining restrictions on sensitive materials. This tracks the protective orders entered in other January 6 prosecutions, which the Court similarly limits to sensitive materials. *See, e.g.*, *United States v. Cindy Young*, 1:23-CR-00241 at ECF #11 (protecting only "sensitive" or "highly sensitive" materials in enumerated categories and stating the "government agrees to make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations.").[9]

---

grand jury transcripts or other sensitive information. A provocative claim when searching for headlines, perhaps, but one that falters under minimal scrutiny.

First, the post does not contain or reference sensitive information of any kind. Rather, it is generalized political speech, not directed to this case. *See* Nick Robertson, *Trump campaign defends threatening social media posts as free speech*, The Hill (August 5, 2023) (quoting a Trump campaign statement that "[t]he Truth post cited is the definition of political speech, and was in response to the RINO, China-loving, dishonest special interest groups and Super PACs, like the ones funded by the Koch brothers and the Club for No Growth.").

The government does not explain how a post on a different topic, which does not include or describe sensitive information, suggests President Trump might disseminate such information in the future. (Indeed, if anything, the government itself poses the greater risk of improper disclosure, given the frequency of apparent leaks from the Special Counsel's office. *See, e.g.,* Katherine Faulders et al., *Timeline: Special counsel's probe into Trump's efforts to overturn 2020 election*, ABC News, https://abcnews.go.com/US/timeline-special-counsels-probe-trumps-efforts-overturn-2020/story?id=101537003 (reporting on activities of the Special Counsel's office based on unnamed sources)).

Second, and similarly, there is no alignment between the conduct at issue and the requested relief. The Proposed Order, even as drafted by the government, would not prohibit the post. Given that, the government can hardly say that the post creates a need for the Protective Order.

Finally, President Trump again does not oppose the court's entry of a protective order for sensitive materials. Thus, even accepting the government's illogical claim that the post demonstrates a risk to grand jury transcripts, the Proposed Redline fully addresses that concern.

[9] Before the government filed its Motion, counsel for President Trump provided the government a proposed protective order derived from *Cindy Young* and other January 6 protective orders. *See* Doc. 11 at 5. The government summarily rejected this proposal without attempting to explain why the orders used in other cases on this topic are somehow inadequate for this case—a question that remains unanswered.

**B.**      **Other Disputed Revisions**

Despite the extraordinarily limited time President Trump had to prepare this response, we attempted to confer with the government in good faith over the weekend by sending our proposed revisions and arranging multiple phone calls. Setting aside our general dispute regarding the treatment of non-sensitive documents, we had hoped the government would engage with us in a collaborative dialogue, aimed at fashioning mutually agreeable language for numerous procedural and definitional clauses in the Proposed Order. Unfortunately, the government declined a cooperative approach, refusing to provide any real-time feedback. Ultimately, just hours before our deadline, the government notified defense counsel it would oppose most of our revisions. Ex. C (Correspondence). Although time limitations prevent us from fully explicating every proposed edit, we address several significant issues below. Once again, we believe it would be beneficial to set a hearing on this matter, such that the parties may fully discuss each redline, in sequence, and address any concerns the Court may have.

**I.**      **Definition of "Authorized Persons"**

The government requests that the Court limit disclosure of materials to only certain members of the defense team—(1) defense counsel, which it defines as counsel of record in this matter, and (2) persons *employed* by defense counsel. Proposed Order at ¶¶ 3, 9. This limitation is unreasonable and unworkable, and not supported by any legitimate interest.

Defense counsel may choose to bring on, for instance, volunteer attorneys or others without paid employment arrangements to assist with the preparation of this case. The government cannot preclude the assistance of those individuals, nor should President Trump be required to seek permission from the Court before any such individual assists the defense. Such a limitation or requirement would unduly burden President Trump and impede the efficient preparation of his

defense. Indeed, the defense cannot predict its future needs for the case, especially for a case of this magnitude and complexity.

Nor would allowing volunteers access to discovery appreciably increase the risk of improper disclosure, as: (1) prior to any disclosure, defense counsel would still be required to provide all Authorized Persons a copy of the applicable protective order and obtain their agreement to abide by its terms, Proposed Redline at ¶ 5, and (2) sensitive materials would remain in the custody and control of defense counsel, Proposed Redline at ¶ 10.

