UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.  Case No. 1:23-cr-257-TSC

DONALD J. TRUMP,

    Defendant.
_____/

**DEFENDANT DONALD J. TRUMP'S MOTION FOR RECUSAL OF
DISTRICT JUDGE PURSUANT TO 28 U.S.C. § 455(a)**

President Donald J. Trump, through undersigned counsel, respectfully moves to recuse and disqualify the Honorable Tanya S. Chutkan pursuant to 28 U.S.C. § 455(a).

Fairness and impartiality are the central tenets of our criminal justice system. Both a defendant and the public are entitled to a full hearing, on all relevant issues, by a Court that has not prejudged the guilt of the defendant, and whose neutrality cannot be reasonably questioned.

Judge Chutkan has, in connection with other cases, suggested that President Trump should be prosecuted and imprisoned. Such statements, made before this case began and without due process, are inherently disqualifying. Although Judge Chutkan may genuinely intend to give President Trump a fair trial—and may believe that she can do so—her public statements unavoidably taint these proceedings, regardless of outcome. The public will reasonably and understandably question whether Judge Chutkan arrived at all of her decisions in this matter impartially, or in fulfillment of her prior negative statements regarding President Trump. Under these circumstances, the law and the overwhelming public interest in the integrity of this historic proceeding require recusal.

1

**THE DISQUALIFYING STATEMENTS**

In October 2022, before the Special Counsel's appointment or the filing of this case, Judge Chutkan stated:

> This was nothing less than an attempt to violently overthrow the government, the legally, lawfully, peacefully elected government by individuals who were mad that their guy lost. I see the videotapes. I see the footage of the flags and the signs that people were carrying and the hats they were wearing and the garb. And the people who mobbed that Capitol were there in fealty, in loyalty, to one man -- not to the Constitution, of which most of the people who come before me seem woefully ignorant; not to the ideals of this country; and not to the principles of democracy. It's a blind loyalty *to one person who, by the way, remains free to this day.*

*United States v. Christine Priola* 1:22-cr-242, ECF #66 at 29:17–30:3 (sentencing transcript) (emphasis added) (relevant portions attached as Ex. A).

The public meaning of this statement is inescapable—President Trump is free, but should not be. As an apparent prejudgment of guilt, these comments are disqualifying standing alone. However, this was not the first time Judge Chutkan expressed such an opinion. In December 2021, Judge Chutkan similarly suggested that, in her view, President Trump was responsible for the events of January 6, 2021, and should be prosecuted:

> He went to the Capitol because, despite election results which were clear-cut, despite the fact that multiple court challenges all over the country had rejected every single one of the challenges to the election, Mr. Palmer didn't like the result. He didn't like the result, and he didn't want the transition of power to take place because his guy lost. And it is true, Mr. Palmer -- *you have made a very good point*, one that has been made before -- *that the people who exhorted you and encouraged you and rallied you to go and take action and to fight have not been charged.* That is not this court's position. I don't charge anybody. I don't negotiate plea offers. I don't make charging decisions. I sentence people who have pleaded guilty or have been convicted. The issue of who has or has not been charged is not before me. I don't have any influence on that. *I have my opinions*, but they are not relevant.
>
> \*\*\*
>
> So you have a point, that the people who may be the people who planned this and funded it and encouraged it haven't been charged, but that's not a reason for you to get a lower sentence.

2

*United States v. Palmer*, No. 1:21-cr-00328-TSC, ECF #33 at 21:6–22:13 (sentencing transcript) (emphasis added) (relevant portions attached as Ex. B).

In making these statements, Judge Chutkan agreed with portions of defendant Palmer's sentencing memorandum, which similarly (and wrongly) placed blame on President Trump and complained that he had not been charged. No. 1:21-cr-00328-TSC, ECF #31 at 8–9 (Sentencing Memorandum) ([Palmer Defense Counsel]: "Those voices, including the voice of the then-president himself, had convinced persons such as Mr. Palmer that the election was fraudulent and that they must take action to stop the transition of the presidency. . . . While many of the people who participated in the Capitol riot will be going to prison, the architects of that horrific event will likely never be charged with any criminal offense.").

Although Judge Chutkan correctly noted that she does not have any influence on charging decisions, her above comments stating "*you have made a very good point . . . that the people who exhorted you and encouraged you and rallied you to go and take action and to fight have not been charged*" and "*you have a point, that the people who may be the people who planned this and funded it and encouraged it haven't been charged, but that's not a reason for you to get a lower sentence*" reflect her apparent opinion that President Trump's conduct: (1) occurred, and (2) supports charges (otherwise, she would not have characterized the point as "very good."). Similarly, Judge Chutkan's statement that "*I have my opinions*" suggests that in her view—formed almost two years before the initiation of this matter—President Trump should be charged.

Public statements of this sort create a perception of prejudgment incompatible with our justice system. In a case this widely watched, of such monumental significance, the public must have the utmost confidence that the Court will administer justice neutrally and dispassionately.

3

Judge Chutkan's pre-case statements undermine that confidence and, therefore, require disqualification.

