IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : No. 23-cr-257-TSC |
| v. | : |
| DONALD J. TRUMP, | : |
| Defendant. | : |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR RECUSAL**

President Donald J. Trump, through counsel, submits this Reply in Further Support of his Motion for Recusal, Doc. 50 (the "Motion"). The Court should grant the Motion.

**INTRODUCTION**

Every defendant in the United States has the right to a trial by an impartial judge who has not prejudged his guilt or innocence. Judge Chutkan's strongly stated suggestions that President Trump should be charged and imprisoned (Doc. 50 at 2, the "Disqualifying Statements") defy this core principle and are "sufficient to permit the average citizen reasonably to question [Judge Chutkan's] impartiality." *In re Al-Nashiri*, 921 F.3d 224, 234 (D.C. Cir. 2019) (citation omitted). Therefore, recusal is mandatory. *Id*. Because our system of justice is based on the reality and appearance of fairness, recusal is required whenever "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Such is the case here. Judge Chutkan's statements point to the unmistakable conclusion that the appearance of prejudgment will infect every aspect of this case and cause the public to rightly question the very legitimacy of these historic proceedings.

The prosecution, for its part, does not seriously dispute that Judge Chutkan made the Disqualifying Statements, that she was referring to President Trump, or that reasonable observers

1

might understand her statements as her clear prejudgment of guilt. Instead, the prosecution argues that a judge may freely and publicly state that uncharged individuals—including individuals who may later appear before her—should be charged, so long as she does so in a judicial proceeding. That position is ludicrous and contrary to law. Title 28 U.S.C. § 455(a) requires recusal whenever a judge's "impartiality might reasonably be questioned." This includes occasions, as here, where a judge's statements in unrelated matters will likely undermine public confidence in her ability and willingness to provide a defendant the presumption of innocence that is guaranteed by the Constitution and fundamental to a fair trial.

Moreover, although a judge's opinions are entitled to some deference when based on a judicial source, the Disqualifying Statements have no such origin. Rather, Judge Chutkan made clear that her opinion on potential charges against President Trump was just that—an opinion—and not a judicial finding of fact based on briefing and evidence properly before her. This opinion was completely irrelevant to any issue before her prior to the instant case. Because of the context of the statements and their obvious meaning, no reasonable person would believe that Judge Chutkan based her Disqualifying Statements upon anything other than extrajudicial information, which the prosecution does not deny she was exposed to. Accordingly, the plain text of § 455(a) applies, and, therefore, Judge Chutkan should recuse herself.

## ARGUMENT

### I. Intrajudicial *Statements* Are Not Intrajudicial *Sources*

Instead of addressing how the public might perceive the Disqualifying Statements, the prosecution disingenuously argues "[t]here is a higher standard for recusal based on . . . 'intrajudicial' statements.'" Doc. 54 at 3–4. This is incorrect. Although the Supreme Court has held that opinions a judge "properly and necessarily acquire[s] in the course of [court]

proceedings" are less likely to require recusal, *Liteky v. United States*, 510 U.S. 540, 551 (1994), it does not follow that a higher standard applies to *all* intrajudicial statements. What matters is the source of a judge's statements, not where she made them. *Id*. at 555 (holding that higher deference does not apply to an opinion held by a judge that derives from a source outside judicial proceedings). Moreover, the law recognizes that, under all circumstances, statements that reveal "a high degree of favoritism or antagonism" require recusal. *Id*. at 555. The public could perceive nothing more "antagonistic" to a defendant's rights in a criminal case than judicial "opinions" prejudging the core questions of guilt or innocence.

The cases cited by the government repeatedly reaffirm that position and support recusal here. *See, e.g.,* Doc. 54, at 4 (quoting *Liteky*'s holding that the doctrine applies to an "opinion … *acquired in the course of proceedings*"); *id.* at 5 (quoting *United States v. Bernstein*, 533 F.2d at 784-85, for the proposition that "what a judge *learns in his judicial capacity*" is typically "not the kind of matter that results in disqualification"); *id.* at 5 (quoting *Obert v. Republic W. Ins. Co*., 398 F.3d 138, 145 (1st Cir. 2005) for the proposition that the judge did not have to recuse because his "comments were based on *what he had learned in presiding over related litigation*," and "a judge cannot be recused for views formed on the basis of *what he learned in court*") (emphasis added).

The separation makes sense, because a judge who "presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant." *Liteky*, 510 U.S. at 550–551. But where that ill disposition does not arise from the defendant's trial, or from functions otherwise "necessary to completion of the judge's task," statements indicating prejudgment and bias require recusal. *Id.* at 551.

