IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 23-cr-257 (TSC) |
| | * |
| DONALD J. TRUMP, | * |
| | * |
| Defendant. | * |
| | * |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ACCESS TO CIPA § 4 FILING AND AN ADJOURNMENT OF THE CIPA § 5 DEADLINE**

On consecutive days last week, the defendant filed two motions for the purpose of delaying trial. This opposition brief addresses the first motion, regarding the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA").

The defendant's motion seeks to forestall any progress on the Court's resolution of the narrow and incidental classified discovery issues in this case and upend the carefully considered pretrial schedule. In service of his effort to delay the proceedings, the defendant asserts that no action can take place until an indeterminate future date of his choosing. Specifically, the defendant contends that the Constitution guarantees that the Court cannot resolve pretrial classified discovery issues until after any and all counsel on his team obtain security clearances and review the entirety of classified discovery. The defendant's motion is legally and factually flawed. The Court should deny the motion, and the current CIPA schedule should proceed apace.

**Background**

The charges in this case do not rely on classified material, and the Government does not intend to use or introduce such material at trial. Accordingly, the classified discovery issues are limited and tangential. As the Court is aware, CIPA sets forth the process for the handling,

production, review, and use at trial of classified material. As described below, the process for dealing with those limited issues in this case has proceeded in normal order—until now.

On August 10, 2023, the Government filed a motion for a pretrial conference under CIPA § 2 (hereinafter, "Section 2 hearing") to discuss issues related to classified material in this case. *See* ECF No. 25. The following day, with the defendant's consent, the Court set the Section 2 hearing concurrent with a previously scheduled status conference to occur on August 28. *See* ECF No. 29 at 66. On August 22, upon the Government's motion and with the defendant's consent, the Court entered orders appointing a Classified Information Security Officer ("CISO") and issuing a protective order for classified information under CIPA § 3. *See* Min. Order, Aug. 22, 2023; ECF No. 37 (hereinafter, "CIPA Protective Order").

At the Section 2 hearing on August 28, the Government confirmed that it did not intend to use classified material in its case-in-chief and estimated that the universe of classified material to be made available to the defense was "five to ten nonduplicative classified documents totaling less than a hundred pages of material," as well as a roughly 125-page classified transcript, the only relevant five-page excerpt of which the Government already had provided the defense in unclassified form. ECF No. 38 at 43-44. The Government advised the Court that one defense counsel of record (Mr. Blanche) already possessed an interim security clearance and that he could review the classified discovery as soon as he obtained his final security clearance, which the Special Counsel's Office—having no control over the process—anticipated would occur in the weeks thereafter. *Id.* at 44.

The Government also described an anticipated motion under CIPA § 4 "which we will request that the Court hear on an ex parte basis" that "involves a limited amount of information for the Court to review on a discrete issue." *Id.* at 46. The Court accepted the Government's

request to set the CIPA § 4 deadline for September 25, 2023, *id.* at 47—a deadline the Government met, *see* ECF No. 59.

As the Court noted at the hearing, CIPA § 5 requires the defendant to file a pretrial notice identifying any classified material it expects to disclose at trial. *See* ECF No. 38 at 42, 44-46. Given the limited amount of classified information to be disclosed in discovery, the Government recommended that the Court set the CIPA § 5 notice deadline for 30 days after Mr. Blanche obtained his final security clearance. *Id.* at 45. The defendant countered with a proposal that the 30 days run from when another counsel of record (Mr. Lauro) obtained his own final security clearance—even though to that point Mr. Lauro had not yet applied for an interim clearance. *Id.* at 47-50. In rebuttal, the Government again pressed that the CIPA § 5 deadline be set for 30 days after only Mr. Blanche received his final clearance; noted that Mr. Blanche "may be able to make determinations on his own with respect to [CIPA § 5] notice, or he may be able to actually speak to Mr. Lauro with an interim clearance regarding the nature of the documents such that they can make a determination soon"; and expressed concern that the defendant's proposal would key the CIPA § 5 notice on an unknown and unknowable future date "when Mr. Lauro will get a final clearance." *Id.* at 50-51. The Court rejected the defendant's counterproposal and set the defendant's CIPA § 5 notice deadline for 30 days from Mr. Blanche obtaining his final security clearance. *Id.* at 51 ("I'm inclined to keep the schedule, and if there's a delay in the clearance process, I'll adjust it on motion of the parties.").

