BENNIE G. THOMPSON
SECOND DISTRICT, MISSISSIPPI

COMMITTEE ON
HOMELAND SECURITY
RANKING MEMBER

WASHINGTON OFFICE:
2466 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-2402
(202) 225-5876
(202) 225-5898: FAX

E-MAIL: benniethompson@mail.house.gov
HOME PAGE: http://www.benniethompson.house.gov

CONGRESSIONAL BLACK CAUCUS
CONGRESSIONAL GAMING CAUCUS
CONGRESSIONAL SPORTSMEN'S CAUCUS
CONGRESSIONAL RURAL CAUCUS
HOUSE EDUCATION CAUCUS
CONGRESSIONAL RICE CAUCUS

**Congress of the United States**
**House of Representatives**
**Washington, DC 20515-2402**

July 7, 2023

The Honorable Barry Loudermilk
Chairman, Subcommittee on Oversight
Committee on House Administration
U.S. House of Representatives
Washington, DC 20515

Dear Representative Loudermilk:

I am in receipt of your June 26, 2023, letter regarding the records of the bipartisan Select Committee to Investigate the January 6th Attack on the United States Capitol.

Unlike many Republican Members who failed to cooperate with the bipartisan Select Committee's investigation of the deadly U.S. Capitol attack, I will afford you the courtesy of a response, which is particularly important given your letter's significant factual errors.

At my direction, Select Committee staff worked in close coordination with staffs of the Committee on House Administration, the Clerk of the House, the Office of General Counsel, the Office of the Parliamentarian, the National Archives and Records Administration (NARA), and the Government Publishing Office (GPO) in preparing the Select Committee's more than 1 million records for publication and archiving. Given the records' historic importance documenting the January 6th insurrection, I am proud of the Select Committee's unprecedented transparency, such as the records collection associated with the bipartisan Select Committee's final report at GPO's website: https://www.govinfo.gov/collection/january-6th-committee-final-report.

As you note in your letter, rule VII of the Rules of the House of Representatives requires committees to archive noncurrent official, permanent records.[1] To that end, the bipartisan Select

---

[1] Guidance from the Office of the Clerk states that a permanent record is "[m]aterial created or received by a person, family, or a public or private organization that is preserved because of its enduring value. The value stems from the information it contains or the evidence it provides of the functions and responsibilities of the creator." *See* "Records Management Manual for Committees," Office of Art and Archives, Office of the Clerk of the House of Representatives (Aug. 2021), p. 8. Consistent with guidance from the Office of the Clerk and other authorities, the Select Committee did not archive temporary committee records that were not elevated by the Committee's actions, such as use in hearings or official publications, or those that did not further its investigative activities. Accordingly, and contrary to your letter's implication, the Select Committee was not obligated to archive all video recordings of transcribed interviews or depositions. Based on guidance from House authorities, the Select Committee determined that the written transcripts provided by nonpartisan, professional official reporters, which the witnesses and Select Committee staff had the opportunity to review for errata, were the official, permanent records of transcribed interviews and depositions for the purposes of rule VII.

The Honorable Barry Loudermilk
Page 2

Committee used an e-discovery platform to manage its investigative records. In consultation with the House Clerk's Office of Art and Archives and NARA, the Select Committee worked with its e-discovery platform contractor to create an archive file compatible with House Clerk and NARA systems. Official, permanent records were electronically archived in that file and delivered to the House Clerk with additional official, permanent records outside of the e-discovery platform on January 2, 2023. I encourage you to carefully review the Select Committee's over 4-terabyte digital archive, which includes the e-discovery platform's electronic archive file, before asserting that certain noncurrent records were not archived.

As you also note, on December 30, 2022, when the bipartisan Select Committee still had control of its records under House rules,[2] Vice Chair Liz Cheney and I sent letters to the White House Special Counsel and the Department of Homeland Security (DHS) regarding the Select Committee's loan of some then-current material containing law enforcement sensitive operational details and private, personal information that, if released, could endanger the safety of witnesses.[3] As indicated in the letters, the Select Committee wrote to those authorities seeking their assistance and guidance in the proper archiving of such sensitive material to protect witnesses' safety, national security, and to safeguard law enforcement operations.[4] This was part of the Select Committee's effort to accommodate the Executive Branch in appropriately protecting certain sensitive information while also complying with the archiving rules of the House. The Executive Branch was still conducting its review of that material to provide appropriate archiving guidance at the time the Select Committee dissolved. Accordingly, the Select Committee did not have the opportunity to properly archive that material with the rest of its records with the benefit of the Executive Branch's guidance to ensure witness safety, our national security, and law enforcement sensitive information.

Because I agree that Congress must properly retain and archive committee records to maintain the confidence of the American people, the letters transmitting that sensitive material were, contrary to your assertion, archived in several places (including the public GPO document repository) and intended to inform the Select Committee's successor of the ongoing Executive Branch review

---

[2] As memorialized at chapter 17, section 19.1 of *Deschler's Precedents*, a committee expiring absent action by the House maintains control of its records through the end of the Congress in which it was created.

[3] *See* Isaac Arnsdorf and Josh Dawsey, "Jan. 6 panel escalates showdown with Trump over influencing witnesses," *Washington Post*, (July 12, 2022), available at https://www.washingtonpost.com/national-security/2022/07/12/trump-witness-tampering-jan-6/. Further, clause 3(b)(2) of rule VII implies that a House committee has a duty to provide the House Clerk with appropriate guidance as to whether an investigative record should be archived for 50 years rather than the usual 30 years. The Executive Branch's guidance would help inform the judgment of the Select Committee, or its successor, as to whether the investigative records "contain[ed] personal data relating to a specific living person (the disclosure of which would be an unwarranted invasion of personal privacy)".

[4] "[W]e are hereby providing those transcripts…*for appropriate review, timely return, and designation of instructions for proper handling* by the Archives." Letter from Chairman Bennie G. Thompson and Vice Chair Liz Cheney, Select Committee to Investigate the January 6th Attack on the United States Capitol, to Mr. Richard A. Sauber, Special Counsel to the President (Dec. 30, 2022), available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CHAIR-VICE-CHAIR-LETTER-TO-WHITE-HOUSE/pdf/GPO-J6-TRANSCRIPT-CHAIR-VICE-CHAIR-LETTER-TO-WHITE-HOUSE.pdf, p. 1 (emphasis added). *See also* Letter from Chairman Bennie G. Thompson and Vice Chair Liz Cheney, Select Committee to Investigate the January 6th Attack on the United States Capitol, to The Honorable Jonathan Meyer, General Counsel, U.S. Department of Homeland Security (Dec. 30, 2022), available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CHAIR-VICE-CHAIR-LETTER-TO-DHS/pdf/GPO-J6-TRANSCRIPT-CHAIR-VICE-CHAIR-LETTER-TO-DHS.pdf.

The Honorable Barry Loudermilk
Page 3

process when the Select Committee dissolved. At this time, only the Committee on House Administration, as the successor to the Select Committee, has the authority under House Resolution 5, 118th Congress, to coordinate with the White House and DHS to arrange for the return of the records mentioned in those letters along with the Executive Branch's archiving guidance—as was the bipartisan Select Committee's stated intent.

Sincerely,

Bennie G. Thompson

cc: The Honorable Norma J. Torres, Ranking Member, Subcommittee on Oversight
The Honorable Joseph D. Morelle, Ranking Member, Committee on House Administration