IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| v. | * |
| DONALD J. TRUMP, | *   CRIMINAL NO. 23-cr-257 (TSC) |
| Defendant. | * |

### PRESIDENT DONALD J. TRUMP'S MOTION FOR ACCESS TO CIPA § 4 FILING

President Donald J. Trump respectfully submits this memorandum, in response to the Court's October 6, 2023 Order, seeking access to the September 25, 2023 CIPA § 4 filing by the Special Counsel's Office. (*See* Dkt. No. 59).

A motion pursuant to CIPA § 4 is a critical juncture where the government asks the Court to endorse the withholding of discoverable material by determining, *inter alia*, whether the material is "relevant or helpful" to the defense. In effect, because CIPA "creates no new rights of or limits on discovery of a specific area of classified information," prosecutors filing a motion pursuant to this provision are seeking permission to withhold *Brady* material. *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). These motions require the Court to stand in a defendant's shoes, predict defenses the defendant has not yet presented and is entitled to develop and modify until the case is submitted to the jury for deliberations, and protect important defense rights to exculpatory information relevant to trial and sentencing (including impeachment material).

In contrast to the mandatory terms of 50 U.S.C. § 1806(f), CIPA § 4 makes clear that the Court "may," but need not, allow the prosecutors to shield their submission from President Trump. While we acknowledge the Court's discretion to permit the Special Counsel's Office to proceed *ex*

*parte* under CIPA § 4 in this crucial setting, we respectfully submit that doing so is not necessary. We seek attorneys'-eyes-only access to the paragraphs and pages of the submission that are not portion-marked as classified and to the Office's citations to legal authority, which are not classified. In light of the Court's October 6 ruling regarding public access, we recognize that any such redacted version of the CIPA § 4 submission would be maintained under seal and subject to the protective orders in this case.

The Court should exercise its discretion under CIPA § 4 in the context of (1) the general presumption against *ex parte* proceedings in criminal cases;[1] (2) the post-CIPA development of bodies of law under FOIA, in habeas proceedings, and in motions to suppress FISA intercepts where parties are granted greater access to filings by the Defense Department and USIC agencies that summarize sensitive information;[2] and (3) a case involving cleared defense counsel who have already been granted access to sensitive classified materials and are subject to a CIPA § 3 protective order that carefully governs the handling of such materials. Under these circumstances, our request for access to the non-sensitive portions of the CIPA § 4 filing is not inconsistent with the 1980 House Report quoted in *United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006). It would not "defeat

---

[1] *See, e.g.*, *United States v. Stevens*, 2008 WL 8743218, at *5 (D.D.C. 2008) ("[E]x parte communications between prosecutors and the trial judge "are greatly discouraged and should only be permitted in the rarest of circumstances." (cleaned up)); *see also United States v. Napue*, 834 F.3d 1311, 1318 (7th Cir. 1987) ("[T]he district court in exercising its discretion must bear in mind that ex parte communications are disfavored. They should be avoided whenever possible and, even when they are appropriate, their scope should be kept to a minimum.").

[2] (*See, e.g.*, Dkt. No. 20-3 at 7-12 ¶¶ 17-27, *Judicial Watch, Inc. v. DOJ*, No. 18 Civ. 2107 (TSC) (D.D.C. Oct. 18, 2019) (publicly filed declaration explaining FBI's application of National Security Act in FOIA case); Dkt. No. 10-2 at 7-8, *Smith v. NARA*, No. 18 Civ. 2048 (TSC) (D.D.C. Dec. 20, 2018) (publicly filed declaration explaining NARA's *Glomar* response in FOIA case); Dkt. No. 93-2, *Doe v. Mattis*, No. 17 Civ. 1928 (TSC) (June 1, 2018) (publicly filed redacted declaration Defense Department official); Dkt. No. 67-2 at 10-15, *ACLU, et al. v. DOJ, et al.*, No. 10 Civ. 436 (D.D.C. Nov. 25, 2014) (publicly filed declaration explaining CIA's application of National Security Act in FOIA case)).

the very purpose of the discovery rules" to grant cleared counsel access to unclassified portions of the submission.  *Id.* at 457.  Similarly, the committee notes to Rule 16 that are quoted in *Mejia* provide that prosecutors may seek a protective order authorizing the withholding of discoverable material based on a submission that is "in whole *or in part*" *ex parte*.  *Id.* (emphasis added).  President Trump's position is that the "in part" portion of that language is the prudent and fair course in this case.

