UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                                                     Case No. 1:23-cr-257-TSC

DONALD J. TRUMP,

    Defendant.
_____/

**PRESIDENT TRUMP'S RESPONSE IN OPPOSITION TO PROSECUTION'S MOTION FOR FORMAL PRETRIAL NOTICE OF THE DEFENDANT'S INTENT TO RELY ON ADVICE-OF-COUNSEL DEFENSE**

President Trump submits this response in opposition to the prosecution's Motion for Formal Pretrial Notice of President Trump's Intent to Rely on an Advice-of-Counsel Defense, Doc. 98 (the "Motion"). The Court should deny the Motion.

## INTRODUCTION

Under the Federal Rules, a defendant has no obligation, outside certain inapplicable exceptions, to provide his accusers with pretrial disclosures of trial strategies, including any potential invocation of a formal advice of counsel defense. The Local Criminal Rules, likewise, feature no such requirements.

Nonetheless, the prosecution requests that the Court depart from ordinary order and invent an entirely new set of rules that would require President Trump, but not the prosecution, to provide detailed descriptions of core defense work product two and a half months before trial. Specifically, the prosecution demands interrogatory-like disclosures that would require President Trump to not only advise whether he intends, in general, to invoke a formal advice of counsel defense, but also "describe with particularity:"

(1) the identity of each attorney who provided advice;

1

    (2) the specific advice given, including whether the advice was oral or written;

    (3) the date on which the advice was given; and

    (4) the information the defendant communicated or caused to be communicated to the attorney concerning the subject matter of the advice, including the date and manner of the communication.

These demands place an unacceptable burden on President Trump to foreshadow a possible formal defense and comply with a burdensome discovery demand under an already too burdensome pretrial schedule.[1]

Indeed, the prosecution's request demonstrates the constitutionally fatal unfairness of this entire proceeding. President Trump has no chance to meaningfully review over 13 million pages of discovery before the government's proposed deadline of December 18, let alone in sufficient detail to allow an enormously consequential decision regarding his attorney-client privileges. The prosecution has not placed any exhibits in evidence, called a single witness, or otherwise complied with President Trump's repeated requests to provide more detail on its intended trial presentation.

Instead, the prosecution has dumped millions of pages of disorganized and largely unusable discovery on President Trump, while wrongfully withholding other essential discovery.[2] Under such circumstances, President Trump has no reasonable chance to decide whether a formal advice

---

[1] Although the prosecution makes much of President's Trump's attorney's public statements, the prosecution is keenly aware that attorneys were involved in virtually all aspects of the charged conduct. And while the involvement of attorneys is certainly relevant to a defendant's state of mind and lack of criminal intent, "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue" at this stage of the proceedings. *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008).

[2] President Trump is currently identifying and compiling numerous infirmities in the prosecution's discovery productions and will address these issues with the Court if the prosecution is unable to resolve them. Likewise, President Trump is addressing gaps in discovery through other motions and requests.

of counsel defense would be necessary or appropriate—and he will not until the prosecution begins presenting its actual case at trial.

The prosecution, of course, knew this when it advocated for an unconstitutionally rapid pretrial schedule, and it knows it now. Indeed, that is the prosecution's objective. It is attempting to win this case not through the pursuit of truth, but through procedural traps, tricks, and encumbrances all designed to prevent President Trump from presenting a fulsome defense, which the prosecution knows would exonerate him of these false and baseless charges. This Motion is just the latest example in an unremitting barrage of ad hoc, unconstitutional maneuvers designed to impose greater burdens on President Trump than any other criminal defendant in American history. It violates President Trump's rights, tramples on the due administration of justice, and the Court should put a stop to it.[3]

**APPLICABLE LAW**

"[T]he cause of justice and a fair trial cannot be subjected to such a whimsicality of criminal procedure." *Brooks v. Tennessee*, 406 U.S. 605, 608 (1972) (quoting *United States v. Shipp*, 359 F.2d 185, 191 (6th Cir. 1966) (McCallister, J., dissenting)). The idea that a criminal defendant could be required to provide *any* advance notice of a defense along with a waiver of the attorney-client privilege and discovery is a novel one, unsupported by any appellate case law in this Circuit or elsewhere. *See United States v. Espy*, 1996 WL 560354, at *1 (E.D. La. Oct. 2, 1996) ("[T]his Court finds that there is no caselaw to support [the government's] proposition that a defendant must notify the government if he intends to rely on the advice of counsel defense.").

