UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**DONALD J. TRUMP**,<br><br>Defendant. | Criminal Action No. 23-257 (TSC) |

**OPINION AND ORDER**

On September 15, 2023, the government filed a Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings. ECF No. 57. Following a motion hearing on October 16, 2023, *see* Tr. of Mot. Hr'g, ECF No. 103 ("Hr'g Tr."), the court prohibited the parties and counsel in this matter from making certain public statements, Opinion and Order, ECF No. 105 ("Order"). Defendant has appealed that Order, *see* ECF No. 106, and now moves for the court to stay the Order during the pendency of that appeal, ECF No. 110 ("Motion to Stay"). The court entered a temporary administrative stay of its Order while the parties briefed the Motion, *see* October 20, 2023 Minute Order, but will now DENY Defendant's Motion and lift the stay.[1]

**I.      DISCUSSION**

Four factors guide the decision whether to stay an order pending appeal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

---

[1] The government also asks the court to incorporate the Order into Defendant's conditions of release. Resp. in Opp'n to Mot. to Stay, ECF No. 120, at 30–32. The court hereby DENIES that request without prejudice. Even assuming that request is procedurally proper, the court concludes that granting it is not necessary to effectively enforce the Order at this time.

> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted).  The third and fourth factors "merge when the Government is the opposing party." *Id.* at 435.  Here, all the factors weigh against granting a stay.

A. <u>**Likelihood of success on the merits**</u>

Defendant has not made a strong showing that he is likely to succeed on the merits.  As the court has explained, the First Amendment rights of participants in criminal proceedings must yield, when necessary, to the orderly administration of justice—a principle reflected in Supreme Court precedent, the Federal Rules of Criminal Procedure, and the Local Criminal Rules.  Order at 1–3; *see, e.g.*, Hr'g Tr. at 6–8, 16–18, 31, 34, 60, 64, 82–85.  And contrary to Defendant's argument, the right to a fair trial is not his alone, but belongs also to the government and the public.  *See, e.g.*, *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) (emphasizing "the State's interest in fair trials"); *United States v. Tijerina*, 412 F.2d 661, 667 (10th Cir. 1969) ("The public has an overriding interest that justice be done in a controversy between the government and individuals and has the right to demand and expect 'fair trials designed to end in just judgments.'  This objective may be thwarted unless an order against extrajudicial statements applies to all parties to a controversy.  The concept of a fair trial applies both to the prosecution and the defense." (internal citations omitted)).  Defendant's repeated appeals to broad First Amendment values therefore ignore that the court—pursuant to its obligation to protect the integrity of these proceedings—recognized those values but, in balancing them against the

potential prejudice resulting from certain kinds of statements, found them outweighed. *See* Motion to Stay at 2–3, 10–24.[2]

Defendant's other claims also disregard the record. To begin, he asserts that the court "cite[d] no evidence supporting its findings of risks of harassment and witness intimidation, and the prosecution provided none." *Id.* at 8. But several times the court and the government pointed to evidence causally linking certain kinds of statements with those risks, and Defendant never disputed it. *See* Hr'g Tr. at 67 (The Court: "[W]hen Mr. Trump has singled out certain people in public statements in the past, hasn't that led to them being threatened and harassed, as demonstrated in the statements attached by the government?" Mr. Lauro: "Your Honor, that's totally irrelevant." The Court: "And the government's motion cites several of them who averred in the kinds of statements that you've asked for under oath that threats and harassment toward them had increased significantly as a result of Mr. Trump's statements about them."); Order at 2 ("Undisputed testimony cited by the government demonstrates that when Defendant has publicly attacked individuals, including on matters related to this case, those individuals are consequently threatened and harassed. *See* ECF No. 57 at 3–5."); *see also* ECF No. 60 (failing to dispute or even discuss the testimonies cited by the government). The evidence is in the record; Defendant simply fails to acknowledge it.

---

[2] Defendant's Motion argues that his speech restrictions are inconsistent with the "right of listeners to receive President Trump's message." Motion to Stay at 15. Defendant did not squarely raise that argument in his opposition brief to the government's original motion; the closest he came to identifying any authority for it was an unrelated "*see also*" citation to *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987), a case that he now quotes to support his right-of-listeners argument. *Compare* ECF No. 60 at 5, *with* Motion to Stay at 16. But the court expressly addressed and distinguished that case. Order at 2–3. In any event, the argument does not alter the fundamental principle that First Amendment rights, whether those of the speaker or the listener, may be curtailed to preclude statements that pose sufficiently grave threats to the integrity of judicial proceedings.

