UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.                                                          Case No. 1:23-cr-257-TSC

DONALD J. TRUMP,

      Defendant.
_____/

**PRESIDENT TRUMP'S OPPOSED MOTION FOR EXTENSION OF TIME
TO FILE PRETRIAL MOTIONS RELATED TO DISCOVERY AND SUBPOENAS**

      The Court previously set a deadline of November 9, 2023, for President Trump to file motions for 17(c) subpoenas and motions to compel. Doc. 82. President Trump has worked in good faith to comply with this deadline, but is unable to do so given the enormity of discovery and the time required to confer with the prosecution. Rather than maintain this inflexible global deadline, President Trump respectfully requests the Court adopt the protocol laid out below.

      First, with respect to motions to compel, President Trump requests that the Court direct the parties to confer in good faith regarding President Trump's outstanding discovery requests, dated October 15 and 23, 2023. To the extent the parties are unable to resolve these requests, President Trump proposes that he file any motions to compel within 10 days of the meet and confer. Additionally, for any discovery the prosecution has not yet produced, or which President Trump has not currently reviewed, President Trump proposes that he be required to file a motion to compel within 10 days of any future meet and confer.

      Second, with respect to Rule 17(c) subpoenas, President Trump requests a deadline of February 9, 2024.

1

## BACKGROUND

The prosecution has produced nearly 13 million pages of documents in this case. *See* Doc. 63 at 3. Once again, this is *War and Peace* cover to cover, nearly 10,000 times over. On October 6, 2023, the Court extended the deadline for motions to compel and Rule 17(c) subpoenas to November 9, 2023, recognizing that "some of these motions—and the defense's arguments in support of them—may arise from the defense's ongoing review of the discovery materials" and that "additional time to review them may be useful to the defense as it considers motions related to the acquisition of evidence." Doc. 82 at 5.

We have been working to review the discovery and meet the Court's deadlines, including with respect to pretrial motions and filings pursuant to CIPA §§ 4-5. In brief summary:

- On October 11, 2023, we moved to issue Rule 17(c) subpoenas to the January 6 Select Committee and others.[1] Doc. 99.

- On October 15, 2023, we sent the prosecution 54 discovery requests in a classified letter that raises issues similar to those presented in our CIPA § 5 notice. *See* Doc. 121. The prosecution rejected our classified requests in a one-page letter at approximately 10:40 p.m. on the night of October 24.

- On October 23, 2023, we sent the prosecution 59 additional discovery requests in an unclassified discovery letter. The prosecution has not responded to our October 23 letter.

---

[1] Although we believe that the January 6 Select Committee is a part of the prosecution team, and intend to litigate that issue if we cannot resolve the dispute with the prosecutors, we sought these subpoenas in the abundance of caution, given that the materials we are seeking relate to the destruction or improper concealment of potentially exonerating information.

2

As previewed in our CIPA § 5 notice, there are currently significant disputes with respect to the appropriate scope of the prosecution team and the materials to which we are entitled, and we hope to narrow the scope of those disputes by meeting and conferring with the prosecutors prior to filing any motions to compel.

**ARGUMENT**

Despite the exercise of due diligence, President Trump will not be able to complete his review of discovery by the current deadline and therefore requires the requested extensions.

Rule 12(c)(1) authorizes the Court to grant an extension of time in this case: "[a]t any time before trial, the court may extend or reset the deadline for pretrial motions." The court's discretion to do so is broad. *See* Fed. R. Crim. P. 12 advisory committee's note to 2014 amendment; *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Rule 12(c)(1) does not require a showing of good cause. However, the volume of discovery, pending discovery requests, and anticipated impact of motion-to-compel litigation on proceedings under CIPA §§ 4, 5, and 6, all constitute good cause for the relief we seek. *See, e.g., United States v. Millner*, 2001 WL 34047734, at *1 (D. Or. May 29, 2001) ("the failure to grant such a continuance would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and force the defendant to resolve the case before all relevant facts are known to all parties or to go to trial without adequate examination of all relevant discovery, resulting in a miscarriage of justice").

While the Court has described the prosecution's discovery production as "well-organized," the defense has found it to be the exact opposite of that description. Doc. 82, at 5. For example, in a typical case involving large discovery productions of electronically stored information, the producing party will compile an email with its attachments in a single "family," and identify replies to that email through "threading" metadata. This allows reviewers to understand the full context

of an email conversation more efficiently. The prosecution did not follow that standard procedure, as they did not provide this critical information with much of its production. Thus, in many cases, a reviewer who finds a relevant email must separately search for the attachment and can never be certain that the document recovered was actually the attachment sought, as it could have been a draft, or some other version. The reviewer must also attempt to manually piece together the full conversation, and likewise cannot be certain that he or she has found all related emails. This is an incredibly time-consuming process. *See United States v. O'Keefe*, 537 F. Supp. 2d 14 (D.D.C. 2008) (holding the Federal Rules of Civil Procedure may provide guidance in criminal cases in determining the appropriate form or format for the production of documents).

President Trump intends to raise these and other discovery issues with the Court in a forthcoming motion; however, even if the discovery were well-organized (and it is not), it still must be reviewed. Doc. 82, at 5 (acknowledging that discovery-related motions "deal primarily with evidentiary rather than legal issues," and therefore require discovery review before filing). However organized, reviewing 13 million pages of discovery is an enormous undertaking.[2] Moreover, review for the purpose of potential motion practice requires more than simply reading pages. Counsel must fully consider the full set of available information to determine if anything is missing, confer with the prosecution,[3] and then determine and draft appropriate applications to the

---

[2] Nor is there any "justification for relying upon 'assumption'" that parts of discovery will not yield useful information. *Dennis v. United States*, 384 U.S. 855, 874 (1966).

