**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION**
**TO STRIKE INFLAMMATORY ALLEGATIONS FROM THE INDICTMENT**

On January 6, 2021, "[l]ives were lost; blood was shed; portions of the Capitol building were badly damaged; and the lives of members of the House and Senate, as well as aides, staffers, and others who were working in the building, were endangered." *Trump v. Thompson*, 20 F.4th 10, 35-36 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350 (2022). Yet publicly, the defendant has promoted and extolled the events of that day. While the violent attack was ongoing, the defendant told rioters that they were "very special" and that "we love you." In the years since, he has championed rioters as "great patriots" and proclaimed January 6 "a beautiful day." In this case, though, the defendant seeks to distance himself, moving to strike allegations in the indictment related to "the actions at the Capitol on January 6, 2021." ECF No. 115 at 1. The Court should recognize the defendant's motion for what it is: a meritless effort to evade the indictment's clear allegations that the defendant is responsible for the events at the Capitol on January 6. Indeed, that day was the culmination of the defendant's criminal conspiracies to overturn the legitimate results of the presidential election, when the defendant directed a large and angry crowd—one that he had summoned to Washington, D.C., and fueled with knowingly false claims of election fraud—to the Capitol to obstruct the congressional certification proceeding. When his supporters did so, including through violence, the defendant did not try to stop them; instead, he encouraged

them and attempted to leverage their actions by further obstructing the certification.  Contrary to the defendant's claims, then, the indictment's allegations related to the actions at the Capitol are relevant and probative evidence of the defendant's conduct and intent, and they are neither prejudicial nor inflammatory.  His motion to strike them from the indictment must be denied.

## I.      Background

On August 1, 2023, the grand jury returned an indictment charging the defendant with perpetrating three criminal conspiracies that targeted the collection, counting, and certification of the 2020 presidential election results, and with obstructing, and attempting to obstruct, the congressional certification of those results, which took place at the United States Capitol on January 6, 2021.  ECF No. 1.  The congressional certification on January 6 was central to the defendant's criminal conspiracies and his obstruction effort, and the indictment makes clear that he bears responsibility for the actions at the Capitol on that day.

First, in the months after the 2020 presidential election, the defendant cultivated widespread anger, resentment, and mistrust of the election results by spreading knowingly false claims of election fraud.  *Id.* at ¶¶ 4, 87.  In the weeks leading up to January 6, the defendant repeatedly urged his supporters to travel to Washington, D.C., on the day of the congressional certification, telling them, "Be there, will be wild!"  *Id.* at ¶¶ 87, 90, 96.

Then, on January 6, the defendant used multiple means to attempt to obstruct the congressional certification, including by directing an angry and violent crowd to the Capitol.  *Id.* at ¶¶ 10d, 10e.  In particular, the indictment alleges that, on the morning of the certification, the defendant reiterated knowingly false claims of election fraud and gave his supporters false hope that the Vice President could and might still change the election outcome to favor the defendant. *Id.* at ¶ 104.  The defendant then exhorted his supporters to "fight like hell" and go to the Capitol.

*Id.* Following this instruction, thousands of people marched to the Capitol both during and after the defendant's speech. *Id.* at ¶ 105.

As the crowd at the Capitol—which included supporters the defendant had called to the city and directed to the Capitol—broke through barriers, violently attacked law enforcement officers attempting to secure the building, and broke into the building, the defendant refused to take action to calm the violence. *Id.* at ¶¶ 107, 110. Instead, he sought to further stoke anger, which he had initially cultivated, against the Vice President. After the defendant issued a tweet that the Vice President "didn't have the courage to do what should have been done," members of the crowd responded, chanting phrases such as "Hang Mike Pence!"; "Where is Pence? Bring him out!"; and "Traitor Pence!" *Id.* at ¶¶ 106, 111, 113.

Finally, as the attack on the Capitol halted the congressional certification for several hours, the defendant and his co-conspirators sought to exploit the delay to further obstruct the proceeding. *Id.* at ¶¶ 119-121.

