**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
STAY CASE PENDING RESOLUTION OF MOTION TO DISMISS
BASED ON PRESIDENTIAL IMMUNITY**

After careful consideration of the public interest and the parties' proposals for a trial date in this case—including the defendant's initial attempt to postpone trial for almost three years—the Court selected March 4, 2024, to begin trial.  At every opportunity since, the defendant has tried to delay and disrupt the Court's reasonable schedule working toward that date.  His newest delay tactic is to move the Court to "stay all proceedings in this case until the issues raised" in his presidential immunity dismissal motion, ECF No. 74, "are fully resolved."  ECF No. 128 at 1.  The defendant's motion cites general caselaw regarding immunity claims in the appellate context but provides no legal basis for the relief he seeks, which is effectively for the Court to immediately surrender its authority to manage this case.  The Court should deny the defendant's motion for a stay.  In addition, the defendant's stay motion exposes his intention to use his meritless immunity claim to disrupt the Court's schedule.  Accordingly, to prevent undue delay and maintain the trial date, the Court should consider and decide first among the motions pending on the docket the defendant's two claims that could be subject to interlocutory appeal: presidential immunity and double jeopardy.

I.      **Background**

The defendant has an established record of attempting to disrupt and delay the Court's carefully considered trial date and pretrial schedule.  Now, the defendant has timed his motion to stay these proceedings for maximum disruptive effect.

As an initial matter, the Court's selection of a March 4, 2024, trial date in this case was based on careful consideration of competing and compelling interests, including the Court's duty to "give the defense adequate time to prepare for trial and ensure the public's interest in seeing this case resolved in a timely manner."  ECF No. 38 at 55.  In reaching that conclusion, the Court rejected both the defendant's and the Government's proposed trial dates and emphasized that its "primary concern here, as it is in every case, is the interest of justice, and that [it] balance[s] the defendant's right to adequately prepare with [its] responsibility to move this case along in the normal order."  *Id.* at 4, 56.  Indeed, the Court made that balancing explicit in its findings.  *Id.* at 53.  Subsequently, the Court entered a thorough pretrial scheduling order that set deadlines for dispositive and evidentiary motions, discovery, voir dire, jury instructions, and other pretrial matters, all directed at proceeding to trial on March 4 in a fair and orderly fashion.  ECF No. 39.

Since proposing April 2026 as the date for trial, the defendant has attempted to delay the pretrial schedule and trial at every turn.  *See* ECF No. 62 (seeking to disrupt and delay Classified Information Procedures Act schedule); ECF No. 63 (requesting two-month extension of various motions dates); ECF No. 103 at 20, 66 (at hearing, defense counsel suggesting the Court move trial until after November 2024 so that the defendant could make prejudicial public statements unabated); ECF No. 129 (seeking undefined extension for defendant's motions to compel and three-month extension for defendant's early-return Rule 17(c) subpoena requests).  In response, the Court has had to remind the defendant that the trial date is not flexible, ECF No. 103 at 20-21

("trial will not yield to the election cycle and we're not revisiting the trial date"), but has made reasonable allowances of additional time for the defendant consistent with maintaining the trial date in this case.  *See, e.g.,* ECF No. 82 at 4 (denying the full length of an extension sought by the defense because important decisions "would [then] not be fully presented to the court until fewer than three months before the scheduled trial date of March 4, 202[4]—the same three months in which the parties may dispute motions in limine, voir dire questions, jury instructions, and other pretrial matters").

The defendant's motion to "stay all proceedings in this case" until the "issues" raised in his presidential immunity motion are resolved is another delay tactic—and one long in the works. The defendant has planned to file this motion for months but waited until now in hopes of grinding pretrial matters to a halt closer to the trial date.  As early as August 28, 2023, for instance, defense counsel informed the Court that the defendant would raise "executive immunity . . . with the Court likely this week or early next week, which is a very complex and sophisticated motion regarding whether or not this court would even have jurisdiction over this case. . . ."  ECF No. 38 at 33-34. But the defendant did not file an immunity motion that week or the following.  Instead, he waited more than a month before filing the promised pleading on October 5.  *See* ECF No. 74.  The defendant then waited another month to file the stay motion, late at night on November 1. Tellingly, earlier that same day, when defense counsel appeared at a hearing in the defendant's criminal case in the Southern District of Florida, he used this Court's March 4 trial date and pretrial schedule as an excuse to try to delay that trial—without disclosing that, within hours, he would file his stay motion here seeking to disrupt and delay the very deadlines in this case that he was using as a pretense.  *See United States v. Trump*, No. 23-80101, Hr'g. Tr. at 24 (S.D. Fla. Nov. 1, 2023).  In short, the defendant's actions make clear that his ultimate objective with the stay motion,

as has consistently been the case in this and other matters, is to delay trial at all costs and for as long as possible.

## II.    Argument

The defendant's motion to stay provides no basis to support his claim that the Court, before even rendering a decision on the defendant's immunity motion, should suddenly halt all work in this case simply because the defendant says that he is immune. That is because there is none. The Court should deny the motion. Furthermore, now that the defendant has demonstrated his intention to use his immunity claim to disrupt the Court's administration of this case, the Court should promptly resolve the defendant's presidential immunity and double jeopardy motions[1] to minimize future delays.

