IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONALD J. TRUMP,<br><br>   *Defendant*. | Case No. 1:23-cr-00257-TSC |

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF MOTION TO STAY CASE PENDING RESOLUTION OF MOTION TO DISMISS BASED ON PRESIDENTIAL IMMUNITY**

Police officers, corrections officers, federal agents, executive officials, state prosecutors, federal prosecutors, state judges, federal judges, and Members of Congress—all of these officials routinely obtain stays of discovery and of other pre-trial proceedings when they assert official immunity, pending a final resolution of those asserted claims of immunity. The prosecution contends that President Trump should be the only official in America who is not entitled to such consideration. Doc. 142, at 1-7. That position is meritless. The Court should reject the prosecution's arguments and stay all proceedings until there is a final resolution of President Trump's claim of Presidential immunity.

    **I.**    **Like Other Immunity Doctrines, Presidential Immunity Shields President Trump From The "Burdens of Litigation," Not Just The "Risks of Trial," Until His Claim of Immunity Is Finally Decided.**

The prosecution concedes that the Court should decide President Trump's claim of Presidential immunity ahead of the other pending motions. Doc. 142, at 1, 4, 6-7. In addition, the prosecution does not dispute that President Trump's claim of Presidential immunity is "subject to interlocutory appeal," and it agrees that "[w]hile any such non-frivolous appeal is pending, the

defendant cannot be required to go to trial."¹ Doc. 142, at 6 (citing *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992), and *Abney v. United States*, 431 U.S. 651, 662 (1977)).

An assertion of immunity, however, protects President Trump not just against going to trial, but against all the burdens of litigation. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("the driving force behind [the] creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery.") (internal quotation marks omitted). As explained in the first lines of President Trump's motion to stay, Doc. 128, at 1, the Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stages of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing many cases); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) ("[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation.").

For the same reason, the denial of a claim of Presidential immunity, "like the denials of various other immunity defenses, is an immediately appealable collateral order." *Wuterich v. Murtha*, 562 F.3d 375, 381–82 (D.C. Cir. 2009) (citing *Osborn v. Haley*, 549 U.S. 225, 238 (2007)); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*, 506 U.S. 139, 141 (1993) (denial of claim of Eleventh Amendment immunity is immediately appealable); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (same for qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982)

---

¹ In its stay opposition, Doc. No. 142, the prosecution does not contend that President Trump's assertion of Presidential immunity is "frivolous," and even if it did, any such contention would be plainly meritless. The question of whether Presidential immunity shields a former President from criminal prosecution for official acts—which no court has ever decided—is a "serious and unsettled question of law" that is subject to "interlocutory appeal." *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982). In any event, the prosecution cites no authority for its suggestion that a supposedly "frivolous" assertion of Presidential immunity would not be subject to interlocutory appeal.

(same for Presidential civil immunity); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004) (same for foreign sovereign immunity).

As noted, the prosecution does not dispute these well-established legal propositions. Doc. 142, at 6-7. However, the prosecution ignores the *reasons* for these doctrines, even though such reasons are stated just as clearly in the Supreme Court's opinions. The Supreme Court emphasizes that immunity decisions should be decided at the earliest opportunity, and are subject to interlocutory review, precisely because immunity provides *immunity from suit*, including all the attendant burdens of litigation, not just immunity from *trial* or adverse judgment. *Hunter*, 502 U.S. at 227 ("The entitlement is an *immunity from suit* rather than a mere defense to liability") (quoting *Mitchell*, 472 U.S. at 526 (emphasis in original)); *see also Mitchell*, 472 U.S. at 525 ("Thus, the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages *action*.") (emphasis added).

Immunity doctrines, therefore, ensure that officials are protected from "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office," *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982), "until this threshold immunity question is resolved," *id*. at 818; *Mitchell*, 472 U.S. at 526 (the "consequences" prevented by official immunity include *both* "the risks of trial" *and* "such pretrial matters as discovery").

The prosecution also concedes the latter point—that immunity should be decided as early as possible—but it disregards the Supreme Court's stated "reason" for the doctrine. *See Harlow, Mitchell, Hunter, supra.* Instead, the prosecution contends that official immunity means only that "the party asserting immunity cannot be forced to *go to trial*." Doc. 142, at 5 (emphasis added).

The prosecution thus envisions that the case should proceed with discovery and all pretrial proceedings, up until the morning of trial, and be stayed only on the morning of trial if there has been no final determination of President Trump's claim of immunity by then. *See id.* The Supreme Court's cases explicitly reject this view. Official immunity means that the officer asserting immunity should not be subject "either to the costs of trial *or to the burdens of broad-reaching discovery.*" *Harlow*, 457 U.S. at 817-18 (emphasis added). "Until this threshold immunity question is resolved, *discovery should not be allowed.*" *Id.* at 818 (emphasis added). The Supreme Court "emphasizes" that immunity protects the official, not just from "the risks of trial," but that "even such pretrial matters as discovery are to be avoided if possible…" *Mitchell*, 472 U.S. at 526.

In fact, the sole case that the prosecution cites for its contorted view on the need for a stay contradicts the very point the prosecution attempts to make. In *United States v. Brizendine*, the D.C. Circuit stated that immunity doctrines "are designed to protect individuals from the burdens of litigation as well as the possibility of conviction." 659 F.2d 215, 219 (D.C. Cir. 1981). This statement accords with the Supreme Court's repeated instructions in *Hunter*, *Mitchell*, *Harlow*, and *Anderson*—all quoted above.

