**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

**PRESIDENT TRUMP'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR**
**<u>SELECTIVE AND VINDICTIVE PROSECUTION</u>**

President Donald J. Trump respectfully submits this reply in further support of his motion to dismiss the indictment based on selective and vindictive prosecution.

Dubbing team members "career prosecutors" does not insulate the activities of the Special Counsel's Office from judicial or public scrutiny. The reliable media reports submitted by President Trump, which are based on information from other "career prosecutors" and government officials, demonstrate the unconstitutional nature of the investigation by the Special Counsel's Office and the line prosecutors. If the "career prosecutors" in this case wanted to dispute the content of those reports, there was a straightforward way to do so: submit declarations by first-hand witnesses denying the operative facts under oath. If, for example, the *New York Times* falsely reported that President Biden told others that President Trump "should be prosecuted," then why not give the Court and the public peace of mind through the submission of competent evidence, rather than a blustering brief that is full of venom but deflects on the core facts?

The answer is simple. The media reports are accurate. Thus, despite all of the Special Counsel's self-aggrandizing comments about the supposedly unprecedented nature of his manufactured allegations against President Trump, the truly unprecedented aspect of this case is that a sitting president successfully urged the Department of Justice ("DOJ") to try to take down

his chief political rival and, now, the leading candidate to be the next president.  President Biden was so successful, in fact, that the Special Counsel brought two deeply flawed cases against President Trump and has engaged in a reckless effort to proceed to trial in both as soon as possible—even while President Biden anxiously waits to learn whether he will be charged with crimes by a different Special Counsel.[1]

The Biden Administration may not, through this prosecution, retaliate against President Trump for speaking out or for exercising his constitutional right to run for office.  Nor may the prosecutors do President Biden's impermissible bidding.  Because the Special Counsel's Office has not submitted evidence to refute—or even dispute—President Trump's proof regarding the biased and unconstitutional purpose of this case, the Court should dismiss the indictment.  In the alternative, the Court must conduct further fact finding.

## I.    There Is Much More Than An "Indication" Of Insidious Bias

The Special Counsel's Office declares without basis that "[t]he factual and legal record contain absolutely no indication of selective or vindictive prosecution."  Doc. 141 at 1.  That is not accurate.

First, evidence of the insidious and unconstitutional bias at the heart of the prosecution team in this case emerged within days of the 2020 election.  On November 12, 2020, Deputy Special Counsel J.P. Cooney and Senior Assistant Special Counsel Molly Gaston signed a letter to then-Attorney General Bill Barr in which they declared that allegations regarding election fraud

---

[1] *See* Paula Reid, *Special counsel investigating Joe Biden's handling of classified material is not expected to bring charges*, CNN (Nov. 16, 2023), *available at*, https://www.cnn.com/2023/11/16/politics/special-counsel-hur-biden/index.html ("Special counsel Robert Hur is not expected to charge anyone in connection with the mishandling of classified documents at two locations connected to President Joe Biden, two sources close to the investigation told CNN.").

were "false."[2]  Cooney and Gaston signed that letter as Assistant United States Attorneys at the U.S. Attorney's Office for the District of Columbia without any basis in fact or any investigation to support their sweeping claim.[3]

Cooney and Gaston are now prosecuting the indictment in this case, in which they have alleged that "senior leaders of the Justice Department . . . told [President Trump] on multiple occasions that various allegations of fraud were unsupported." Doc. 1 ¶ 11(b).[4]  For Cooney and Gaston, at least, this outcome was predetermined before mid-November 2020.  What followed, then, cannot accurately be characterized as a "thorough and impartial investigation guided by facts and applicable law." Doc. 141 at 1.  Rather, as the unrebutted facts make clear, the prosecutors decided to charge President Trump regardless of the facts:

- In February 2021, Cooney proposed a "wide-ranging effort" to target President Trump that concerned even the Federal Bureau of Investigation ("FBI").  Doc. 116-1 at 5.  Cooney's proposal was ultimately rejected because, among other things, it "tread[ed] on First Amendment-protected activities." *Id.*

---

[2] *See* Ex. 1, *available at* https://www.justice.gov/oip/foia-library/foia-processed/general_topics/2020_presidential_election_06_03_22_part_2/download (at page 93 of 157).

[3] The U.S. Attorney's Office for the District of Columbia eventually spearheaded the investigation of President Trump until the appointment of Special Counsel Jack Smith.  Cooney, Gaston and others in the U.S. Attorney's Office, including Senior Assistant Special Counsel Thomas Windom, led the investigation and "cho[]se" to transition to the Special Counsel's Office after Special Counsel Jack Smith was appointed.  Doc. 116-1 at 11.