Accordingly, we proposed the following redline, which provides more clarity to the definition of "Authorized Persons." Proposed Redline at ¶ 3:

> 3.      The defendant and defense counsel shall not disclose ~~the~~ Sensitive Materials or their contents directly or indirectly to any person or entity other than persons ~~employed to~~ assisting in the defense (defined as including any attorneys, investigators, paralegals, support staff, consultants, or expert witnesses who are advising or assisting defense counsel), ~~persons who are interviewed as potential witnesses, counsel for potential witnesses,~~ the person to whom the sensitive information solely and directly pertains and that person's counsel, and other persons to whom the Court may authorize disclosure (collectively, "Authorized Persons"). ~~Potential witnesses and their counsel may be shown copies of the Materials as necessary to prepare the defense, but they may not retain copies without prior permission of the Court.~~

## II.      Definition of Sensitive Materials, Marking of Sensitive Materials

The Proposed Redline adjusts the definition of sensitive materials to exclude certain documents obtained outside the grand jury process. The government objects to this revision as "defin[ing] too narrowly the categories of sensitive information." Ex. C. But as explained above, these redlines are consistent with the law and the routine practice of courts in this District, including other January 6-related protective orders that do not impose blanket restrictions on non-grand jury materials. *See Cindy Young*, 1:23-CR-00241 at ECF #11. The government has not, and

cannot, articulate such materials (e.g., the government's interview reports that fall outside of the other categories above) should be protected from disclosure in the same manner as grand jury materials.

Moreover, the government declines, without comment, President Trump's reasonable request that it conspicuously mark the documents it designates as sensitive, such that the defense may easily identify those documents and prevent inadvertent disclosure. Again, the government has not articulated why it cannot apply such markings. The Proposed Redline resolves these issues in Paragraph 8:

> 8.   The United States may ~~produce sensitive materials to defense counsel, including the below materials~~ designate the following materials it produces to defense counsel as ("Sensitive Materials"):
>
>   a.   Materials containing personally identifying information as identified in Federal Rule of Criminal Procedure 49.1;
>
>   b.   Rule 6 materials, including grand jury subpoena returns, witness testimony, and related exhibits presented to the grand jury;
>
>   c.   Materials obtained through sealed search warrants and 2703(d) orders;
>
>   d.   Sealed orders obtained by the Government's filter team related to this case; and
>
>   e.   ~~Recordings, transcripts, interview reports, and related exhibits of witness interviews; and~~Information regarding the government's confidential sources or which may jeopardize witness security.
>
>   f.   ~~Materials obtained from other governmental entities.~~
>
> The Government shall indicate ~~to defense counsel, in discovery correspondence or otherwise,~~ which materials constitute Sensitive Materials prior to or concurrent with disclosure and will conspicuously mark all such Sensitive Materials.

## III.   Procedures for Use of Sensitive Materials in Court

The government appears likely to designate a large portion of the material it produces in this matter as sensitive. Although President Trump reserves the right to object to those designations, many files (such as grand jury transcripts) will doubtlessly stand as the most relevant and significant documents in this case—documents that will feature prominently in innumerable motions, hearings, and throughout trial.

Despite this, the government seeks to obstruct President Trump's defense by requiring that he move to seal *every single time* he wishes to cite sensitive-designated material, whether in response to a motion, during a hearing, or at trial. Proposed Order at ¶¶ 11–12. Without question, President Trump agrees that, at least prior to trial, documents designated as sensitive should not be filed on the public docket unless and until that designation is removed.

So then, President Trump proposed a more streamlined approach, wherein designated documents could be filed under seal without leave, subject to a party's motion to unseal. Proposed Redline at ¶ 11:

> 11.     The parties may include designated Sensitive Materials in any public filing without Leave of Court if all sensitive information is redacted. The parties may further file unredacted copies of any such designated Sensitive Materials under seal without further order of the Court. Parties may object to the sealing of Sensitive Materials by appropriate motion.

Similarly, President Trump proposed clearer procedures for handling designated documents at hearings, while deferring any decision on trial procedures until this case approaches trial. Proposed Redline at ¶¶ 12–13:

> 12.     or use designated Sensitive Materials Dduring any hearing or the trial of this matter, parties may introduce designated Sensitive Materials without leave of Court if all sensitive information is redacted. The parties may further introduce unredacted copies of such designated Sensitive Materials, or discuss such materials on the record; provided, however, the introducing party must alert the Court that the party intends to introduce the materials and request that the record be sealed. Parties may object to the sealing of Sensitive Materials by appropriate motion.
>
> 13.     The handling of designated Sensitive Materials at the trial of this matter will be decided by the Court in a further order.