## APPLICABLE LAW

"Unbiased, impartial adjudicators are the cornerstone of any system of justice worthy of the label." *In re Al-Nashiri*, 921 F.3d 224, 233–34 (D.C. Cir. 2019). Thus, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455; *see also* Code of Judicial Conduct, Canon 2A ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary").[1]

Under settled law, what matters "is not the reality of bias or prejudice but its appearance." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (*statement of* Rehnquist, C.J.) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)). Therefore, "all that must be demonstrated to compel recusal . . . is a showing of an appearance of bias . . . sufficient to permit the average citizen reasonably to question a judge's impartiality." *In re Al-Nashiri*, 921 F.3d at 234. "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp.*, 530 U.S. at 1302 (citations omitted).

---

[1] "Impartiality--and the appearance of impartiality--are the foundation of judicial decision-making, judicial morality, and the public's trust in the rule of law." Zygmont A. Pines, *Mirror, Mirror, on the Wall-Biased Impartiality, Appearances, and the Need for Recusal Reform*, 125 Dickinson L. Rev. 69 (2020). These concerns should not be "relegated to the periphery of our administration of justice when its rightful place should be its nucleus." *Id.* at 152; *see also Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980) ("[T]he protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." (citation omitted)).

In other words, "[i]t is of no consequence that the judge is not *actually* biased because § 455(a) 'concerns not only fairness to individual litigants, but, equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who *appears* to be tainted.'" *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003) (citations omitted) (emphasis in original); *Hall v. Small Bus. Admin.*, 695 F.2d 175, 178–79 (5th Cir. 1983) ("[T]his portion of the disqualification statute is to exact the appearance of impartiality . . . it focuses on what is revealed to the parties and the public, as opposed to the existence in fact of any bias or prejudice"); As the Fifth Circuit stated:

> This overriding concern with appearances, which also pervades the Code of Judicial Conduct and the ABA Code of Professional Responsibility, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence. As this court has noted, "the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system." Any question of a judge's impartiality threatens the purity of the judicial process and its institutions.

*Potashnick,* 609 F.2d at 1111 (quoting *United States v. Columbia Broadcasting System, Inc.,* 497 F.2d 107, 109 (5th Cir. 1974)).

"Such a stringent rule, to be sure, may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *In re Al-Nashiri*, 921 F.3d at 234 (citation and quotation marks omitted). However, "to perform its high function in the best way, the Supreme Court has emphasized, justice must satisfy the appearance of justice." *Id*. (citation and quotation marks omitted).

Therefore, to "preserve both the reality and appearance of impartiality," a judge should recuse herself when her impartiality "might" be reasonably questioned. *Id*.; *see also United States v. Microsoft Corp.*, 253 F.3d 34, 114–15 (D.C. Cir. 2001) ("The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible . . . Appearance may be all there is, but that is enough to invoke the Canons [of Judicial

Conduct] and § 455(a)." (quotation omitted)).² Indeed, Congress's use of the word "might" in § 455(a) counsels a low threshold, requiring disqualification if *any* reasonable citizen could question a judge's impartiality, even if some do not. Accordingly, "when a judge harbors any doubts concerning whether his disqualification is required [s]he should resolve the doubt in favor of disqualification." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988) (citations omitted).³

## ARGUMENT

There is little doubt that reasonable members of the public "might," in viewing Judge Chutkan's statements, believe she has prejudged both the facts pertinent to this case and President Trump's alleged culpability.

Judge Chutkan's statement that "[i]t's a blind loyalty to one person who, by the way, remains free to this day," Ex. A at 29:17–30:3, straightforwardly (and of course incorrectly in the defense's view) suggests that President Trump has culpability for the events of that day and should not be free. This would be a natural interpretation of her comments in any context, but is particularly poignant here, where Judge Chutkan directed her statements to a defendant she was about to sentence to an extended term of incarceration. Indeed, her comments suggest that she

---

² The Due Process Clause mandates a similar requirement of judicial impartiality, and like Section 455(a), has been implemented by objective standards that do not require proof of actual bias. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009) (citations omitted).

³ *See also Cheney v. U.S. District Court for D.C.*, 541 U.S. 913, 915 (2004) (*memorandum of Scalia, J.*) ("Let me respond, at the outset, to Sierra Club's suggestion that I should 'resolve any doubts in favor of recusal.' That might be sound advice if I were sitting on a Court of Appeals."); *Potashnick,* 609 F.2d at 1112 ("[T]he new statute requires a judge to exercise his discretion in favor of disqualification if he has any question about the propriety of his sitting in a particular case.").

reached a conclusion, before this case, that President Trump is more deserving of a term of imprisonment than the defendant she was sentencing.