## II.     The Disqualifying Statements Are Extrajudicial

Certainly, like many Americans, Judge Chutkan watches the news and is otherwise exposed to information that helps form her opinions about public issues matters outside of her judicial role. Therefore, it is not surprising that the prosecution points to no circumstances whatsoever supporting their argument that the Disqualifying Statements are intrajudicially sourced. The prosecution also fails to establish that Judge Chutkan had any judicial basis for her repeated suggestion that President Trump should be charged. Respectfully, she had none. Unlike Justice Scalia's hypotheticals in *Liteky*, Judge Chutkan did not previously "preside[] at a trial" concerning President Trump's guilt or innocence. 510 U.S. at 550. Nor is this case a "successive trial[] involving the same defendant." *Id*. at 551.

As a result, there is simply no judicial basis for the Disqualifying Statements. Nonetheless, in a desperate effort to avoid mandated recusal, the prosecution quotes a handful of sentencing submissions from other cases that never briefed (let alone resolved) the question of President Trump's alleged culpability. Doc. 54 at 8–9. At most, certain defendants stated (incorrectly) that in their conclusory view President Trump bears some undefined responsibility for the January 6 protests.[1] These self-serving and irrelevant statements are hardly the sort of judicial information a court would rely on in forming an opinion regarding the guilt or innocence of a third party who was not standing before her. 510 U.S. at 551 (the statements here stand in marked contrast to

---

[1] None of the excerpts cited in footnote 1 of the Response claim that President Trump directed or encouraged anyone to enter the Capitol, undertake violence, or interfere with proceedings at the Capitol. Of course, no such evidence exists. The defendants in these other cases obviously sought to explain the circumstances of their conduct, but that had no relevance to whether President Trump should be charged. That issue was never before the Court prior to this case. Therefore, the only reasonable conclusion—and the very one that the prosecution consciously avoids—is that Judge Chutkan formed her disqualifying opinions from information outside of the courtroom.

4

*Liteky's* formulation of opinions "properly and *necessarily* acquired in the course of [judicial] proceedings" (emphasis added)).

Unable to identify any proceeding where Judge Chutkan could have formed a judicial opinion regarding President Trump, the prosecution misleadingly argues President Trump has not established the Disqualifying Statements derived from an extrajudicial source. Doc. 54 at 16. The prosecution's claim fails for three reasons.

*First,* the Disqualifying Statements themselves point to the inescapable conclusion that Judge Chutkan formed her opinion from external sources. The statement "I have my opinions, but they are not relevant," Motion, Ex. B at 21:6–22:13, makes very clear that her "opinions" are personal, and not judicial conclusions "properly and necessarily" formed in connection with judicial duties, *Liteky*, 510 U.S. at 551. Further, Judge Chutkan directly contradicted the prosecution's position here when she stated on the record that "[t]he issue of who has or has not been charged is not before me." Motion, Ex. B at 21:6–22:13.

Similarly, Judge Chutkan's statement that President Trump "*remains free to this day*," Motion, Ex. A at 29:17–30:3, had no factual or legal relevance to the matter before her. That conclusion was formed, according to Judge Chutkan, based upon unspecified "videotapes" and "footage" that the prosecution has not established were in evidence and appear not to be. *Id*. ("I see the videotapes. I see the footage of the flags and the signs that people were carrying and the hats they were wearing and the garb."). But even if they were in the record of the *Priola* case, they could hardly support a conclusion that President Trump should be charged.

*Second*, the prosecution offers up only rank speculation that Judge Chutkan's statements must have come from "knowledge and experience the Court gained on the bench." (Doc. 54 at 8). There is absolutely no factual basis for that guess. Nowhere does the prosecution identify any such "knowledge and experience." President Trump was neither a witness, defendant, nor alleged co-

conspirator in any prior case before this court, making it impossible for Judge Chutkan to be exposed to judicially based information that led to the Disqualifying Statements. Although Judge Chutkan had to explain the reasons for her sentences, the comments about President Trump were entirely gratuitous and unnecessary. Further, given the existence of a grand jury and the political environment in this District, it was conceivable that President Trump might appear before her one day, resulting in the appearance of prejudgment.[2]

*Third,* none of the sentencing memoranda could have provided a basis for the Disqualifying Statements since they were not in evidence and had no connection to charging decisions in cases yet to be brought. Attorney advocacy in unrelated matters can hardly give an experienced judicial officer the basis on which to conclude that another individual should be charged in a matter not yet before her.