The chronology below regarding the security clearance process for each member of the defense team underscores the accuracy of the Court's inclination:

- Mr. Blanche: On September 8, Mr. Blanche received his final security clearance and was briefed on several Top Secret Sensitive Compartmented Information tickets. Under the deadlines set by the Court at the Section 2 hearing, Mr.

> Blanche's receipt of his final security clearance meant that the defendant's CIPA § 5 notice deadline would be 30 days thereafter—October 8, 2023.

- Mr. Lauro and Mr. Singer: Shortly after the hearing on August 28, the CISO initiated the process for Mr. Lauro to obtain his security clearance. By September 8, Mr. Lauro had completed his initial participant request that would permit him to be sent an invitation to complete the SF-86 required by, among other things, the CIPA Protective Order. *See* ECF No. 37 ¶ 14 ("Unless they already hold an appropriate security clearance and are approved for access to classified information in this case, the Defense shall complete and submit to the CISO a Standard Form 86 (Questionnaire For National Security Positions), attached releases, and 'major case' fingerprints in order to obtain security clearances necessary for access to classified information that may be involved in this case."). At the same time, Mr. Lauro advised the CISO that a third defense counsel of record (Mr. Singer) would require a security clearance. Mr. Singer and Mr. Lauro thereafter were provided the SF-86 to complete electronically. As of the date of this filing, neither Mr. Lauro nor Mr. Singer has returned the SF-86 form necessary to begin the process of obtaining any level of security clearance, whether interim or final—a fact the defense omits from its motion.

- Other Required Attorneys: On or around September 22, at Mr. Blanche's request, the Court granted permission for two other attorneys (the "Required Attorneys") and one paralegal (the "Required Paralegal") to access classified discovery, even though those individuals were not counsel of record, because "the Defense reasonably requires" their assistance under a different provision of the CIPA Protective Order. ECF No. 37 ¶ 13. The Required Attorneys already possessed the requisite final security clearances. According to his website biography, Required Attorney #1, who has not entered an appearance in this case, was co-chief of the national security unit of the U.S. Attorney's Office for the Southern District of New York for two years and, during his time as a federal prosecutor, "handled some of the country's most significant national security matters." Required Attorney #2 also has not entered an appearance in this case but sat at defense counsel table during the Section 2 hearing on August 28.

Cognizant of the deadlines the Court set at the Section 2 hearing—including the defendant's October 8 deadline for his CIPA § 5 notice—the Government inquired on September 11 as to when defense counsel anticipated reviewing the classified discovery that was being made available. Defense counsel responded that they anticipated review the week of September 25, and later the date was finalized for September 26. Due to the classification levels of certain of the discovery material, the CISO conducted additional read-ins that morning for Mr. Blanche, the

Required Attorneys, and the Required Paralegal, and the defense was provided the classified discovery around 10:35 a.m., except for one further controlled document that was provided around 2:30 p.m.

The classified discovery reviewed by the defense consisted of approximately 975 pages of material: (1) a 761-page document obtained from the Department of Defense, the majority of which is not classified;[1] (2) an FBI-FD 302 of the classified portion of a witness interview for which the Government already provided a transcript of the unclassified portion, as well as attachments, totaling 52 pages; (3) a 12-page document currently undergoing classification review by the Department of Defense; (4) the 118-page classified transcript the Government described at the CIPA § 2 hearing on August 28; and (5) a further controlled document that is a classified version of a publicly-available document produced in unclassified discovery that contains the same conclusions.[2]

Defense counsel continued reviewing classified discovery until approximately 4:30 p.m. on September 26. On September 27, the defendant filed the instant motion.