*Mejia* itself is not to the contrary.  Before addressing whether the *ex parte* district court proceedings in that case constituted an abuse of discretion, the Court of Appeals "examined the documents *de novo*" and found that "they are not helpful to the defense." 448 F.3d at 457.  The *Mejia* court conducted that review with the benefit of a developed trial record that included the merits arguments the defendant had presented to the court and the jury.  In contrast, trial courts have expressed concerns about resolving CIPA § 4 motions *ex parte* before the defendant has had a similar opportunity to fully develop his defense.  *United States v. Libby*, 429 F. Supp. 2d 46, 48 (D.D.C. 2006) ("[I]n those rare situations where the government is compelled to make an *ex parte* Section 4 filing containing arguments in support of immateriality, the government should fully explain why the *ex parte* filing is necessary and appropriate."); *United States v. Rezaq*, 899 F. Supp. 697, 707 (D.D.C. 1995).  And in *Mejia*, only after concluding that the classified materials were not "helpful"—*i.e.*, not subject to *Brady*—did the court conclude that the *ex parte* proceedings were permissible.

More recently, as we have noted, the Second Circuit handled a similar situation quite differently, which resulted in disclosure of a classified CIPA § 4 submission to cleared defense counsel.  *See United States v. Stillwell*, 986 F.3d 196, 201 (2d Cir. 2021).  There, as in *Mejia*, the government submitted a CIPA § 4 motion to the trial court *ex parte*, without notice to the

defendants or the prosecutors responsible for the case. Whereas the *Mejia* panel reviewed the filing itself and resolved the merits of the appeal, the Second Circuit ultimately remanded the case and "ordered those [classified] documents disclosed to both parties." *United States v. Hunter*, 32 F.4th 22, 25 (2d Cir. 2022). To our knowledge, no national security calamity resulted from the decision requiring that cleared counsel be provided access to a court filing so central to the defendants' rights. We are seeking even less here by requesting only a redacted version of the CIPA § 4 filing, which would be maintained under seal but permit cleared counsel to review and respond to unclassified arguments and legal citations. The Special Counsel's Office seemed to invite a very similar approach with respect to one of the documents it produced in classified discovery. (*See* Dkt. No. 65 at 5 & n.1 (acknowledging that the "vast majority" of a document produced in classified discovery "is not classified" and expressing "willingness to discuss producing the unclassified pages and portions in unclassified discovery")).[3]

While we presume that the Special Counsel's Office has marked its CIPA § 4 motion with a banner line indicating classification status, as well as portion marks for certain paragraphs claiming the same, the Office is not an original classification authority under Executive Order 13526. Any classification of the Office's submission is derivative of the classification of the materials it discusses, and prosecutorial claims regarding sensitivity do not change that. *See In re Terrorist Attacks On Sept. 11, 2001*, 523 F. Supp. 3d 478, 498 (S.D.N.Y. 2021) ("Simply saying 'military secret,' 'national security' or 'terrorist threat' or invoking an ethereal fear that disclosure will threaten our nation is insufficient to support the privilege." (cleaned up)). That is why citations to legal authorities that would be filed publicly in almost any other setting are not deemed classified

---

[3] By letter dated October 4, 2023, we requested that the Special Counsel's Office produce the unclassified portions of the document at issue in unclassified discovery.

by virtue of their inclusion in a CIPA filing. Nor would the disclosure of this non-classified information to the defense in an attorneys-eyes-only manner cause any cognizable harm.

Relatedly, in order to obtain relief under CIPA § 4, the Office must validly invoke what has been referred to as the "national security privilege" and the "classified information privilege" under *United States v. Reynolds*, 345 U.S. 1 (1953). *See, e.g.*, *Yunis*, 867 F.2d at 623; *Mejia*, 448 F.3d at 456; *United States v. Libby*, 453 F. Supp. 2d 35, 38 n.5, 40 (D.D.C. 2006). This entails "strict requirements," including an "affidavit of the responsible department head for the information pertinent to its decision concerning the privilege." *Black v. Sheraton Corp. America*, 564 F.2d 531, 543 (D.C. Cir. 1977). Whereas the Special Counsel is vested with authority to exercise the "prosecutorial functions of any United States Attorney," 28 C.F.R. § 600.6, CIPA § 14 limits the individuals capable of invoking the privilege to the Attorney General, the Deputy Attorney General, or "an Assistant Attorney General designated by the Attorney General for such purpose." Only upon a valid invocation of this privilege can the Special Counsel's Office rely on CIPA § 4 to seek the Court's approval for the extraordinary step of withholding otherwise-discoverable evidence from President Trump. We respectfully submit that the Office should not

be permitted to do so under the circumstances of this case without granting President Trump access to the non-sensitive portions of its submission.

Dated: October 11, 2023

Respectfully submitted,

*/s/ Todd Blanche*

John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990

Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

*Counsel for President Donald J. Trump*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which in turn serves counsel of record via transmission of Notices of Electronic Filing.

*/s/ Todd Blanche*
Todd Blanche