---

[3] It is no small irony that the prosecution has accused President Trump of trying to "intrude" on CIPA proceedings in which the prosecutors are seeking to withhold discoverable evidence, but nevertheless demands early and unconstitutional notice of President Trump's trial defense. The prosecution is no more entitled to such notice than it is entitled to access our discussions with the Court regarding other aspects of President Trump's defense.

As no rule of procedure, statute, or other authority requires pretrial disclosure, courts routinely reject such requests. *See United States v. Wilkerson*, 388 F. Supp. 3d 969, 974-75 (E.D. Tenn. 2019) ("[C]ourts should not *ad hoc* invent new ways to coerce criminal defendants to assist the government in their prosecution—absent compelling reason to do so"); *United States v. Crinel*, 2016 WL 6441249, at *11 (E.D. La. Nov. 1, 2016) ("[T]he 'advice-of-counsel' defense is not one of the defenses, objections, or requests that must be raised before trial under Rule 12(b)(3) of the Federal Rules of Criminal Procedure."); *United States v. Shea*, 2022 WL 1598189, at *1-*2 (S.D.N.Y. May 20, 2022) (denying motion for pretrial notice of any advice-of-counsel defense as premature); *United States v. Faulkner*, 2011 WL 976769, at *3 (N.D. Tex. Mar. 21, 2011) (denying motion for pretrial notice of any advice-of-counsel defense "as exceeding what is required by law").

The prosecution primarily relies on *United States v. Crowder*, 325 F. Supp. 3d 131 (D.D.C. 2018), and *United States v. Dallmann*, 433 F. Supp. 3d 804 (E.D. Va. 2020), both of which ordered pretrial notice of an advice of counsel defense, a privilege waiver, and discovery related thereto; however, these cases required only approximately two weeks' notice, respectively, before trial. (The prosecution here requests notice two and half months before trial). Moreover, courts have widely rejected the reasoning of these unusual opinions. *See United States v. Alessa*, 561 F. Supp. 3d 1042, 1049 (D. Nev. 2021) ("To the extent the Court considers the persuasive value of the authorities presented . . . the Court finds the rationale expressed in [*Wilkerson*] . . . more persuasive than [*Dallmann*]."). The *Alessa* court explained:

> As Judge Mattice explained in *Wilkerson*, the decision to pursue criminal charges carries with it important consequences, including that the defendant has the right to remain silent while the government is required to prove its case beyond a reasonable doubt. Moreover, forcing the defense to disclose anything to the government without the imposition of reciprocal discovery rights is foreign to the rules of criminal procedure and our Constitutional system, not to mention that reliance or

4

> advice of counsel defenses are not specifically enumerated under Fed. Rs. Crim. P. 12.1, 12.2, or 12.3 as defenses that must be disclosed in advance. Other than a seemingly arbitrary, unspecified sentiment about when a proper defense must be formulated, the Court does not know why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether.

*Id*. (citing *Wilkerson*, 388 F. Supp. 3d at 975).

In rejecting *Crowder*, the *Wilkerson* court found there is "hardly a consensus on the idea" advanced in *Crowder* that "the Court can expand Defendants' obligations under Federal Rule of Criminal Procedure 16 to compel notice of the advice of counsel defense and produce the requested evidence." *Wilkerson*, 388 F. Supp. 3d at 974 (*comparing Crowder*, 325 F. Supp. 3d at 138, *with United States v. Meredith*, 2014 WL 897373, at *1 (W.D. Ky. Mar. 5, 2014) (denying the government's request to require a criminal defendant to disclose an advice of counsel defense, holding that "[t]he United States has provided no authority to compel pretrial disclosure beyond the bounds of Rule 16")); *see also United States v. Ray*, 2021 WL 5493839, at *5 (S.D.N.Y. Nov. 22, 2021) ("[T]he government is not entitled to either the names of the attorneys whom Ray intends to call as witness or upon whose advice he intends to rely, and the government is not entitled at the pretrial stage to be informed of the charges to which Ray intends to assert an advice-of-counsel defense. The request for the names of the attorneys is tantamount to a request for a witness list . . . [and] disclosure [of the specific charges to which the defendant intends to assert an advice-of-counsel defense] would require the defendant to reveal his trial strategy pretrial.").