Likewise, Defendant claims that the court "g[ave] no meaningful consideration to alternative, less restrictive measures, including a narrower order." Motion to Stay at 28. Again, the record flatly contradicts that claim. During the motion hearing, the court questioned whether Defendant's existing speech restrictions, such as his conditions of release, would adequately prevent the potential dangers to these proceedings. Hr'g Tr. at 10–11, 34–35, 70. The court also considered whether alternative measures could prevent those harms—and in fact concluded that they could—with respect to certain kinds of statements, such as those disparaging the District of Columbia. *Id.* at 28, 35–36. Accordingly, the court denied the government's motion in those respects. *Id.* at 82–83; Order at 1. But the court explained that alternative measures would not sufficiently mitigate the risks flowing from other kinds of statements, such as those targeting reasonably foreseeable witnesses. *See* Order at 1–2 ("Here, alternative measures such as careful *voir dire*, jury sequestration, and cautionary jury instructions are sufficient to remedy only some of the potential prejudices that the government's motion seeks to address."); *id.* at 2 (noting that the risks created by certain statements would be irreversible); *id.* at 2–3 ("[T]his court has found that even amidst his political campaign, Defendant's statements pose sufficiently grave threats to the integrity of these proceedings that cannot be addressed by alternative means, and it has tailored its order to meet the force of those threats."). The court thus tailored its Order to prohibit statements only where less restrictive measures would be inadequate.

Defendant's final claim is that the Order is unconstitutionally vague for various reasons, none of which withstand scrutiny. First, Defendant quotes Merriam-Webster Online's definition of "interested" to conclude that the term "interested parties" includes could include "everyone 'affected' by or 'involved' in the case." Motion to Stay at 26. But "interested party" is a well-established legal term of art meaning "anyone who both is directly interested in a lawsuit and has

a right to control the proceedings, make a defense, or appeal from an adverse judgment." *Interested Party*, *Black's Law Dictionary* (11th ed. 2019) (referencing *Party* (2), *Black's Law Dictionary* (11th ed. 2019)). The Order confirmed that scope, defining the term as "including the parties and their counsel." Order at 3; *see also* Hr'g Tr. at 83–84 (stating that the written order would apply to the parties and their counsel). There is no meaningful basis to interpret "interested parties" as covering anyone else.

Second, Defendant focuses on the prohibition of "targeting" certain individuals, again quoting various dictionary definitions to assert that targeting could include not only identifying those individuals, but also attacking them, subjecting them to ridicule or criticism, or otherwise attempting to affect them. Motion to Stay at 25. But "restating a dictionary" to "search . . . for every facet" of relevant terms is not a proper vagueness inquiry. *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017). "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s]' 'no standard of conduct . . . at all.'" *Id.* at 1107 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). And a cardinal rule of interpretation is that context matters; "a word is known by the company it keeps." *Id.* at 1108 (quoting *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

The motion hearing and corresponding Order provide substantial context for and examples of the kinds of "targeting" statements that could result in "significant and immediate risk[s]" to "the integrity of these proceedings." Order at 2. Indeed, the court identified that, depending on their context, statements matching each of the definitions Defendant proffers for the term "target" could pose such risks. *See, e.g.*, Hr'g Tr. at 50–54 (risks associated with publicly identifying court staff); *id.* at 41–43 (risks associated with attacking prosecutors); *id.* at 59–60 (risks associated with criticizing potential witnesses); *id.* at 13–14 (risks associated with

attempting to affect potential witnesses' testimony, even using praise rather than criticism). Defense counsel also repeatedly relied on context to distinguish permissible from impermissible statements. *See, e.g., id.* at 72 (The court: "Next hypothetical. 'Bill Barr is a smart guy, but he better learn to keep his mouth shut.' Permissible? Or an attempt to obstruct justice or intimidate a witness?" Mr. Lauro: "[It] depends on the context . . . . [I]f it happened the day before Bill Barr testified at trial, that might be [impermissible]."); *id.* at 71 (similar). A "term is not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). The court's Order and the motion hearing's record sufficiently clarify the meaning of "targeting" to provide fair notice of the kinds of statements—understood in context—that it prohibits.

Two of Defendant's social media posts since the Order's entry illustrate the comprehensible difference between the statements it permits and those it proscribes. First, on October 20, 2023—after the Order was entered, but before it was administratively stayed—Defendant stated:

> Does anyone notice that the Election Rigging Biden Administration never goes after the Riggers, but only after those that want to catch and expose the Rigging dogs. Massive information and 100% evidence will be made available during the Corrupt Trials started by our Political Opponent. We will never let 2020 happen again. Look at the result, OUR COUNTRY IS BEING DESTROYED. MAGA!!![3]

This statement asserts that Defendant is innocent, that his prosecution is politically motivated, and that the Biden administration is corrupt. It does not violate the Order's prohibition of "targeting" certain individuals; in fact, the Order expressly permits such assertions. Order at 3.