[3] Some discovery disputes can be resolved through the compromise of the parties. Indeed, at the outset of this case, the prosecution offered "to exceed [their] discovery obligations" and "provide substantial assistance to aid the Defendant's review." Doc. 23 at 4. That has not occurred. Without the ability of the defense to enforce that promise through Court intervention, the prosecution has no incentive to follow through. "[I]t is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." *Dennis*, 384 U.S. at 873.

Court. *Dennis*, 384 U.S. at 875 ("The determination of what may be useful to the defense can properly and effectively be made only by an advocate."). The current deadline simply cannot accommodate these practical realities. Moreover, the prosecution continues to serve discovery productions on a rolling basis, making its latest disclosure just last week (the 9th in total). President Trump must have time to review these productions and assess whether additional motion practice will be required. That simply cannot happen under the current deadline. (Indeed, given discovery is ongoing, it appears certain the prosecution will make productions after the November 9 deadline, potentially preventing President Trump from raising any motions related to such documents.)

An extension would also promote judicial efficiency. If President Trump cannot file motions for pretrial Rule 17(c) subpoenas or to compel, he can still seek subpoenas for the same materials, they would just be returnable at trial. *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951) ("There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary.").

This would only lead to a situation where respondents produce large volumes of information at the last minute, leading to potentially intractable logistical problems that would require an adjournment of trial. *See United States v. Beckford*, 964 F. Supp. 1010, 1021–22 (E.D. Va. 1997) (Rule 17(c) "provided a mechanism to prevent delays at trial which typically had occurred when documents were produced in response to a subpoena duces tecum requiring production at trial. Those delays were necessary because opposing counsel were entitled to inspect and to read the documents before they were introduced, thereby consuming a great deal of time in those cases in which there is voluminous documentary evidence.").

Indeed, Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co.*, 341 U.S. at 220. This implements "the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.1988) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) ("[C]riminal defendants have the right to the Government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."); *Beckford*, 964 F. Supp. at 1019 (quoting 25 Moore's Federal Practice § 617.08[l] at 617–21) ("Indeed, *[t]he essential purpose of the Rule* is to implement the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in the accused's favor.") (emphasis in original); *United States v. Colburn*, 2020 WL 6566508, at *1 (D. Mass. Nov. 9, 2020) (citing *United States v. Nixon,* 418 U.S. 683, 698-99 (1974)) ("Rule 17(c) enables a defendant to exercise his constitutional rights to confrontation and compulsory process by permitting him to request subpoenas duces tecum that are returnable before trial.").

Although the Court is concerned with "the disadvantages of backloading the pretrial schedule," the complications that would arise from large productions at a potential trial are far more problematic, and would almost certainly violate President Trump's right to Due Process and right prepare a defense, among others.

> The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. *It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.*

6

*United States v. Nixon*, 418 U.S. 683, 711 (1974) (emphasis added).[4]

Discovery is a critical component of these constitutional guarantees and should not be cut off by an arbitrary deadline untethered to the scope of discoverable information. As "[t]he prosecution's case undoubtedly will rely on extensive evidence; to subject that case to 'the crucible of meaningful adversarial testing,' discoverable evidence must be subject to meaningful investigation." *United States v. Yandell*, 2019 WL 5587291, at *2 (E.D. Cal. Oct. 30, 2019) (citing *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to effective assistance of counsel is [...] the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing.")). "To force unprepared defense counsel to proceed to trial would be to place defendant at an undue risk that he will wrongly be found guilty simply because his counsel asserts he did not have adequate preparation time." *United States v. Williams*, 1997 WL 133261, at *1 (W.D. Va. Mar. 14, 1997).[5]

Rather, as the need for Rule 17(c) subpoenas and motions to compel largely depends on the content of previously produced discovery, justice requires that President Trump have sufficient time to review such materials before limiting his ability to raise motions. Accordingly, the Court should grant the requested extensions.

---

[4] President Trump further re-asserts his objection that the current trial setting, and the accompanying pretrial calendar, violate his Constitutional rights to due process and counsel given the massive amount of discovery at issue and the numerous complicated issues that must be resolved by pretrial motion practice, including multiple questions of first impression.

[5] The prosecution also has a constitutional obligation to produce certain discovery pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs,* 427 U.S. 97 (1976), *Giglio v. United States*, 405 U.S. 150 (1972); and the Fifth and Sixth Amendments to the United States Constitution.

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests that the Court: (1) direct the parties to meet and confer regarding President Trump's October 15 and 23, 2023 discovery requests, and that President Trump file any motion within 10 days following such meet and confer; (2) extend President Trump's deadlines to file motions to compel directed to any discovery the prosecution has not yet produced, or which the defense has not currently reviewed, to within 10 days of any future meet and confer; and (3) extend the deadline for motions requesting Rule 17(c) subpoenas to February 9, 2024.

## CERTIFICATE OF CONFERRAL

Counsel for President Trump conferred with counsel for the prosecution, who advise the government opposes the relief requested herein.

Dated: November 1, 2023

Respectfully submitted,

Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

/s/John F. Lauro
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for President Trump*