## II.    Applicable Law

Although Federal Rule of Criminal Procedure 7(d) allows that a court may, upon a defendant's motion, "strike surplusage from the indictment or information," such motions "are highly disfavored in this Circuit." *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995). *See also United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (the standard under Rule 7(d) "has been strictly construed against striking surplusage") (quoting *United States v. Jordan*, 626 F.2d 928, 930 n.1 (D.C. Cir. 1980)). A court's discretion whether to strike allegations as surplusage is thus "narrow" in scope. *United States v. Oaker*, 111 F.3d 146, 157 (D.C. Cir. 1997).

The defendant "must overcome a most severe burden to move this court to order language from the indictment stricken." *Watt*, 911 F. Supp. at 554. He must satisfy a trio of requirements,

showing "that the allegations are [1] not relevant to the charge and are [2] inflammatory and [3] prejudicial." *Rezaq*, 134 F.3d at 1134 (quoting 1 Charles Alan Wright, *Federal Practice and Procedure* § 127, at 426 (1982)).  This test is conjunctive: a shortcoming on any prong fails to meet the standard.  *See United States v. Trie*, 21 F. Supp. 2d 7, 20 (D.D.C. 1998) ("On the other hand, *relevant* language generally 'should not be stricken even if it may be prejudicial.'" (emphasis in original) (quoting *United States v. Weinberger*, No. 92-cr-235, 1992 WL 294877, at *7 (D.D.C. Sept. 29, 1992)); *United States v. Hedgepeth*, 434 F.3d 609, 612-13 (3d Cir. 2006) ("Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." (citing cases)). For instance, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989) (internal citations omitted).  As a result, "only rarely has surplusage been ordered stricken." *Watt*, 911 F. Supp. at 554 (quoting Wright, § 127).

## III.    Argument

In his motion, the defendant seeks to strike language from the indictment—including one of the charged manner and means by which the grand jury found the defendant furthered his criminal conspiracies—related to actions at the Capitol on January 6, 2021.  ECF No. 115 at 1. But the defendant's argument to strike "surplusage" from the indictment fails because what he seeks to strike is not surplusage at all; rather, it is relevant evidence of his criminal attempts to overturn the results of the election through, among other means, directing an angry crowd to the Capitol to disrupt the certification proceeding.  Evidence of the actions at the Capitol is also

relevant and probative of the defendant's motive and intent before, on, and after January 6—the day that each of the defendant's criminal conspiracies came to a head—and provides necessary context for the criminal conduct with which he is charged.  Finally, the indictment's recitation of the events at the Capitol on January 6 is neither inflammatory nor prejudicial.  Because the defendant's motion fails to meet each prong of the test for striking language from an indictment, his motion should be denied.

### A.      No Prejudice Can Result from the Indictment Language

This Court, consistent with others in this District, does not provide the jury a copy of the indictment.  As a result, no prejudice can possibly result from any charging language.  *See Hedgepeth*, 434 F.3d at 613 (defendant's prejudice claim fails where jury was not shown the indictment, "as information never revealed to the jury could not have prejudiced its deliberations"); *cf. Trie*, 21 F. Supp. 2d at 19 (recognizing possibility of prejudice from indictment allegations stemming from the court's practice of providing the jury with the indictment).  The Court should deny the defendant's motion on this basis alone.

### B.      The Defendant Fails to Establish Any Basis to Strike Language from the Indictment about the January 6 Attack on the Capitol

The defendant's motion is premised on the disingenuous claim that he is not charged with "responsibility for the actions at the Capitol on January 6, 2021."  ECF No. 115 at 1.  But the indictment clearly alleges, and the Government will prove at trial, that the defendant bears such responsibility, and the evidence supporting these allegations in the indictment is relevant and probative of his conduct and intent.

#### 1.      Information about the January 6 attack on the Capitol is relevant to all of the charges against the defendant

The defendant makes only a cursory and conclusory attempt to claim that the indictment's allegations regarding actions at the Capitol on January 6 are not relevant, ECF No. 115 at 2-4,

because he knows that they are.  Indeed, when it suits his purposes, the defendant concedes in other filings that the events at the Capitol on January 6 are central to this case.  In his motion to dismiss the indictment on grounds of presidential immunity, for instance, the defendant claimed immunity from prosecution because "[i]n January 2021, he was impeached on charges arising from the same course of conduct at issue in the indictment," ECF No. 74 at 19—including inciting followers to take "lawless action at the Capitol"[1]—and was acquitted.  When seeking leave to issue Rule 17(c) subpoenas for material from the House Select Committee to Investigate the January 6th Attack on the United States Capitol, the defendant acknowledged that the indictment "directly alleges that [the defendant] 'directed [supporters] to the Capitol to obstruct the certification proceeding,'" and argued that any Select Committee records of his and others' knowledge and intent related to actions at the Capitol on January 6 "is plainly relevant."  ECF No. 99 at 11 (quoting ECF No. 1 at ¶ 10(d)).  The defendant claimed that without the requested documents (which, as the Government explained in its response, he already has, *see* ECF No. 119), he could not "possibly have a fair trial."  *Id.* at 10.

Thus, as the defendant has acknowledged in his other filings, the charged allegations that the defendant seeks to strike are plainly relevant to all the counts in the indictment, which alleges that the defendant engaged in a multipronged endeavor to overturn the 2020 presidential election, disenfranchise voters, and obstruct the transfer of presidential power.  As various earlier efforts in furtherance of his conspiracies failed, the defendant and his co-conspirators turned their focus to the congressional certification on January 6.  Ultimately, the defendant's three conspiracies culminated and converged when, on January 6, the defendant attempted to obstruct and prevent

---

[1] H. RES. 24 (117th Cong. 1st Sess.) at 3, *available at* https://www.congress.gov/bill/117th-congress/house-resolution/24/text.

the congressional certification at the Capitol.  One of the ways that the defendant did so, as alleged in the indictment, was to direct an angry crowd of his supporters to the Capitol and to continue to stoke their anger while they were rioting and obstructing the certification.

At trial, the Government will prove these allegations with evidence that the defendant's supporters took obstructive actions at the Capitol at the defendant's direction and on his behalf. This evidence will include video evidence demonstrating that on the morning of January 6, the defendant encouraged the crowd to go to the Capitol throughout his speech, giving the earliest such instruction roughly 15 minutes into his remarks; testimony, video, photographic, and geolocation evidence establishing that many of the defendant's supporters responded to his direction and moved from his speech at the Ellipse to the Capitol; and testimony, video, and photographic evidence that specific individuals who were at the Ellipse when the defendant exhorted them to "fight" at the Capitol then violently attacked law enforcement and breached the Capitol.

The indictment also alleges, and the Government will prove at trial, that the defendant used the angry crowd at the Capitol as a tool in his pressure campaign on the Vice President and to obstruct the congressional certification.  Through testimony and video evidence, the Government will establish that rioters were singularly focused on entering the Capitol building, and once inside sought out where lawmakers were conducting the certification proceeding and where the electoral votes were being counted.  And in particular, the Government will establish through testimony and video evidence that after the defendant repeatedly and publicly pressured and attacked the Vice President, the rioting crowd at the Capitol turned their anger toward the Vice President when they learned he would not halt the certification, asking where the Vice President was and chanting that they would hang him.

Relevancy is a low bar. *See United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997) ("So long as the evidence makes a fact of consequence more or less likely, it is relevant."). Thus, courts in this District have rejected challenges, like the defendant's, to the relevance of evidence of the attack on the Capitol on January 6. *See United States v. Stedman*, No. 21-cr-383, 2023 WL 3303818, at *2 (D.D.C. May 8, 2023) (citing cases). In multiple cases involving January 6 offenders charged with obstructing the certification proceeding in violation of Section 1512(c), courts have determined that relevant evidence to prove the obstruction includes evidence of others' conduct at the Capitol. The court in *Stedman*, for instance, considered a defendant's motion to exclude, as irrelevant and unduly prejudicial, evidence of events and conduct on January 6 for which he was not present and not personally aware. *Id.* at *1. Finding the defendant's motion "untenable" under evidentiary relevance standards, *id.*, the court noted that "[p]lainly, others' actions on January 6 at the Capitol, in combination with defendant's own actions, are relevant" to whether the certification proceeding was obstructed, *id.* at 2. The court ruled similarly in *United States v. Carpenter*, No. 21-cr-305, 2023 WL 1860978 (D.D.C. Feb. 9, 2023). Considering a defendant's request to exclude "general" evidence about events of January 6 in which she did not take part, the *Carpenter* court denied the request on the grounds that such evidence "would be highly relevant" to prove, as necessary for a violation of Section 1512(c), "that there was an official proceeding, and that such proceeding was in fact disrupted." *Id.* at *3; *see also United States v. Bennett*, No. 21-cr-312, 2023 WL 6460026, at *5 (D.D.C. Oct. 4, 2023) (finding that "general evidence of the events of January 6 is probative of multiple elements of the crimes with which" that defendant was charged, including Section 1512, and "[b]ackground video evidence is plainly probative of whether there was an official proceeding and whether such proceeding was in fact disrupted").

Likewise, the defendant here is charged with four related criminal counts, including conspiring to obstruct and obstructing the official certification proceeding on January 6. Essential to those charges are factual allegations and evidence that the proceeding was in fact impeded—namely, by a large crowd, including individuals whom the defendant had directed at the Capitol, that violently advanced on the Capitol building to create "a catastrophic security risk requiring the evacuation" of lawmakers (including the Vice President) and delaying the certification by several hours. *Stedman*, 2023 WL 3303818, at *1.

### 2. Information about the events of the January 6 attack on the Capitol helps show the defendant's motive and intent

The events at the Capitol on January 6 are additionally relevant to proving the defendant's intent and motive. *United States v. Espy*, 23 F. Supp. 2d 1, 7 (D.D.C. 1998) (finding allegations that "provide the jury information on issues of intent and motivation" were relevant and would not be struck); *Trie*, 21 F. Supp. 2d at 19 ("The government is not precluded from including information in the indictment used to . . . establish the defendant's state of mind, intent and motives." (cleaned up)). The four charges against the defendant variously require proof that he acted knowingly and corruptly in his efforts to overturn the election results, and the defendant's actions before, during, and after the riot at the Capitol are powerful and probative evidence of his motive and intent for each conspiracy and for the obstruction charge.

As set forth in the indictment, on the morning of January 6, the defendant knew that the crowd that he had gathered in Washington for the certification "was going to be 'angry.'" ECF No. 1 at ¶ 98. Despite this knowledge—or perhaps because of it—in his remarks to supporters, the defendant told knowing lies about the Vice President's role in the congressional certification, stoked the crowd's anger, and directed them to march to the Capitol and "fight." *Id*. at ¶ 104.

Next, the Government will prove that the defendant's knowing and corrupt intent is clear from his actions, and purposeful inaction, during the attack on the Capitol.  *Cf. United States v. Griffith*, No. 21-cr-244-2, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) (in prosecution of January 6 offender, conduct by others and events at the Capitol other than defendant's location were relevant to defendant's mental state); *United States v. MacAndrew*, No. 21-cr-730, 2022 WL 17961247, at *3 (D.D.C. Dec. 27, 2022) ("Statements by political leaders and the conduct and statements made by the mob surrounding Defendant both bear on Defendant's mental state at the time of the charged offenses.").  Through testimony and video evidence, the Government will show that following his public remarks, the defendant returned to the White House and watched hours of television—including footage of crowds marching from his Ellipse event to the Capitol and swarming Capitol grounds, and news reporting of law enforcement injuries, threats inside the building, and lawmakers in hiding.  Testimony will establish that the defendant was informed of, though indifferent to, the fact that the Vice President had to be evacuated from the Senate to a secure location.  Although the defendant knew that the certification proceedings had been interrupted and suspended, he rejected multiple entreaties to calm the rioters and instead provoked them by publicly attacking the Vice President.  ECF No. 1 at ¶111.  And instead of decrying the rioters' violence, he embraced them, issuing a video message telling them that they were "very special" and that "we love you."  *Id*. at ¶ 116.  Finally, while the violent riot effectively suspended the proceedings over which the Vice President had been presiding, the defendant and his co-conspirators sought to shore up efforts to overturn the election by securing further delay through knowing lies.  *Id.* at ¶¶ 119, 120.

The Government will further establish the defendant's criminal intent by showing that, in the years since January 6, despite his knowledge of the violent actions at the Capitol, the defendant

has publicly praised and defended rioters and their conduct. There is a robust public record of how rioters' actions at the Capitol on January 6 were extraordinarily violent and destructive, including attacks on law enforcement officers with flag poles, tasers, bear spray, and stolen riot shields and batons. One officer who was dragged into the crowd endured a brutal beating while members of the crowd reportedly yelled, "Kill him with his own gun!" Terrified lawmakers and staff hid in various places inside the building, and many were evacuated. Despite this, the defendant has never wavered in his support of January 6 offenders. For instance, the Government will introduce at trial the defendant's own statements in the years since January 6 proclaiming it "a beautiful day" and calling rioters "patriots," many of whom he "plan[s] to pardon."[2] The Government will also introduce evidence of the defendant's public support for and association with the "January 6 Choir," a group of particularly violent January 6 defendants detained at the District of Columbia jail.[3] The defendant's decision to repeatedly stand behind January 6 rioters and their cause is relevant to the jury's determination of whether he intended the actions at the Capitol that day.

The defendant's actions in advance of, during, and following the riot at the Capitol demonstrate that he did not act unwittingly or in good faith. Information about the actions at the

---

[2] *See, e.g.*, Fox News, Sunday Morning Futures (July 12, 2021), https://www.foxnews.com/transcript/sunday-morning-futures-on-trumps-big-tech-lawsuit-us-and-china-relations; Trump Remarks at Faith & Freedom Conference (June 17, 2022), https://www.c-span.org/video/?521049-1/pres-trump-speaks-investigation-faith-freedom-conference; CNN Town Hall (May 11, 2023), https://www.cnn.com/2023/05/11/politics/transcript-cnn-town-hall-trump/index.html.

[3] The defendant began a campaign rally in Waco, Texas, on March 25, 2023, by playing a recording of the Star-Spangled Banner by the January 6 Choir. Of the January 6 Choir, the defendant told the crowd, "[O]ur people love those people, they love those people." *See* C-SPAN at 2:44, https://www.c-span.org/video/?526860-1/president-trump-holds-rally-waco-texas. The January 6 Choir includes defendants who assaulted law enforcement officers on January 6 and one who used chemical spray on a Capitol Police officer who died the next day. S*ee* Washington Post, Behind Trump's Musical Tribute to Some of the Most Violent Jan. 6 Rioters (May 7, 2023), https://www.washingtonpost.com/investigations/interactive/2023/trump-j6-prison-choir/.

Capitol—of which the defendant was well aware—are therefore relevant to proving the defendant's motive and intent through his statements, actions, and inaction on and regarding January 6.

### 3. Information about the events of the January 6 attack on the Capitol provides necessary context for all the charged conduct

The information that the defendant asks to strike also places his charged conduct in context. *See Watt*, 911 F. Supp. at 554 (denying motion to strike indictment's introductory language that "provides the background necessary for a jury to understand the full scope of defendant's activities, and to place defendant's conduct in the appropriate context"); *United States v. Poindexter*, 725 F. Supp. 13, 37 (D.D.C. 1989) (denying request to strike background paragraphs that were relevant to jury's understanding of charged conduct). Details about the actions of the crowd at the Capitol explain events that the defendant set in motion. The defendant sowed election mistrust, beckoned supporters to his rally on January 6, hung the hopes of those "angry" supporters on the Vice President, and directed them to the Capitol where the Vice President was presiding over the certification. Those supporters, in turn, followed the defendant's instruction to march to the Capitol, turned against the Vice President when he did not halt the electoral vote count, and contributed to the immense and violent crowd that breached the Capitol building, requiring suspension of the certification proceedings. *See Stedman*, 2023 WL 3303818, at *1 (describing crowd's effect on delaying certification proceedings). Such information is essential to understand how the certification proceeding on January 6 was interrupted and suspended, consistent with the object of the defendant's criminal conspiracies and with his efforts to obstruct those very proceedings. *Id.* ("General evidence about the events on January 6—even if defendant did not personally observe all of the conduct engaged in by others in multiple parts of the Capitol Building

and restricted grounds—assists the jury in better understanding the parties' actions that day and thus the alleged criminal conduct of defendant.").

### C.    Information about the January 6 Attack on the Capitol is Not Inflammatory or Unduly Prejudicial

The defendant further characterizes the language he seeks to strike as "highly prejudicial and inflammatory."  ECF No. 115 at 5.  To the contrary, the indictment's discussion of the actions at the Capitol on January 6, far from being "designed to inflame the passions or prejudices of the jury," *id.* at 4 (citation omitted), is accurate.

The indictment states that members of the crowd "broke through barriers" and "advanced on the building, including by violently attacking law enforcement officers," ECF No. 1 at ¶ 107, and that after this "violent advancement" the crowd "broke into" or "breached" the Capitol building, *id.* at ¶¶ 109, 110.  It quotes various members of the crowd whose statements echoed the defendant's earlier criticisms of his Vice President.  *Id.* at ¶ 113.  Unlike the cases cited by the defendant, ECF No. 115 at 4-5, the indictment does not name uncharged crimes, suggest the defendant committed uncharged crimes, or imply that others have found the defendant culpable for the charged conduct.  *See United States v. Singhal*, 876 F. Supp. 2d 82, 103 (D.D.C. 2012) (striking indictment reference to company "insider trading" policies, where defendants were not charged with insider trading and obligations under the policy could not give rise to criminal culpability); *United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking, without further analysis, language about an unrelated offense not substantively charged that "may be prejudicial"); *Poindexter*, 725 F. Supp. 13, 36 (declining to strike properly descriptive and neutral terms, but striking information suggesting that the defendant had already been found at fault for the charged conduct).

That the indictment's factual recitation includes probative evidence that demonstrates the

defendant's responsibility for the violence of January 6 is no cause to strike.  Because the defendant is alleged to have committed conspiracies and obstruction that included encouraging and capitalizing upon violence to further his crimes, the indictment's accurate factual recitation of that obstruction and violence is not unfairly prejudicial.  *See United States v. Roberson*, 581 F. Supp. 3d 65, 75-76 (D.D.C. 2022) ("To be sure, evidence that depicts a defendant as a pedophile could indeed stigmatize him in the eyes of the jury.  But in a prosecution for distribution of child pornography, such 'prejudice' can hardly be characterized as 'unfair.'").  There is no basis to exclude highly probative evidence that does not lead the jury to improper considerations.  *See United States v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005) ("Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning."); *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1998) ("[D]amage to a defendant's case is not a basis for excluding probative evidence.  And for good reason.  Evidence that is highly probative invariably will be prejudicial to the defense."); *United States v. Wilkins*, 538 F. Supp. 3d 49, 73 (D.D.C. 2021) (prejudice inherent in evidence is not unfair when it "stems from the legitimate probative force of the evidence and is directly related to the central question in this case").  The Court should not strike language from the indictment simply because its accurate description of the defendant's crimes tends to show guilt.

The defendant also complains that information about events at the Capitol should be struck from the indictment because those events are a "hot topic" about which the public has "high awareness" and "strong views[.]"  ECF No. 115 at 4-5.  Absent a showing—which the defendant has not made—that the information is irrelevant, inflammatory, and prejudicial, public knowledge of the attack on the Capitol is insufficient reason to strike language from the indictment.  *Cf. United States v. Brock*, 628 F. Supp. 3d 85, 94 (D.D.C. 2022) ("To show prejudice, a defendant must show

- 14 -

more than juror familiarity with the case, or even a preliminary opinion of its merits."), *aff'd*, 2023 WL 3671002 (D.C. Cir. May 25, 2023).  At any rate, and as with any trial, "high awareness" or "strong views" that might render potential jurors unable to fairly hear evidence and decide the case can be determined and assessed using juror questionnaires, which the Court will use (ECF No. 130), and thorough voir dire.  *Brock*, 628 F. Supp. 3d at 98 ("[A] vigorous voir dire should suffice to root out any bias in individual jurors.").  Indeed, "multiple other January 6th cases have proceeded to jury trials . . . in which voir dire has been successful in identifying unbiased jurors." *United States v. Rhodes*, 610 F. Supp. 3d 29, 59 (D.D.C. 2022).

## IV.   Conclusion

The allegations in the indictment are not unduly prejudicial or inflammatory.  In fact, evidence of the attack at the Capitol on January 6 is powerful and probative evidence of the defendant's conduct, motive, and intent.  The Court should deny the defendant's motion.

Respectfully submitted,

JACK SMITH
Special Counsel

By:     /s/Molly Gaston
        Molly Gaston
        Thomas P. Windom
        Senior Assistant Special Counsels
        950 Pennsylvania Avenue NW
        Room B-206
        Washington, D.C. 20530