### A.    There is No Legal Basis for the Relief the Defendant Seeks, and the Court Should Deny the Defendant's Stay Motion

In his motion asking the Court to "stay all proceedings in this case until the issues raised in his [immunity motion] are fully resolved," ECF No. 128 at 1, the defendant seeks relief for which there is no basis in the law: for the Court to surrender its entire authority to administer this case, based solely on the defendant's claim of immunity and without having rendered a decision

---

[1] Although the defendant has not yet raised the issue, the defendant's double jeopardy claim, ECF No. 113 at 18-24, may also be subject to interlocutory appeal and thus also risks disrupting the Court's schedule. For the reasons described in the Government's concurrent filing today, ECF No. 139 at 72-78, the claim is plainly frivolous, and the Court should deem it so in writing. *See, e.g.*, *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc) ("Henceforth, the district courts, in any denial of a double jeopardy motion, should make written findings determining whether the motion is frivolous or nonfrivolous. If the claim is found to be frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case."); *United States v. Black*, 759 F.2d 71, 73 (D.C. Cir. 1985) (acknowledging that courts "must grant a stay unless appellant's claim of violation of the double jeopardy clause is 'wholly lacking in merit.'").

on his immunity motion.  No case supports such a result, which would fly in the face of the efficient administration of justice.

The defendant's motion cites and quotes several civil cases regarding general legal principles about the effect of immunity claims, ECF No. 128 at 1-2, but these cases do not have anything to do with the defendant's requested relief here.  Instead, they stand for the principle that while a non-frivolous question of immunity is pending on appeal—rather than pending a decision in the district court, as the defendant's claim is here—the party asserting immunity cannot be forced to go to trial.  *See United States v. Brizendine*, 659 F.2d 215, 219 (D.C. Cir. 1981) (while a defendant pursues an appeal based on a non-frivolous claim of immunity from prosecution, he should not be required "to endure the personal strain, public embarrassment, and expense of a criminal trial").

The defendant cites cases to argue that questions of immunity should be resolved at the earliest possible stage in litigation.  *See* ECF No. 128 at 1.  But the defendant's dilatory actions regarding his immunity and stay motions demonstrate that he is less interested in resolution of the merits of his claims than in using them for delay.  In any event, the Government agrees—although the Court should reject the defendant's stay motion and his request to halt all work, for the reasons discussed below, the Court should promptly resolve both the defendant's presidential immunity claim and his double jeopardy claim.

## B.   The Court Should Promptly Consider and Decide the Defendant's Meritless Immunity and Double Jeopardy Claims

Although the defendant's motion for a stay of the Court's proceedings at this stage is meritless and should be denied, it is a harbinger of the defendant's plans to use any means, including by manipulating the timing of any appeal, to derail these proceedings.  The defendant delayed filing his immunity and stay motions to maximize his chances of delaying this trial (and

possibly trial in the Southern District of Florida, as well).  Past practice, both in this case and in the grand jury investigation that preceded it, *see* ECF No. 38 at 37-39, shows that he will undoubtedly do the same in the event that the Court denies his immunity motion and that decision is subject to interlocutory appeal.  To limit such disruption, the Court should promptly resolve the defendant's immunity motion, as well as his double jeopardy claim that is also potentially subject to interlocutory appeal, so that the Government can seek expedited consideration of any non-frivolous appeal and preserve the Court's carefully selected trial date.

A denial of the defendant's motions to dismiss the indictment based on presidential immunity and double jeopardy may be subject to interlocutory appeal.  *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) ("When a district court has denied a defendant's claim of right not to stand trial . . . we have consistently held the court's decision appealable, for such a right cannot be effectively vindicated after the trial has occurred.").  While any such non-frivolous appeal is pending, the defendant cannot be required to go to trial.  *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) ("a proper appeal from a denial of qualified immunity automatically divests the district court of jurisdiction to require the appealing defendant to appear for trial"); *Abney v. United States*, 431 U.S. 651, 662 (1977) (in double jeopardy context, defendant cannot be taken to trial pending a non-frivolous appeal because otherwise, double jeopardy "protections would be lost if the accused were forced to 'run the gauntlet' [of trial] a second time before an appeal could be taken").

To prevent the defendant from using the timing of any such appeal to disrupt the Court's trial date, the Court should promptly consider and decide his immunity and double jeopardy motions.  If the Court rules in the Government's favor and the defendant appeals, the Government will take all possible measures to expedite the appeal, *see Apostol v. Gallion*, 870 F.2d 1335, 1339-

40 (7th Cir. 1989) (identifying mechanisms such as requesting summary affirmance or asking to expedite the appeal), just as the defendant sought to expedite his appeal of the Court's Rule 57.7 Order—relief that the court of appeals provided. *See United States v. Trump*, No. 23-3190, Order (D.C. Cir. Nov. 3, 2023) (expediting merits briefing and oral argument). In any event, although a non-frivolous appeal would temporarily divest this Court of jurisdiction, it would do so over only "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (per curiam). In sum, the Court's prompt resolution of the defendant's immunity and double jeopardy claims would best position this case to stay on track with its current pretrial schedule and trial date.

## III.    Conclusion

The Court should deny the defendant's motion to stay. Separately, the Court should promptly consider and decide the defendant's immunity motion and double jeopardy claim.

Respectfully submitted,

JACK SMITH
Special Counsel

By:    */s/ Molly Gaston*
Molly Gaston
Thomas P. Windom
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530