Here, of course, the "burdens of litigation," *id.*; the "expenses of litigation," *Harlow*, 457 U.S. at 814; and the prospect of "broad-ranging discovery," *Anderson*, 483 U.S. at 646 n.6; are particularly acute, which the prosecution conveniently ignores in its rush to judge the merits of President Trump's stay request. This case involves nearly 13 million pages of unclassified discovery and hundreds of potential witnesses; it is also subject to pre-trial hurdles that can be caused by CIPA litigation. The cost, labor, and time of preparing such a case for trial—especially within the highly compressed seven-month time frame adopted by the Court—are staggering. The Supreme Court instructs that President Trump should not have to shoulder these burdens of

litigation unless and until there is a final determination of his claim of Presidential immunity. *Hunter*, 502 U.S. at 227. The prosecution's argument to the contrary is meritless.[2]

## II.     The Prosecution's Other Arguments Lack Merit.

In an apparent effort to prejudice the jury pool, the prosecution recites inflammatory rhetoric and personal attacks on President Trump and his defense counsel, but it cites almost no case law. *See* Doc. 142, at 1-7. The few additional arguments that the prosecution does make are unpersuasive.

First, the prosecution repeatedly accuses President Trump of attempting to "disrupt" and "delay" the proceedings by seeking a stay. *Id.* at 1, 2, 3, 4, 5, 6. This charge is baseless. President Trump is plainly entitled to a stay of proceedings pending a final determination of his immunity

---

[2] The prosecution also suggests, incorrectly, that the case may proceed during an appeal of President Trump's claim of immunity. Specifically, the prosecution admits that "a non-frivolous appeal would temporarily divest this Court of jurisdiction," but it claims that "it would do so over only 'those aspects of the case involved in the appeal.'" Doc. 142, at 7 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam)). The prosecution is misguided: "An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Here, the question of whether President Trump is immune from the burdens of litigation is an "aspect[] of the case involved in the appeal," *id.*, thus requiring a stay of all proceedings in the district court while any appeal is pending.

Indeed, such stays are routinely granted for other officials and agencies asserting immunity from suit. "[W]hen a public official takes an interlocutory appeal to assert a colorable claim to absolute or qualified immunity from damages, *the district court must stay proceedings*." *Goshtasby v. Bd. of Trustees of Univ. of Illinois*, 123 F.3d 427, 428 (7th Cir. 1997) (emphasis added). "[I]f the defendant is correct that it has immunity, its right to be free of litigation is compromised, and lost to a degree, if the district court proceeds while the appeal is pending." *Id.* (staying proceedings against the University of Illinois pending resolution of a claim of sovereign immunity on appeal); *Hegarty v. Somerset County*, 25 F.3d 17, 17 (1st Cir. 1994) (granting police officers' emergency motion to stay discovery during qualified immunity appeal). "[T]he stay of discovery, of necessity, ordinarily must carry over through the *appellate court's* resolution of that question, so long as the appeal is non-frivolous." *Hegarty*, 25 F.3d at 17 (emphasis in original).

claim for the reasons stated above. To assert President Trump's clearly established entitlement to a stay, under crystal clear Supreme Court case law, does not constitute "disruption" or "delay." It constitutes taking a meritorious litigation position.

Next, the prosecution falsely contends that President Trump attempted to unreasonably delay the proceedings by filing his Motion to Dismiss Based on Presidential Immunity on October 5, 2023, which was well in advance of the Court's deadline for filing pretrial motions. The prosecution neglects to mention that President Trump filed an exhaustively researched, 45-page motion, Doc. 74, while counsel was also seeking to review nearly 13 million pages of discovery and thousands of hours of video and audio content produced by the prosecution; responding to unreasonable demands for an immediate trial; dissecting which exculpatory information may have been illegally deleted and destroyed by the House of Representatives Committee investigating the events of January 6, 2021; dealing with efforts to wrongfully gag the leading candidate for President; addressing politically motivated efforts by the prosecution to interfere in the election; preparing extensive pretrial motions on various other issues on an extremely compressed time frame; and defending multiple other politically driven cases, including one brought by the same prosecutors involved in this case. The suggestion that President Trump was somehow dilatory in filing his immunity motion early, well ahead of the deadline for filing other motions, reflects the desperation of the Biden Administration's efforts in this political prosecution against their leading political opponent, President Trump.

Finally, though the issue is not presented in the stay motion, the prosecution contends that President Trump's claim of double jeopardy is "plainly frivolous, and the Court should deem it so in writing." Doc. 142, at 4 n.1. Presumably they would personally attack Justice Alito for taking the very same position President Trump advances: "The *plain implication* [of the Impeachment

Judgment Clause] is that criminal prosecution, like removal from the Presidency and disqualification from other offices, is a consequence that can come about only after the Senate's judgment, not during or prior to the Senate trial." *Trump v. Vance*, 140 S. Ct. 2412, 2444 (2020) (Alito, J., dissenting) (emphasis added). In any event, the prosecution does *not* contend that President Trump's assertion of Presidential immunity—the asserted basis for the stay motion—is "frivolous," nor could it. *See supra* n.1. Therefore, the motion to stay should be granted.

## CONCLUSION

President Trump's Motion to Stay Case Pending Resolution of Motion to Dismiss Based on Presidential Immunity, Doc. 128, should be granted.

Dated: November 15, 2023

Todd Blanche, Esq. (PHV)
toddblanche@blanchelaw.com
Emil Bove, Esq. (PHV)
emil.bove@blanchelaw.com
BLANCHE LAW
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

Respectfully submitted,

*/s/ John F. Lauro*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for President Trump*