[4] In addition to Attorney General Barr, Cooney and Gaston sent a copy of the letter to Richard Donoghue, another potential prosecution witness.  The letter raises serious witness-advocate problems with respect to the prosecution's anticipated testimony, which we will address in motions *in limine*, if necessary.

- During the same month, then-acting U.S. Attorney for the District of Columbia Michael Sherwin began "agitating" for a "hammer," while physically carrying the seditious conspiracy statute around his office.  Doc. 116-1 at 6.

- In March 2021, during a *60 Minutes* interview in violation of DOJ policy, Sherwin declared publicly that President Trump was being targeted by DOJ and suggested that statements from "soccer moms" had "moved the needle."[5]

- In November 2021, Senior Assistant Special Counsel Thomas Windom put forward an investigative proposal targeting President Trump's close associates, which was met with "flat rejection," with one FBI official declaring, "You don't have enough to issue subpoenas."  Doc. 116-1 at 9.

- In the weeks that followed, rather than recognizing the lack of evidentiary basis for grand jury proceedings, Windom "discreetly" asked a different agency if it "might help" with the biased project the FBI had declined to pursue.  Doc. 116-1 at 9.

Second, as President Trump criticized the Biden Administration and suggested that he would run in the 2024 election, President Biden urged his "inner circle" that President Trump "was a threat to democracy and should be prosecuted."  Doc. 116-2.  President Biden also said privately

---

[5] Scott Pelley, *Inside the prosecution of the Capitol rioters*, CBS NEWS (Mar. 22, 2021), *available at*  https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21.

Notwithstanding Sherwin's above-quoted language specifically referencing President Trump during the *60 Minutes* interview, the Special Counsel's Office contends that the interview "pertained not to the defendant" or "any prosecution of the defendant."  Doc. 141 at 10.  These false claims serve as further evidence that the prosecution is willing to say whatever it feels best suits its objectives in a particular moment, without regard for the truth.  If the Office's assertions regarding the scope of the interview are correct, then the prosecution has no basis to contend, as it recently did, that President Trump is "responsible for the events at the Capitol on January 6."  Doc. 140 at 1.

that he wanted the Attorney General to "act less like a ponderous judge and more like a prosecutor who is willing to take decisive action." *Id.*  The Biden administration intentionally leaked these comments to the media in early 2022 so that President Biden could improperly provide instructions to and exert pressure on prosecutors and investigators without engaging in direct communications, as is clear from the fact that the article sourced the operative remark to "two people familiar with his comments." *Id.*

Unmoved by such intimidation tactics, President Trump maintained his criticism of the Biden Administration, leading to a groundswell of support for President Trump's 2024 candidacy.[6] On November 9, 2022, just days before President Trump announced his candidacy, President Biden issued a final ultimatum: "we just have to demonstrate that he will not take power . . . if he does run." Doc. 116 at 4.  President Biden's threat was clear.  If President Trump chose to "run," President Biden would bring the force of the government down on President Trump.  *Id*.

Once again undeterred, President Trump announced his candidacy.  Then, President Biden made good on his threat.  Within days of President Trump's announcement, the Attorney General appointed the Special Counsel, who filed a false indictment against President Trump in Florida in June 2023.  After President Trump publicly criticized President Biden and the Special Counsel for engaging in prosecutorial misconduct and improperly weaponizing law enforcement to harm his campaign, *see* Docs. 116-3, 116-4, this indictment followed.

---

[6] Quinnipiac University Poll, *78% Of Republicans Want To See Trump Run For President In 2024, Quinnipiac University National Poll Finds; Americans Now Split On Border Wall As Opposition Softens* (October 19, 2021), https://poll.qu.edu/poll-release?releaseid=3825.

II.     **The Motions Are Supported By Evidence**

The Special Counsel's Office has relied on media reports from the *Washington Post* and other sources throughout this case when the prosecution approved of the reports' substance.[7] Because President Trump relies on two articles the Office appears not to like, at least in public, the prosecution seeks to relegate them to the level of "spurious allegations contrived from two newspaper articles citing anonymous sources." Doc. 141 at 1. The Court should see through that ploy.

The reports at issue are not, as the prosecution claims, based on "rumor and innuendo." Doc. 141 at 6. The *Washington Post* article is "based on internal documents, court files, congressional records, handwritten contemporaneous notes, and interviews with more than two dozen current and former prosecutors, investigators, and others with knowledge of the probe." Doc. 116-1 at 3. The *New York Times* article is attributed to "interviews with more than a dozen people, including officials in the Biden administration and people with knowledge of the president's thinking, all of whom asked for anonymity to discuss private conversations." Doc. 116-2 at 2. For example, President Biden's instruction that President Trump "should be prosecuted" is sourced to "two people familiar with his comments." *Id.*

Citing *United States v. Khanu*, 664 F. Supp. 2d 28 (D.D.C. 2009), the prosecution argues that the media reports are "insufficient." Doc. 141 at 10. In *Khanu*, the court found that the defendant's evidence was "too far removed from the actual prosecuting authorities in this case." 664 F. Supp. at 34. Here, the proffered evidence directly implicates President Biden as well as the line prosecutors. Accordingly, in the absence of first-hand declarations to the contrary, there is no

---

[7] *See, e.g.*, Doc. 97 at 10; Doc. 109 at 30; Doc. 140 at 11.

basis for disregarding or diminishing the evidence submitted by President Trump in support of his motions.

## III.    The Presumption of Regularity Does Not Apply

The presumption of regularity that the Special Counsel seeks to hide behind is entitled to no weight under these circumstances.  *See, e.g.*, Doc. 141 at 2, 4.  The presumption arises in ordinary cases because prosecutors "are designated by statute as the President's delegates to help him discharge his constitutional responsibility" under the Take Care Clause, *i.e.*, every president's constitutional obligation to "take Care that the Laws be faithfully executed."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996); U.S. Const., Art. II, § 3.  In this case, President Biden has driven a prosecution that is wholly inconsistent with that Clause and is instead motivated by a constitutionally prohibited desire to pursue election interference by punishing President Trump for his protected speech, his decision to run for office, and his status as the leading candidate in the 2024 election.  The evidence also demonstrates that the prosecutors at times acted based on a similar political bias, which led them to make unsupported assertions and press for investigative steps that violated the Constitution.  Thus, there exists the type of "clear evidence to the contrary" that warrants setting aside the presumption of regularity.  *Armstrong*, 517 U.S. at 464 (cleaned up).

## IV.    The Motion Establishes a *Prima Facie* Cases of Selective Prosecution

Once the presumption is appropriately stripped way, this extraordinary fact pattern, coupled with the history of prosecutorial inaction in connection with controversial presidential transitions and other elections, is sufficient for President Trump to make out a *prima facie* case of selective prosecution.

The case is unconstitutionally "selective" and motivated by a "discriminatory purpose," *United States v. Eshetu*, 2023 WL 7384996, at *12 (D.D.C. 2023), because the Biden

7

administration singled out President Trump based on unconstitutional considerations and the Special Counsel's Office has acted at President Biden's inappropriate direction. The Office claims that none of the seven other elections identified by President Trump as comparators "involved deceitful and corrupt efforts to defeat a government function or block the certification of the legitimate results of a presidential election." Doc. 141 at 7. However, a law review article cited by the Office describes the 1800 election as having involved protracted and intentional delay by Federalists in the House of Representatives, "a growing threat of indefinite deadlock," and "fear of a constitutional crisis and possible armed revolt." Rami Fakhouri, *The Most Dangerous Blot in Our Constitution: Retiring the Flawed Electoral College 'Contingent Procedure'*, 104 Nw. U. L. Rev. 705, 717-18 (2010), *cited in* Doc. 139 at 57. The prosecutors' efforts to distinguish the 1800 election boil down to a wrongful political judgment, in a politically motivated case, that Jefferson's "conviction" regarding the outcome was sincere, whereas President Trump's was not. *See* Doc. 139 at 56. Similar self-serving, discretionary judgments pervade the Office's efforts to distinguish the other six elections cited by President Trump. These are not the sort of distinctions that can defeat a selective prosecution motion in light of the record regarding the investigation and prosecution at issue.

Seeking to deflect, the Special Counsel's Office declares that individuals prosecuted in the physical-presence cases relating to January 6 are "obvious comparators closer at hand." Doc. 141 at 8. However, none of those cases involved the package of charges levied against President Trump or focused on speaking out against election fraud and irregularities, as opposed to physically entering the Capitol. Consequently, even the politically motivated prosecutors responsible for this case did not dare bring the seditious conspiracy charge that Sherwin pre-selected. Moreover, the prosecution's impermissible motives are laid bare by the citation to the *Rhodes* case. Doc. 141 at

8.  In March 2022, before President Biden's declaration that President Trump must be prosecuted, DOJ prosecutors argued that Rhodes acted independently of President Trump.  *See, e.g.*, Doc. 156 at 12 (prosecutor describing evidence of "an intent to fight to stop that result with or without somebody like President Trump calling them into action"); *see also id.* (prosecutor arguing in summation that "Mr. Rhodes was clear in these open letters that if President Trump didn't take action, he and his co-conspirators would," and that "[t]he President didn't take action").  Now that President Trump is the leading candidate in the 2024 election, the prosecution argues that President Trump and Rhodes are similarly situated.  This tack only supports President Trump's motion.

V.    **The Motion Establishes a *Prima Facie* Cases of Vindictive Prosecution**

President Trump has also made the required showing of vindictiveness.  A case cited by the Special Counsel's Office establishes that a defendant can meet his burden through evidence that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'"  *See* Doc. 141 at 4-5 (quoting *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000)).  That is precisely what President Trump has demonstrated through President Biden's public statements and news reports based on leaks from former members of the prosecution team.  The Special Counsel is President Biden's stalking horse in highly publicized cases in this District and in Florida, and line prosecutors took politically biased steps during the investigation that suggest they also have personal stakes in the outcome.  *See United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987) ("[A] presumption of vindictiveness will lie in the pretrial setting if the defendant presents facts sufficient to show a realistic likelihood of vindictiveness."); *United States v. Slatten*, 865 F.3d 767, 799-800 (D.C. Cir. 2017) (reasoning that "particularly in an important, highly publicized case, a prosecutor being but human may have a personal stake in obtaining a conviction and a motivation to engage in self-vindication" serve as "additional facts that support the finding of a presumption" of vindictiveness).  The inference of

vindictiveness is further supported by the fact that—before President Trump declared his candidacy and President Biden urged for his prosecution—DOJ declined a proposal by the National Archives to investigate the use of electors in the 2020 election and alleged "documents that Trump used to pressure Pence not to certify the election for Biden." Doc. 116-1 at 6; *see also id.* at 9 (noting that "the FBI wasn't ready to move forward" on so-called "fake electors" following Windom's November 2021 presentation).

The Special Counsel's Office contends that an inference of vindictiveness is less appropriate in pretrial settings, such as this one, because this is "a time when the prosecutor's assessment of the proper extent of prosecution may not have crystallized." Doc. 141 at 5. To the extent the prosecutors' "crystallization" is relevant, it only supports dismissal. The Office recently suggested that it will seek to offer evidence of the January 6 violence at the Capitol at trial in this case, which is a position the prosecution announced only after President Trump made public statements criticizing the prosecution and filed pretrial motions defending himself.

## VI.    At Minimum, Fact Finding Is Necessary to Resolve These Motions

The prosecution suggests that President Trump must provide "exceptionally clear proof" to obtain a hearing on these motions. Doc. 141 at 10. That is not the law. *See, e.g.*, *United States v. Bass*, 536 U.S. 862, 863 (2002) ("[A] defendant who seeks discovery on a claim of selective prosecution must show *some evidence* of both discriminatory effect and discriminatory intent." (emphasis added)); *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 175 (D.D.C. 2020) (applying selective-prosecution standard for discovery to vindictive prosecution claim).

On the selective prosecution motion, some courts have "lowered the standard for discovery in selective-enforcement cases by jettisoning the 'similarly situated' requirement for the discriminatory-effect prong and abandoning the discriminatory-intent prong entirely." *Eshetu*,

2023 WL 7384996, at *12.  Regardless, under either formulation, President Trump has met the "some evidence" standard.  *See, e.g.*, *United States v. Rashed*, 234 F.3d 1280, 1286 (D.C. Cir. 2000) ("[A]s a condition of discovery, to adduce 'some evidence tending to show the essential elements of' the defense . . . ." (quoting *Armstrong*, 517 U.S. at 462)).  President Trump has also established a "realistic likelihood of vindictiveness," which the prosecution must "attempt to rebut" through actual evidence rather than unsworn assertions in a memorandum of law.  *Slatten*, 865 F.3d at 799.

Finally, the Special Counsel's Office professes confusion about what the fact finding "would entail" and claims that it requires a "rough[] sketch."  Doc. 141 at 14.  The Supreme Court has provided one, in a case the Office cited: "the Government must assemble from its own files documents which might corroborate or refute the defendant's claim."  *Armstrong*, 517 U.S. at 464. So too have our discovery requests.  *See* Ex. 2 (10/23/23 Requests 10-12, 24, 39-40, 43, 55).  There is no mystery about what the prosecution must do if it seeks to establish that this case is based on permissible motives, which it clearly is not.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in our opening brief, President Trump respectfully submits that the indictment should be dismissed on the basis of selective and vindictive prosecution.  In the alternative, the Court should hold a hearing to develop the record regarding due process violations by the Special Counsel's Office.

Dated: November 22, 2023                                      Respectfully submitted,

                                                                                    */s/ Todd Blanche*
John F. Lauro, Esq.                                               Todd Blanche, Esq. (PHV)
D.C. Bar No. 392830                                            ToddBlanche@blanchelaw.com
jlauro@laurosinger.com                                       Emil Bove, Esq. (PHV)
Gregory M. Singer, Esq. (PHV)                        Emil.Bove@blanchelaw.com
gsinger@laurosinger.com                                  BLANCHE LAW PLLC
LAURO & SINGER                                            99 Wall St., Suite 4460
400 N. Tampa St., 15th Floor                            New York, NY 10005
Tampa, FL 33602                                               (212) 716-1250
(813) 222-8990

*Counsel for President Donald J. Trump*