These proposals would ensure designated documents remain closed from public view—as both proposed protective orders contemplate—while minimizing the administrative burden

imposed on President Trump and the Court. Yet the government rejected the edits out of hand. Why? They do not say. Ex. C. But what explanation could the government have? Initial sensitivity designations are its decision, under both the Proposed Order and Proposed Redline, and are supposed to reflect the government's view that public disclosure of marked documents would be harmful. Thus, the government could not reasonably object to sealing such documents.

Without any reason to oppose sealing, the government has no reason to demand motion practice on the topic. Instead, its position appears calculated to increase complexity while impeding President Trump's ability to litigate this matter. This is improper and should be denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, President Trump respectfully requests the Court adopt the Proposed Redline.

Dated: August 7, 2023

Respectfully submitted,

Todd Blanche, Esq. *(PHV Pending)*
toddblanche@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

/s/John F. Lauro
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

*Counsel for President Donald J. Trump*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :   No. 23-cr-257-TSC |
| | : |
| v. | : |
| | : |
| DONALD J. TRUMP, | : |
| | : |
| Defendant. | : |

---

**RESPONSE IN OPPOSITION TO
<u>GOVERNMENT'S MOTION FOR PROTECTIVE ORDER</u>**

Ex. A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA      *

     *

v.      *      **CRIMINAL NO. 23-cr-257 (TSC)**

     *

DONALD J. TRUMP,      *

     *

Defendant.      *

     *

**PROTECTIVE ORDER GOVERNING DISCOVERY AND AUTHORIZING
DISCLOSURE OF GRAND JURY TESTIMONY**

The United States has moved for entry of a Protective Order that would govern discovery in this matter. To expedite the flow of discovery material between the parties and to adequately protect certain information that the United States intends to produce to the defendant, the Government's motion is **GRANTED** and, pursuant to the Court's authority under Federal Rule of Criminal Procedure 16(d)(1), it is hereby **ORDERED**:

**No Limit on Already Possessed or Public Documents**

1.      This Order does not apply to records that are ~~or become~~ publicly available independent of the Government's productions, nor does it apply to records which the defendant or defense counsel came into possession by independent means ~~unrelated to the discovery process other than government production~~.

**Sensitive Materials**

~~All Materials~~

2.      ~~All materials provided by the United States in preparation for, or in connection with, any stage of this case ("the Materials")~~Sensitive Materials, which the United States may designate in accordance with paragraph 8, below, are subject to this protective order ("Order") and may be used by the defendant and defense counsel (defined as counsel of record in this case and

1

other attorneys assisting counsel of record) solely in connection with the defense of this case, and for no other purpose, and in connection with no other proceeding, without further order of this Court.

3.      The defendant and defense counsel shall not disclose ~~the~~ Sensitive Materials or their contents directly or indirectly to any person or entity other than persons ~~employed to~~ assisting in the defense  (defined as including any attorneys, investigators, paralegals, support staff, consultants, or expert witnesses who are advising or assisting defense counsel), ~~persons who are interviewed as potential witnesses, counsel for potential witnesses,~~  the person to whom the sensitive information solely and directly pertains and that person's counsel, and other persons to whom the Court may authorize disclosure (collectively, "Authorized Persons"). ~~Potential witnesses and their counsel may be shown copies of the Materials as necessary to prepare the defense, but they may not retain copies without prior permission of the Court.~~

4.      The defendant, defense counsel, and Authorized Persons shall not copy or reproduce the Sensitive Materials except to provide copies of the Sensitive Materials for use in connection with this case by the defendant, defense counsel, and Authorized Persons.  Such copies and reproductions shall be treated in the same manner as the original.  The defendant, defense counsel, and Authorized Persons shall not disclose any notes or records of any kind that they make in relation to the contents of the Sensitive Materials, other than to Authorized Persons, and all such notes or records are to be treated in the same manner as the original; provided, however, this paragraph shall not apply to generalized mental impressions of Authorized Persons, not reflecting the content of the Sensitive Materials.

> **Commented [A1]:** The government has no substantive objection to this proposed edit. *See* Ex. C.

5.      Before providing any of the Sensitive Materials to an Authorized Person(s), defense counsel must provide the Authorized Person(s) with a copy of this Order and the Authorized Person(s) must agree to abide by this order.

4

6.      Upon conclusion of all stages of this case, all the ~~Sensitive~~ Materials and all copies made thereof shall be destroyed or returned to the United States, unless otherwise ordered by the Court. The Court may require a certification as to the disposition of the ~~Sensitive~~ Materials; provided, however, this paragraph shall not apply to any work product, notes, or other documents reflecting the content of Sensitive Materials.

> **Commented [A2]:** The government has no substantive objection to this proposed edit. *See* Ex. C.

7.      The restrictions set forth in this Order do not apply to documents that are or become publicly available or part of the public record, including documents that have been received in evidence at other trials, nor do the restrictions in this Order limit defense counsel in the use of the Materials in judicial proceedings in this case, except as described below.

~~**Sensitive Materials**~~

8.      The United States may ~~produce sensitive materials to defense counsel, including the below materials~~ designate the following materials it produces to defense counsel as ("Sensitive Materials"):

    a.  Materials containing personally identifying information as identified in Federal Rule of Criminal Procedure 49.1;

    b.  Rule 6 materials, including grand jury subpoena returns, witness testimony, and related exhibits presented to the grand jury;

    c.  Materials obtained through sealed search warrants and 2703(d) orders;

    d.  Sealed orders obtained by the Government's filter team related to this case; and

    e.  ~~Recordings, transcripts, interview reports, and related exhibits of witness interviews; and~~Information regarding the government's confidential sources or which may jeopardize witness security.

    f.  ~~Materials obtained from other governmental entities.~~

The Government shall indicate ~~to defense counsel, in discovery correspondence or otherwise,~~ which materials constitute Sensitive Materials prior to or concurrent with disclosure and will conspicuously mark all such Sensitive Materials.

5

9.      Except as provided in this Order, without prior notice to the United States and authorization from the Court, no Sensitive Materials, or information contained therein, may be disclosed to any person other than the defendant, defense counsel, persons ~~employed to~~ assisting the defense (as defined in paragraph 3, above), or the person to whom the sensitive information solely and directly pertains and that person's counsel.

Commented [A3]: The government has no substantive objection to this proposed edit. *See* Ex. C.

10.     Sensitive Materials must be maintained in the custody and control of defense counsel. Defense counsel may show Sensitive Materials to the defendant as necessary to assist in preparation of the defense, but defense counsel may not provide a copy of Sensitive Materials to the defendant. Moreover, if defense counsel does show Sensitive Materials to the defendant, defense counsel may not allow the defendant to write down any personally identifying information as identified in Federal Rule of Criminal Procedure 49.1 that is contained in the Sensitive Materials. ~~If the defendant takes notes regarding Sensitive Materials, defense counsel must inspect those notes to ensure that the defendant has not copied down personally identifying information as identified in Federal Rule of Criminal Procedure 49.1.~~

11.     The parties may include designated Sensitive Materials in any public filing without Leave of Court if all sensitive information is redacted. The parties may further file unredacted copies of any such designated Sensitive Materials under seal without further order of the Court. Parties may object to the sealing of Sensitive Materials by appropriate motion.

12.     ~~or use designated Sensitive Materials D~~during any hearing ~~or the trial of this matter,~~ parties may introduce designated Sensitive Materials without leave of Court if all sensitive information is redacted. The parties may further introduce unredacted copies of such designated Sensitive Materials, or discuss such materials on the record; provided, however, the introducing party must alert the Court that the party intends to introduce the materials and request that the record be sealed. Parties may object to the sealing of Sensitive Materials by appropriate motion.

13.    The handling of designated Sensitive Materials at the trial of this matter will be decided by the Court in a further order.

~~11.    No party shall disclose unredacted Sensitive Materials in open court or public filings without prior authorization by the Court (except if the defendant chooses to include in a public document Sensitive Materials relating solely and directly to the defendant's personally identifying information). If a party includes unredacted Sensitive Materials in any filing with the Court, they shall be submitted under seal.~~

~~12.    Any filing under seal must be accompanied by a motion for leave to file under seal as required by Local Rule of Criminal Procedure 49(f)(6)(i).~~

**Scope of this Order**

~~13.~~14.  **Modification Permitted.**  Nothing in this Order shall prevent any party from seeking modification of this Order or from objecting to discovery that it believes to be otherwise improper.

~~14.~~15.  **No Waiver.**  The failure by the United States to designate any of the Materials as "Sensitive" upon disclosure shall not constitute a waiver of the United States' ability to later designate the Materials as Sensitive.

~~15.~~16.  **No Ruling on Discoverability or Admissibility.**  This Order does not constitute a ruling on the question whether any particular material is properly discoverable or admissible and does not constitute any ruling on any potential objection to the discoverability of any material.

~~16.~~17.  **Challenges to Specific Documents.**    The defendant may raise particularized concerns about specific documents by motion to this Court.

_____
HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                                         |     |                      |
| --------------------------------------- | --- | -------------------- |
|                                         | :   |                      |
| UNITED STATES OF AMERICA                | :   |                      |
|                                         | :   | No. 23-cr-257-TSC    |
|                                         | :   |                      |
| v.                                      | :   |                      |
|                                         | :   |                      |
| DONALD J. TRUMP,                        | :   |                      |
|                                         | :   |                      |
| Defendant.                              | :   |                      |
|                                         | :   |                      |

---

**RESPONSE IN OPPOSITION TO**
**GOVERNMENT'S MOTION FOR PROTECTIVE ORDER**

# Ex. B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**PROTECTIVE ORDER GOVERNING DISCOVERY AND AUTHORIZING
DISCLOSURE OF GRAND JURY TESTIMONY**

The United States has moved for entry of a Protective Order that would govern discovery in this matter. To expedite the flow of discovery material between the parties and to adequately protect certain information that the United States intends to produce to the defendant, the Government's motion is **GRANTED** and, pursuant to the Court's authority under Federal Rule of Criminal Procedure 16(d)(1), it is hereby **ORDERED**:

**No Limit on Already Possessed or Public Documents**

1.      This Order does not apply to records that are or become publicly available independent of the Government's productions, nor does it apply to records which the defendant or defense counsel came into possession by independent means, unrelated to the discovery process other than government production.

**All Materials**

2.      All discovery materials provided by the United States in preparation for, or in connection with, any stage of this case ("the Materials") are subject to this protective order ("Order") and may be used by the defendant and defense counsel (defined as counsel of record in this case and other attorneys assisting counsel of record) solely in connection with the defense of this case, and for no other purpose, and in connection with no other proceeding, without further

1

order of this Court.

3.      The defendant and defense counsel shall not disclose the Materials or their contents directly or indirectly to any person or entity other than persons ~~employed to~~ assisting in the defense (defined as including any attorneys, investigators, paralegals, support staff, consultants, or expert witnesses who are advising or assisting defense counsel), persons who are interviewed as potential witnesses, counsel for potential witnesses, and other persons to whom the Court may authorize disclosure (collectively, "Authorized Persons"). Potential witnesses and their counsel may be shown copies of the Materials as necessary to prepare the defense, but they may not retain copies without prior permission of the Court.

4.      The defendant, defense counsel, and Authorized Persons shall not copy or reproduce the Materials except to provide copies of the Materials for use in connection with this case by the defendant, defense counsel, and Authorized Persons.  Such copies and reproductions shall be treated in the same manner as the original.  The defendant, defense counsel, and Authorized Persons shall not disclose any notes or records of any kind that they make in relation to the contents of the Materials, other than to Authorized Persons, and all such notes or records are to be treated in the same manner as the original; provided, however, this paragraph shall not apply to generalized mental impressions of Authorized Persons, not reflecting the content of the Materials.;

> **Commented [A1]:** The government has no substantive objection to this proposed edit. *See* Ex. C.

5.      Before providing any of the Materials to an Authorized Person(s), defense counsel must provide the Authorized Person(s) with a copy of this Order and the Authorized Person(s) must agree to abide by this order.

6.      Upon conclusion of all stages of this case, all the Materials and all copies made thereof shall be destroyed or returned to the United States, unless otherwise ordered by the Court. The Court may require a certification as to the disposition of the Materials; provided, however,

2

this paragraph shall not apply to any work product, notes, or other documents reflecting the content of Materials.

> **Commented [A2]:** The government has no substantive objection to this proposed edit. *See* Ex. C.

7.     The restrictions set forth in this Order do not apply to documents that are or become publicly available or part of the public record, including documents that have been received in evidence at other trials, nor do the restrictions in this Order limit defense counsel in the use of the Materials in judicial proceedings in this case, except as described below.

**Sensitive Materials**

8.     The United States may produce sensitive materials to defense counsel, including the below materials ("Sensitive Materials"):

   a.   Materials containing personally identifying information as identified in Federal Rule of Criminal Procedure 49.1;

   b.   Rule 6 materials, including grand jury subpoena returns, witness testimony, and related exhibits presented to the grand jury;

   c.   Materials obtained through sealed search warrants and 2703(d) orders;

   d.   Sealed orders obtained by the Government's filter team related to this case; and

   e.   Recordings, transcripts, interview reports, and related exhibits of witness interviews; andInformation regarding the government's confidential sources or which may jeopardize witness security.

   f.   Materials obtained from other governmental entities.

The Government shall indicate to defense counsel, in discovery correspondence or otherwise, which materials constitute Sensitive Materials prior to or concurrent with disclosure and will conspicuously mark all such Sensitive Materials.

9.     Except as provided in this Order, without prior notice to the United States and authorization from the Court, no Sensitive Materials, or information contained therein, may be disclosed to any person other than the defendant, defense counsel, persons employed to assisting the defense (as defined in paragraph 3, above), or the person to whom the sensitive information

3

solely and directly pertains and that person's counsel.

**Commented [A3]:** The government has no substantive objection to this proposed edit. *See* Ex. C.

10.    Sensitive Materials must be maintained in the custody and control of defense counsel.  Defense counsel may show Sensitive Materials to the defendant as necessary to assist in preparation of the defense, but defense counsel may not provide a copy of Sensitive Materials to the defendant.  Moreover, if defense counsel does show Sensitive Materials to the defendant, defense counsel may not allow the defendant to write down any personally identifying information as identified in Federal Rule of Criminal Procedure 49.1 that is contained in the Sensitive Materials. ~~If the defendant takes notes regarding Sensitive Materials, defense counsel must inspect those notes to ensure that the defendant has not copied down personally identifying information as identified in Federal Rule of Criminal Procedure 49.1.~~

11.    The parties may include designated Sensitive Materials in any public filing without Leave of Court if all sensitive information is redacted. The parties may further file unredacted copies of any such designated Sensitive Materials under seal without further order of the Court. Parties may object to the sealing of Sensitive Materials by appropriate motion.

12.    ~~or use designated Sensitive Materials D~~during any hearing ~~or the trial of this matter,~~ parties may introduce designated Sensitive Materials without leave of Court if all sensitive information is redacted. The parties may further introduce unredacted copies of such designated Sensitive Materials, or discuss such materials on the record; provided, however, the introducing party must alert the Court that the party intends to introduce the materials and request that the record be sealed. Parties may object to the sealing of Sensitive Materials by appropriate motion.

13.    The handling of designated Sensitive Materials at the trial of this matter will be decided by the Court in a further order.

~~11.    No party shall disclose unredacted Sensitive Materials in open court or public filings without prior authorization by the Court (except if the defendant chooses to include in a~~

4

~~public document Sensitive Materials relating solely and directly to the defendant's personally identifying information). If a party includes unredacted Sensitive Materials in any filing with the Court, they shall be submitted under seal.~~

~~12.     Any filing under seal must be accompanied by a motion for leave to file under seal as required by Local Rule of Criminal Procedure 49(f)(6)(i).~~

**Scope of this Order**

~~13.~~14.  **Modification Permitted.**  Nothing in this Order shall prevent any party from seeking modification of this Order or from objecting to discovery that it believes to be otherwise improper.

~~14.~~15.  **No Waiver.**  The failure by the United States to designate any of the Materials as "Sensitive" upon disclosure shall not constitute a waiver of the United States' ability to later designate the Materials as Sensitive.

~~15.~~16.  **No Ruling on Discoverability or Admissibility.**  This Order does not constitute a ruling on the question whether any particular material is properly discoverable or admissible and does not constitute any ruling on any potential objection to the discoverability of any material.

~~16.~~17.  **Challenges to Specific Documents.**    The defendant may raise particularized concerns about specific documents by motion to this Court.

_____
HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|                                          |   |                      |
|------------------------------------------|---|----------------------|
| UNITED STATES OF AMERICA                 | : |                      |
|                                          | : | No. 23-cr-257-TSC    |
|                                          | : |                      |
| v.                                       | : |                      |
|                                          | : |                      |
| DONALD J. TRUMP,                         | : |                      |
|                                          | : |                      |
| Defendant.                               | : |                      |

---

**RESPONSE IN OPPOSITION TO
<u>GOVERNMENT'S MOTION FOR PROTECTIVE ORDER</u>**

# Ex. C

**From:** ███████████████
**Sent:** Monday, August 7, 2023 11:51 AM
**To:** ███████████ ; ███████ ;
**Cc:** █████████ ;
**Subject:** RE: Meet and Confer

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel –

Thanks for the redline.  We have had a chance to review it and do not believe we will be able to come to an agreement on most issues.  As discussed yesterday, among other things, we are concerned that your proposed protective order defines too broadly the legal team that could access the discovery material and defines too narrowly the categories of sensitive information.  That said, we have no substantive objection to the proposed edits below:

- The addition at the end of Paragraph 4
- The addition at the end of Paragraph 6
- The addition at the end of Paragraph 9 permitting review by "that person's counsel"

Please let us know if you have any questions.

Thanks
tw



**From:** █████████████
**Sent:** Sunday, August 6, 2023 4:05 PM
**To:** █████████████████ ; ████████████ ;
**Cc:** ██████████████ ;
**Subject:** Re: Meet and Confer

Yes. I will send a dial in.

Molly Gaston
████████████

**From:** █████████████████
**Sent:** Sunday, August 6, 2023 3:52:14 PM
**To:** ███████ ; ███████ ;
**Cc:** ████████████ ;
**Subject:** [EXTERNAL] RE: Meet and Confer

Hi Thomas – thanks for the input. I think it would be best to discuss these issues on a call. Can we try for 5:30?

Greg



**From:** ▮▮▮▮▮▮▮▮▮▮
**Sent:** Sunday, August 6, 2023 3:42 PM
**To:** ▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮
**Cc:** ▮▮▮▮▮▮; ▮▮▮▮▮▮; ▮▮▮▮▮
▮▮▮▮▮▮
**Subject:** RE: Meet and Confer

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Greg – thanks for sending this. We have a few questions to make sure we understand the redline. Happy to jump on a call anytime today or you can respond by email. Whatever works best with your schedules. The questions are:

Paragraph 3: What is the outer limit of the proposed definition of "persons assisting in the defense?" The wording you propose could be read as almost boundless.

Paragraph 6: Should the edit say "not reflecting" (consistent with the proposed redline in paragraph 4), instead of "reflecting?"

Paragraph 8: Discovery will include transcripts/recordings of witness interviews conducted outside of the grand jury context. Our position is that those materials are Sensitive. Your proposed edit removes those materials from the Sensitive designation. We wanted to confirm what your position is on those materials.

Thanks
tw

**From:** ▮▮▮▮▮▮▮▮▮▮
**Sent:** Sunday, August 6, 2023 1:56 PM
**To:** ▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮▮▮
**Cc:** ▮▮▮▮▮▮; ▮▮▮▮▮▮; ▮▮▮▮▮
**Subject:** [EXTERNAL] RE: Meet and Confer

All – please see the attached redline. This is for discussion purposes only and we reserve all rights and objections.

Greg



Gregory M. Singer
Partner | Admitted FL

Tampa ▮▮▮▮▮▮▮▮
T▮▮▮▮▮▮▮ F▮▮▮▮▮▮
Miami ▮▮▮▮▮▮▮
New York ▮▮▮▮▮▮
laurosinger.com

LAURO & SINGER
FLORIDA ◆ NEW YORK

IMPORTANT: The contents of this email and any attachments are confidential. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

**From:** ██████████████████████
**Sent:** Saturday, August 5, 2023 6:21 PM
**To:** ██████████████████████
**Cc:** █████████████████ ; ███████████████████ ; ██████████
██████████████ ; ██████████████████████████
**Subject:** Re: Meet and Confer

Perfect thanks

On Aug 5, 2023, at 6:14 PM, ████████████████████ wrote:

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Yes. Happy to talk then. We can send a Teams invite. Thanks.

Molly Gaston
██████████

**From:** ████████████████████
**Sent:** Saturday, August 5, 2023 6:11:29 PM
**To:** ████████████████ ; █████████████████████████
**Cc:** █████████████████ ; ████████████████████████████ ; ██████████
**Subject:** [EXTERNAL] Meet and Confer

Would government team be available for meet and confer 1-2 pm tomorrow to discuss competing orders