Likewise, most reasonable observers would understand Judge Chutkan's statements that "it is true, Mr. Palmer -- you have made a very good point, one that has been made before -- that the people who exhorted you and encouraged you and rallied you to go and take action and to fight have not been charged. . . . I don't have any influence on that. *I have my opinions*, but they are not relevant," Ex. B at 21:6–22:13, as both a pre-case determination of disputed facts (that President Trump "exhorted," "encouraged," or "rallied" others for unlawful action) and a suggestion that President Trump may and should be prosecuted based on those facts.[4]

"Courts have found an impermissible level of bias when a judge's remarks or actions reveal [s]he has prejudged the guilt of a defendant." *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005). Judge Chutkan made her comments from the bench during court proceedings, which only amplifies the concern of prejudgment. President Trump was not a party to these cases and had no ability or "opportunity to object, perhaps even to persuade, and the Judge would have made a record for review on appeal." *Microsoft Corp.*, 253 F.3d at 115.

Moreover, because the statements were made on the record in support of the Court's sentences of incarceration, the public must reasonably understand them to be the product of considerable thought on the part of Judge Chutkan, reflective of her core views that are unlikely to change. And, as President Trump's supposed culpability was not an issue for Judge Chutkan to

---

[4] The Indictment does not allege President Trump personally entered the Capitol on January 6, 2021, or incited violence, but it makes numerous allegations that he knowingly made false claims of election fraud to his supporters and somehow "exploited" the protests at the Capitol. While President Trump categorically denies these and many other allegations in the Indictment, Judge Chutkan's comments can be reasonably understood to mean she has already formed an opinion about President Trump's guilt and about many of the key, and disputed, allegations of this case.

decide in the *Palmer* or *Priola* sentencings, the public can reasonably understand that her views on President Trump derive from extrajudicial sources. *See Liteky v. United States*, 510 U.S. 540, 554–56 (1994).

Every judge must uphold her oath of office. That is, to "faithfully and impartially discharge and perform all duties incumbent upon me under the Constitution and law of the United States. So help me God." 28 U.S.C. § 453. The foundation of that oath is a judicial branch designed by our founders to be entirely impartial and avoiding even the perception of prejudgment. Our system guarantees that the government prove a defendant guilty, in front of a jury of his peers, as part of a trial without any suggestion of partiality on the part of the presiding judge. Only when all three prongs are present and beyond dispute does our system function as intended.

Both by its procedure and its content, this trial is a test of the very foundations upon which our government is built. There is an overwhelming public interest in ensuring the perceived fairness of these proceedings. In a highly charged political season, naturally all Americans, and in fact, the entire world, are observing these proceedings closely. Only if this trial is administered by a judge who appears entirely impartial could the public ever accept the outcome as justice.[5]

Section 455(a) commands a judge to recuse herself if her impartiality *might* reasonably be questioned. The standard is not particularly high, especially in a case, as here, where the Department of Justice answers to a President who is prosecuting his main, leading opponent in an

---

[5] *See* Testimony of Norman L. Reimer, Executive Director, National Association of Criminal Defense Lawyers, *Hearings Before the House Comm. on the Judiciary*, 111th Cong. 1 2009, Serial No. 111-118 ("The people's confidence in the system hinges on the perception by the guilty, by the innocent, by all who are touched by the criminal justice system and the larger community, that judges are not predisposed to decide a case one way or another."); Lonnie T. Brown, *Criticizing Judges: A Lawyer's Professional Responsibility*, 56 Ga. L. Rev. 161 (2021) ("[T]he very nature of a judge's role requires avoidance of even the 'appearance of impropriety.' When judges fail to adhere to this standard, decisional accuracy is called into question, and the perception of fairness, so important to the judicial process, is diminished.").

election that will take place in just over a year. Now is not the time for the American people to second-guess a judge's impartiality. Rather, the Court should ensure the public remains "unwavering[ly] confiden[t]" in its decisions and its commitment to the fair and impartial administration of justice. *Potashnick*, 609 F.2d at 1111. Therefore, President Trump requests Judge Chutkan recuse herself from further proceedings.

## CONCLUSION

For the foregoing reasons, Judge Chutkan should recuse herself from this case and direct the Clerk to randomly assign this matter to another District Judge.[6] Additionally, given the overriding public interest in ensuring the appearance of fairness in this proceeding, President Trump requests the Court consider this Motion on an expedited basis and, pending resolution, withhold rulings on any other pending motion.

| | |
|---|---|
| Dated: September 11, 2023 | Respectfully submitted, |
| | |
| Todd Blanche, Esq. (PHV) | */s/*John F. Lauro |
| toddblanche@blanchelaw.com | John F. Lauro, Esq. |
| BLANCHE LAW | D.C. Bar No. 392830 |
| 99 Wall St., Suite 4460 | jlauro@laurosinger.com |
| New York, NY 10005 | Gregory M. Singer, Esq. (PHV) |
| (212) 716-1250 | gsinger@laurosinger.com |
| | Filzah I. Pavalon, Esq. (PHV) |
| | fpavalon@laurosinger.com |
| | LAURO & SINGER |
| | 400 N. Tampa St., 15th Floor |
| | Tampa, FL 33602 |
| | (813) 222-8990 |
| | |
| | *Counsel for President Donald J. Trump* |

---

[6] President Trump reserves all rights to challenge venue in this District based on applicable law.