In sum, the events of January 6 have been the subject of pervasive news coverage, especially in Washington D.C. No reasonable person could conclude that the Disqualifying Statements were based on information connected to judicial proceedings, rather than upon news reports or other "extrajudicial sources." Although the Court's *statements* may have been intrajudicial, the *basis* for those statements was undoubtedly extrajudicial.

### III. The Disqualifying Statements Reflect Prejudgment

As the intrajudicial source doctrine does not apply, Judge Chutkan should recuse herself if the Disqualifying Statements are "sufficient to permit the average citizen reasonably to question

---

[2] Consistent with the presumption of innocence and due process, an impartial court would ordinarily avoid stating *any* opinion regarding a third party's guilt or innocence until that party has received an opportunity to present a defense. *See United States v. Microsoft,* 253 F.3d 34, 114 (D.C. Cir. 2001).

[Judge Chutkan's] impartiality." *In re Al-Nashiri*, 921 F.3d at 234. On this issue, the prosecution provides no serious argument. Nor can it.

A sentencing judge does not call out a non-party who "remains free to this day," except to unconditionally express a strongly held opinion that that the person should be charged. Similarly, Judge Chutkan's commentary about the defendant who "made a very good point" referring to others, including President Trump, who "have not been charged" must lead the public to the irrefutable conclusion that Judge Chutkan thought President Trump should be charged.

Stuck with the plain meaning of the Disqualifying Statements, the prosecution argues the Court was only making an "uncontroversial factual and legal statement." Doc. 54 at 13. But the prosecution "cannot escape the conclusion that the average, informed observer" understands the Disqualifying Statements just as they appear: Judge Chutkan has already made up her mind and prejudged President Trump. *In re Al-Nashiri*, 921 F.3d 224, 236 (D.C. Cir. 2019).

Similarly, the prosecution cannot ignore the plain meaning of a prejudicial statement simply because the obvious meaning is implied rather than stated directly. In *In re Mohammad*, the D.C. Circuit disqualified a military judge for comments about defendant Khalid Sheikh Mohammed: "We've got the major conspirators in the 9/11 attacks still at Guantanamo Bay—Khalid Sheikh Mohammed and four others…[t]o compare Ghailani to Khalid Sheikh Mohammed, they're two totally different types of cases. And the magnitude of *what they did* is very different." 866 F.3d 473, 476 (D.C. Cir. 2017) (emphasis in original).

Although an opinion of guilt was not stated literally, the D.C. Circuit held these statements disqualifying: "[t]hose statements represent the 'express[ion] [of] an opinion concerning the guilt or innocence' of the accused" that was incompatible with the presumption of innocence. *Id.; see also id*. at 477 ("The Court can hardly perceive how calling Petitioner 'one of the major

7

conspirators in the 9/11 attacks' and referring to what he 'did' is anything *other* than the expression of an opinion concerning his responsibility for those attacks.") (emphasis in original).[3] Judge Chutkan's comments likewise carry only one reasonable interpretation; regardless of the prosecution's efforts to perform a linguistic magic trick, reasonable citizens understand that Judge Chutkan's Disqualifying Statements amount to prejudgments of guilt.

Finally, the prosecution misstates the law by claiming that there is a "presumption against recusal" that President Trump must overcome by "clear and convincing evidence." The Fifth Circuit held that "the new statute requires a judge to exercise his discretion in favor of disqualification if he has any question about the propriety of his sitting in a particular case." *Potashnick*, 609 F.2d 1101, 1112 (5th Cir. 1980). The court went on to hold:

> Under the prior version of section 455, a judge faced with a close question on disqualification was urged to resolve the issue in favor of a "duty to sit." The language of the new statute eliminates the so-called "duty to sit." The use of "might reasonably be questioned" in section 455(a) clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify himself in a questionable case.

*Id.*; *see also Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988) (citations omitted) ("[W]hen a judge harbors any doubts concerning whether his disqualification is required [s]he should resolve the doubt in favor of disqualification.").

---

[3] The D.C. Circuit applied the Rules for Military Commissions, which have a specific rule requiring disqualification "[w]here the military judge ..., except in the performance of duties as military judge in a previous trial of the same or a related case, has expressed an opinion concerning the guilt or innocence of the accused." *Id.* at 475 (quoting R.M.C. 902(b)(3)). Although the military rule does not apply in this case, the legal analysis tracks § 455(a). *United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) ("Courts have found an impermissible level of bias when a judge's remarks or actions reveal [s]he has prejudged the guilt of a defendant."); *Whitaker v. McLean*, 118 F.2d 596, 596 (D.C. Cir. 1941) ("But a right to be tried by a judge who is reasonably free from bias is a part of the fundamental right to a fair trial.").

Regarding clear and convincing evidence, that standard relates only to proving the disqualifying conduct occurred at all—it has no bearing on how the Court should weigh the import of such conduct, which is judged on a reasonable person standard. *United States v. Nixon*, 267 F. Supp. 3d 140, 147 (D.D.C. 2017) ("[T]he moving party must demonstrate by clear and convincing evidence that a judge has conducted himself in a manner supporting disqualification. . . . Whether there is a basis to question a judge's impartiality under § 455(a) is determined by an objective standard.").

Here, the government attempts to conflate these standards in arguing President Trump has not met his burden, Doc. 54 at 20; however, the evidence the Court made the Disqualifying Statements is not only "clear and convincing," it is on the record and undisputable. The only relevant question, therefore, is whether those statements might cause a reasonable person to "question [Judge Chutkan's] impartiality under § 455(a)." *Nixon,* 267 F. Supp. 3d at 147. On that front, for the reasons explained above and in the Motion, there is no genuine question—the Disqualifying Statements would cause reasonable citizens to doubt Judge Chutkan's impartiality.

IV.  **The Appearance of Partiality Undermines the Very Legitimacy of This Case**

The core value at issue here is whether the public will accept these proceedings as legitimate; or instead view them as a politically motivated effort by the incumbent administration to take out its most significant political opponent in a presidential campaign—the opponent who, by the way, is not only free, but has a strong lead in the polls.

Rather than concede, as it should, that justice requires recusal, the prosecution instead ignores that "[t]he very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *United States v. Microsoft Corp.*, 253

F.3d 34, 114 (D.C. Cir. 2001) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)). Congress enacted § 455 to "safeguard[] the public's confidence in judicial impartiality—a prerequisite to its faith in and adherence to judicial decisions." *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 19, 21–22 (D.D.C. 2010) (citing *Microsoft,* 253 F.3d at 114 (citing *Liljeberg,* 486 U.S. at 865).

That is not an insignificant consideration, it is *the* consideration. No system of justice can survive if its citizens lose faith in it: "[b]ecause even the appearance of questionable impartiality poses a significant threat to these fundamental values, Congress created a very broad § 455(a) net, one that would ensnare not only those actually lacking impartiality, but also those whose impartiality might *appear* questionable to a reasonable person." *Bilzerian*, 729 F. Supp. 2d at 22 (emphasis in original) (citing *Liteky,* 510 U.S. at 548). "Any question of a judge's impartiality threatens the purity of the judicial process and its institutions." *Potashnick*, 609 F.2d at 1111 (5th Cir. 1980).

These proceedings are indeed historic. The public interest is not in the perception of a rush to judgment or a show trial contaminated by the appearance of a partial presiding judge, but in a fair proceeding guaranteeing fundamental human and constitutional rights. Anything less will rightly call into question the very legitimacy of these proceedings and cause irreparable damage to our judicial system for generations to come. The public must have confidence that President Trump's constitutional rights are being protected by an unbiased judicial officer. No president is a king, but every president is a United States citizen entitled to the protections and rights guaranteed by the U.S. Constitution.

## CONCLUSION

The Court should overrule the government's objections and grant the Motion. Additionally, to ensure the Court is fully apprised on this crucial motion, President Trump respectfully requests the Court schedule a hearing at the earliest opportunity.

Dated: September 17, 2023                                  Respectfully submitted,

Todd Blanche, Esq. (PHV)                                   */s/ John F. Lauro*
toddblanche@blanchelaw.com                                 John F. Lauro, Esq.
BLANCHE LAW                                                D.C. Bar No. 392830
99 Wall St., Suite 4460                                    jlauro@laurosinger.com
New York, NY 10005                                         Gregory M. Singer, Esq. (PHV)
(212) 716-1250                                             gsinger@laurosinger.com
                                                           Filzah I. Pavalon, Esq. (PHV)
                                                           fpavalon@laurosinger.com
                                                           LAURO & SINGER
                                                           400 N. Tampa St., 15th Floor
                                                           Tampa, FL 33602
                                                           (813) 222-8990
                                                           *Counsel for President Donald J. Trump*