## Argument

Classified material will not play a role in the Government's case-in-chief, and only a limited amount of such material is discoverable by the defendant. Nonetheless, relying on the specter of undefined future litigation over classified information, the defendant's motion seeks

---

[1] The Government did not include this document in its page estimate at the CIPA § 2 hearing, only later determining that in an abundance of caution the entire document should be produced in classified discovery, even though—as indicated by page and portion markings—the majority of it is not classified. In its cover letter accompanying the classified discovery production, the Government made clear its willingness to discuss producing the unclassified pages and portions in unclassified discovery.

[2] *See* Bates SCO-03668433 through SCO-03668447 (produced to the defense in the first unclassified discovery production on August 11, 2023).

various forms of relief, all designed to delay the trial date.  First, the defendant objects to the Government proceeding *ex parte* under CIPA § 4.  Second, the defendant seeks at an indeterminable future date an *ex parte* hearing "to discuss defense theories" it believes may be relevant to the Court's review of the Government's CIPA § 4 motion.  And third, the defendant requests an indefinite adjournment of the CIPA § 5 deadline.  The Court should deny the defendant's motion.

I. CIPA § 4

    A. **The Court should review the Government's CIPA § 4 Motion *In Camera* and *Ex Parte***

The defendant conditionally objects to the Court proceeding *ex parte* with the Government's CIPA § 4 motion, seeking leave to later articulate an actual objection.  *See* ECF No. 62 at 2-3.  Citing a single out-of-circuit case for the contention that "[i]t is not a foregone conclusion that *ex parte* proceedings are appropriate,"[3] the defendant "request[s] permission to submit a brief elaborating on this and any other procedural objections to the [Government]'s CIPA § 4 filing by October 11, 2023."  ECF No. 62 at 3.  The defendant does not give any detail on what relief for the "other procedural objections" his aspirational future brief may one day request.  It

---

[3] The case, *United States v. Stillwell*, 986 F.3d 196, 198 (2d Cir. 2021), does not support the defendant's apparently forthcoming argument in favor of responsive, public motions practice regarding classified material.  In *Stillwell*, after defendants in a murder-for-hire case appealed their convictions, a headquarters Department of Justice component informed the Second Circuit in a filing, considered after oral argument for two of the defendants, that the component—without notice to the U.S. Attorney's Office handling the case—had filed a CIPA § 4 motion before the district court to withhold classified materials not only from the defense *but also from the prosecutors*.  The Second Circuit nonetheless gave the U.S. Attorney's Office an opportunity to move *ex parte* to withhold the material from the defense at the appellate level.  *Id.* at 199.  In eventually ordering the government to provide the classified materials to defense counsel, the Second Circuit did not hold that *ex parte* CIPA § 4 proceedings by a district court were inappropriate; rather, it remanded to the district court to consider in the first instance defendants' *Brady* claims, highlighting the limited amount of time remaining for the defendants to file new trial motions.  *Id.* at 201-02.

also is unclear why the defendant did not simply file a developed motion, instead of seeking the Court's permission to file a brief (not a motion to which the Government could respond as of right) on October 11 (after the October 9 motions deadline).  In any event, any future argument challenging the routine *ex parte* filing by the Government should fail as contrary to the purposes of CIPA.  *See, e.g.*, 18 U.S.C. App. 3 § 4; *United States v. Mejia*, 448 F.3d 436, 457 & n.21 (D.C. Cir. 2006) ("As the House Report explains, 'since the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'"); *United States v. Campa*, 529 F.3d 980, 995 (11th Cir. 2008) ("The right that section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view."); *United States v. Amawi*, 695 F.3d 457, 474 (6th Cir. 2012) ("Nothing in CIPA opens the door to such [CIPA § 4] proceedings simply because a defendant's attorney has been cleared to see classified information.").  To conserve judicial resources, the Court should deny the defendant's request to later file a stand-alone brief seeking relief on a motion he has not identified or filed.

Furthermore, to prepare his undefined future filing, the defendant asks the Court to order the Government to file a redacted version of the CIPA § 4 motion, as well as "a memorandum of law with argument and authorities regarding the bases for the redactions."  ECF No. 62 at 3.  In support, the defendant cites *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006), followed by a host of inapposite cases.  The defendant intentionally cherry-picks a quote from *Libby* that misrepresents the case's holding.  A more complete quotation is below, and confirms that *Libby* stands for the proposition that the CIPA § 4 motion must be filed under seal if the Government so

elects, and the sealed motion—not a public brief—should explain the necessity for the *ex parte* nature of the filing, *see Libby*, 429 F. Supp. 2d at 48:

> Accordingly, the Court cannot preemptively constrain the government in any manner from making filings it deems appropriate, necessary, and permissible under Section 4. To the extent the Court suggested otherwise [in a prior decision in the same case], that suggestion is retracted. However, in those rare situations where the government is compelled to make an *ex parte* Section 4 filing containing arguments in support of immateriality, the government should fully explain why the *ex parte* filing is necessary and appropriate. The Court will then carefully scrutinize any such filing to determine whether it should remain an *ex parte* filing or whether it should be served on the defendant. And if the Court concludes that an *ex parte* filing should be served on the defendant, and thus requires the disclosure of classified information, it will afford the government the opportunity to appeal the decision pursuant to Section 7 of the CIPA or, if appropriate, withdraw the motion.

The remainder of the cases cited by the defendant provide no support for his argument that the Government should not be able to file its CIPA § 4 motion entirely *ex parte* and under seal. Tellingly, most of the cases on which the defendant relies do not involve CIPA proceedings at all, let alone under Section 4. *See, e.g.*, *Al-Hela v. Biden*, 66 F.4th 217, 242 (D.C. Cir. 2023) (addressing whether the use of classified information not provided to al-Hela or his counsel to support his detention at U.S. Naval Station Guantanamo Bay violated al-Hela's due process rights and concluding it did not); *In re Leopold*, No. 13-mc-712, 2020 WL 7481037, at *1 (D.D.C. 2020) (discussing potential access to sealed investigative applications and related judicial records, not classified filings); *Kaley v. United States*, 571 U.S. 320, 355 (2014) (dissenting opinion discussing risks of seizing assets based on *ex parte* proceedings); *Gallon Henao v. Mnuchin*, No. 18-cv-52, 2019 WL 11385076, at *1 (D.D.C. Sept. 19, 2019) (civil case related to a designation under the Foreign Narcotics Kingpin Designation Act); *Doe v. Mattis*, 288 F. Supp. 3d 195, 197 (D.D.C.

2018) (suit by petitioner to enjoin Department of Defense from transferring him to another country); *Al-Baluchi v. Austin*, No. 08-cv-2083 (D.D.C.) (detainee case).

Moreover, the limited number of cases the defendant cites that do involve CIPA proceedings actually undermines his position. For example, the defendant cites *United States v. Liu*, No. 19 Cr. 804, ECF Nos. 90 & 91 (S.D.N.Y. Dec. 21, 2020), for the proposition that the government has sometimes filed redacted classified filings or filed classified information separately. ECF No. 62 at 4-5. The docket entries cited by the defendant reflect that the government filed classified and unclassified versions of a supplement and appendix in support of its opposition to defendant's motion to suppress evidence obtained pursuant to the Foreign Intelligence Surveillance Act ("FISA").[4] *Id.*; *Liu*, ECF No. 91. But in the same case, the government filed its CIPA § 4 motion *ex parte* and under seal without providing a redacted version. *See id.*, ECF Nos. 58 & 72. And although the defendant challenged the government's ability to do so, *id.*, ECF No. 70, the court denied this challenge, holding that the *Liu* defendant's argument that his cleared counsel should be able to inspect the classified material was "foreclosed by CIPA itself and has been rejected repeatedly by the Second Circuit and other courts to consider the issue," noting that Section 4 "expressly provides for *ex parte* review." *Id.*, ECF No. 124 at 8.

Similarly, in another case cited by the defendant, *United States v. Alimehmeti*, No. 16-cr-238, ECF Nos. 62 & 63 (S.D.N.Y. July 24, 2017), the government filed a redacted version of its pretrial brief that included its response to a FISA suppression motion. But again, the government filed its CIPA § 4 motion *ex parte* and under seal and the court denied the defendant's motion to be permitted to review at least portions of the government's memorandum, explaining that the

---

[4] Pursuant to 50 U.S.C. § 1806(e), if the government intends to use FISA evidence in a case, a defendant whose communications were captured on FISA coverage can file a motion to suppress. Although that procedure is adversarial, the court considers certain materials *ex parte*. *Id.* § 1806(f). In any event, there are no such materials at issue in this case.

"Government's discussion of legal principles in that memorandum is sufficiently interwoven with, and informed by, its application of those principles to the evidentiary materials at issue to counsel against such a disclosure." *Id.*, ECF No. 54 at 3.[5]  Finally, in *United States v. Hasbajrami*, No. 11-cr-623 (E.D.N.Y.)—also cited by the defendant, *see* ECF No. 62 at 5—the government likewise filed an unclassified, redacted version of its response to a motion to suppress FISA evidence, *Hasbajrami*, ECF No. 97, but not its CIPA § 4 motion, *id.*, ECF No. 103.  In sum, the defendant spends two pages of his motion citing irrelevant cases and ignoring the binding precedent of *Mejia*. *See* ECF No. 62 at 3-5.

Nor is there merit in the defendant's suggestion that the First Amendment requires a redacted version of the CIPA § 4 motion be made public.  *See* ECF No. 62 at 5.  As the Court recently recognized when rejecting a similar First Amendment argument made by the defendant, "[t]he defense has not pointed to any history—much less an unbroken, uncontradicted history—of motions like the government's being fully available to the public, nor has it articulated why public access significantly contributes to their function." ECF No. 55 at 7.  In any event, the defendant could not make such a threshold showing here, since there is no history of public access to sealed, classified filings that by statute are considered *ex parte*.[6]

### B. The Defendant Does Not Need Additional Time to Set Forth Defense Theories in an *Ex Parte* Proceeding

The defendant also moves for an *ex parte* proceeding to discuss defense theories he believes pertinent to the Court's consideration of the Government's CIPA § 4 motion.  The

---

[5] Required Attorney #1 was counsel of record for the government in this case.

[6] Though the defendant claims a First Amendment right of access to the Government's *ex parte* filing, he simultaneously seeks his own *ex parte* conference with the Court.  While such a procedure is appropriate, the defendant fails to recognize that his demand to make the Government's filing public is inconsistent with his own desire for secrecy.  ECF No. 62 at 5-6.

Government has no objection to the request, and believes any hearing should take place within two weeks of the defendant's filing on September 27 in order for the Court to expeditiously resolve the pending CIPA § 4 motion.

However, the defendant seeks more: he wants the *ex parte* proceeding to be held at an indeterminate date in the future entirely subject to his control. According to the defendant, his "Sixth Amendment rights require all counsel to be in a position to review and evaluate classified discovery and to participate in the planning of litigation strategy based on insights yielded from the classified productions" and "two members of [the defendant]'s defense team have not obtained clearances and are unable to review or discuss the classified discovery." ECF No. 62 at 6 & 2 n.1. As an initial matter, the defendant cites no case for the proposition that the Sixth Amendment requires every single attorney of the defendant's choosing to review classified discovery before proceeding to trial, much less before providing notice under CIPA § 5. Nor is the Government aware of one. As a legal matter, this argument runs contrary to the analogous and uniform body of law prohibiting uncleared counsel from reviewing classified material. *See, e.g.*, *United States v. Abu Ali*, 528 F.3d 210, 254 (4th Cir. 2008) ("[T]he mere exclusion of [the defendant] and his uncleared counsel from the CIPA hearings did not run afoul of CIPA or [the defendant]'s Confrontation Clause rights."); *United States v. Hashmi*, 621 F. Supp. 2d 76, 84 (S.D.N.Y. 2008) ("[T]he Government's interest in preventing the unauthorized dissemination of classified information circumscribes Defendant's right to assistance of counsel in this case.").

And as a practical matter, such a Constitutional conclusion would permit any defendant in a case involving classified material to delay trial indefinitely by simply adding counsel of record as trial neared, claiming the need for that new attorney to review classified material already reviewed by co-counsel. As discussed above, three defense counsel have final clearances and have

reviewed classified discovery.[7]  The reviewing attorneys do not lack expertise in classified material: One of those attorneys—Mr. Blanche—is the lead attorney in the defendant's criminal case in the Southern District of Florida, which charged felony violations regarding classified material; another one of those attorneys—Required Attorney #1—was the co-chief of the national security unit in the U.S. Attorney's Office for the Southern District of New York.  Meanwhile, as of this filing, the two other attorneys lacking clearances have not returned the SF-86 forms required to begin the security clearance process.  It strains credulity to suggest that the defendant must have six—instead of four—capable members of the defense team review the limited amount of classified discovery in this case, or that six members are necessary to modify the theory of defense based on a review of a handful of classified documents out of the extensive discovery already produced.  This is especially true here because of the content of the classified discovery.  The defendant appears to focus on the one further controlled document as the basis for his request for delay.  But the defendant has been provided a publicly-available version of the same document that contains the same ultimate conclusions.  He does not need the classified information in the further controlled document to consult with uncleared counsel and apprise the Court of his defense theories.  The defendant's motion should be denied on this ground alone.

The defendant also premises his request for an uncalendared *ex parte* proceeding on the nebulous and unsupported argument that the Government "is not in compliance with its discovery obligations with respect to classified materials."  ECF No. 62 at 6.  At the Section 2 hearing, the

---

[7] The defendant asserts that his review of classified discovery on September 26 was "brief and preliminary."  ECF No. 62 at 2.  The time the defendant chooses to spend reviewing classified discovery is entirely within his control, and it is unclear why he has not acted with more urgency in light of his motion.  After all, the Court has required the CISO to ensure the defendant has access to classified discovery "during normal business hours, after hours, and on weekends."  ECF No. 37 ¶ 15.

Government indicated that classified discovery would consist of what in fact ended up being produced—"five to ten nonduplicative classified documents." ECF No. 38 at 43-44. That number alone should have put the defendant on notice that the Government was not producing extensive classified holdings, yet the defendant did not at that time or at any time since (until filing his motion) indicate his view on the discoverability of an unnumbered volume of "classified emails" that were "exchanged" by unnamed witnesses around the time of the undefined "events in question." ECF No. 62 at 2. And though the defendant makes elusive reference to such terms as "Prudential Search Reviews"[8] and "classified disclosures pursuant to the Jencks Act and *Giglio*,"[9] *id.* at 6, he fails to define any specific discovery to which he thinks he is entitled. Should the defense seek to propound to the Government discovery requests or move the Court to compel discovery because it believes that other agencies possess discoverable information that has not been produced, it is free to do so. But there is no such motion before the Court, and a motion that has not yet been filed cannot reasonably pause the Court's orderly administration of this case.

Moreover, the Government understands and continues to comply with its discovery obligations, and the defendant cannot dictate how the Government complies with them. For example, the Government is aware that the Pretrial Order, ECF No. 39, sets February 12, 2024, as

---

[8] Prudential Search Requests ("PSRs")—not "Reviews"—are sometimes conducted in national security cases. A prudential search is a search of the files of an intelligence community or military component, typically before charges are filed, to assist prosecutors in identifying and managing national security concerns in their cases. PSRs are—as the name suggests—prudential, rather than legally required.

[9] The defendant cites two provisions of the Justice Manual for an unknown reason but perhaps to suggest, without specification, that the Government may have too narrowly construed its discovery obligations. ECF No. 62 at 6. Whatever the intent of the defendant's undeveloped argument, the Government has proceeded consistently with the provisions of the Justice Manual, and in any event the Justice Manual does not create rights for criminal defendants. *See* Justice Manual § 1-1.200 ("The Justice Manual provides internal DOJ guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.").

the deadline to produce *Giglio* material, and 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2 require production of Jencks statements after a Government witness leaves the witness stand at trial. Despite these 2024 deadlines, the Government already produced in discovery the vast majority of Jencks Act material, including interview or grand jury transcripts and audio recordings for over 350 potential witnesses. Despite the defendant's references to undescribed classified emails that may constitute additional discoverable information, any such later requests must be analyzed within the framework of the extensive unclassified discovery already produced and under the same rubric—whether the classified material is discoverable under Rule 16, *Brady*, Jencks, or *Giglio*. *See United States v. Yunis*, 867 F.2d 617, 622 (D.C. Cir. 1989) (CIPA "creates no new rights of or limits on discovery of a specific area of classified information").

Finally, in addition to having more than sufficient discovery to provide the Court with a description of the type of information he considers relevant and helpful, the defendant evidently knew his defense theories before ever reviewing a page of unclassified or classified discovery. In the days and weeks following his indictment, the defendant and his counsel broadcast the principal defense theories in multiple public appearances in national media outlets. For example, the day after the defendant's arraignment, defense counsel was asked on National Public Radio "to talk a little about your legal strategy" and "give us a summary of your legal defense to these criminal charges."[10] Defense counsel then told the national audience, "Well, it's not a big surprise," and the defendant "got advice from counsel – very, very wise and learned counsel – on a variety of constitutional and legal issues." Days later, defense counsel told another national audience on

---

[10] https://www.npr.org/2023/08/02/1191627739/trump-charges-indictment-attorney-jan-6-probe.

NBC that the defendant "had a right to speak out under the First Amendment" and "acted under the advice of counsel when he petitioned, under the First Amendment, petitioned Mr. Pence . . . [a]nd that's legally protected speech."[11]  Defense counsel also previewed that "[w]e will be litigating the 2020 election because much of that has not been litigated" and "[w]e don't have to prove fraud.  People don't understand that.  All we have to do is that [the defendant] was acting with his conviction that this election was conducted improperly."

In sum, the defendant offers no concrete basis for the Court to alter the CIPA § 4 procedures.

## II.   CIPA § 5

The defendant also seeks an indefinite extension of the CIPA § 5 notice deadline, currently set for October 8, 2023.  The defendant's motion should be denied.[12]

As an initial matter, the defendant misstates the Court's rulings during the Section 2 hearing.  Specifically, the defendant claims that he "did not object" to the deadline proposed by the Government—that is, that the CIPA § 5 notice deadline be set for 30 days from Mr. Blanche receiving his final security clearance.  As described above, the transcript proves otherwise: the defendant did object, seeking the same indeterminate future date as he does now, and the Court rejected the defense request.  ECF No. 38 at 42-51.  The Court should do so again now.

More substantively, the Court should not delay the CIPA § 5 notice deadline until after all defense counsel obtain final security clearances and review all classified discovery for the same

---

[11] https://www.nbcnews.com/meet-the-press/meet-press-august-6-2023-n1307001.

[12] On September 26, before the defendant reviewed the classified discovery, the defendant sought the Government's position with respect to certain parts of its motion but did not confer with the Government regarding delaying the defendant's CIPA § 5 notice.  *Cf.* Min. Order, Sept. 11, 2023 ("Defense counsel is reminded of the requirement to confer with opposing counsel before filing any motion and to indicate whether the motion is opposed. . . . Future motions that fail to comply with that requirement may be denied without prejudice.").

reasons the Court should not delay the CIPA § 4 proceedings. Indeed, with four members of the defense team reviewing less than one thousand pages of classified material, the defendant admits that he "currently expects to include information from the classified discovery in his CIPA § 5 notice, and he is also likely to provide CIPA § 5 notice as to materials that he will be seeking but have not yet been produced." ECF No. 62 at 8-9. If that is so, then the defendant should proceed on that course and file his CIPA § 5 notice by the October 8 deadline. If a supplemental notice is later warranted, the defendant can move for leave to file such notice at that time, and the Court can consider the parties' arguments once joined. But consternation and speculation over what might happen in the future are no reason to fail to act on what the defendant knows now and in keeping with the Court's established schedule.

## Conclusion

The Court should deny the defendant's motion.

Respectfully submitted,

JACK SMITH
Special Counsel

By:  /s/Thomas P. Windom
Thomas P. Windom
Molly Gaston
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530