*Wilkerson* recognized that a criminal defendant often does not decide whether to offer a defense until after the prosecution's evidentiary presentation. 388 F. Supp. 3d at 975 ("But other than a seemingly arbitrary, unspecified sentiment about when a proper defense must be formulated, the Court does not know why a criminal defendant must decide what defense (if any) to pursue in advance of trial or risk losing the option altogether. The Defendants here, for example, could wait

and decide what defenses to raise once they see what evidence the Government presents at trial."); *see also United States v. Lacour*, 2008 WL 5191596 at * 1 n.1 (M.D. Fla. Dec. 10, 2008) ("Defendants are not obligated to put on *any* defense, and, except for certain [enumerated] defenses which must be disclosed prior to trial, Defendants are free to make that decision at trial.").

More importantly, requiring a defendant to turn over otherwise privileged evidence to the prosecution before the defendant has decided whether to present the evidence is unconstitutional. *Wilkerson*, 388 F. Supp. 3d at 975 ("If that is the case, it would be untenable—and, most likely, unconstitutional—to require Defendants to turn over potential evidence (most of which is currently privileged) to the Government or risk forfeiting a defense. The source of that concept, whatever it might be, is fundamentally foreign to the adversarial system of criminal justice contemplated by the United States Constitution."); *see also Brooks*, 406 U.S. at 612 ("By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case.").

The prosecution "has elected to prosecute this case criminally" and as such "it has put Defendants' liberty interests at stake." *Id*. at 972-73. "Doing so implicates a whole host of constitutional concerns that are nonexistent in the civil context." *Id*.; *see also Ray*, 2021 WL 5493839, at *6 ("Discovery in civil cases is conducted much differently and usually requires discovery to be completed by a certain deadline. Not so in criminal cases.").

Yet, even if there was some support for the idea that pretrial disclosure is permitted, the prosecution does not have a right to it in this instance. *United States v. Afremov*, 2007 WL 2475972 at * 4 (D. Minn. Aug. 27, 2007) ("[T]he prosecution [does not] have a right to notice from the defense that it intends to assert an advice of counsel defense at trial."); *United States v. Atias*, 2017 WL 563978 at * 4 (E.D.N.Y. Feb. 10, 2017) (concluding that "the government has not established

6

that is has a 'right' to pretrial notice as to the defense [of advice of counsel]"). As such, the Court has full discretion to deny or defer the Motion. *See United States v. Mubayyid*, 2007 WL 1826067, at *2 (D. Mass. June 22, 2007) (deferring a ruling on the government's request for notice of an advice of counsel defense because "[t]he fact that the Court appears to have the power to order such notice does not . . . necessarily require that it be exercised to the fullest extent, particularly given the potential burden on the exercise of the attorney-client privilege").

## ARGUMENT

### I. The Prosecution Cannot Force President Trump to Choose Between the Cross and the Sword

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks omitted). The prosecution has attempted at every turn to strip President Trump of this right by impeding his ability to meaningfully review discovery, conduct his own investigation, and determine what defenses to present.

Now, the prosecution hopes to force President Trump to choose between either (1) making an early disclosure of a formal advice of counsel defense, and thus waiving the attorney-client privilege before having a meaningful opportunity to review the prosecution's discovery, consider its exhibit or witness lists, or hear its proof at trial, or (2) declining to provide early notice, and thus risk a waiver of any future ability to assert an advice of counsel defense.

Neither of these choices are acceptable, and both violate President Trump's due process rights. First, President Trump cannot be coerced to make a premature, uninformed waiver of his attorney-client privileges. "Waivers of constitutional rights not only must be voluntary, but must also be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Wilkicki v. Brady*, 882 F. Supp. 1227, 1232 (D.R.I. 1995) (quoting *Brady v.*

7

*United States*, 397 U.S. 742, 748 (1970)); *Brooks*, 406 U.S. at 608 ("[C]oercion is denial of freedom of action." (quoting *Bell v. State*, 66 Miss. 192, 194 5 So. 389 (1889))).

Thus, the only way to assure that any waiver by President Trump is knowing, voluntary, and intelligent, is to allow him sufficient time to review discovery, complete his investigation, and understand the prosecution's case at trial. *Ray*, 2021 WL 5493839, at *6 ("[T]o require [the defendant] to now, months before trial, choose between (1) waiving the privilege and disclosing all of his communications with counsel and (2) being barred from later relying on an advice-of-counsel defense to negate the government's proof, would impermissibly burden the attorney-client privilege.").[4]

Likewise, outside the very narrow exceptions provided for in the Criminal Rules,[5] the Court cannot require that President Trump assert a defense before trial, on pain of waiver.

---

[4] Rather than forcing this choice, the *Ray* court did not require the defense to produce any privileged documents supportive of an advice of counsel defense "before the earlier of either (1) the defense's unequivocal assertion of the advice-of-counsel defense, including before the jury through opening statements or any cross-examination during the government's case, or (2) the close of the government's case-in-chief." *Id*. at *6.

[5] "[W]hile the Federal Rules of Criminal Procedure require defendants to give advance notice and discovery of certain, carefully enumerated defenses, (alibi defense), 12.2 (insanity defense), 12.3 (public-authority defense), even the drafters of those rules could not agree on their propriety." *Wilkerson*, 388 F. Supp. 3d at 974–75 (citing Fed. R. Crim. P. 12-1, cmt. 1974 - Advisory Comm. Notes); *Mathews v. United States*, 485 U.S. 58, 65 (1988) ("The only matters required to be specially pleaded by a defendant are notice of alibi, Fed.Rule Crim.Proc. 12.1, or of intent to rely on insanity as a defense, Fed.Rule Crim.Proc. 12.2.").

To be sure, the fact that the Criminal Rules do not call for pretrial disclosure of an advice of counsel defense strongly counsels against any attempt by the Court to "fill in the gaps" and require such disclosure. If the Supreme Court wished for pretrial disclosures to occur, the Rules would say so. The fact they do not should resolve the issue. *Mubayyid*, 2007 WL 1826067, at *2 ("The fact, however, that the rules enumerate certain notice requirements, but not others, gives the Court some pause. Ordinarily, the listing of notice requirements in specific instances would strongly suggest that any other notice requirements were intended to be excluded. Nor is the Court empowered as a general matter to fill in the gaps where a statute or rule fails to address a particular circumstance.").

8

*Wilkerson*, 388 F. Supp. 3d at 972–73 ("[T]he concept of waivable defenses is a creature of civil procedure" and have no application in a criminal prosecution where "defendants do not plead an 'answer' to indictments.").

## II.   The Prosecution's Significant Demand Necessitates Reciprocity

The defense is aware that there may be efficiencies to a pretrial disclosure of a defense. However, efficiencies do not eclipse President Trump's constitutional rights. *Wilkerson*, 388 F. Supp. 3d at 974–75 ("And it is certainly not a sufficient justification that doing so would be more convenient for the Government and the Court, as the Government seems to argue here. '[J]ealously guard[ed]' constitutional principles are not casually tossed aside for the sake of expediency, much less for the mere potential that there may be some future inconvenience.") (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (quoting *Jacob v. New York*, 315 U.S. 752, 752 (1992))).

With regard to rules regulating notice and discovery, "[e]ach requirement that a defendant provide notice or evidence mandates the government's reciprocity." *Wilkerson*, 388 F. Supp. 3d at 973. "The rule does not require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the state." *Id*. (quoting *United States v. Booker*, 2012 WL 1458009, at *2 (N.D. Ga. Mar. 12, 2012) (cleaned up) (quoting *Wardius v. Oregon*, 412 U.S. 470, 476 (1973))). Two months after indictment, the prosecution has injected a request that by its own assertion requires a response that it concedes is "potentially extensive."[6] Doc. 98, at 10. In reciprocity, "fairness" and "efficiency" demand that the defense be given as much time as needed to investigate and evaluate this "potentially extensive" defense and discovery.

---

[6] The prosecution does not seem to recognize that if the defense produces privileged discovery, the prosecution then has an obligation to produce what it recovers from its investigation of the previously privileged witnesses and records.

### A. The Prosecution Should Have Made This Demand Earlier

Discovery in criminal cases is voluntary. A defendant does not have to engage in discovery, and in some cases they do not. If the prosecution wanted an additional pretrial disclosure, they should have notified the defense before the defense was required to elect whether to participate in discovery so that an assessment of the defense's discovery obligation could be made.

> Whatever merit there is in expanding a defendant's, as opposed to the government's, discovery obligation under Rule 16, if it were to be done, it should be done prior to a criminal defendant requesting and the government providing its discovery information. In other words, assuming a court has the power to expand a defendant's obligations under Rule 16, it should be ordered before—not after—the defendant has voluntarily subjected himself to disclosure under that rule. Courts should not alter the terms of the deal once the defendant enters into it. Here, the Government has already made its disclosures under Rule 16 (presumably upon Defendants' request). The time for expanding Defendants' obligations under Rule 16, then, has long since passed.

*Wilkerson*, 388 F. Supp. 3d at 974.

The prosecution investigated this case for three years. It knew that attorneys were extensively involved. It had enough notice at the time of arraignment to provide warning to President Trump that it would seek this type of discovery. To wait two months after indictment to make this request, knowing the defense is buried in discovery and motion practice, is nothing more than gamesmanship.

The prosecution's theme of its motion is that any delay in the defense providing notice and discovery would disrupt the trial schedule. But its late request itself disrupts the trial schedule. It must live with the consequences.

### B. Timing of Notice

The prosecution acknowledges that its request for notice two and a half months before trial is inconsistent with the cases upon which it relies in support of pretrial notice. At most, those cases required disclosure two weeks before trial. Doc. 98, at 13 (discussing *Crowder*, *Dallman*, and

10

*Cooper*). Bizarrely, the prosecution attempts to distinguish these cases by describing them as "more simple cases with fewer attorneys on whose advice a defendant purportedly relied." *Id*. Yet those "simple" cases had pretrial periods far in excess of this case. For example, Dallman was indicted in 2020 and has not gone to trial yet, and *Crowder* resolved by plea a little more than a year after indictment. Two months ago, the prosecution advocated a four-month pretrial period and now out of "fairness" it needs two and half months to investigate a possible defense. While the defense agrees with the prosecution's assessment that the records and witnesses relevant to this issue are "potentially extensive," they are just a drop in the bucket of the number of potential witnesses and records the defense must address. The prosecution's lamenting unfairness only calls attention to the absurdity of its position on a trial schedule.

### C.  The Prosecution Should Be Required to Identify the Witnesses and Records at Issue

The prosecution claims that 25 witnesses have invoked privilege. Presumably, the prosecution also received privilege logs or other privilege invocations in response to document requests. The prosecution should be required to disclose these 25 witnesses, along with all of the logs in which the prosecution is interested. At this time, defense counsel has not been able to fully review the voluminous discovery in this matter, which is indeed impossible within the schedule set by the Court.

At a minimum, the prosecution should (1) identify all materials within their discovery production that they assert are attorney-client privileged information, work product, or are otherwise protected; (2) describe the basis for the assertion that the materials are protected and who holds the privilege with respect to those materials; (3) identify the 25 witnesses referenced in the motion, or any other witnesses, that have asserted the attorney-client privilege or who the prosecution believes possess attorney-client privileged information; and (4) identify all materials

11

not within their discovery production that they believe the defense would be required to produce regarding an advice of counsel defense, including the source of the materials.

### III. If the Court Orders Pretrial Notice, the Time for Submission of Jury Instructions is a Reasonable Deadline

Requiring early disclosure of a defense that involves reliance on counsel is inappropriate given the important implications of that defense. Typically, that formal defense becomes apparent through jury instructions after an evidentiary presentation at trial. Thus, the pertinent questions are whether: (1) the defense will propose an advice of counsel instruction pretrial, and (2) the defense will, at trial, attempt to establish that defense. *DeFries*, 129 F.3d at 1308 ("A defendant is entitled to an advice-of-counsel instruction if he introduces evidence showing . . . any foundation in the evidence sufficient to bring the issue into the case, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility."); *see also United States v. Carr*, 740 F.2d 339, 346 n. 11 (5th Cir. 1984) ("Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent.").

Thus, until President Trump decides to use privileged information to influence a decision-maker, his attorney-client privileges remain intact. *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003), *as amended* (Nov. 25, 2003) ("The unfairness and distortion of process . . . has been found when one party advanced a contention to a decisionmaker, such as a court or jury, while denying its adversary access to privileged materials which might have been used to rebut the privilege holder's contention."). Although "the attorney-client privilege cannot at once be used as a shield and a sword," *Bilzerian*, 926 F.2d at 1292, the sword is now in the sheath and there is nothing to disclose until President Trump asserts the defense at trial.

Nonetheless, President Trump agrees to provide notice to the prosecution of whether he intends to pursue a formal advice of counsel defense at the time jury instructions are due, which is currently January 15, 2024. If, at that time, President Trump requests an advice of counsel instruction, the Court should solicit briefing to determine a reasonable schedule for President Trump's production of relevant materials, depending on the scope of the requested instruction.[7]

## **CONCLUSION**

The prosecution's Motion offends due process and undermines President Trump's fundamental right to defend himself in this criminal prosecution. Accordingly, the Court should deny the motion; however, President Trump will agree to pretrial notice on the schedule described above.

---

[7] To be sure, even in the absence of a formal advice of counsel instruction, the trial in this matter will feature both attorney witnesses and documentary evidence from the prosecution's discovery production. Without addressing the admissibility of any particular evidence, evidence regarding President Trump's state of mind is probative, regardless of whether he requests a formal advice of counsel instruction. Thus, so long as the President Trump relies only on the prosecution's productions of attorney communications, and does not inject any new records into the case to which the prosecution does not have access, the sword remains in the sheath and President Trump should have no additional disclosure obligations beyond those required by Rule 16. *See United States v. Crinel*, 2016 WL 6441249, at *11 (E.D. La. Nov. 1, 2016) ("[T]he Fifth Circuit, in quoting *White*, merely adopted that court's reasoning that there is a difference between a good faith defense and a reliance on advice of counsel defense because the introduction of a good faith defense does not waive attorney-client privilege."); *see also In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (privilege remains if defendant "argued good faith only through defense counsel and the examination of witnesses."); *White*, 887 F.2d at 270 ("[T]o be acquitted for lack of criminal intent, [a defendant] need not have presented any evidence . . . It was [defendant's] constitutional right to put the government to its proof on all the elements of the offense. To penalize him for exercising this right by holding that he waived his attorney-client privilege would cut short both the privilege and the right.").

13

Dated: October 20, 2023                                   Respectfully submitted,

Todd Blanche, Esq. (PHV)                                  */s/ John F. Lauro*
toddblanche@blanchelaw.com                                John F. Lauro, Esq.
Emil Bove, Esq. (PHV)                                     D.C. Bar No. 392830
Emil.Bove@blanchelaw.com                                  jlauro@laurosinger.com
BLANCHE LAW                                               Gregory M. Singer, Esq. (PHV)
99 Wall St., Suite 4460                                   gsinger@laurosinger.com
New York, NY 10005                                        Filzah I. Pavalon, Esq. (PHV)
(212) 716-1250                                            fpavalon@laurosinger.com
                                                          LAURO & SINGER
                                                          400 N. Tampa St., 15th Floor
                                                          Tampa, FL 33602
                                                          (813) 222-8990
                                                          *Counsel for President Trump*