---

[3] https://truthsocial.com/@realDonaldTrump/posts/111267550982205234.

By contrast, on October 24, 2023—after the Order was administratively stayed—Defendant stated:

> I don't think Mark Meadows would lie about the Rigged and Stollen 2020 Presidential Election merely for getting IMMUNITY against Prosecution (PERSECUTION!) by Deranged Prosecutor, Jack Smith.  BUT, when you really think about it, after being hounded like a dog for three years, told you'll be going to jail for the rest of your life, your money and your family will be forever gone, and we're not at all interested in exposing those that did the RIGGING — If you say BAD THINGS about that terrible "MONSTER," DONALD J. TRUMP, we won't put you in prison, you can keep your family and your wealth, and, perhaps, if you can make up some really horrible "STUFF" a out him, we may very well erect a statue of you in the middle of our decaying and now very violent Capital, Washington, D.C.  Some people would make that deal, but they are weaklings and cowards, and so bad for the future our Failing Nation.  I don't think that Mark Meadows is one of them, but who really knows?  MAKE AMERICA GREAT AGAIN!!![4]

This statement would almost certainly violate the Order under any reasonable definition of "targeting."[5]  Indeed, Defendant appears to concede as much, Reply in Support of Motion to Stay, ECF No. 123, at 10 n.3 ("If the Gag order had been in effect, President Trump would have been unable to [make the statement].")—and for good reason.  The statement singles out a foreseeable witness for purposes of characterizing his potentially unfavorable testimony as a "lie" "mad[e] up" to secure immunity, and it attacks him as a "weakling[] and coward[]" if he provides that unfavorable testimony—an attack that could readily be interpreted as an attempt to influence or prevent the witness's participation in this case.  The plain distinctions between this statement and the prior one—apparent to the court and both parties—demonstrate that far from

---

[4] https://truthsocial.com/@realDonaldTrump/posts/111293117150329703.

[5] Because of the administrative stay on the Order, this statement is not before the court.  Before concluding that any statement violated the Order, the court would afford the parties an opportunity to provide their positions on the statement's meaning and permissibility.

being arbitrary or standardless, the Order's prohibition on "targeting" statements can be straightforwardly understood and applied.

Defendant's other assertions of vagueness boil down to similar objections that deciding whether a statement violates the Order will necessarily be a fact-bound inquiry. He contends that it may at times be difficult to tell whether an individual is a reasonably foreseeable witness, or to distinguish proclamations of innocence from attacks on prosecutors or witnesses. Motion to Stay at 26–28. But even assuming that is true, it does not follow that "men of common intelligence must necessarily guess at [the] meaning" of the Order's prohibitions. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620 (1976) (citation omitted). It is a "basic mistake" to derive vagueness from "the mere fact that close cases can be envisioned. . . . Close cases can be imagined under virtually any [prohibition]." *United States v. Williams*, 553 U.S. 285, 305–06 (2008). If a party or their counsel makes a statement that may have violated the Order, the court will assess its substance and context. The fact that it needs to do so with special care in close cases does not render the underlying Order unconstitutionally vague.

Consequently, Defendant has failed to make a strong showing that he is likely to succeed on the merits of his appeal.

B. **Remaining factors**

The remaining factors also counsel against a stay. Defendant's brief arguments on each rely entirely on the premise that the court's Order violated his First Amendment rights. *See* Motion to Stay at 31 ("[A] showing of likelihood of success on a First Amendment claim necessarily establishes irreparable injury."); *id.* ("As for the balancing of harms and the public interest . . . the demonstration of an ongoing violation of the First Amendment rights dictates that a stay should be entered."). Having rejected that premise, the court reaches the opposite conclusions. Where "there is no showing of a likelihood of success on the merits" of a First

Amendment claim, there is no irreparable injury or public interest favoring a stay. *Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 334–35 (D.C. Cir. 2018). To the contrary, "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile*, 501 U.S. at 1075 (internal quotations omitted). As discussed above, in the Order, and during the motion hearing, the court finds that the public interest in the orderly administration of this case requires the Order's limitations on such statements.

## II.     CONCLUSION

For these reasons, Defendant's Motion to Stay, ECF No. 110, is hereby DENIED, and the administrative stay imposed by the court's October 20, 2023 Minute Order is hereby LIFTED.

Date: October 29, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge