APPEAL,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:23−cr−00257−TSC</u>−1

Case title: USA v. TRUMP                    Date Filed: 08/01/2023

Assigned to: Judge Tanya S. Chutkan

Appeals court case number: 23−3190

**<u>Defendant (1)</u>**

**DONALD J. TRUMP**          represented by    **John F. Lauro**
LAURO & SINGER
400 N. Tampa Street
15th Floor
Tampa, FL 33602
(813) 222−8990
Fax: (813) 222−8991
Email: jlauro@laurosinger.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Emil Bove**
BLANCHE LAW
99 Wall Street, Suite 4460
New York, NY 10005
212−716−1250
Email: emil.bove@blanchelaw.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Filzah I. Pavalon**
LAURO & SINGER
400 N. Tampa Street
15th Floor
Tampa, FL 33602
(813) 222−8990
Fax: (813) 222−8991
Email: fpavalon@laurosinger.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Todd Blanche**
BLANCHE LAW

99 Wall Street
New York, NY 10005
(212) 716–1250
Email: toddblanche@blanchelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

**Pending Counts**

18 U.S.C. 371; CONSPIRACY
TO DEFRAUD THE UNITED
STATES; Conspiracy to Defraud
the United States
(1)

18 U.S.C. 1512(k);
TAMPERING WITH WITNESS,
VICTIM, OR AN INFORMANT;
Conspiracy to Obstruct an
Official Proceeding
(2)

18 U.S.C. 1512(c)(2), 2;
TAMPERING WITH A
WITNESS, VICTIM OR
INFORMANT; Obstruction of,
and Attempt to Obstruct, an
Official Proceeding
(3)

18 U.S.C. 241; CONSPIRACY
AGAINST RIGHTS OF
CITIZENS; Conspiracy Against
Rights
(4)

**Highest Offense Level
(Opening)**

Felony

**Terminated Counts**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**

None

**Disposition**

**Disposition**

**Disposition**

**Plaintiff**

**USA**                                    represented by  **J.P. Cooney**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7281
Email: joseph.cooney@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**James Pearce**
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION APPELLATE
SECTION
Department of Justice, Criminal Division
950 Pennsylvania Ave NW
Suite 1250
Washington, DC 20530
(202) 532–4991
Fax: (202) 305–2121
Email: james.pearce@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Molly Gulland Gaston**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7803
Email: molly.gaston@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Thomas Windom**
555 Fourth Street NW
Washington, DC 20530
202–252–7846
Email: thomas.windom@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**John M. Pellettieri**
Special Counsel's Office
950 Pennsylvania Avenue NW

Rm. B–206
Washington, DC 20530
202–714–3913
Email: john.pellettieri@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2023 | 1 | INDICTMENT as to DONALD J. TRUMP (1) count(s) 1, 2, 3, 4. (zltp) (Entered: 08/01/2023) |
| 08/01/2023 | 3 | MOTION to Seal Case by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(zltp) (Entered: 08/01/2023) |
| 08/01/2023 | 4 | ORDER granting 3 Motion to Seal Case as to DONALD J. TRUMP (1). Signed by Magistrate Judge Moxila A. Upadhyaya on 8/1/2023. (zltp) (Entered: 08/01/2023) |
| 08/01/2023 | | Case unsealed as to DONALD J. TRUMP (zltp) (Entered: 08/01/2023) |
| 08/03/2023 | 5 | NOTICE OF ATTORNEY APPEARANCE: John F. Lauro appearing for DONALD J. TRUMP (Lauro, John) (Entered: 08/03/2023) |
| 08/03/2023 | 7 | MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC–10252226. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/03/2023) |
| 08/03/2023 | 8 | Summons Returned Executed on 8/3/2023 as to DONALD J. TRUMP. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | | MINUTE ORDER as to Donald J. Trump: As required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland and its progeny. Not doing so in a timely manner may result in sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges and contempt proceedings.Signed by Magistrate Judge Moxila A. Upadhyaya on 8/3/2023. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | | ORAL MOTION for Speedy Trial by USA as to DONALD J. TRUMP. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: Return on Summons/Initial Appearance/Arraignment as to Counts 1,2,3,4 held on 8/3/2023. Plea of Not Guilty entered as to all counts. The Court advised the Government of its due process obligation under Rule 5(f).Status Conference set for 8/28/2023 at 10:00 AM in Courtroom 9– In Person before Judge Tanya S. Chutkan. Bond Status of Defendant: Defendant Remain on Personal Recognizance; Court Reporter: Jeff Hook; Defense Attorney: John Lauro and Todd Blanche; US Attorney: Thomas Windom and Molly Gaston; Pretrial Officer: Takeysha Robinson. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | | MINUTE ORDER as to DONALD J. TRUMP: A status conference will be held in this matter on August 28, 2023 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. The court waives the requirement for Defendant to appear at that conference. It is hereby ORDERED that Defendant shall file any motion for excluding the time until the next status conference from the Speedy Trial Act clock by August 8, |

| | | |
|---|---|---|
| | | 2023; and that the government shall file any opposition to that motion by August 13, 2023. It is FURTHER ORDERED that by August 10, 2023, the government shall file a brief proposing a trial date and providing an estimate of the time required to set forth the prosecution's case in chief during that trial; and that by August 17, 2023, Defendant shall file a response brief likewise proposing a trial date and estimating, to the extent possible, the time required to set forth the defense at trial. Signed by Judge Tanya S. Chutkan on 8/3/2023. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | 13 | ORDER Setting Conditions of Release as to DONALD J. TRUMP (1) Personal Recognizance. Signed by Magistrate Judge Moxila A. Upadhyaya on 8/3/2023. (Attachment: # 1 Appearance Bond) (znjb) (Entered: 08/07/2023) |
| 08/04/2023 | 9 | MOTION for Leave to Appear Pro Hac Vice Filzah I. Pavalon Filing fee $ 100, receipt number ADCDC–10255735. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/04/2023) |
| 08/04/2023 | 10 | MOTION for Protective Order by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Gaston, Molly) (Entered: 08/04/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by 5:00 PM on August 7, 2023, Defendant shall file a response to the government's 10 Motion for Protective Order, stating Defendant's position on the Motion. If Defendant disagrees with any portion of the government's proposed Protective Order, ECF No. 10–1, his response shall include a revised version of that Protective Order with any modifications in redline. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 9 Motion for Leave to Appear Pro Hac Vice. Filzah I. Pavalon is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/05/2023 | 11 | MOTION for Extension of Time to File Response/Reply as to 10 MOTION for Protective Order , MOTION for Hearing by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Lauro, John) (Entered: 08/05/2023) |
| 08/05/2023 | 12 | RESPONSE by USA as to DONALD J. TRUMP re 11 MOTION for Extension of Time to File Response/Reply as to 10 MOTION for Protective Order MOTION for Hearing (Gaston, Molly) (Entered: 08/05/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's 11 Motion for Extension of Time is hereby DENIED. Defendant may continue to confer with the government regarding its proposed protective order before or after the August 7, 2023 5:00 PM deadline for his response. The court will determine whether to schedule a hearing to discuss the proposed protective order after reviewing Defendant's response and, if included, his revised proposed protective order with modifications in redline. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/06/2023 | | Set/Reset Deadline as to DONALD J. TRUMP: Defendant shall file a response to the government's 10 Motion for Protective Order, stating Defendant's position on the Motion by 5:00 PM on August 7, 2023. If Defendant disagrees with any portion of the government's proposed Protective Order, (Dkt. #10–1), his response shall include a revised version of that Protective Order with any modifications in redline. (jth) (Entered: 08/06/2023) |

| 08/07/2023 | 14 | RESPONSE by DONALD J. TRUMP re 10 MOTION for Protective Order (Lauro, John) (Entered: 08/07/2023) |
| 08/07/2023 | 15 | REPLY in Support by USA as to DONALD J. TRUMP re 10 MOTION for Protective Order (Gaston, Molly) (Entered: 08/07/2023) |
| 08/07/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of the government's 10 Motion for Protective Order and Defendant's 14 Response, as well as the government's 15 Reply, the court will schedule a hearing on the parties' respective proposals. The court will waive the requirement of Defendant's appearance. Accordingly, it is hereby ORDERED that no later than 3:00 PM on August 8, 2023, the parties shall meet and confer and file a joint notice of two dates and times on or before August 11, 2023 when both parties are available for a hearing. Signed by Judge Tanya S. Chutkan on 08/07/2023. (lcss) (Entered: 08/07/2023) |
| 08/08/2023 | | Set/Reset Deadline as to DONALD J. TRUMP: by 3:00 PM on 8/8/2023, the parties shall meet and confer and file a joint notice of two dates and times on or before 8/11/2023 when both parties are available for a hearing. (jth) (Entered: 08/08/2023) |
| 08/08/2023 | 16 | TRANSCRIPT OF RETURN ON SUMMONS/INITIAL APPEARANCE/ARRAIGNMENT in case as to DONALD J. TRUMP before Magistrate Judge Moxila A. Upadhyaya held on August 3, 2023. Page Numbers: 1 – 24. Date of Issuance: August 8, 2023. Court Reporter: Jeff Hook. Contact Information: 202–354–3373 | jeff_hook@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/29/2023. Redacted Transcript Deadline set for 9/8/2023. Release of Transcript Restriction set for 11/6/2023.(Hook, Jeff) (Entered: 08/08/2023) |
| 08/08/2023 | 17 | NOTICE *by the Parties in Response to Court's August 7, 2023 Minute Order* by USA as to DONALD J. TRUMP re Order,, (Gaston, Molly) (Entered: 08/08/2023) |
| 08/08/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The court hereby schedules a hearing on the parties' respective protective order proposals in this matter on August 11, 2023 at 10:00 AM in Courtroom 9. The requirement of Defendant's appearance is waived for this hearing. Signed by Judge Tanya S. Chutkan on 08/08/2023. (lcc) (Entered: 08/08/2023) |
| 08/08/2023 | 18 | MOTION to Exclude *Time Under Speedy Trial Act* by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Granting Motion)(Lauro, John) (Entered: 08/08/2023) |
| 08/09/2023 | | |

| | | |
|---|---|---|
| | | Set/Reset Hearing as to DONALD J. TRUMP: A Hearing on the Parties' Respective Protective Order Proposals is set for August 11, 2023, at 10:00 AM in Courtroom 9. before Judge Tanya S. Chutkan. The requirement of Defendant's appearance is waived for this hearing. (jth) (Entered: 08/09/2023) |
| 08/09/2023 | 19 | ENTERED IN ERROR.....NOTICE *Updated Certificate of Good Standing* by DONALD J. TRUMP re 7 MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC−10252226. Fee Status: Fee Paid. (Lauro, John) Modified on 8/9/2023 (zhsj). (Entered: 08/09/2023) |
| 08/09/2023 | | NOTICE OF ERROR as to DONALD J. TRUMP regarding 19 Notice (Other). The following error(s) need correction: Incorrect format (Letter)– correspondence is not permitted (LCrR 49(f)(4)). Please refile as a Notice of Filing attaching your Certificate of Good Standing to a Notice of Filing Document Containing the Caption of the Court. (zhsj) (Entered: 08/09/2023) |
| 08/09/2023 | 20 | NOTICE *of Filing* by DONALD J. TRUMP re 7 MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC−10252226. Fee Status: Fee Paid. (Lauro, John) (Entered: 08/09/2023) |
| 08/09/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 7 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions as to DONALD J. TRUMP (1). Signed by Magistrate Judge Moxila A. Upadhyaya on 8/9/2023. (zcll) (Entered: 08/09/2023) |
| 08/09/2023 | 21 | NOTICE OF ATTORNEY APPEARANCE: Filzah Pavalon appearing for DONALD J. TRUMP (Pavalon, Filzah) (Entered: 08/09/2023) |
| 08/10/2023 | 22 | MOTION for Leave to Appear Pro Hac Vice Gregory M. Singer Filing fee $ 100, receipt number ADCDC−10266892. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/10/2023) |
| 08/10/2023 | 23 | RESPONSE TO ORDER OF THE COURT by USA as to DONALD J. TRUMP re Order,,,, Set Deadlines,,, *Government's Response to Court's August 3, 2023 Minute Order* (Gaston, Molly) (Entered: 08/10/2023) |
| 08/10/2023 | 25 | MOTION for Hearing *Pursuant to Classified Information Procedures Act* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Windom, Thomas) (Entered: 08/10/2023) |
| 08/10/2023 | 26 | Memorandum in Opposition by USA as to DONALD J. TRUMP re Motion for Speedy Trial, 18 Motion to Exclude (Gaston, Molly) (Entered: 08/10/2023) |
| 08/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 22 Motion for Leave to Appear Pro Hac Vice. Gregory M. Singer is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 08/10/2023. (lcc) (Entered: 08/10/2023) |
| 08/10/2023 | 27 | NOTICE OF ATTORNEY APPEARANCE: Todd Blanche appearing for DONALD J. TRUMP (Blanche, Todd) (Entered: 08/10/2023) |
| 08/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 24 Sealed Motion for Leave to Submit Exhibit Ex Parte and Under Seal is hereby DENIED without prejudice. Signed by Judge Tanya S. Chutkan on 8/10/2023. (zjd) (Entered: |

| | | |
|---|---|---|
| | | 08/10/2023) |
| 08/11/2023 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Hearing on the Parties' Respective Protective Order Proposals as to DONALD J. TRUMP held on 8/11/2023. The Court shall issue a protective order consistent with the rulings made on the record. Oral Order of the Court granting Government's 25 Motion for Pretrial Conference Pursuant to the Classified Information Procedures Act. This hearing shall proceed on August 28, 2023 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. Bond Status of Defendant: remains on Personal Recognizance; Court Reporter: Bryan A. Wayne; Defense Attorneys: John F. Lauro, Gregory M. Singer, and Todd Blanche; US Attorneys: Thomas Windom and Molly G. Gaston. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 25 Motion for Hearing Pursuant to Classified Information Procedures Act (CIPA) is GRANTED. Defense counsel consented to the motion during the August 11, 2023 hearing. Accordingly, the court will hold a hearing pursuant to CIPA Section 2 during the status conference currently scheduled for August 28, 2023. Signed by Judge Tanya S. Chutkan on 8/11/2023. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | 28 | PROTECTIVE ORDER GOVERNING DISCOVERY AND AUTHORIZING DISCLOSURE OF GRAND JURY TESTIMONY as to DONALD J. TRUMP. Consistent with the rulings made on the record during the hearing on August 11, 2023, the Court grants in part and denies in part the Government's 10 Motion for Protective Order. Signed by Judge Tanya S. Chutkan on 8/11/2023. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | 29 | TRANSCRIPT OF HEARING ON PROTECTIVE ORDER in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on August 11, 2023; Page Numbers: 1–73. Date of Issuance: 8/11/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/1/2023. Redacted Transcript Deadline set for 9/11/2023. Release of Transcript Restriction set for 11/9/2023.(Wayne, Bryan) (Main Document 29 replaced on 8/23/2023) (zhsj). (Entered: 08/11/2023) |
| 08/17/2023 | 30 | RESPONSE TO ORDER OF THE COURT by DONALD J. TRUMP re Order,,,, Set Deadlines,,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Lauro, John) (Entered: 08/17/2023) |
| 08/21/2023 | 31 | MOTION for Leave to File *Reply Brief* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed Order)(Windom, Thomas) |

| | | |
|---|---|---|
| | | (Entered: 08/21/2023) |
| 08/21/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 31 Motion for Leave to File Reply is hereby GRANTED. The government may file a reply in support of its brief proposing a trial date by August 22, 2023. The reply brief shall be limited to six pages. Signed by Judge Tanya S. Chutkan on 8/21/2023. (zjd) (Entered: 08/21/2023) |
| 08/21/2023 | 32 | RESPONSE TO ORDER OF THE COURT by USA as to DONALD J. TRUMP re Order,,,, Set Deadlines,,, Order on Motion for Leave to File,, Set/Reset Deadlines, *(Reply Brief)* (Windom, Thomas) (Entered: 08/21/2023) |
| 08/21/2023 | 40 | LEAVE TO FILE DENIED–Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 41 | LEAVE TO FILE DENIED– Motion for Judicial Notice Affidavit of Victor Shorkin as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 42 | LEAVE TO FILE DENIED–Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 43 | LEAVE TO FILE DENIED–Petition for a Writ of Habeas Corpus as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 44 | LEAVE TO FILE DENIED– Galaxy Bar Association as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart |

| | | |
|---|---|---|
| | | from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 45 | LEAVE TO FILE DENIED– Amicus Curiae in Support of Donald Trump as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 46 | LEAVE TO FILE DENIED– Moton of Former Judges and Senior Legal Officials for Leave to File an Amicus Curiae Brief in Support of Government Proposed Trial Date and Schedule as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 81 | LEAVE TO FILE DENIED– MOTION TO INTERVENE THE OUTCOME OF CASE AFFECTS DAVID REGINALD HERON AFTER MOTION INTERVENE GRANTED [DAVID FILE SEPARATE MOTION – RULING TO HIRE ATTORNEY] as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 10/06/2023) |
| 08/22/2023 | 33 | Consent MOTION to Appoint a Classified Information Security Officer by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed Order)(Windom, Thomas) (Entered: 08/22/2023) |
| 08/22/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 33 Consent Motion to Appoint a Classified Information Security Officer is hereby GRANTED. The court will issue a separate sealed order designating the Officer and any alternate Officers. Signed by Judge Tanya S. Chutkan on 8/22/2023. (zjd) (Entered: 08/22/2023) |
| 08/22/2023 | 35 | Unopposed MOTION for Protective Order *Pursuant to the Classified Information Procedures Act* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed CIPA Protective Order)(Windom, Thomas) (Entered: 08/22/2023) |
| 08/22/2023 | 37 | ORDER as to DONALD J. TRUMP granting 35 Unopposed MOTION for Protective Order Pursuant to the Classified Information Procedures Act. Signed by Judge Tanya S. Chutkan on 8/22/2023. (zjd) (Entered: 08/22/2023) |
| 08/28/2023 | | |

| | | |
|---|---|---|
| | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference and Hearing Pursuant to Classified Information Procedures Act (CIPA) as to DONALD J. TRUMP held on 8/28/2023. In the interests of justice (XT), and for the reasons stated on the record, the Court grants Defendant's 18 Motion for Exclusion of Time Under Speedy Trial Act. The time from 8/3/2023 through and including 8/28/2023 shall be excluded in computing the date for speedy trial in this case. Jury Trial in this matter is set for March 4, 2024 at 9:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Bond Status of Defendant: appearance waived, remains on personal recognizance; Court Reporter: Bryan Wayne; Defense Attorneys: John F. Lauro and Todd Blanche; US Attorneys: Molly G. Gaston and Thomas Windom. (zjd) (Entered: 08/28/2023) |
| 08/28/2023 | 38 | TRANSCRIPT OF 8/28/23 STATUS HEARING in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on August 28, 2023; Page Numbers: 1–61. Date of Issuance: 8/28/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 9/18/2023. Redacted Transcript Deadline set for 9/28/2023. Release of Transcript Restriction set for 11/26/2023.(Wayne, Bryan) (Entered: 08/28/2023) |
| 08/28/2023 | 39 | PRETRIAL ORDER as to DONALD J. TRUMP: Upon consideration of the parties' Proposed Briefing Schedules 23 30 32 , the court hereby sets the following pretrial schedule. All pre–trial motions, excluding motions in limine, due 10/9/23, oppositions due 10/23/23, and replies due 11/6/23. Motions in limine and Suppression Motions due 12/27/23, oppositions due 1/9/24, and replies due 1/22/24. Not later than 12/4/23, the government shall provide notice of evidence it intends to offer pursuant to Fed. R. Evid. 404(b). Parties shall exchange expert witnesses on 12/11/23. Parties shall exchange exhibit lists by 12/18/23 and file any objections to exhibits by 1/3/24; replies due 1/9/24. Proposed jury instructions and voir dire questions due 1/15/24. Parties shall exchange witness lists by 2/19/24. Trial will commence on 3/4/24 at 9:30 a.m. in Courtroom 9 unless otherwise specified. See Order for additional details and instructions. Signed by Judge Tanya S. Chutkan on 8/28/2023. (zjd) **Modified on 10/6/2023: See 82 Opinion and Order for amendments made to this order. Modified on 11/7/2023: See 146 Opinion and Order for further amendments to this order.** (zjd). (Entered: 08/28/2023) |
| 09/05/2023 | | VACATED PURSUANT TO MINUTE ORDER FILED 9/5/2023.....MINUTE ORDER as to DONALD J. TRUMP: The Government's 47 Motion for Leave to File Unredacted Motion Under Seal, and to File Redacted Motion on Public Docket is hereby GRANTED. The Clerk of the Court is directed to file under seal the |

| | | |
|---|---|---|
| | | unredacted copy of the Government's Motion (ECF No. 47–1), attaching Exhibit 1 to the Government's Motion (ECF No. 47–2). The Clerk of the Court is further directed to file on the public docket the redacted copy of the Government's Motion (ECF No. 47–3), attaching a placeholder sheet for Exhibit 1 to the Motion (ECF No. 47–4), and the two proposed orders referenced in the Motion (ECF Nos. 47–5 and 47–6). Signed by Judge Tanya S. Chutkan on 9/5/2023. (zjd) Modified on 9/5/2023 (zjd). (Entered: 09/05/2023) |
| 09/05/2023 | <u>48</u> | MOTION to Vacate by DONALD J. TRUMP. (Lauro, John) (Entered: 09/05/2023) |
| 09/05/2023 | <u>49</u> | Memorandum in Opposition by USA as to DONALD J. TRUMP re <u>48</u> Motion to Vacate (Gaston, Molly) (Entered: 09/05/2023) |
| 09/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's <u>48</u> Motion to Vacate is hereby GRANTED. The court's previous Minute Order of September 5, 2023 is VACATED. Defendant shall respond to the government's <u>47</u> Motion for Leave to File by September 11, 2023; the government may file a Reply by September 13, 2023. Any opposition or reply may be filed under seal. Going forward, all motions, including motions for leave to file, must (1) indicate whether the movant has conferred with opposing counsel, and (2) state the nonmovant's position on the motion, if known. As it has done here, the court may require briefing on motions for leave to file under seal on a timeline shorter than the default periods provided for in the Local Criminal Rules. However, all such briefing may be filed under seal without further order of the court. Signed by Judge Tanya S. Chutkan on 9/5/2023. (zjd) (Entered: 09/05/2023) |
| 09/11/2023 | <u>50</u> | MOTION for Recusal by DONALD J. TRUMP. (Attachments: # <u>1</u> Exhibit Transcript Excerpt 1, # <u>2</u> Exhibit Transcript Excerpt 2)(Lauro, John) (Entered: 09/11/2023) |
| 09/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of Defendant's <u>50</u> Motion for Recusal, it is hereby ORDERED that the government shall file any opposition no later than September 14, 2023, and the defense shall file any reply within three calendar days from the filing date of the government's opposition. All other deadlines set by the court remain in effect. Defense counsel is reminded of the requirement to confer with opposing counsel before filing any motion and to indicate whether the motion is opposed. See 09/05/2023 Second Minute Order. Future motions that fail to comply with that requirement may be denied without prejudice. Signed by Judge Tanya S. Chutkan on 9/11/2023. (zjd) (Entered: 09/11/2023) |
| 09/13/2023 | <u>77</u> | LEAVE TO FILE DENIED–Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | <u>78</u> | LEAVE TO FILE DENIED–Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretionto permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedurenor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the courtdoes not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |

| 09/13/2023 | 79 | LEAVE TO FILE DENIED– Petition for a Writ of Habeas Corpus Continued Application to Arrest Protective Order Dated: 8/11/23 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time,the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
|---|---|---|
| 09/13/2023 | 80 | LEAVE TO FILE DENIED–Letter Regarding Defendant's Right to Attend Trial as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courtshave in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinaryprocedural course by permitting this filing" Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | 83 | LEAVE TO FILE DENIED–Motion to Decriminalize as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | 84 | LEAVE TO FILE DENIED– Petition for Intervention as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/14/2023 | 53 | MOTION FOR BRIEFING SCHEDULE as to DONALD J. TRUMP. (Lauro, John) Modified on 9/15/2023 (zhsj). (Entered: 09/14/2023) |
| 09/14/2023 | 54 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 50 Motion for Recusal (Gaston, Molly) (Entered: 09/14/2023) |
| 09/15/2023 | 55 | Opinion and Order as to DONALD J. TRUMP granting the government's 47 Motion for Leave to File Unredacted Motion Under Seal, and to File Redacted Motion on Public Docket, and granting in part and denying in part Defendant's 53 Motion for Briefing Schedule. Defendant shall file any Opposition to the government's substantive Motion by September 25, 2023, and the government shall file any Reply by September 30, 2023. The Clerk of the Court is directed to file under seal the unredacted copy of the government's substantive Motion (ECF No. 47–1), attaching Exhibit 1 to the that Motion (ECF No. 47–2) under seal as well. The Clerk of the Court is further directed to file on the public docket the redacted copy of the government's Motion (ECF No. 47–3), attaching a placeholder sheet for Exhibit 1 to the Motion (ECF No. 47–4), and attaching the two proposed orders referenced in the Motion (ECF Nos. 47–5 and 47–6). Finally, the Clerk of the Court is directed to unseal Defendant's motion, ECF No. 53. See Order for details. Signed by Judge Tanya |

| | | |
|---|---|---|
| | | S. Chutkan on 9/15/2023. (zjd) (Entered: 09/15/2023) |
| 09/15/2023 | 57 | MOTION to Ensure that Extrajudicial Statements Do Not Prejudice these Proceedings by USA as to DONALD J. TRUMP. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order Exhibit 47–5, # 3 Text of Proposed Order Exhibit 47–6) (zhsj) (Attachment 2 replaced on 9/21/2023) (zhsj). (Entered: 09/15/2023) |
| 09/17/2023 | 58 | REPLY in Support by DONALD J. TRUMP re 50 MOTION for Recusal (Lauro, John) (Entered: 09/17/2023) |
| 09/25/2023 | 59 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Attachments: # 1 Cover Sheet)(Gaston, Molly) (Entered: 09/25/2023) |
| 09/25/2023 | 60 | Memorandum in Opposition by DONALD J. TRUMP re 57 Motion for Miscellaneous Relief, (Lauro, John) (Entered: 09/25/2023) |
| 09/27/2023 | 61 | MEMORANDUM OPINION and ORDER as to DONALD J. TRUMP denying 50 Defendant's Motion for Recusal of District Judge Pursuant to 28 U.S.C. § 455(a). See attached memorandum opinion and order for full details. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zjd) (Entered: 09/27/2023) |
| 09/27/2023 | 62 | MOTION for Extension of Time to *File CIPA Sect. 5 and response to ex parte notice* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 09/27/2023) |
| 09/27/2023 | 67 | LEAVE TO FILE DENIED– Petition for Writ of Error Corum Noblis and Memorandum of Law in Support Thereof as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 68 | LEAVE TO FILE DENIED–Motion to Intervene as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 69 | LEAVE TO FILE DENIED– Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |

| 09/27/2023 | [70](#) | LEAVE TO FILE DENIED–Motion for Reconsideration of Order Date 8/21/2023 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | [71](#) | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | [72](#) | LEAVE TO FILE DENIED– Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised theirdiscretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicuscuriae briefs. At this time, the court does not find it necessaryto depart from the ordinary procedural course by permittingthis filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | [73](#) | LEAVE TO FILE DENIED– New Motion to Intervene–New Fresh Most Recent Evidence Relate 6/4/2009 &11/4/2008 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion topermit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | [86](#) | LEAVE TO FILE DENIED– Petition for Writ of Error Coram Nobis as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | [87](#) | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file anamicus curiae brief, the court is not persuaded thatfiling this |

| | | |
|---|---|---|
| | | submission is warranted. Although courtshave in rare instances exercised their discretion topermit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinaryprocedural course by permitting this filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 88 | LEAVE TO FILE DENIED– Proof of Service as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicuscuriae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 89 | LEAVE TO FILE DENIED– Motion for Reconsideration of Order Date 8/21/2023 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicuscuriae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 90 | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file anamicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courtshave in rare instances exercised their discretion topermit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court doesnot find it necessary to depart from the ordinaryprocedural course by permitting this filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 91 | LEAVE TO FILE DENIED– Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised theirdiscretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicuscuriae briefs. At this time, the court does not find it necessaryto depart from the ordinary procedural course by permittingthis filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 92 | LEAVE TO FILE DENIED– New Motion to Intervene–New Fresh Most Recent Evidence Relate 6/4/2009 &11/4/2008 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion topermit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicus curiae briefs. |

| | | |
|---|---|---|
| | | At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/28/2023 | 63 | MOTION for Extension of Time to *File Pretrial Motions* by DONALD J. TRUMP. (Lauro, John) (Entered: 09/28/2023) |
| 09/28/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 3, 2023, the government shall file any opposition to both Defendant's 62 Motion for Access to CIPA § 4 Filing and an Adjournment of the CIPA § 5 Deadline and Defendant's 63 Motion for Extension of Time to File Pretrial Motions; and that the defense shall file any reply within three calendar days from the filing date of the government's opposition. Signed by Judge Tanya S. Chutkan on 9/28/2023. (zjd) (Entered: 09/28/2023) |
| 09/29/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The court hereby schedules a hearing on the government's 57 Motion To Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings on October 16, 2023 at 10:00 AM in Courtroom 9. The requirement of Defendant's appearance is waived for this hearing. Signed by Judge Tanya S. Chutkan on 9/29/2023. (zjd) (Entered: 09/29/2023) |
| 09/29/2023 | 64 | REPLY in Support by USA as to DONALD J. TRUMP re 57 MOTION to Ensure that Extrajudicial Statements Do Not Prejudice these Proceedings (Gaston, Molly) (Entered: 09/29/2023) |
| 10/02/2023 | 65 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 62 Motion for Extension of Time to *File CIPA Section 5 and Response to Ex Parte Notice* (Windom, Thomas) (Entered: 10/02/2023) |
| 10/02/2023 | 66 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 63 Motion for Extension of Time to *File Pretrial Motions* (Windom, Thomas) (Entered: 10/02/2023) |
| 10/03/2023 | | MINUTE ORDER as to DONALD J. TRUMP: By October 10, 2023, defense counsel John F. Lauro and Gregory M. Singer shall initiate and complete all security clearance tasks as directed by the Litigation Security Group of the U.S. Department of Justice, and thereafter file a Notice of Compliance by October 11, 2023. The Notice shall also state whether the defense anticipates that any other of its members, whose assistance is reasonably required, will need to obtain a security clearance. Signed by Judge Tanya S. Chutkan on 10/3/2023. (zjd) (Entered: 10/03/2023) |
| 10/03/2023 | | Set/Reset Deadlines as to DONALD J. TRUMP: Notice of Compliance due by 10/11/2023. (mac) (Entered: 10/03/2023) |
| 10/04/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that court will hold an ex parte Classified Information Procedures Act hearing with the defense at a time and place arranged with defense counsel. Signed by Judge Tanya S. Chutkan on 10/4/2023. (zjd) (Entered: 10/04/2023) |
| 10/05/2023 | 74 | MOTION to Dismiss Case by DONALD J. TRUMP. (Lauro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 75 | REPLY in Support by DONALD J. TRUMP re 63 MOTION for Extension of Time to *File Pretrial Motions* (Lauro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 76 | REPLY in Support by DONALD J. TRUMP re 62 MOTION for Extension of Time to *File CIPA Sect. 5 and response to ex parte notice* (Lauro, John) (Entered: 10/05/2023) |

| 10/06/2023 | 82 | OPINION and ORDER as to DONALD J. TRUMP granting in part and denying in part Defendant's 62 Motion for Access to CIPA § 4 Filing and An Adjournment of the CIPA § 5 Deadline; granting in part and denying in part Defendant's 63 Motion for Extension of Time to File Pretrial Motions; and amending in part the court's 39 Pretrial Order. Defense objections to ex parte nature of government's CIPA § 4 submission due October 11, 2023; government response due October 18, 2023. Defense CIPA § 5 notice due on October 26, 2023, with supplemental notices due within 20 days of receiving access to additional classified discovery materials. Dispositive motions, including motions to dismiss, due October 23, 2023; oppositions due within 14 days of motion's filing; replies due within 10 days of opposition's filing. Rule 17(c) motions and motions to compel due November 9, 2023; oppositions due November 24, 2023; replies due December 1, 2023. See Opinion & Order for details. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zjd) **Modified on 11/7/2023: See 146 Opinion and Order for amendments to the deadlines set in this opinion and order. (zjd). (Entered: 10/06/2023)** |
|---|---|---|
| 10/06/2023 | 94 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal case which the Federal Rules of Criminal Procedure and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit". Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/06/2023 | 96 | LEAVE TO FILE DENIED– Petition for a Writ of Habeas Corpus, Continued Judge Chutkan Impermissibly Held First Amendment to be Unconstitutional as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/09/2023 | 85 | MOTION for Leave to Appear Pro Hac Vice Emil Bove Filing fee $ 100, receipt number ADCDC–10406576. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 10/09/2023) |
| 10/10/2023 | 93 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases, which the Federal Rules of Criminal Procedure and and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit".. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/10/2023 | 95 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases, which the Federal Rules of Criminal Procedure and and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit".. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) |

| | | (Entered: 10/10/2023) |
|---|---|---|
| 10/10/2023 | 97 | MOTION for Order for Fair and Protective Jury Procedures by USA as to DONALD J. TRUMP. (Gaston, Molly) (Entered: 10/10/2023) |
| 10/10/2023 | 98 | MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Windom, Thomas) (Entered: 10/10/2023) |
| 10/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 20, 2023, the defense shall file any opposition to the government's 97 Motion for Fair and Protective Jury Procedures and 98 Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense; and that the government shall file any reply in support of those motions by October 25, 2023. Signed by Judge Tanya S. Chutkan on 10/10/2023. (zjd) (Entered: 10/10/2023) |
| 10/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 85 Motion for Leave to Appear Pro Hac Vice. Emil Bove is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 10/11/2023. (zjd) (Entered: 10/11/2023) |
| 10/11/2023 | 99 | MOTION for Discovery *(PRE–TRIAL RULE 17(c) SUBPOENAS)* by DONALD J. TRUMP. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(Lauro, John) (Entered: 10/11/2023) |
| 10/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 25, 2023, the government shall file any opposition to Defendant's 99 Motion for Pre–Trial Rule 17(c) Subpoenas; and the defense shall file any reply in support of its motion by November 1, 2023. Signed by Judge Tanya S. Chutkan on 10/11/2023. (zjd) (Entered: 10/11/2023) |
| 10/11/2023 | 100 | NOTICE *of Compliance* by DONALD J. TRUMP re Order,,, Set Deadlines,, (Lauro, John) (Entered: 10/11/2023) |
| 10/11/2023 | 101 | MOTION to Access *CIPA Section 4 Filing* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 10/11/2023) |
| 10/13/2023 | 102 | NOTICE OF ATTORNEY APPEARANCE: Emil Bove appearing for DONALD J. TRUMP (Bove, Emil) (Entered: 10/13/2023) |
| 10/16/2023 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing as to DONALD J. TRUMP held on 10/16/2023 re 57 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings. Order forthcoming. Bond Status of Defendant: appearance waived, remains on personal recognizance; Court Reporter: Bryan Wayne; Defense Attorneys: John F. Lauro and Todd Blanche; US Attorneys: Molly G. Gaston and Thomas Windom. (zjd) (Entered: 10/16/2023) |
| 10/16/2023 | 103 | TRANSCRIPT OF MOTION HEARING in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on October 16, 2023; Page Numbers: 1–86. Date of Issuance: 10/16/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. |

| | | After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 11/6/2023. Redacted Transcript Deadline set for 11/16/2023. Release of Transcript Restriction set for 1/14/2024.(Wayne, Bryan) (Entered: 10/16/2023) |
|---|---|---|
| 10/16/2023 | 104 | NOTICE OF ATTORNEY APPEARANCE James Pearce appearing for USA. (Pearce, James) (Main Document 104 replaced on 10/17/2023) (zhsj). (Entered: 10/16/2023) |
| 10/17/2023 | 105 | OPINION and ORDER as to DONALD J. TRUMP: Granting in part and denying in part the government's 57 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings; and denying as moot the government's sealed 56 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings. Signed by Judge Tanya S. Chutkan on 10/17/2023. (zjd) Modified on 10/20/2023: Opinion and Order administratively stayed pursuant to Minute Order filed 10/20/2023 (zjd). Modified on 10/29/2023: Administrative stay lifted pursuant to 124 Opinion and Order (zjd). (Entered: 10/17/2023) |
| 10/17/2023 | 106 | NOTICE OF APPEAL (Interlocutory) by DONALD J. TRUMP re 105 Memorandum Opinion,, Order,. Filing fee $ 505, receipt number ADCDC–10425241. Fee Status: Fee Paid. Parties have been notified. (Lauro, John) (Entered: 10/17/2023) |
| 10/18/2023 | 107 | Transmission of the Notice of Appeal, 105 Opinion and Order, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid on 10/17/2023 as to DONALD J. TRUMP re 106 Notice of Appeal – Interlocutory. (zhsj) (Entered: 10/18/2023) |
| 10/18/2023 | | USCA Case Number as to DONALD J. TRUMP 23–3190 for 106 Notice of Appeal – Interlocutory filed by DONALD J. TRUMP. (zhsj) (Entered: 10/18/2023) |
| 10/18/2023 | 108 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 101 Motion to Access *CIPA Section 4 Filing* (Windom, Thomas) (Entered: 10/18/2023) |
| 10/19/2023 | 109 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 74 Motion to Dismiss Case (Pearce, James) (Entered: 10/19/2023) |
| 10/20/2023 | 110 | MOTION to Stay *Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/20/2023) |
| 10/20/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of Defendant's opposed 110 Motion for Stay Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support, it is hereby ORDERED that the court's 105 Opinion and Order is administratively STAYED to permit the parties' briefing and the court's consideration of Defendant's Motion. It is FURTHER ORDERED that the government shall file any opposition to Defendant's Motion by October 25, 2023, and |

| | | that Defendant shall file any Reply by October 28, 2023. Signed by Judge Tanya S. Chutkan on 10/20/2023. (zjd) (Entered: 10/20/2023) |
|---|---|---|
| 10/20/2023 | 111 | RESPONSE by DONALD J. TRUMP re 97 MOTION for Order for Fair and Protective Jury Procedures (Lauro, John) (Entered: 10/20/2023) |
| 10/20/2023 | 112 | RESPONSE by DONALD J. TRUMP re 98 MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense (Lauro, John) (Entered: 10/20/2023) |
| 10/23/2023 | 113 | MOTION to Dismiss Case *Based on Constitutional Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 114 | MOTION to Dismiss Case *Based on Statutory Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 115 | MOTION to Strike *Inflammatory Allegations From the Indictment* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 116 | MOTION to Dismiss Case *for Selective and Vindictive Prosecution* by DONALD J. TRUMP. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4)(Bove, Emil) (Entered: 10/23/2023) |
| 10/25/2023 | 117 | REPLY in Support by USA as to DONALD J. TRUMP re 97 MOTION for Order for Fair and Protective Jury Procedures (Attachments: # 1 Text of Proposed Order)(Gaston, Molly) (Entered: 10/25/2023) |
| 10/25/2023 | 118 | REPLY in Support by USA as to DONALD J. TRUMP re 98 MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense (Windom, Thomas) (Entered: 10/25/2023) |
| 10/25/2023 | 119 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 99 Motion for Discovery, (Windom, Thomas) (Entered: 10/25/2023) |
| 10/25/2023 | 120 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 110 Motion to Stay (Gaston, Molly) (Entered: 10/25/2023) |
| 10/26/2023 | 121 | NOTICE *of CIPA § 5 Filing and Objection to Unauthorized Deletions of Classified Information* by DONALD J. TRUMP (Blanche, Todd) (Entered: 10/26/2023) |
| 10/26/2023 | 122 | REPLY in Support by DONALD J. TRUMP re 74 MOTION to Dismiss Case (Lauro, John) (Entered: 10/26/2023) |
| 10/27/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's combined response, if any, to the 1 Media Coalition's Application for Audiovisual Access to Criminal Trial Proceedings, filed in Case No. 23–mc–99–TSC, and 1 Application of NBCUniversal Media, LLC to Permit Video and Audio of Trial in United States v. Donald Trump, filed in Case No. 23–mc–107–TSC, is due November 10, 2023. It is FURTHER ORDERED that any response shall be docketed in Case No. 23–mc–99–TSC. Signed by Judge Tanya S. Chutkan on 10/27/2023. (zjd) (Entered: 10/27/2023) |
| 10/28/2023 | 123 | REPLY in Support by DONALD J. TRUMP re 110 MOTION to Stay *Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support* (Lauro, John) (Entered: 10/28/2023) |
| 10/29/2023 | 124 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 110 Motion to Stay Pending Appeal, and lifting the administrative stay imposed by the court's |

| | | |
|---|---|---|
| | | October 20, 2023 Minute Order. Signed by Judge Tanya S. Chutkan on 10/29/2023. (zjd) (Entered: 10/29/2023) |
| 10/31/2023 | 125 | LEAVE TO FILE DENIED– Motion of the American Civil Liberties Union & the American Civil Liberties Union of the District of Columbia for Leave to File Brief Amici Curae in Aid of the Court's Re–Evaluation of its Gag Order as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the LocalCriminal Rules contemplate the filing of amicus curiae briefs. At this time,the court does not find it necessary to depart from the ordinary proceduralcourse by permitting this filing." Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 10/31/2023) |
| 10/31/2023 | 131 | LEAVE TO FILE DENIED– Amicus Declaration in Support of United States Opposition to Defendant's Motion to Dismiss Dkt 74 Due "Presidential Immunity" as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the courtis not persuaded that filing this submission is warranted. Although courts havein rare instances exercised their discretion to permit third–party submissionsin criminal cases, neither the Federal Rules of Criminal Procedure nor theLocal Criminal Rules contemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart from the ordinaryprocedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 132 | LEAVE TO FILE DENIED– Plaintiff's Demand for Default Judgments in Third Party Joinder Under FRCP, Rule 18(a) and (b) as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinaryprocedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 133 | LEAVE TO FILE DENIED– Motion to Withdraw New Motion to Intervene – New Fresh Most Recent Evidence Relate 6/4/2009 & 11/4/2008 Set June Date Kill Reddie as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leaveto file an amicus curiae brief, the court isnot persuaded that filing this submissionis warranted. Although courts have inrare instances exercised their discretionto permit third–party submissions incriminal cases, neither the Federal Rulesof Criminal Procedure nor the LocalCriminal Rules contemplate the filing ofamicus curiae briefs. At this time, thecourt does not find it necessary to departfrom the ordinary procedural course bypermitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 134 | LEAVE TO FILE DENIED– Motion of Former Officials in Five Republican Administrations, Et Al for Leave to File an Amici Curiae Brief in Opposition to Defendant's Motion to Dismiss Indictment Based on Presidential Immunity as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instancesexercised their discretion to permit third–partysubmissions in criminal cases, neither theFederal Rules of Criminal |

| | | |
|---|---|---|
| | | Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 135 | LEAVE TO FILE DENIED– Pro Se Amicus Curiae re: Defendant's Motion to Dismiss Indictment Based on Presidential Immunity as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) Modified on 11/3/2023 (zhsj). (Entered: 11/03/2023) |
| 11/01/2023 | 126 | OPINION and ORDER as to DONALD J. TRUMP: Granting the government's Classified Ex Parte, In Camera, and Under Seal Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure; and denying Defendant's Motion for Access to CIPA § 4 Filing, ECF No. 101. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/1/2023. (zjd) (Entered: 11/01/2023) |
| 11/01/2023 | 127 | REPLY in Support by DONALD J. TRUMP re 99 MOTION for Discovery *(PRE–TRIAL RULE 17(c) SUBPOENAS)* (Lauro, John) (Entered: 11/01/2023) |
| 11/01/2023 | 128 | MOTION to Stay *Case Pending Immunity Determination* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/01/2023) |
| 11/01/2023 | 129 | MOTION for Extension of Time to *File Motions for Rule 17(c) Subpoenas and Motions to Compel* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/01/2023) |
| 11/02/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that the government shall file any opposition to Defendant's 129 Motion for Extension of Time by November 4, 2023; and that Defendant shall file any reply in support of that Motion by November 6, 2023. Signed by Judge Tanya S. Chutkan on 11/2/2023. (zjd) (Entered: 11/02/2023) |
| 11/02/2023 | 130 | ORDER as to DONALD J. TRUMP: Granting the government's 97 Motion for Fair and Protective Jury Procedures. See Order for details. Signed by Judge Tanya S. Chutkan on 11/2/2023. (zjd) (Entered: 11/02/2023) |
| 11/03/2023 | 136 | MOTION for Leave to File *Oversized Brief* by USA as to DONALD J. TRUMP. (Windom, Thomas) (Entered: 11/03/2023) |
| 11/03/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that Defendant shall file any opposition to the government's 136 Motion for Leave to File Oversized Brief by 7:00 PM on November 4, 2023. This will allow the court to rule on the Motion in advance of the November 6, 2023 deadline for the brief in question. Signed by Judge Tanya S. Chutkan on 11/3/2023. (zjd) (Entered: 11/03/2023) |
| 11/03/2023 | 137 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 129 Motion for Extension of Time to *File Pretrial Motions Related to Discovery and Subpoenas* (Windom, Thomas) (Entered: 11/03/2023) |
| 11/04/2023 | 138 | |

| | | |
|---|---|---|
| | | RESPONSE by DONALD J. TRUMP re 136 MOTION for Leave to File *Oversized Brief* (Lauro, John) (Entered: 11/04/2023) |
| 11/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 136 Motion for Leave to File Oversized Brief is hereby GRANTED. The government may submit a combined opposition brief to Defendant's 113 Motion to Dismiss Based on Constitutional Grounds and 114 Motion to Dismiss Based on Statutory Grounds. The brief may not exceed 90 pages in total. The discussion of each Motion therein shall not exceed 45 pages. Signed by Judge Tanya S. Chutkan on 11/5/2023. (zjd) (Entered: 11/05/2023) |
| 11/06/2023 | 139 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 113 Motion to Dismiss Case, 114 Motion to Dismiss Case (Pearce, James) (Entered: 11/06/2023) |
| 11/06/2023 | 140 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 115 Motion to Strike (Gaston, Molly) (Entered: 11/06/2023) |
| 11/06/2023 | 141 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 116 Motion to Dismiss Case *for Selective and Vindictive Prosecution* (Windom, Thomas) (Entered: 11/06/2023) |
| 11/06/2023 | 142 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 128 Motion to Stay (Gaston, Molly) (Entered: 11/06/2023) |
| 11/06/2023 | 143 | NOTICE OF ATTORNEY APPEARANCE John M. Pellettieri appearing for USA. (Pellettieri, John) (Entered: 11/06/2023) |
| 11/06/2023 | 144 | REPLY in Support by DONALD J. TRUMP re 129 MOTION for Extension of Time to *File Motions for Rule 17(c) Subpoenas and Motions to Compel* (Lauro, John) (Entered: 11/06/2023) |
| 11/07/2023 | 146 | OPINION and ORDER as to DONALD J. TRUMP: granting in part and denying in part Defendant's 129 Motion for Extension of Time to File Pretrial Motions Related to Discovery and Subpoenas. Motions to compel due November 27, 2023; oppositions due December 11, 2023; replies due December 18, 2023. Rule 17(c) motions due December 13, 2023; oppositions due December 27, 2023; replies due January 3, 2024. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/7/2023. (zjd) (Entered: 11/07/2023) |
| 11/08/2023 | 147 | OPINION and ORDER as to DONALD J. TRUMP: Granting in part and denying in part the government's Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense, ECF No. 98 . See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/8/2023. (zjd) (Entered: 11/08/2023) |
| 11/08/2023 | 148 | ORDER as to DONALD J. TRUMP: By November 22, 2023, the government shall submit a classified brief responding to the objection set forth in Defendant's classified CIPA § 5 submission. See Order for details. Signed by Judge Tanya S. Chutkan on 11/8/2023. (zjd) (Entered: 11/08/2023) |
| 11/09/2023 | 149 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 11/09/2023) |
| 11/09/2023 | 153 | LEAVE TO FILE DENIED–Motion for Leave to File Amicus as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure nor the |

| | | |
|---|---|---|
| | | Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 11/9/2023. (zhsj) (Entered: 11/14/2023) |
| 11/09/2023 | 154 | LEAVE TO FILE DENIED–Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases which the Federal Rules of Criminal Procedure and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit". Signed by Judge Tanya S. Chutkan on 11/9/2023. (zhsj) (Entered: 11/14/2023) |
| 11/09/2023 | 155 | LEAVE TO FILE DENIED–Proof of Service/Notice of Filing as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/11/2023. (zhsj) (Entered: 11/14/2023) |
| 11/12/2023 | 150 | MOTION for Extension of Time to File Response/Reply as to 116 MOTION to Dismiss Case *for Selective and Vindictive Prosecution*, 128 MOTION to Stay *Case Pending Immunity Determination*, 115 MOTION to Strike *Inflammatory Allegations From the Indictment*, 113 MOTION to Dismiss Case *Based on Constitutional Grounds*, 114 MOTION to Dismiss Case *Based on Statutory Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/12/2023) |
| 11/13/2023 | 151 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 150 Motion for Extension of Time to File Response/Reply, (Gaston, Molly) (Entered: 11/13/2023) |
| 11/13/2023 | 152 | ORDER as to DONALD J. TRUMP: Granting in part and denying in part Defendant's 150 Motion for Extension of Time to File Reply Briefs. Defendant may file any Reply in support of his motions to dismiss based on 113 constitutional, 114 statutory, and 116 selective prosecution grounds by November 22, 2023; and Defendant may file any Reply in support of his pending 115 Motion to Strike and 128 Motion to Stay by November 15, 2023. Signed by Judge Tanya S. Chutkan on 11/13/2023. (zjd) (Entered: 11/13/2023) |
| 11/15/2023 | 156 | REPLY in Support by DONALD J. TRUMP re 115 MOTION to Strike *Inflammatory Allegations From the Indictment* (Lauro, John) (Entered: 11/15/2023) |
| 11/15/2023 | 157 | REPLY in Support by DONALD J. TRUMP re 128 MOTION to Stay *Case Pending Immunity Determination* (Lauro, John) (Entered: 11/15/2023) |
| 11/17/2023 | 158 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 115 Motion to Strike Inflammatory Allegations From the Indictment. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/17/2023. (zjd) (Entered: 11/17/2023) |
| 11/21/2023 | 159 | Unopposed MOTION for Extension of Time to File Response/Reply *to the Special Counsel's Classified CIPA Sec. 5 Motion to Strike* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 11/21/2023) |

| 11/21/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's unopposed 159 Motion for Extension of Time to File Opposition to the Special Counsel's Classified CIPA Sec. 5 Motion to Strike is hereby GRANTED. Defendant may file any opposition to the government's Motion to Strike by November 27, 2023. Signed by Judge Tanya S. Chutkan on 11/21/2023. (zjd) (Entered: 11/21/2023) |
|---|---|---|
| 11/22/2023 | 160 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 11/22/2023) |
| 11/22/2023 | 161 | REPLY in Support by DONALD J. TRUMP re 116 MOTION to Dismiss Case *for Selective and Vindictive Prosecution* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Blanche, Todd) (Entered: 11/22/2023) |
| 11/22/2023 | 162 | REPLY in Support by DONALD J. TRUMP re 113 MOTION to Dismiss Case *Based on Constitutional Grounds* (Lauro, John) (Entered: 11/22/2023) |
| 11/22/2023 | 163 | REPLY in Support by DONALD J. TRUMP re 114 MOTION to Dismiss Case *Based on Statutory Grounds* (Lauro, John) (Entered: 11/22/2023) |
| 11/22/2023 | 164 | LEAVE TO FILE DENIED– Motion for Leave to File Amicus as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 11/22/2023. (zhsj) Modified on 11/27/2023 (zhsj). (Entered: 11/27/2023) |
| 11/27/2023 | 165 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 99 Motion for Pretrial Rule 17(c) Subpoenas. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/27/2023. (zjd) (Entered: 11/27/2023) |
| 11/27/2023 | 166 | MOTION for Leave to File *Under Seal Unredacted Motion and Exhibits* by DONALD J. TRUMP. (Attachments: # 1 PRESIDENT DONALD J. TRUMPS MOTION FOR AN ORDER REGARDING THE SCOPE OF THE PROSECUTION TEAM (REDACTED), # 2 Exhibit A, # 3 Exhibit B (redacted), # 4 Exhibit C (redacted), # 5 Exhibit D, # 6 Exhibit E (redacted), # 7 Exhibit F (redacted), # 8 Exhibit G (redacted), # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O)(Blanche, Todd) (Entered: 11/27/2023) |
| 11/27/2023 | 167 | MOTION to Compel *Discovery* by DONALD J. TRUMP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Blanche, Todd) (Entered: 11/27/2023) |
| 11/28/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's 166 Motion for Leave to File Under Seal is hereby GRANTED. The proposed filing contains Sensitive Materials, which the court has already determined warrant sealing. See Protective Order, ECF No. 28 . Defendant shall file under seal an unredacted copy of his Motion for an Order Regarding the Scope of the Prosecution Team, and shall publicly file a redacted copy of that Motion, by November 29, 2023. The court reminds Defendant that all motions must indicate whether they are opposed. Going forward, if any party seeks to make a filing under seal, the party shall file a sealed motion for leave to file under seal that attaches (1) an unredacted copy of the filing to be docketed under seal, and (2) a redacted copy of the filing that may be publicly docketed. If the court |

| | | |
|---|---|---|
| | | decides to grant such sealed motions for leave to file under seal, it will then direct the Clerk of the Court to docket those attached filings under seal and publicly, respectively. See, e.g., ECF No. 47 (Government's sealed motion for leave to file under seal); ECF No. 55 (court order granting motion and directing Clerk to docket filings appropriately); see also Protective Order at 4; Local R. Crim. P. 49(f)(6)(i). Filings that do not comply with those procedures may be stricken. It is further ORDERED that the Government shall file any opposition to Defendant's Motion for an Order Regarding the Scope of the Prosecution Team by December 9, 2023; and Defendant shall file any Reply in support of that Motion by December 14, 2023. In addition, the Government shall file any Opposition to Defendant's 167 Motion to Compel Discovery by December 11, 2023; and Defendant shall file any Reply in support of that Motion by December 18, 2023. Signed by Judge Tanya S. Chutkan on 11/28/2023. (zjd) (Entered: 11/28/2023) |
| 11/28/2023 | 168 | NOTICE *Pursuant to CIPA Section 5* by DONALD J. TRUMP (Blanche, Todd) (Entered: 11/28/2023) |
| 11/29/2023 | 169 | REDACTED DOCUMENT by DONALD J. TRUMP of Motion for an Order Regarding the Scope of the Prosecution Team (Attachments: # 1 Exhibit A, # 2 Exhibit B (redacted), # 3 Exhibit C (redacted), # 4 Exhibit D, # 5 Exhibit E (redacted), # 6 Exhibit F (redacted), # 7 Exhibit G (redacted), # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Blanche, Todd) (Entered: 11/29/2023) |
| 12/01/2023 | 171 | MEMORANDUM OPINION as to DONALD J. TRUMP re: Defendant's 74 Motion to Dismiss Based on Presidential Immunity, and Defendant's 113 Motion to Dismiss Based on Constitutional Grounds. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/01/2023 | 172 | ORDER as to DONALD J. TRUMP: Denying Defendant's 74 Motion to Dismiss Based on Presidential Immunity, and denying Defendant's 113 Motion to Dismiss Based on Constitutional Grounds. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/01/2023 | | MINUTE ORDER as to DONALD J. TRUMP: In light of the court's 172 Order denying Defendant's 74 Motion to Dismiss Based on Presidential Immunity; Defendant's 128 Motion to Stay Case Pending Immunity Determination is hereby DENIED as moot. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/04/2023 | 173 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 12/04/2023) |
| 12/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The Government's unopposed 174 Sealed Motion for Leave to File Unredacted Notice Under Seal and for Entry of Redacted Notice on Public Docket is hereby GRANTED. The proposed filing contains Sensitive Materials, which the court has already determined warrant sealing. See Protective Order, ECF No. 28 . The Clerk of the Court is directed to file under seal the unredacted copy of the Government's Notice (ECF No. 174−1), and to file on the public docket the redacted copy of the Government's Notice (ECF No. 174−2). Signed by Judge Tanya S. Chutkan on 12/5/2023. (zjd) (Entered: 12/05/2023) |
| 12/05/2023 | 176 | NOTICE Pursuant to Federal Rule of Evidence 404(b) by USA as to DONALD J. TRUMP. (zhsj) (Entered: 12/05/2023) |

| 12/07/2023 | 177 | NOTICE OF APPEAL (Interlocutory) by DONALD J. TRUMP re 172 Order on Motion to Dismiss Case, 171 Memorandum Opinion. Filing fee $ 605, receipt number ADCDC−10543486. Fee Status: Fee Paid. Parties have been notified. (Lauro, John) (Entered: 12/07/2023) |
|---|---|---|
| 12/07/2023 | 178 | MOTION for Order Regarding Automatic Stay of Proceedings Pending Appeal re 177 Notice of Appeal – Interlocutory by DONALD J. TRUMP. (Blanche, Todd) (Entered: 12/07/2023) |
| 12/07/2023 | 179 | NOTICE OF APPEAL (Interlocutory) by DONALD J. TRUMP re 172 Order on Motion to Dismiss Case, 171 Memorandum Opinion. Filing fee $605, receipt number ADCDC−10543486. Fee Status: Fee Paid. Parties have been notified. (zhsj) (Entered: 12/07/2023) |
| 12/07/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of Defendant's 178 Motion for Order Regarding Automatic Stay of Proceedings Pending Appeal, it is hereby ORDERED that the government shall file any opposition to Defendant's Motion by 5:00 p.m. on Sunday, December 10, 2023, and that Defendant shall file any Reply by 5:00 p.m. on Tuesday, December 12, 2023. Signed by Judge Tanya S. Chutkan on 12/7/2023. (zjd) (Entered: 12/07/2023) |

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:23–cr–00257–TSC</u>–1

Case title: USA v. TRUMP                                   Date Filed: 08/01/2023

Assigned to: Judge Tanya S.
Chutkan

Appeals court case number:
23–3190

**<u>Defendant (1)</u>**

**DONALD J. TRUMP**                  represented by   **John F. Lauro**
                                                     LAURO & SINGER
                                                     400 N. Tampa Street
                                                     15th Floor
                                                     Tampa, FL 33602
                                                     (813) 222–8990
                                                     Fax: (813) 222–8991
                                                     Email: jlauro@laurosinger.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

                                                     **Emil Bove**
                                                     BLANCHE LAW
                                                     99 Wall Street, Suite 4460
                                                     New York, NY 10005
                                                     212–716–1250
                                                     Email: emil.bove@blanchelaw.com
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

                                                     **Filzah I. Pavalon**
                                                     LAURO & SINGER
                                                     400 N. Tampa Street
                                                     15th Floor
                                                     Tampa, FL 33602
                                                     (813) 222–8990
                                                     Fax: (813) 222–8991
                                                     Email: fpavalon@laurosinger.com
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

                                                     **Todd Blanche**
                                                     BLANCHE LAW

99 Wall Street
New York, NY 10005
(212) 716–1250
Email: toddblanche@blanchelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Hac Vice*

| Pending Counts | Disposition |
| --- | --- |

**18 U.S.C. 371; CONSPIRACY TO DEFRAUD THE UNITED STATES; Conspiracy to Defraud the United States**
(1)

**18 U.S.C. 1512(k); TAMPERING WITH WITNESS, VICTIM, OR AN INFORMANT; Conspiracy to Obstruct an Official Proceeding**
(2)

**18 U.S.C. 1512(c)(2), 2; TAMPERING WITH A WITNESS, VICTIM OR INFORMANT; Obstruction of, and Attempt to Obstruct, an Official Proceeding**
(3)

**18 U.S.C. 241; CONSPIRACY AGAINST RIGHTS OF CITIZENS; Conspiracy Against Rights**
(4)

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
| --- | --- |

None

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
| --- | --- |

None

**Plaintiff**

**USA**                                       represented by   **J.P. Cooney**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7281
Email: joseph.cooney@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**James Pearce**
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION APPELLATE
SECTION
Department of Justice, Criminal Division
950 Pennsylvania Ave NW
Suite 1250
Washington, DC 20530
(202) 532–4991
Fax: (202) 305–2121
Email: james.pearce@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Molly Gulland Gaston**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252–7803
Email: molly.gaston@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Thomas Windom**
555 Fourth Street NW
Washington, DC 20530
202–252–7846
Email: thomas.windom@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**John M. Pellettieri**
Special Counsel's Office
950 Pennsylvania Avenue NW

Rm. B–206
Washington, DC 20530
202–714–3913
Email: john.pellettieri@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/01/2023 | 1 | INDICTMENT as to DONALD J. TRUMP (1) count(s) 1, 2, 3, 4. (zltp) (Entered: 08/01/2023) |
| 08/01/2023 | 3 | MOTION to Seal Case by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(zltp) (Entered: 08/01/2023) |
| 08/01/2023 | 4 | ORDER granting 3 Motion to Seal Case as to DONALD J. TRUMP (1). Signed by Magistrate Judge Moxila A. Upadhyaya on 8/1/2023. (zltp) (Entered: 08/01/2023) |
| 08/01/2023 |  | Case unsealed as to DONALD J. TRUMP (zltp) (Entered: 08/01/2023) |
| 08/03/2023 | 5 | NOTICE OF ATTORNEY APPEARANCE: John F. Lauro appearing for DONALD J. TRUMP (Lauro, John) (Entered: 08/03/2023) |
| 08/03/2023 | 7 | MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC–10252226. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/03/2023) |
| 08/03/2023 | 8 | Summons Returned Executed on 8/3/2023 as to DONALD J. TRUMP. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 |  | MINUTE ORDER as to Donald J. Trump: As required by Rule 5(f), the United States is ordered to produce all exculpatory evidence to the defendant pursuant to Brady v. Maryland and its progeny. Not doing so in a timely manner may result in sanctions, including exclusion of evidence, adverse jury instructions, dismissal of charges and contempt proceedings.Signed by Magistrate Judge Moxila A. Upadhyaya on 8/3/2023. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 |  | ORAL MOTION for Speedy Trial by USA as to DONALD J. TRUMP. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 |  | Minute Entry for proceedings held before Magistrate Judge Moxila A. Upadhyaya: Return on Summons/Initial Appearance/Arraignment as to Counts 1,2,3,4 held on 8/3/2023. Plea of Not Guilty entered as to all counts. The Court advised the Government of its due process obligation under Rule 5(f).Status Conference set for 8/28/2023 at 10:00 AM in Courtroom 9– In Person before Judge Tanya S. Chutkan. Bond Status of Defendant: Defendant Remain on Personal Recognizance; Court Reporter: Jeff Hook; Defense Attorney: John Lauro and Todd Blanche; US Attorney: Thomas Windom and Molly Gaston; Pretrial Officer: Takeysha Robinson. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 |  | MINUTE ORDER as to DONALD J. TRUMP: A status conference will be held in this matter on August 28, 2023 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. The court waives the requirement for Defendant to appear at that conference. It is hereby ORDERED that Defendant shall file any motion for excluding the time until the next status conference from the Speedy Trial Act clock by August 8, |

| | | |
|---|---|---|
| | | 2023; and that the government shall file any opposition to that motion by August 13, 2023. It is FURTHER ORDERED that by August 10, 2023, the government shall file a brief proposing a trial date and providing an estimate of the time required to set forth the prosecution's case in chief during that trial; and that by August 17, 2023, Defendant shall file a response brief likewise proposing a trial date and estimating, to the extent possible, the time required to set forth the defense at trial. Signed by Judge Tanya S. Chutkan on 8/3/2023. (ztl) (Entered: 08/04/2023) |
| 08/03/2023 | 13 | ORDER Setting Conditions of Release as to DONALD J. TRUMP (1) Personal Recognizance. Signed by Magistrate Judge Moxila A. Upadhyaya on 8/3/2023. (Attachment: # 1 Appearance Bond) (znjb) (Entered: 08/07/2023) |
| 08/04/2023 | 9 | MOTION for Leave to Appear Pro Hac Vice Filzah I. Pavalon Filing fee $ 100, receipt number ADCDC−10255735. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/04/2023) |
| 08/04/2023 | 10 | MOTION for Protective Order by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Gaston, Molly) (Entered: 08/04/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by 5:00 PM on August 7, 2023, Defendant shall file a response to the government's 10 Motion for Protective Order, stating Defendant's position on the Motion. If Defendant disagrees with any portion of the government's proposed Protective Order, ECF No. 10−1, his response shall include a revised version of that Protective Order with any modifications in redline. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 9 Motion for Leave to Appear Pro Hac Vice. Filzah I. Pavalon is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/05/2023 | 11 | MOTION for Extension of Time to File Response/Reply as to 10 MOTION for Protective Order , MOTION for Hearing by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Lauro, John) (Entered: 08/05/2023) |
| 08/05/2023 | 12 | RESPONSE by USA as to DONALD J. TRUMP re 11 MOTION for Extension of Time to File Response/Reply as to 10 MOTION for Protective Order MOTION for Hearing (Gaston, Molly) (Entered: 08/05/2023) |
| 08/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's 11 Motion for Extension of Time is hereby DENIED. Defendant may continue to confer with the government regarding its proposed protective order before or after the August 7, 2023 5:00 PM deadline for his response. The court will determine whether to schedule a hearing to discuss the proposed protective order after reviewing Defendant's response and, if included, his revised proposed protective order with modifications in redline. Signed by Judge Tanya S. Chutkan on 08/05/2023. (lcss) (Entered: 08/05/2023) |
| 08/06/2023 | | Set/Reset Deadline as to DONALD J. TRUMP: Defendant shall file a response to the government's 10 Motion for Protective Order, stating Defendant's position on the Motion by 5:00 PM on August 7, 2023. If Defendant disagrees with any portion of the government's proposed Protective Order, (Dkt. #10−1), his response shall include a revised version of that Protective Order with any modifications in redline. (jth) (Entered: 08/06/2023) |

| 08/07/2023 | 14 | RESPONSE by DONALD J. TRUMP re 10 MOTION for Protective Order (Lauro, John) (Entered: 08/07/2023) |
|---|---|---|
| 08/07/2023 | 15 | REPLY in Support by USA as to DONALD J. TRUMP re 10 MOTION for Protective Order (Gaston, Molly) (Entered: 08/07/2023) |
| 08/07/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of the government's 10 Motion for Protective Order and Defendant's 14 Response, as well as the government's 15 Reply, the court will schedule a hearing on the parties' respective proposals. The court will waive the requirement of Defendant's appearance. Accordingly, it is hereby ORDERED that no later than 3:00 PM on August 8, 2023, the parties shall meet and confer and file a joint notice of two dates and times on or before August 11, 2023 when both parties are available for a hearing. Signed by Judge Tanya S. Chutkan on 08/07/2023. (lcss) (Entered: 08/07/2023) |
| 08/08/2023 | | Set/Reset Deadline as to DONALD J. TRUMP: by 3:00 PM on 8/8/2023, the parties shall meet and confer and file a joint notice of two dates and times on or before 8/11/2023 when both parties are available for a hearing. (jth) (Entered: 08/08/2023) |
| 08/08/2023 | 16 | TRANSCRIPT OF RETURN ON SUMMONS/INITIAL APPEARANCE/ARRAIGNMENT in case as to DONALD J. TRUMP before Magistrate Judge Moxila A. Upadhyaya held on August 3, 2023. Page Numbers: 1 – 24. Date of Issuance: August 8, 2023. Court Reporter: Jeff Hook. Contact Information: 202–354–3373 \| jeff_hook@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/29/2023. Redacted Transcript Deadline set for 9/8/2023. Release of Transcript Restriction set for 11/6/2023.(Hook, Jeff) (Entered: 08/08/2023) |
| 08/08/2023 | 17 | NOTICE *by the Parties in Response to Court's August 7, 2023 Minute Order* by USA as to DONALD J. TRUMP re Order,, (Gaston, Molly) (Entered: 08/08/2023) |
| 08/08/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The court hereby schedules a hearing on the parties' respective protective order proposals in this matter on August 11, 2023 at 10:00 AM in Courtroom 9. The requirement of Defendant's appearance is waived for this hearing. Signed by Judge Tanya S. Chutkan on 08/08/2023. (lcc) (Entered: 08/08/2023) |
| 08/08/2023 | 18 | MOTION to Exclude *Time Under Speedy Trial Act* by DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Granting Motion)(Lauro, John) (Entered: 08/08/2023) |
| 08/09/2023 | | |

| | | Set/Reset Hearing as to DONALD J. TRUMP: A Hearing on the Parties' Respective Protective Order Proposals is set for August 11, 2023, at 10:00 AM in Courtroom 9. before Judge Tanya S. Chutkan. The requirement of Defendant's appearance is waived for this hearing. (jth) (Entered: 08/09/2023) |
|---|---|---|
| 08/09/2023 | 19 | ENTERED IN ERROR.....NOTICE *Updated Certificate of Good Standing* by DONALD J. TRUMP re 7 MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC–10252226. Fee Status: Fee Paid. (Lauro, John) Modified on 8/9/2023 (zhsj). (Entered: 08/09/2023) |
| 08/09/2023 | | NOTICE OF ERROR as to DONALD J. TRUMP regarding 19 Notice (Other). The following error(s) need correction: Incorrect format (Letter)– correspondence is not permitted (LCrR 49(f)(4)). Please refile as a Notice of Filing attaching your Certificate of Good Standing to a Notice of Filing Document Containing the Caption of the Court. (zhsj) (Entered: 08/09/2023) |
| 08/09/2023 | 20 | NOTICE *of Filing* by DONALD J. TRUMP re 7 MOTION for Leave to Appear Pro Hac Vice Todd Blanche Filing fee $ 100, receipt number ADCDC–10252226. Fee Status: Fee Paid. (Lauro, John) (Entered: 08/09/2023) |
| 08/09/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 7 Motion for Leave to Appear Pro Hac Vice **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions as to DONALD J. TRUMP (1). Signed by Magistrate Judge Moxila A. Upadhyaya on 8/9/2023. (zcll) (Entered: 08/09/2023) |
| 08/09/2023 | 21 | NOTICE OF ATTORNEY APPEARANCE: Filzah Pavalon appearing for DONALD J. TRUMP (Pavalon, Filzah) (Entered: 08/09/2023) |
| 08/10/2023 | 22 | MOTION for Leave to Appear Pro Hac Vice Gregory M. Singer Filing fee $ 100, receipt number ADCDC–10266892. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 08/10/2023) |
| 08/10/2023 | 23 | RESPONSE TO ORDER OF THE COURT by USA as to DONALD J. TRUMP re Order,,,, Set Deadlines,,, *Government's Response to Court's August 3, 2023 Minute Order* (Gaston, Molly) (Entered: 08/10/2023) |
| 08/10/2023 | 25 | MOTION for Hearing *Pursuant to Classified Information Procedures Act* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Windom, Thomas) (Entered: 08/10/2023) |
| 08/10/2023 | 26 | Memorandum in Opposition by USA as to DONALD J. TRUMP re Motion for Speedy Trial, 18 Motion to Exclude (Gaston, Molly) (Entered: 08/10/2023) |
| 08/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 22 Motion for Leave to Appear Pro Hac Vice. Gregory M. Singer is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 08/10/2023. (lcc) (Entered: 08/10/2023) |
| 08/10/2023 | 27 | NOTICE OF ATTORNEY APPEARANCE: Todd Blanche appearing for DONALD J. TRUMP (Blanche, Todd) (Entered: 08/10/2023) |
| 08/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 24 Sealed Motion for Leave to Submit Exhibit Ex Parte and Under Seal is hereby DENIED without prejudice. Signed by Judge Tanya S. Chutkan on 8/10/2023. (zjd) (Entered: |

| | | |
|---|---|---|
| | | 08/10/2023) |
| 08/11/2023 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Hearing on the Parties' Respective Protective Order Proposals as to DONALD J. TRUMP held on 8/11/2023. The Court shall issue a protective order consistent with the rulings made on the record. Oral Order of the Court granting Government's 25 Motion for Pretrial Conference Pursuant to the Classified Information Procedures Act. This hearing shall proceed on August 28, 2023 at 10:00 AM in Courtroom 9 before Judge Tanya S. Chutkan. Bond Status of Defendant: remains on Personal Recognizance; Court Reporter: Bryan A. Wayne; Defense Attorneys: John F. Lauro, Gregory M. Singer, and Todd Blanche; US Attorneys: Thomas Windom and Molly G. Gaston. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 25 Motion for Hearing Pursuant to Classified Information Procedures Act (CIPA) is GRANTED. Defense counsel consented to the motion during the August 11, 2023 hearing. Accordingly, the court will hold a hearing pursuant to CIPA Section 2 during the status conference currently scheduled for August 28, 2023. Signed by Judge Tanya S. Chutkan on 8/11/2023. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | 28 | PROTECTIVE ORDER GOVERNING DISCOVERY AND AUTHORIZING DISCLOSURE OF GRAND JURY TESTIMONY as to DONALD J. TRUMP. Consistent with the rulings made on the record during the hearing on August 11, 2023, the Court grants in part and denies in part the Government's 10 Motion for Protective Order. Signed by Judge Tanya S. Chutkan on 8/11/2023. (zjd) (Entered: 08/11/2023) |
| 08/11/2023 | 29 | TRANSCRIPT OF HEARING ON PROTECTIVE ORDER in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on August 11, 2023; Page Numbers: 1–73. Date of Issuance: 8/11/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/1/2023. Redacted Transcript Deadline set for 9/11/2023. Release of Transcript Restriction set for 11/9/2023.(Wayne, Bryan) (Main Document 29 replaced on 8/23/2023) (zhsj). (Entered: 08/11/2023) |
| 08/17/2023 | 30 | RESPONSE TO ORDER OF THE COURT by DONALD J. TRUMP re Order,,,, Set Deadlines,,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Lauro, John) (Entered: 08/17/2023) |
| 08/21/2023 | 31 | MOTION for Leave to File *Reply Brief* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed Order)(Windom, Thomas) |

| | | |
|---|---|---|
| | | (Entered: 08/21/2023) |
| 08/21/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 31 Motion for Leave to File Reply is hereby GRANTED. The government may file a reply in support of its brief proposing a trial date by August 22, 2023. The reply brief shall be limited to six pages. Signed by Judge Tanya S. Chutkan on 8/21/2023. (zjd) (Entered: 08/21/2023) |
| 08/21/2023 | 32 | RESPONSE TO ORDER OF THE COURT by USA as to DONALD J. TRUMP re Order,,,, Set Deadlines,,, Order on Motion for Leave to File,, Set/Reset Deadlines, *(Reply Brief)* (Windom, Thomas) (Entered: 08/21/2023) |
| 08/21/2023 | 40 | LEAVE TO FILE DENIED−Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third−party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 41 | LEAVE TO FILE DENIED− Motion for Judicial Notice Affidavit of Victor Shorkin as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third−party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 42 | LEAVE TO FILE DENIED−Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third−party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 43 | LEAVE TO FILE DENIED−Petition for a Writ of Habeas Corpus as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third−party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 44 | LEAVE TO FILE DENIED− Galaxy Bar Association as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third−party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart |

| | | |
|---|---|---|
| | | from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 45 | LEAVE TO FILE DENIED– Amicus Curiae in Support of Donald Trump as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 46 | LEAVE TO FILE DENIED– Moton of Former Judges and Senior Legal Officials for Leave to File an Amicus Curiae Brief in Support of Government Proposed Trial Date and Schedule as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "This document is unavailable as the Court denied its filing. Although Courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedures nor the Local Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedures course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 08/29/2023) |
| 08/21/2023 | 81 | LEAVE TO FILE DENIED– MOTION TO INTERVENE THE OUTCOME OF CASE AFFECTS DAVID REGINALD HERON AFTER MOTION INTERVENE GRANTED [DAVID FILE SEPARATE MOTION – RULING TO HIRE ATTORNEY] as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 8/21/2023. (zhsj) (Entered: 10/06/2023) |
| 08/22/2023 | 33 | Consent MOTION to Appoint a Classified Information Security Officer by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed Order)(Windom, Thomas) (Entered: 08/22/2023) |
| 08/22/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 33 Consent Motion to Appoint a Classified Information Security Officer is hereby GRANTED. The court will issue a separate sealed order designating the Officer and any alternate Officers. Signed by Judge Tanya S. Chutkan on 8/22/2023. (zjd) (Entered: 08/22/2023) |
| 08/22/2023 | 35 | Unopposed MOTION for Protective Order *Pursuant to the Classified Information Procedures Act* by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order Proposed CIPA Protective Order)(Windom, Thomas) (Entered: 08/22/2023) |
| 08/22/2023 | 37 | ORDER as to DONALD J. TRUMP granting 35 Unopposed MOTION for Protective Order Pursuant to the Classified Information Procedures Act. Signed by Judge Tanya S. Chutkan on 8/22/2023. (zjd) (Entered: 08/22/2023) |
| 08/28/2023 | | |

| | | |
|---|---|---|
| | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Status Conference and Hearing Pursuant to Classified Information Procedures Act (CIPA) as to DONALD J. TRUMP held on 8/28/2023. In the interests of justice (XT), and for the reasons stated on the record, the Court grants Defendant's 18 Motion for Exclusion of Time Under Speedy Trial Act. The time from 8/3/2023 through and including 8/28/2023 shall be excluded in computing the date for speedy trial in this case. Jury Trial in this matter is set for March 4, 2024 at 9:30 AM in Courtroom 9 before Judge Tanya S. Chutkan. Bond Status of Defendant: appearance waived, remains on personal recognizance; Court Reporter: Bryan Wayne; Defense Attorneys: John F. Lauro and Todd Blanche; US Attorneys: Molly G. Gaston and Thomas Windom. (zjd) (Entered: 08/28/2023) |
| 08/28/2023 | 38 | TRANSCRIPT OF 8/28/23 STATUS HEARING in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on August 28, 2023; Page Numbers: 1–61. Date of Issuance: 8/28/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 9/18/2023. Redacted Transcript Deadline set for 9/28/2023. Release of Transcript Restriction set for 11/26/2023.(Wayne, Bryan) (Entered: 08/28/2023) |
| 08/28/2023 | 39 | PRETRIAL ORDER as to DONALD J. TRUMP: Upon consideration of the parties' Proposed Briefing Schedules 23 30 32 , the court hereby sets the following pretrial schedule. All pre–trial motions, excluding motions in limine, due 10/9/23, oppositions due 10/23/23, and replies due 11/6/23. Motions in limine and Suppression Motions due 12/27/23, oppositions due 1/9/24, and replies due 1/22/24. Not later than 12/4/23, the government shall provide notice of evidence it intends to offer pursuant to Fed. R. Evid. 404(b). Parties shall exchange expert witnesses on 12/11/23. Parties shall exchange exhibit lists by 12/18/23 and file any objections to exhibits by 1/3/24; replies due 1/9/24. Proposed jury instructions and voir dire questions due 1/15/24. Parties shall exchange witness lists by 2/19/24. Trial will commence on 3/4/24 at 9:30 a.m. in Courtroom 9 unless otherwise specified. See Order for additional details and instructions. Signed by Judge Tanya S. Chutkan on 8/28/2023. (zjd) **Modified on 10/6/2023: See 82 Opinion and Order for amendments made to this order. Modified on 11/7/2023: See 146 Opinion and Order for further amendments to this order.** (zjd). (Entered: 08/28/2023) |
| 09/05/2023 | | VACATED PURSUANT TO MINUTE ORDER FILED 9/5/2023.....MINUTE ORDER as to DONALD J. TRUMP: The Government's 47 Motion for Leave to File Unredacted Motion Under Seal, and to File Redacted Motion on Public Docket is hereby GRANTED. The Clerk of the Court is directed to file under seal the |

| | | |
|---|---|---|
| | | unredacted copy of the Government's Motion (ECF No. 47–1), attaching Exhibit 1 to the Government's Motion (ECF No. 47–2). The Clerk of the Court is further directed to file on the public docket the redacted copy of the Government's Motion (ECF No. 47–3), attaching a placeholder sheet for Exhibit 1 to the Motion (ECF No. 47–4), and the two proposed orders referenced in the Motion (ECF Nos. 47–5 and 47–6). Signed by Judge Tanya S. Chutkan on 9/5/2023. (zjd) Modified on 9/5/2023 (zjd). (Entered: 09/05/2023) |
| 09/05/2023 | 48 | MOTION to Vacate by DONALD J. TRUMP. (Lauro, John) (Entered: 09/05/2023) |
| 09/05/2023 | 49 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 48 Motion to Vacate (Gaston, Molly) (Entered: 09/05/2023) |
| 09/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's 48 Motion to Vacate is hereby GRANTED. The court's previous Minute Order of September 5, 2023 is VACATED. Defendant shall respond to the government's 47 Motion for Leave to File by September 11, 2023; the government may file a Reply by September 13, 2023. Any opposition or reply may be filed under seal. Going forward, all motions, including motions for leave to file, must (1) indicate whether the movant has conferred with opposing counsel, and (2) state the nonmovant's position on the motion, if known. As it has done here, the court may require briefing on motions for leave to file under seal on a timeline shorter than the default periods provided for in the Local Criminal Rules. However, all such briefing may be filed under seal without further order of the court. Signed by Judge Tanya S. Chutkan on 9/5/2023. (zjd) (Entered: 09/05/2023) |
| 09/11/2023 | 50 | MOTION for Recusal by DONALD J. TRUMP. (Attachments: # 1 Exhibit Transcript Excerpt 1, # 2 Exhibit Transcript Excerpt 2)(Lauro, John) (Entered: 09/11/2023) |
| 09/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of Defendant's 50 Motion for Recusal, it is hereby ORDERED that the government shall file any opposition no later than September 14, 2023, and the defense shall file any reply within three calendar days from the filing date of the government's opposition. All other deadlines set by the court remain in effect. Defense counsel is reminded of the requirement to confer with opposing counsel before filing any motion and to indicate whether the motion is opposed. See 09/05/2023 Second Minute Order. Future motions that fail to comply with that requirement may be denied without prejudice. Signed by Judge Tanya S. Chutkan on 9/11/2023. (zjd) (Entered: 09/11/2023) |
| 09/13/2023 | 77 | LEAVE TO FILE DENIED–Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | 78 | LEAVE TO FILE DENIED–Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretionto permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedurenor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the courtdoes not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |

| 09/13/2023 | 79 | LEAVE TO FILE DENIED– Petition for a Writ of Habeas Corpus Continued Application to Arrest Protective Order Dated: 8/11/23 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time,the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
|---|---|---|
| 09/13/2023 | 80 | LEAVE TO FILE DENIED–Letter Regarding Defendant's Right to Attend Trial as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courtshave in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinaryprocedural course by permitting this filing" Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | 83 | LEAVE TO FILE DENIED–Motion to Decriminalize as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/13/2023 | 84 | LEAVE TO FILE DENIED– Petition for Intervention as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/13/2023. (zhsj) (Entered: 10/06/2023) |
| 09/14/2023 | 53 | MOTION FOR BRIEFING SCHEDULE as to DONALD J. TRUMP. (Lauro, John) Modified on 9/15/2023 (zhsj). (Entered: 09/14/2023) |
| 09/14/2023 | 54 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 50 Motion for Recusal (Gaston, Molly) (Entered: 09/14/2023) |
| 09/15/2023 | 55 | Opinion and Order as to DONALD J. TRUMP granting the government's 47 Motion for Leave to File Unredacted Motion Under Seal, and to File Redacted Motion on Public Docket, and granting in part and denying in part Defendant's 53 Motion for Briefing Schedule. Defendant shall file any Opposition to the government's substantive Motion by September 25, 2023, and the government shall file any Reply by September 30, 2023. The Clerk of the Court is directed to file under seal the unredacted copy of the government's substantive Motion (ECF No. 47–1), attaching Exhibit 1 to the that Motion (ECF No. 47–2) under seal as well. The Clerk of the Court is further directed to file on the public docket the redacted copy of the government's Motion (ECF No. 47–3), attaching a placeholder sheet for Exhibit 1 to the Motion (ECF No. 47–4), and attaching the two proposed orders referenced in the Motion (ECF Nos. 47–5 and 47–6). Finally, the Clerk of the Court is directed to unseal Defendant's motion, ECF No. 53. See Order for details. Signed by Judge Tanya |

| | | |
|---|---|---|
| | | S. Chutkan on 9/15/2023. (zjd) (Entered: 09/15/2023) |
| 09/15/2023 | 57 | MOTION to Ensure that Extrajudicial Statements Do Not Prejudice these Proceedings by USA as to DONALD J. TRUMP. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order Exhibit 47–5, # 3 Text of Proposed Order Exhibit 47–6) (zhsj) (Attachment 2 replaced on 9/21/2023) (zhsj). (Entered: 09/15/2023) |
| 09/17/2023 | 58 | REPLY in Support by DONALD J. TRUMP re 50 MOTION for Recusal (Lauro, John) (Entered: 09/17/2023) |
| 09/25/2023 | 59 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Attachments: # 1 Cover Sheet)(Gaston, Molly) (Entered: 09/25/2023) |
| 09/25/2023 | 60 | Memorandum in Opposition by DONALD J. TRUMP re 57 Motion for Miscellaneous Relief, (Lauro, John) (Entered: 09/25/2023) |
| 09/27/2023 | 61 | MEMORANDUM OPINION and ORDER as to DONALD J. TRUMP denying 50 Defendant's Motion for Recusal of District Judge Pursuant to 28 U.S.C. § 455(a). See attached memorandum opinion and order for full details. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zjd) (Entered: 09/27/2023) |
| 09/27/2023 | 62 | MOTION for Extension of Time to *File CIPA Sect. 5 and response to ex parte notice* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 09/27/2023) |
| 09/27/2023 | 67 | LEAVE TO FILE DENIED– Petition for Writ of Error Corum Noblis and Memorandum of Law in Support Thereof as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 68 | LEAVE TO FILE DENIED–Motion to Intervene as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 69 | LEAVE TO FILE DENIED– Application for Relief in a Criminal Case by a Person not a Party–Applicant Charles E. Hill as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |

| 09/27/2023 | 70 | LEAVE TO FILE DENIED–Motion for Reconsideration of Order Date 8/21/2023 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 71 | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 72 | LEAVE TO FILE DENIED– Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised theirdiscretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicuscuriae briefs. At this time, the court does not find it necessaryto depart from the ordinary procedural course by permittingthis filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 73 | LEAVE TO FILE DENIED– New Motion to Intervene–New Fresh Most Recent Evidence Relate 6/4/2009 &11/4/2008 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion topermit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/05/2023) |
| 09/27/2023 | 86 | LEAVE TO FILE DENIED– Petition for Writ of Error Coram Nobis as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 87 | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file anamicus curiae brief, the court is not persuaded thatfiling this |

| | | |
|---|---|---|
| | | submission is warranted. Although courtshave in rare instances exercised their discretion topermit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinaryprocedural course by permitting this filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 88 | LEAVE TO FILE DENIED– Proof of Service as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicuscuriae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing".. Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 89 | LEAVE TO FILE DENIED– Motion for Reconsideration of Order Date 8/21/2023 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicuscuriae brief, the court is not persuaded that filing thissubmission is warranted. Although courts have in rareinstances exercised their discretion to permit third–partysubmissions in criminal cases, neither the Federal Rulesof Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart fromthe ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 90 | LEAVE TO FILE DENIED– Motion to Intervene as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file anamicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courtshave in rare instances exercised their discretion topermit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court doesnot find it necessary to depart from the ordinaryprocedural course by permitting this filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 91 | LEAVE TO FILE DENIED– Motion of D.A. Feliciano for Leave to File Amicus Curiae Brief Supporting Neither Plaintiff Nor Defendant as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised theirdiscretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicuscuriae briefs. At this time, the court does not find it necessaryto depart from the ordinary procedural course by permittingthis filing." Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
| 09/27/2023 | 92 | LEAVE TO FILE DENIED– New Motion to Intervene–New Fresh Most Recent Evidence Relate 6/4/2009 &11/4/2008 as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded thatfiling this submission is warranted. Although courts have in rare instances exercised their discretion topermit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing of amicus curiae briefs. |

| | | At this time, the court does notfind it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/27/2023. (zhsj) (Entered: 10/09/2023) |
|---|---|---|
| 09/28/2023 | 63 | MOTION for Extension of Time to *File Pretrial Motions* by DONALD J. TRUMP. (Lauro, John) (Entered: 09/28/2023) |
| 09/28/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 3, 2023, the government shall file any opposition to both Defendant's 62 Motion for Access to CIPA § 4 Filing and an Adjournment of the CIPA § 5 Deadline and Defendant's 63 Motion for Extension of Time to File Pretrial Motions; and that the defense shall file any reply within three calendar days from the filing date of the government's opposition. Signed by Judge Tanya S. Chutkan on 9/28/2023. (zjd) (Entered: 09/28/2023) |
| 09/29/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The court hereby schedules a hearing on the government's 57 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings on October 16, 2023 at 10:00 AM in Courtroom 9. The requirement of Defendant's appearance is waived for this hearing. Signed by Judge Tanya S. Chutkan on 9/29/2023. (zjd) (Entered: 09/29/2023) |
| 09/29/2023 | 64 | REPLY in Support by USA as to DONALD J. TRUMP re 57 MOTION to Ensure that Extrajudicial Statements Do Not Prejudice these Proceedings (Gaston, Molly) (Entered: 09/29/2023) |
| 10/02/2023 | 65 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 62 Motion for Extension of Time to *File CIPA Section 5 and Response to Ex Parte Notice* (Windom, Thomas) (Entered: 10/02/2023) |
| 10/02/2023 | 66 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 63 Motion for Extension of Time to *File Pretrial Motions* (Windom, Thomas) (Entered: 10/02/2023) |
| 10/03/2023 | | MINUTE ORDER as to DONALD J. TRUMP: By October 10, 2023, defense counsel John F. Lauro and Gregory M. Singer shall initiate and complete all security clearance tasks as directed by the Litigation Security Group of the U.S. Department of Justice, and thereafter file a Notice of Compliance by October 11, 2023. The Notice shall also state whether the defense anticipates that any other of its members, whose assistance is reasonably required, will need to obtain a security clearance. Signed by Judge Tanya S. Chutkan on 10/3/2023. (zjd) (Entered: 10/03/2023) |
| 10/03/2023 | | Set/Reset Deadlines as to DONALD J. TRUMP: Notice of Compliance due by 10/11/2023. (mac) (Entered: 10/03/2023) |
| 10/04/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that court will hold an ex parte Classified Information Procedures Act hearing with the defense at a time and place arranged with defense counsel. Signed by Judge Tanya S. Chutkan on 10/4/2023. (zjd) (Entered: 10/04/2023) |
| 10/05/2023 | 74 | MOTION to Dismiss Case by DONALD J. TRUMP. (Lauro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 75 | REPLY in Support by DONALD J. TRUMP re 63 MOTION for Extension of Time to *File Pretrial Motions* (Lauro, John) (Entered: 10/05/2023) |
| 10/05/2023 | 76 | REPLY in Support by DONALD J. TRUMP re 62 MOTION for Extension of Time to *File CIPA Sect. 5 and response to ex parte notice* (Lauro, John) (Entered: 10/05/2023) |

| 10/06/2023 | 82 | OPINION and ORDER as to DONALD J. TRUMP granting in part and denying in part Defendant's 62 Motion for Access to CIPA § 4 Filing and An Adjournment of the CIPA § 5 Deadline; granting in part and denying in part Defendant's 63 Motion for Extension of Time to File Pretrial Motions; and amending in part the court's 39 Pretrial Order. Defense objections to ex parte nature of government's CIPA § 4 submission due October 11, 2023; government response due October 18, 2023. Defense CIPA § 5 notice due on October 26, 2023, with supplemental notices due within 20 days of receiving access to additional classified discovery materials. Dispositive motions, including motions to dismiss, due October 23, 2023; oppositions due within 14 days of motion's filing; replies due within 10 days of opposition's filing. Rule 17(c) motions and motions to compel due November 9, 2023; oppositions due November 24, 2023; replies due December 1, 2023. See Opinion & Order for details. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zjd) **Modified on 11/7/2023: See 146 Opinion and Order for amendments to the deadlines set in this opinion and order. (zjd). (Entered: 10/06/2023)** |
|---|---|---|
| 10/06/2023 | 94 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal case which the Federal Rules of Criminal Procedure and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit". Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/06/2023 | 96 | LEAVE TO FILE DENIED– Petition for a Writ of Habeas Corpus, Continued Judge Chutkan Impermissibly Held First Amendment to be Unconstitutional as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/09/2023 | 85 | MOTION for Leave to Appear Pro Hac Vice Emil Bove Filing fee $ 100, receipt number ADCDC–10406576. Fee Status: Fee Paid. by DONALD J. TRUMP. (Lauro, John) (Entered: 10/09/2023) |
| 10/10/2023 | 93 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases, which the Federal Rules of Criminal Procedure and and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit".. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) (Entered: 10/10/2023) |
| 10/10/2023 | 95 | LEAVE TO FILE DENIED– Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases, which the Federal Rules of Criminal Procedure and and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit".. Signed by Judge Tanya S. Chutkan on 10/6/2023. (zhsj) |

| | | (Entered: 10/10/2023) |
|---|---|---|
| 10/10/2023 | 97 | MOTION for Order for Fair and Protective Jury Procedures by USA as to DONALD J. TRUMP. (Gaston, Molly) (Entered: 10/10/2023) |
| 10/10/2023 | 98 | MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice−of−Counsel Defense by USA as to DONALD J. TRUMP. (Attachments: # 1 Text of Proposed Order)(Windom, Thomas) (Entered: 10/10/2023) |
| 10/10/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 20, 2023, the defense shall file any opposition to the government's 97 Motion for Fair and Protective Jury Procedures and 98 Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice−of−Counsel Defense; and that the government shall file any reply in support of those motions by October 25, 2023. Signed by Judge Tanya S. Chutkan on 10/10/2023. (zjd) (Entered: 10/10/2023) |
| 10/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Granting 85 Motion for Leave to Appear Pro Hac Vice. Emil Bove is hereby admitted pro hac vice to appear in this matter on behalf of Defendant. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click for instructions. Signed by Judge Tanya S. Chutkan on 10/11/2023. (zjd) (Entered: 10/11/2023) |
| 10/11/2023 | 99 | MOTION for Discovery *(PRE−TRIAL RULE 17(c) SUBPOENAS)* by DONALD J. TRUMP. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit)(Lauro, John) (Entered: 10/11/2023) |
| 10/11/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that by October 25, 2023, the government shall file any opposition to Defendant's 99 Motion for Pre−Trial Rule 17(c) Subpoenas; and the defense shall file any reply in support of its motion by November 1, 2023. Signed by Judge Tanya S. Chutkan on 10/11/2023. (zjd) (Entered: 10/11/2023) |
| 10/11/2023 | 100 | NOTICE *of Compliance* by DONALD J. TRUMP re Order,,, Set Deadlines,, (Lauro, John) (Entered: 10/11/2023) |
| 10/11/2023 | 101 | MOTION to Access *CIPA Section 4 Filing* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 10/11/2023) |
| 10/13/2023 | 102 | NOTICE OF ATTORNEY APPEARANCE: Emil Bove appearing for DONALD J. TRUMP (Bove, Emil) (Entered: 10/13/2023) |
| 10/16/2023 | | Minute Entry for proceedings held before Judge Tanya S. Chutkan: Motion Hearing as to DONALD J. TRUMP held on 10/16/2023 re 57 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings. Order forthcoming. Bond Status of Defendant: appearance waived, remains on personal recognizance; Court Reporter: Bryan Wayne; Defense Attorneys: John F. Lauro and Todd Blanche; US Attorneys: Molly G. Gaston and Thomas Windom. (zjd) (Entered: 10/16/2023) |
| 10/16/2023 | 103 | TRANSCRIPT OF MOTION HEARING in case as to DONALD J. TRUMP before Judge Tanya S. Chutkan held on October 16, 2023; Page Numbers: 1−86. Date of Issuance: 10/16/2023. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. |

| | | |
|---|---|---|
| | | After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/6/2023. Redacted Transcript Deadline set for 11/16/2023. Release of Transcript Restriction set for 1/14/2024.(Wayne, Bryan) (Entered: 10/16/2023) |
| 10/16/2023 | 104 | NOTICE OF ATTORNEY APPEARANCE James Pearce appearing for USA. (Pearce, James) (Main Document 104 replaced on 10/17/2023) (zhsj). (Entered: 10/16/2023) |
| 10/17/2023 | 105 | OPINION and ORDER as to DONALD J. TRUMP: Granting in part and denying in part the government's 57 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings; and denying as moot the government's sealed 56 Motion to Ensure that Extrajudicial Statements Do Not Prejudice These Proceedings. Signed by Judge Tanya S. Chutkan on 10/17/2023. (zjd) Modified on 10/20/2023: Opinion and Order administratively stayed pursuant to Minute Order filed 10/20/2023 (zjd). Modified on 10/29/2023: Administrative stay lifted pursuant to 124 Opinion and Order (zjd). (Entered: 10/17/2023) |
| 10/17/2023 | 106 | NOTICE OF APPEAL (Interlocutory) by DONALD J. TRUMP re 105 Memorandum Opinion,, Order,. Filing fee $ 505, receipt number ADCDC–10425241. Fee Status: Fee Paid. Parties have been notified. (Lauro, John) (Entered: 10/17/2023) |
| 10/18/2023 | 107 | Transmission of the Notice of Appeal, 105 Opinion and Order, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid on 10/17/2023 as to DONALD J. TRUMP re 106 Notice of Appeal – Interlocutory. (zhsj) (Entered: 10/18/2023) |
| 10/18/2023 | | USCA Case Number as to DONALD J. TRUMP 23–3190 for 106 Notice of Appeal – Interlocutory filed by DONALD J. TRUMP. (zhsj) (Entered: 10/18/2023) |
| 10/18/2023 | 108 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 101 Motion to Access *CIPA Section 4 Filing* (Windom, Thomas) (Entered: 10/18/2023) |
| 10/19/2023 | 109 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 74 Motion to Dismiss Case (Pearce, James) (Entered: 10/19/2023) |
| 10/20/2023 | 110 | MOTION to Stay *Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/20/2023) |
| 10/20/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Upon consideration of Defendant's opposed 110 Motion for Stay Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support, it is hereby ORDERED that the court's 105 Opinion and Order is administratively STAYED to permit the parties' briefing and the court's consideration of Defendant's Motion. It is FURTHER ORDERED that the government shall file any opposition to Defendant's Motion by October 25, 2023, and |

| | | that Defendant shall file any Reply by October 28, 2023. Signed by Judge Tanya S. Chutkan on 10/20/2023. (zjd) (Entered: 10/20/2023) |
|---|---|---|
| 10/20/2023 | 111 | RESPONSE by DONALD J. TRUMP re 97 MOTION for Order for Fair and Protective Jury Procedures (Lauro, John) (Entered: 10/20/2023) |
| 10/20/2023 | 112 | RESPONSE by DONALD J. TRUMP re 98 MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense (Lauro, John) (Entered: 10/20/2023) |
| 10/23/2023 | 113 | MOTION to Dismiss Case *Based on Constitutional Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 114 | MOTION to Dismiss Case *Based on Statutory Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 115 | MOTION to Strike *Inflammatory Allegations From the Indictment* by DONALD J. TRUMP. (Lauro, John) (Entered: 10/23/2023) |
| 10/23/2023 | 116 | MOTION to Dismiss Case *for Selective and Vindictive Prosecution* by DONALD J. TRUMP. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4)(Bove, Emil) (Entered: 10/23/2023) |
| 10/25/2023 | 117 | REPLY in Support by USA as to DONALD J. TRUMP re 97 MOTION for Order for Fair and Protective Jury Procedures (Attachments: # 1 Text of Proposed Order)(Gaston, Molly) (Entered: 10/25/2023) |
| 10/25/2023 | 118 | REPLY in Support by USA as to DONALD J. TRUMP re 98 MOTION for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense (Windom, Thomas) (Entered: 10/25/2023) |
| 10/25/2023 | 119 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 99 Motion for Discovery, (Windom, Thomas) (Entered: 10/25/2023) |
| 10/25/2023 | 120 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 110 Motion to Stay (Gaston, Molly) (Entered: 10/25/2023) |
| 10/26/2023 | 121 | NOTICE *of CIPA § 5 Filing and Objection to Unauthorized Deletions of Classified Information* by DONALD J. TRUMP (Blanche, Todd) (Entered: 10/26/2023) |
| 10/26/2023 | 122 | REPLY in Support by DONALD J. TRUMP re 74 MOTION to Dismiss Case (Lauro, John) (Entered: 10/26/2023) |
| 10/27/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's combined response, if any, to the 1 Media Coalition's Application for Audiovisual Access to Criminal Trial Proceedings, filed in Case No. 23–mc–99–TSC, and 1 Application of NBCUniversal Media, LLC to Permit Video and Audio of Trial in United States v. Donald Trump, filed in Case No. 23–mc–107–TSC, is due November 10, 2023. It is FURTHER ORDERED that any response shall be docketed in Case No. 23–mc–99–TSC. Signed by Judge Tanya S. Chutkan on 10/27/2023. (zjd) (Entered: 10/27/2023) |
| 10/28/2023 | 123 | REPLY in Support by DONALD J. TRUMP re 110 MOTION to Stay *Pending Appeal, Request for Temporary Administrative Stay, and Memorandum in Support* (Lauro, John) (Entered: 10/28/2023) |
| 10/29/2023 | 124 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 110 Motion to Stay Pending Appeal, and lifting the administrative stay imposed by the court's |

| | | |
|---|---|---|
| | | October 20, 2023 Minute Order. Signed by Judge Tanya S. Chutkan on 10/29/2023. (zjd) (Entered: 10/29/2023) |
| 10/31/2023 | 125 | LEAVE TO FILE DENIED– Motion of the American Civil Liberties Union & the American Civil Liberties Union of the District of Columbia for Leave to File Brief Amici Curae in Aid of the Court's Re–Evaluation of its Gag Order as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the LocalCriminal Rules contemplate the filing of amicus curiae briefs. At this time,the court does not find it necessary to depart from the ordinary proceduralcourse by permitting this filing." Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 10/31/2023) |
| 10/31/2023 | 131 | LEAVE TO FILE DENIED– Amicus Declaration in Support of United States Opposition to Defendant's Motion to Dismiss Dkt 74 Due "Presidential Immunity" as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the courtis not persuaded that filing this submission is warranted. Although courts havein rare instances exercised their discretion to permit third–party submissionsin criminal cases, neither the Federal Rules of Criminal Procedure nor theLocal Criminal Rules contemplate the filing of amicus curiae briefs. At thistime, the court does not find it necessary to depart from the ordinaryprocedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 132 | LEAVE TO FILE DENIED– Plaintiff's Demand for Default Judgments in Third Party Joinder Under FRCP, Rule 18(a) and (b) as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases,neither the Federal Rules of Criminal Procedure northe Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court does notfind it necessary to depart from the ordinaryprocedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 133 | LEAVE TO FILE DENIED– Motion to Withdraw New Motion to Intervene – New Fresh Most Recent Evidence Relate 6/4/2009 & 11/4/2008 Set June Date Kill Reddie as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leaveto file an amicus curiae brief, the court isnot persuaded that filing this submissionis warranted. Although courts have inrare instances exercised their discretionto permit third–party submissions incriminal cases, neither the Federal Rulesof Criminal Procedure nor the LocalCriminal Rules contemplate the filing ofamicus curiae briefs. At this time, thecourt does not find it necessary to departfrom the ordinary procedural course bypermitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 134 | LEAVE TO FILE DENIED– Motion of Former Officials in Five Republican Administrations, Et Al for Leave to File an Amici Curiae Brief in Opposition to Defendant's Motion to Dismiss Indictment Based on Presidential Immunity as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instancesexercised their discretion to permit third–partysubmissions in criminal cases, neither theFederal Rules of Criminal |

| | | |
|---|---|---|
| | | Procedure nor theLocal Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the courtdoes not find it necessary to depart from theordinary procedural course by permitting thisfiling". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) (Entered: 11/03/2023) |
| 10/31/2023 | 135 | LEAVE TO FILE DENIED– Pro Se Amicus Curiae re: Defendant's Motion to Dismiss Indictment Based on Presidential Immunity as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is not persuaded that filing this submission is warranted. Although courts have in rare instances exercised their discretion to permit third partysubmissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local CriminalRules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary todepart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 10/31/2023. (zhsj) Modified on 11/3/2023 (zhsj). (Entered: 11/03/2023) |
| 11/01/2023 | 126 | OPINION and ORDER as to DONALD J. TRUMP: Granting the government's Classified Ex Parte, In Camera, and Under Seal Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure; and denying Defendant's Motion for Access to CIPA § 4 Filing, ECF No. 101. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/1/2023. (zjd) (Entered: 11/01/2023) |
| 11/01/2023 | 127 | REPLY in Support by DONALD J. TRUMP re 99 MOTION for Discovery *(PRE–TRIAL RULE 17(c) SUBPOENAS)* (Lauro, John) (Entered: 11/01/2023) |
| 11/01/2023 | 128 | MOTION to Stay *Case Pending Immunity Determination* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/01/2023) |
| 11/01/2023 | 129 | MOTION for Extension of Time to *File Motions for Rule 17(c) Subpoenas and Motions to Compel* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/01/2023) |
| 11/02/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that the government shall file any opposition to Defendant's 129 Motion for Extension of Time by November 4, 2023; and that Defendant shall file any reply in support of that Motion by November 6, 2023. Signed by Judge Tanya S. Chutkan on 11/2/2023. (zjd) (Entered: 11/02/2023) |
| 11/02/2023 | 130 | ORDER as to DONALD J. TRUMP: Granting the government's 97 Motion for Fair and Protective Jury Procedures. See Order for details. Signed by Judge Tanya S. Chutkan on 11/2/2023. (zjd) (Entered: 11/02/2023) |
| 11/03/2023 | 136 | MOTION for Leave to File *Oversized Brief* by USA as to DONALD J. TRUMP. (Windom, Thomas) (Entered: 11/03/2023) |
| 11/03/2023 | | MINUTE ORDER as to DONALD J. TRUMP: It is hereby ORDERED that Defendant shall file any opposition to the government's 136 Motion for Leave to File Oversized Brief by 7:00 PM on November 4, 2023. This will allow the court to rule on the Motion in advance of the November 6, 2023 deadline for the brief in question. Signed by Judge Tanya S. Chutkan on 11/3/2023. (zjd) (Entered: 11/03/2023) |
| 11/03/2023 | 137 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 129 Motion for Extension of Time to *File Pretrial Motions Related to Discovery and Subpoenas* (Windom, Thomas) (Entered: 11/03/2023) |
| 11/04/2023 | 138 | |

| | | |
|---|---|---|
| | | RESPONSE by DONALD J. TRUMP re 136 MOTION for Leave to File *Oversized Brief* (Lauro, John) (Entered: 11/04/2023) |
| 11/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The government's 136 Motion for Leave to File Oversized Brief is hereby GRANTED. The government may submit a combined opposition brief to Defendant's 113 Motion to Dismiss Based on Constitutional Grounds and 114 Motion to Dismiss Based on Statutory Grounds. The brief may not exceed 90 pages in total. The discussion of each Motion therein shall not exceed 45 pages. Signed by Judge Tanya S. Chutkan on 11/5/2023. (zjd) (Entered: 11/05/2023) |
| 11/06/2023 | 139 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 113 Motion to Dismiss Case, 114 Motion to Dismiss Case (Pearce, James) (Entered: 11/06/2023) |
| 11/06/2023 | 140 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 115 Motion to Strike (Gaston, Molly) (Entered: 11/06/2023) |
| 11/06/2023 | 141 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 116 Motion to Dismiss Case *for Selective and Vindictive Prosecution* (Windom, Thomas) (Entered: 11/06/2023) |
| 11/06/2023 | 142 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 128 Motion to Stay (Gaston, Molly) (Entered: 11/06/2023) |
| 11/06/2023 | 143 | NOTICE OF ATTORNEY APPEARANCE John M. Pellettieri appearing for USA. (Pellettieri, John) (Entered: 11/06/2023) |
| 11/06/2023 | 144 | REPLY in Support by DONALD J. TRUMP re 129 MOTION for Extension of Time to *File Motions for Rule 17(c) Subpoenas and Motions to Compel* (Lauro, John) (Entered: 11/06/2023) |
| 11/07/2023 | 146 | OPINION and ORDER as to DONALD J. TRUMP: granting in part and denying in part Defendant's 129 Motion for Extension of Time to File Pretrial Motions Related to Discovery and Subpoenas. Motions to compel due November 27, 2023; oppositions due December 11, 2023; replies due December 18, 2023. Rule 17(c) motions due December 13, 2023; oppositions due December 27, 2023; replies due January 3, 2024. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/7/2023. (zjd) (Entered: 11/07/2023) |
| 11/08/2023 | 147 | OPINION and ORDER as to DONALD J. TRUMP: Granting in part and denying in part the government's Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice–of–Counsel Defense, ECF No. 98 . See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/8/2023. (zjd) (Entered: 11/08/2023) |
| 11/08/2023 | 148 | ORDER as to DONALD J. TRUMP: By November 22, 2023, the government shall submit a classified brief responding to the objection set forth in Defendant's classified CIPA § 5 submission. See Order for details. Signed by Judge Tanya S. Chutkan on 11/8/2023. (zjd) (Entered: 11/08/2023) |
| 11/09/2023 | 149 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 11/09/2023) |
| 11/09/2023 | 153 | LEAVE TO FILE DENIED–Motion for Leave to File Amicus as to DONALD J. TRUMP. This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure nor the |

| | | |
|---|---|---|
| | | Local Criminal Rules contemplate the filing ofamicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary proceduralcourse by permitting this filing". Signed by Judge Tanya S. Chutkan on 11/9/2023. (zhsj) (Entered: 11/14/2023) |
| 11/09/2023 | 154 | LEAVE TO FILE DENIED–Notice of Appeal as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even assuming a third party could file a notice of appeal in a criminal cases which the Federal Rules of Criminal Procedure and Local Criminal Rules do not contemplate, this filing does not comply with Rule 3(c) of the Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit". Signed by Judge Tanya S. Chutkan on 11/9/2023. (zhsj) (Entered: 11/14/2023) |
| 11/09/2023 | 155 | LEAVE TO FILE DENIED–Proof of Service/Notice of Filing as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Even if construed as a motion for leave to file an amicus curiae brief, the court is notpersuaded that filing this submission is warranted. Although courts have in rareinstances exercised their discretion to permit third–party submissions in criminalcases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rulescontemplate the filing of amicus curiae briefs. At this time, the court does not find itnecessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 9/11/2023. (zhsj) (Entered: 11/14/2023) |
| 11/12/2023 | 150 | MOTION for Extension of Time to File Response/Reply as to 116 MOTION to Dismiss Case *for Selective and Vindictive Prosecution*, 128 MOTION to Stay *Case Pending Immunity Determination*, 115 MOTION to Strike *Inflammatory Allegations From the Indictment*, 113 MOTION to Dismiss Case *Based on Constitutional Grounds*, 114 MOTION to Dismiss Case *Based on Statutory Grounds* by DONALD J. TRUMP. (Lauro, John) (Entered: 11/12/2023) |
| 11/13/2023 | 151 | Memorandum in Opposition by USA as to DONALD J. TRUMP re 150 Motion for Extension of Time to File Response/Reply, (Gaston, Molly) (Entered: 11/13/2023) |
| 11/13/2023 | 152 | ORDER as to DONALD J. TRUMP: Granting in part and denying in part Defendant's 150 Motion for Extension of Time to File Reply Briefs. Defendant may file any Reply in support of his motions to dismiss based on 113 constitutional, 114 statutory, and 116 selective prosecution grounds by November 22, 2023; and Defendant may file any Reply in support of his pending 115 Motion to Strike and 128 Motion to Stay by November 15, 2023. Signed by Judge Tanya S. Chutkan on 11/13/2023. (zjd) (Entered: 11/13/2023) |
| 11/15/2023 | 156 | REPLY in Support by DONALD J. TRUMP re 115 MOTION to Strike *Inflammatory Allegations From the Indictment* (Lauro, John) (Entered: 11/15/2023) |
| 11/15/2023 | 157 | REPLY in Support by DONALD J. TRUMP re 128 MOTION to Stay *Case Pending Immunity Determination* (Lauro, John) (Entered: 11/15/2023) |
| 11/17/2023 | 158 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 115 Motion to Strike Inflammatory Allegations From the Indictment. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/17/2023. (zjd) (Entered: 11/17/2023) |
| 11/21/2023 | 159 | Unopposed MOTION for Extension of Time to File Response/Reply *to the Special Counsel's Classified CIPA Sec. 5 Motion to Strike* by DONALD J. TRUMP. (Blanche, Todd) (Entered: 11/21/2023) |

| 11/21/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's unopposed 159 Motion for Extension of Time to File Opposition to the Special Counsel's Classified CIPA Sec. 5 Motion to Strike is hereby GRANTED. Defendant may file any opposition to the government's Motion to Strike by November 27, 2023. Signed by Judge Tanya S. Chutkan on 11/21/2023. (zjd) (Entered: 11/21/2023) |
|---|---|---|
| 11/22/2023 | 160 | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 11/22/2023) |
| 11/22/2023 | 161 | REPLY in Support by DONALD J. TRUMP re 116 MOTION to Dismiss Case *for Selective and Vindictive Prosecution* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Blanche, Todd) (Entered: 11/22/2023) |
| 11/22/2023 | 162 | REPLY in Support by DONALD J. TRUMP re 113 MOTION to Dismiss Case *Based on Constitutional Grounds* (Lauro, John) (Entered: 11/22/2023) |
| 11/22/2023 | 163 | REPLY in Support by DONALD J. TRUMP re 114 MOTION to Dismiss Case *Based on Statutory Grounds* (Lauro, John) (Entered: 11/22/2023) |
| 11/22/2023 | 164 | LEAVE TO FILE DENIED– Motion for Leave to File Amicus as to DONALD J. TRUMP This document is unavailable as the Court denied its filing. "Although courts have in rare instances exercised their discretion to permit third–party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing". Signed by Judge Tanya S. Chutkan on 11/22/2023. (zhsj) Modified on 11/27/2023 (zhsj). (Entered: 11/27/2023) |
| 11/27/2023 | 165 | OPINION and ORDER as to DONALD J. TRUMP: Denying Defendant's 99 Motion for Pretrial Rule 17(c) Subpoenas. See Opinion and Order for details. Signed by Judge Tanya S. Chutkan on 11/27/2023. (zjd) (Entered: 11/27/2023) |
| 11/27/2023 | 166 | MOTION for Leave to File *Under Seal Unredacted Motion and Exhibits* by DONALD J. TRUMP. (Attachments: # 1 PRESIDENT DONALD J. TRUMPS MOTION FOR AN ORDER REGARDING THE SCOPE OF THE PROSECUTION TEAM (REDACTED), # 2 Exhibit A, # 3 Exhibit B (redacted), # 4 Exhibit C (redacted), # 5 Exhibit D, # 6 Exhibit E (redacted), # 7 Exhibit F (redacted), # 8 Exhibit G (redacted), # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O)(Blanche, Todd) (Entered: 11/27/2023) |
| 11/27/2023 | 167 | MOTION to Compel *Discovery* by DONALD J. TRUMP. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Blanche, Todd) (Entered: 11/27/2023) |
| 11/28/2023 | | MINUTE ORDER as to DONALD J. TRUMP: Defendant's 166 Motion for Leave to File Under Seal is hereby GRANTED. The proposed filing contains Sensitive Materials, which the court has already determined warrant sealing. See Protective Order, ECF No. 28 . Defendant shall file under seal an unredacted copy of his Motion for an Order Regarding the Scope of the Prosecution Team, and shall publicly file a redacted copy of that Motion, by November 29, 2023. The court reminds Defendant that all motions must indicate whether they are opposed. Going forward, if any party seeks to make a filing under seal, the party shall file a sealed motion for leave to file under seal that attaches (1) an unredacted copy of the filing to be docketed under seal, and (2) a redacted copy of the filing that may be publicly docketed. If the court |

| | | |
|---|---|---|
| | | decides to grant such sealed motions for leave to file under seal, it will then direct the Clerk of the Court to docket those attached filings under seal and publicly, respectively. See, e.g., ECF No. <u>47</u> (Government's sealed motion for leave to file under seal); ECF No. <u>55</u> (court order granting motion and directing Clerk to docket filings appropriately); see also Protective Order at 4; Local R. Crim. P. 49(f)(6)(i). Filings that do not comply with those procedures may be stricken. It is further ORDERED that the Government shall file any opposition to Defendant's Motion for an Order Regarding the Scope of the Prosecution Team by December 9, 2023; and Defendant shall file any Reply in support of that Motion by December 14, 2023. In addition, the Government shall file any Opposition to Defendant's <u>167</u> Motion to Compel Discovery by December 11, 2023; and Defendant shall file any Reply in support of that Motion by December 18, 2023. Signed by Judge Tanya S. Chutkan on 11/28/2023. (zjd) (Entered: 11/28/2023) |
| 11/28/2023 | <u>168</u> | NOTICE *Pursuant to CIPA Section 5* by DONALD J. TRUMP (Blanche, Todd) (Entered: 11/28/2023) |
| 11/29/2023 | <u>169</u> | REDACTED DOCUMENT by DONALD J. TRUMP of Motion for an Order Regarding the Scope of the Prosecution Team (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B (redacted), # <u>3</u> Exhibit C (redacted), # <u>4</u> Exhibit D, # <u>5</u> Exhibit E (redacted), # <u>6</u> Exhibit F (redacted), # <u>7</u> Exhibit G (redacted), # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O)(Blanche, Todd) (Entered: 11/29/2023) |
| 12/01/2023 | <u>171</u> | MEMORANDUM OPINION as to DONALD J. TRUMP re: Defendant's <u>74</u> Motion to Dismiss Based on Presidential Immunity, and Defendant's <u>113</u> Motion to Dismiss Based on Constitutional Grounds. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/01/2023 | <u>172</u> | ORDER as to DONALD J. TRUMP: Denying Defendant's <u>74</u> Motion to Dismiss Based on Presidential Immunity, and denying Defendant's <u>113</u> Motion to Dismiss Based on Constitutional Grounds. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/01/2023 | | MINUTE ORDER as to DONALD J. TRUMP: In light of the court's <u>172</u> Order denying Defendant's <u>74</u> Motion to Dismiss Based on Presidential Immunity; Defendant's <u>128</u> Motion to Stay Case Pending Immunity Determination is hereby DENIED as moot. Signed by Judge Tanya S. Chutkan on 12/1/2023. (zjd) (Entered: 12/01/2023) |
| 12/04/2023 | <u>173</u> | NOTICE *of Filing* by USA as to DONALD J. TRUMP (Windom, Thomas) (Entered: 12/04/2023) |
| 12/05/2023 | | MINUTE ORDER as to DONALD J. TRUMP: The Government's unopposed <u>174</u> Sealed Motion for Leave to File Unredacted Notice Under Seal and for Entry of Redacted Notice on Public Docket is hereby GRANTED. The proposed filing contains Sensitive Materials, which the court has already determined warrant sealing. See Protective Order, ECF No. <u>28</u> . The Clerk of the Court is directed to file under seal the unredacted copy of the Government's Notice (ECF No. 174–1), and to file on the public docket the redacted copy of the Government's Notice (ECF No. 174–2). Signed by Judge Tanya S. Chutkan on 12/5/2023. (zjd) (Entered: 12/05/2023) |
| 12/05/2023 | <u>176</u> | NOTICE Pursuant to Federal Rule of Evidence 404(b) by USA as to DONALD J. TRUMP. (zhsj) (Entered: 12/05/2023) |

| 12/07/2023 | 177 | NOTICE OF APPEAL (Interlocutory) by DONALD J. TRUMP re 172 Order on Motion to Dismiss Case, 171 Memorandum Opinion. Filing fee $ 605, receipt number ADCDC−10543486. Fee Status: Fee Paid. Parties have been notified. (Lauro, John) (Entered: 12/07/2023) |
| --- | --- | --- |
| 12/07/2023 | 178 | MOTION for Order Regarding Automatic Stay of Proceedings Pending Appeal re 177 Notice of Appeal – Interlocutory by DONALD J. TRUMP. (Blanche, Todd) (Entered: 12/07/2023) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant*. | |

## NOTICE OF APPEAL

Defendant President Donald J. Trump hereby provides notice that he appeals to the U.S. Court of Appeals for the District of Columbia Circuit from the Memorandum Opinion and Order of the District Court dated December 1, 2023, Docs. 171, 172.

Dated: December 7, 2023

Respectfully submitted,

Todd Blanche, Esq. (PHV)
ToddBlanche@blanchelaw.com
Emil Bove, Esq. (PHV)
Emil.Bove@blanchelaw.com
BLANCHE LAW PLLC
99 Wall St., Suite 4460
New York, NY 10005
(212) 716-1250

*/s/John F. Lauro*
John F. Lauro, Esq.
D.C. Bar No. 392830
jlauro@laurosinger.com
Gregory M. Singer, Esq. (PHV)
gsinger@laurosinger.com
Filzah I. Pavalon, Esq. (PHV)
fpavalon@laurosinger.com
Lauro & Singer
400 N. Tampa St., 15th Floor
Tampa, FL 33602
(813) 222-8990
*Counsel for President Trump*

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DONALD J. TRUMP**, <br><br> Defendant. | Criminal Action No. 23-257 (TSC) |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, ECF No. 171, Defendant's Motion to Dismiss Based on Presidential Immunity, ECF No. 74, is hereby DENIED; and Defendant's Motion to Dismiss Based on Constitutional Grounds, ECF No. 113, is hereby DENIED.

Date: December 1, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DONALD J. TRUMP**, <br><br>   Defendant. | Criminal Action No. 23-257 (TSC) |

## MEMORANDUM OPINION

The United States has charged former President Donald J. Trump with four counts of criminal conduct that he allegedly committed during the waning days of his Presidency. *See* Indictment, ECF No. 1. He has moved to dismiss the charges against him based on Presidential immunity, ECF No. 74 ("Immunity Motion"), and on constitutional grounds, ECF No. 113 ("Constitutional Motion").[1] For the reasons set forth below, the court will DENY both motions.

## I.  BACKGROUND

At the motion to dismiss stage, the court assumes the truth of the Indictment's allegations. *See, e.g.*, *United States v. Weeks*, 636 F. Supp. 3d 117, 120 (D.D.C. 2022). Defendant contends that the charges in the Indictment are based on his "public statements and tweets about the federal election and certification," "communications with the U.S. Department of Justice about investigating elections crimes and possibly appointing a new Acting Attorney

---

[1] Defendant has also moved to dismiss based on statutory grounds, ECF No. 114, and for selective and vindictive prosecution, ECF No. 116. The court will address those motions separately. The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted). The court therefore rules first on the Immunity Motion and the Constitutional Motion—in which Defendant asserts "constitutional immunity from double jeopardy," *United States v. Scott*, 464 F.2d 832, 833 (D.C. Cir. 1972).

General," "communications with state officials about the federal election and the exercise of their official duties with respect to the election," "communications with the Vice President and Members of Congress about the exercise of their official duties in the election-certification proceedings," and "organizing slates of electors as part of the attempt to convince legislators not to certify the election against defendant."  Immunity Motion at 3–8 (formatting modified). Those generalized descriptions fail to properly portray the conduct with which he has been charged.  Accordingly, the court will briefly review the central allegations as set forth in the Indictment.

Defendant "was the forty-fifth President of the United States and a candidate for re-election in 2020."  Indictment ¶ 1.  "Despite having lost" that election, he "was determined to remain in power," so "for more than two months following election day on November 3, 2020, the Defendant spread lies that there had been outcome-determinative fraud in the election and that he had actually won."  *Id.* ¶ 2.  He "knew that [those claims] were false," but "repeatedly and widely disseminated them anyway—to make his knowingly false claims appear legitimate, create an intense national atmosphere of mistrust and anger, and erode public faith in the administration of the election."  *Id.*; *see id.* ¶ 12 (listing six such claims).  "In fact, the Defendant was notified repeatedly that his claims were untrue—often by the people on whom he relied for candid advice on important matters, and who were best positioned to know the facts and he deliberately disregarded the truth."  *Id.* ¶ 11.  Those people included the Vice President, "senior leaders of the Justice Department," the Director of National Intelligence, the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, "Senior White House attorneys," "Senior staffers on the Defendant's 2020 re-election campaign," state legislators and officials, and state and federal judges.  *Id.*

"Defendant also pursued unlawful means of discounting legitimate votes and subverting the election results." *Id.* ¶ 4.  Specifically, he "targeted a bedrock function of the United States federal government: the nation's process of collecting, counting, and certifying the results of the presidential election." *Id.*  The Indictment describes that process:

> The Constitution provided that individuals called electors select the president, and that each state determine for itself how to appoint the electors apportioned to it. Through state laws, each of the fifty states and the District of Columbia chose to select their electors based on the popular vote in the state.  After election day, the [Electoral Count Act ("ECA")] required each state to formally determine—or 'ascertain'—the electors who would represent the state's voters by casting electoral votes on behalf of the candidate who had won the popular vote, and required the executive of each state to certify to the federal government the identities of those electors.  Then, on a date set by the ECA, each state's ascertained electors were required to meet and collect the results of the presidential election—that is, to cast electoral votes based on their state's popular vote, and to send their electoral votes, along with the state executive's certification that they were the state's legitimate electors, to the United States Congress to be counted and certified in an official proceeding.  Finally, the Constitution and ECA required that on the sixth of January following election day, the Congress meet in a Joint Session for a certification proceeding, presided over by the Vice President as President of the Senate, to count the electoral votes, resolve any objections, and announce the result—thus certifying the winner of the presidential election as president-elect.

*Id.* ¶ 9.

Defendant, along with at least six co-conspirators, *id.* ¶ 8, undertook efforts "to impair, obstruct, and defeat [that process] through dishonesty, fraud, and deceit," *id.* ¶ 10.  Those efforts took five alleged forms:

*First*, they "used knowingly false claims of election fraud to get state legislators and election officials to subvert the legitimate election results and change electoral votes for the Defendant's opponent, Joseph R. Biden, Jr., to electoral votes for the Defendant."  *Id.* ¶ 10(a). "That is, on the pretext of baseless fraud claims, the Defendant pushed officials in certain states to ignore the popular vote; disenfranchise millions of voters; dismiss legitimate electors; and

ultimately, cause the ascertainment of and voting by illegitimate electors in favor of the Defendant." *Id.*; *see id.* ¶¶ 13–52.

*Second*, they "organized fraudulent slates of electors in seven targeted states (Arizona, Georgia, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin), attempting to mimic the procedures that the legitimate electors were supposed to follow under the Constitution and other federal and state laws." *Id.* ¶ 10(b). "This included causing the fraudulent electors to meet on the day appointed by federal law on which legitimate electors were to gather and cast their votes; cast fraudulent votes for the Defendant; and sign certificates falsely representing that they were legitimate electors." *Id.*; *see id.* ¶¶ 53–69. They "then caused these fraudulent electors to transmit their false certificates to the Vice President and other government officials to be counted at the certification proceeding on January 6," 2021. *Id.* ¶ 10(b); *see id.* ¶¶ 53–69.

*Third*, they "attempted to use the power and authority of the Justice Department to conduct sham election crime investigations and to send a letter to the targeted states that falsely claimed that the Justice Department had identified significant concerns that may have impacted the election outcome; that sought to advance the Defendant's fraudulent elector plan by using the Justice Department's authority to falsely present the fraudulent electors as a valid alternative to the legitimate electors; and that urged, on behalf of the Justice Department, the targeted states' legislatures to convene to create the opportunity to choose the fraudulent electors over the legitimate electors." *Id.* ¶ 10(c); *see id.* ¶¶ 70–85.

*Fourth*, "using knowingly false claims of election fraud," they "attempted to convince the Vice President to use the Defendant's fraudulent electors, reject legitimate electoral votes, or send legitimate electoral votes to state legislatures for review rather than counting them." *Id.* ¶ 10(d). "When that failed, on the morning of January 6," they "repeated knowingly false claims

of election fraud to gathered supporters, falsely told them that the Vice President had the authority to and might alter the election results, and directed them to the Capitol to obstruct the certification proceeding and exert pressure on the Vice President to take the fraudulent actions he had previously refused." *Id.*; *see id.* ¶¶ 86–105.

*Fifth*, "on the afternoon of January 6," once "a large and angry crowd—including many individuals whom the Defendant had deceived into believing the Vice President could and might change the election results—violently attacked the Capitol and halted the proceeding," they "exploited the disruption by redoubling efforts to levy false claims of election fraud and convince members of Congress to further delay the certification based on those claims." *Id.* ¶ 10(e); *see id.* ¶¶ 106–124.

Based on this conduct, the Indictment charges Defendant with four counts: Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, *id.* ¶ 6; Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), *id.* ¶ 126; Obstruction of, and Attempt to Obstruct, an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2, *id.* ¶ 128; and Conspiracy Against Rights, in violation of 18 U.S.C. § 241, *id.* ¶ 130.

## II.    LEGAL STANDARD

A criminal defendant may move to dismiss based on a "defect in the indictment," such as a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). That motion may be based—as it is here—on constitutional challenges to the prosecution, including the assertion of immunity. *See, e.g.*, *United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019). "Because a court's use of its supervisory power to dismiss an indictment directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." *United States v. Fischer*, 64 F.4th 329, 334–35 (D.C. Cir. 2023) (formatting modified).

### III.    EXECUTIVE IMMUNITY

Defendant contends that the Constitution grants him "absolute immunity from criminal prosecution for actions performed within the 'outer perimeter' of his official responsibility" while he served as President of the United States, so long as he was not both impeached and convicted for those actions.  Immunity Motion at 8, 11–13 (formatting modified).  The Constitution's text, structure, and history do not support that contention.  No court—or any other branch of government—has ever accepted it.  And this court will not so hold.  Whatever immunities a sitting President may enjoy, the United States has only one Chief Executive at a time, and that position does not confer a lifelong "get-out-of-jail-free" pass.  Former Presidents enjoy no special conditions on their federal criminal liability.  Defendant may be subject to federal investigation, indictment, prosecution, conviction, and punishment for any criminal acts undertaken while in office.

### A. <u>Text</u>

In interpreting the Constitution, courts ordinarily "begin with its text," *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997), but there is no provision in the Constitution conferring the immunity that Defendant claims.  The Supreme Court has already noted "the absence of explicit constitutional . . . guidance" on whether a President possesses any immunity.  *Nixon v. Fitzgerald*, 457 U.S. 731, 747 (1982) ("*Fitzgerald*"); *see also United States v. Nixon*, 418 U.S. 683, 705–06 n.16 (1974) ("*Nixon*") (observing "the silence of the Constitution" regarding a President's immunity from criminal subpoenas).  The Executive Branch has likewise recognized that "the Constitution provides no explicit immunity from criminal sanctions for any civil officer," including the current President.  *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 U.S. Op. Off. Legal Counsel 222, 2000 WL 33711291, at *9 (2000) ("OLC Immunity Memo") (quoting Memorandum for the United States Concerning the Vice

President's Claim of Constitutional Immunity at 4 (filed Oct. 5, 1973), *In re Proceedings of the Grand Jury Impaneled December 5, 1972: Application of Spiro T. Agnew, Vice President of the United States* (D. Md. 1973) (No. 73-965) ("1973 SG Memo"), *available at* 27 Hofstra L. Rev. 677, 775–97 (Appendix)) (alterations adopted).  There is no "Presidential Immunity" Clause.

The lack of constitutional text is no accident; the Framers explicitly created immunity for other officials.  The Constitution's Speech and Debate Clause provides that "Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1.  And some Founding-Era state constitutions, like those of Virginia and Delaware, unequivocally protected their Governor from certain penal sanctions, at least until "he [was] out of office."  Saikrishna Bangalore Prakash, *Prosecuting and Punishing Our Presidents*, 100 Tex. L. Rev. 55, 69 (2021) (quoting Va. Const. of 1776, art. XVI); *accord id.* at 69–70 (quoting Del. Const. of 1776, art. XXIII).  The U.S. Constitution contains no equivalent protections for the President.

Nor is the Constitution silent on the question because its drafters and ratifiers assumed the President would enjoy the immunity Defendant claims.  To the contrary, America's founding generation envisioned a Chief Executive wholly different from the unaccountable, almost omnipotent rulers of other nations at that time.  In Federalist No. 69—titled "The Real Character of the Executive"—Alexander Hamilton emphasized the "total dissimilitude between [the President] and the king of Great Britain," the latter being "sacred and inviolable" in that "there is no constitutional tribunal to which he is amenable; no punishment to which he can be subjected." *The Federalist Papers by Alexander Hamilton, James Madison and John Jay* 348–49 (Garry

Wills ed. 1982).[2]  Hamilton's contemporary commentators universally affirmed the crucial

distinction that the President would at some point be subject to criminal process.  *See* Prakash,

100 Tex. L. Rev. at 71–75 (collecting commentary); Response, Brian C. Kalt, *Criminal Immunity*

*and Schrödinger's President: A Response to* Prosecuting and Punishing Our Presidents, 100 Tex.

L. Rev. Online 79, 83–85 (2021) (acknowledging Founding-Era consensus that Presidents would

lack absolute criminal immunity, but noting that most commentary was ambiguous about

whether prosecution could occur during Presidency, or only after).  That widely acknowledged

contrast between the President and a king is even more compelling for a former President.  The

Constitution's silence on former Presidents' criminal immunity thus does not reflect an

understanding that such immunity existed.

Lacking an express constitutional provision, Defendant hangs his textual argument for

immunity on the Impeachment Judgment Clause, but it cannot bear the weight he places on it.

The Clause provides:

> Judgment in Cases of Impeachment shall not extend further than to removal from
> Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit
> under the United States: but the Party convicted shall nevertheless be liable and
> subject to Indictment, Trial, Judgment and Punishment, according to Law.

U.S. Const. art. I, § 3, cl. 7.  From this language, Defendant concludes "that the President may be

charged by indictment only in cases where the President has been impeached and convicted by

trial in the Senate."  Immunity Motion at 11.  But Defendant is not President, and reading the

Clause to grant absolute criminal immunity to former Presidents would contravene its plain

meaning, original understanding, and common sense.

---

[2] All subsequent citations to the Federalist Papers refer to this edition, and the Papers are also
available online at https://avalon.law.yale.edu/subject_menus/fed.asp.

The Clause has two parts.  The first limits the penalties of impeachment to removal and disqualification from office.  That limit marked a deliberate departure from the prevailing British tradition, in which an impeachment conviction "might result in a wide array of criminal penalties, including fines, imprisonment, and even execution."  *Whether A Former President May Be Indicted and Tried for the Same Offenses for Which He Was Impeached by the House and Acquitted by the Senate*, 24 U.S. Op. Off. Legal Counsel 110, 2000 WL 33711290, at *7 (2000) ("OLC Double Jeopardy Memo") (citing 2 Joseph Story, *Commentaries on the Constitution of the United States* 251–2 (1833; reprint 1994) ("*Story's Commentaries*"); 2 Richard Wooddeson, *A Systematical View of the Laws of England* 611–14 (1792); Raoul Berger, *Impeachment: The Constitutional Problems* 67 (1974)).  The second part of the Clause provides, however, that impeachment's limits do not preclude "the Party convicted" from later criminal prosecution in the courts—*i.e.*, that "further punishment[] . . . would still be available but simply not to the legislature."  *Id.* at *10.

Both parts of the Clause undercut Defendant's interpretation of it.  The first begins by defining the Clause's scope: "Judgment in Cases of Impeachment," indicating that the Clause is aimed primarily at identifying the permissible penalties associated with impeachment itself.  The Clause's second part confirms that purview.  Rather than stating that "the Party convicted shall *only then* be liable" to criminal prosecution, the Clause states that "the Party convicted shall *nevertheless* be liable."  U.S. Const. art. I, § 3, cl. 7 (emphasis added).  At the Founding, as now, "nevertheless" meant "notwithstanding that," and "notwithstanding that" meant "[w]ithout hindrance or obstruction from."  *Neverthele'ss*, Samuel Johnson, *A Dictionary Of The English Language* (1978) (4th ed. 1773), *available at* https://perma.cc/ST8E-RCMB; *id.*, *Notwithsta'nding*, *available at* https://perma.cc/A9ML-QK4Y.  In the Impeachment Judgment

Clause, the word "nevertheless" in the second part thus signifies that the first part—constraining impeachment's penalties—does not bear on whether the Party would also be subject to criminal prosecution.  *See* OLC Immunity Memo at *2 (citing *Amenability of the President, Vice President and other Civil Officers to Federal Criminal Prosecution while in Office* (1973) ("1973 OLC Memo"), *available at* https://perma.cc/DM28-LHT9).  As discussed at greater length below, the Clause's manifest purpose—and originally understood effect—was therefore "to permit criminal prosecution in spite of the prior adjudication by the Senate, *i.e.*, to forestall a double jeopardy argument."  *Id.* (citation omitted); *see infra* Section V.B.  That is quite different from establishing impeachment and conviction as a prerequisite to a former President's criminal prosecution.

The historical sources that Defendant cites do not move the needle.  First, he quotes Alexander Hamilton's twin statements in *The Federalist* that the "President of the United States would be liable to be impeached, tried, and, upon conviction of treason, bribery, or other high crimes or misdemeanors, removed from office; and would afterwards be liable to prosecution and punishment in the ordinary course of law," Federalist No. 69 at 348, and that the President would be "at all times liable to impeachment, trial, dismission from office, incapacity to serve in any other, and to forfeiture of life and estate by subsequent prosecution in the common course of law,"  Federalist No. 77 at 392.  Immunity Motion at 12.  But those statements merely echo the Clause's clarification that prosecution *may* follow impeachment; they do not say that those events *must* happen in that order.  Second, Defendant cites Founding Father James Wilson's remark during the ratification debates that the President "is amenable to [the laws] in his private character as a citizen, and in his public character by impeachment."  J. Elliot, *Debates on The Federal Constitution* 480 (2d ed. 1863).  But Wilson was describing a President in office, *see id.*,

and that description is entirely consistent with a former President—having returned to life "as a citizen"—being subject to criminal prosecution.  There is no evidence that any of the Constitution's drafters or ratifiers intended or understood former Presidents to be criminally immune unless they had been impeached and convicted, much less a widespread consensus that the Impeachment Judgment Clause would have that effect.

In addition to lacking textual or historical support, Defendant's interpretation of the Clause collapses under the application of common sense.  For one, his reasoning is based on the logical fallacy of "denying the antecedent."  *See, e.g.*, *New LifeCare Hosps. of N.C. LLC v. Azar*, 466 F. Supp. 3d 124, 136 n.7 (D.D.C. 2020).  From the statement "if the animal is a cat, it can be a pet," it does not follow that "if the animal is not a cat, it cannot be a pet."  Yet Defendant argues that because a President who is impeached and convicted may be subject to criminal prosecution, "a President who is *not* convicted may *not* be subject to criminal prosecution."  Immunity Motion at 11.  Even assuming that negative implication finds some traction when applied to sitting Presidents, *see, e.g.*, *Trump v. Vance*, 140 S. Ct. 2412, 2444–45 (2020) (Alito, J., dissenting) (discussing that implication); *but see* OLC Immunity Memo at *2–3 (restating the 1973 OLC Memo's rejection of the implication); *see also infra* Section V.B (discussing the implication for double jeopardy purposes), the logic certainly does not hold for former Presidents.  That is because there is another way, besides impeachment and conviction, for a President to be removed from office and thus subjected to "the ordinary course of law," Federalist No. 69 at 348:  As in Defendant's case, he may be voted out.  The President "shall hold his Office during the Term of four Years."  U.S. Const. art. II, § 1, cl. 1.  Without reelection, the expiration of that term ends a Presidency as surely as impeachment and conviction.  *See United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, Circuit

Justice) ("[T]he president is elected from the mass of the people, and, on the expiration of the time for which he is elected, returns to the mass of the people again.").  Nothing in the Impeachment Judgment Clause prevents criminal prosecution thereafter.

Defendant's reading of the Impeachment Judgment Clause also proves too much.  If the Clause required impeachment and conviction to precede criminal prosecution, then that requirement would apply not only to the President, but also to the "Vice President and all civil Officers of the United States"—who may likewise be impeached.  U.S. Const. art. II, § 4.  "The constitutional practice since the Founding, however, has been to prosecute and even imprison civil officers other than the President . . . prior to their impeachment."  OLC Immunity Memo at *2 (citing 1973 OLC Memo at 4–7 (collecting sources)).  For instance, then-Vice President Aaron Burr was indicted without being impeached, *see* 1973 SG Memo at 12, and the same fate might have befallen Vice President Spiro Agnew had he not resigned and entered a *nolo contendere* plea, *see United States v. Agnew*, 428 F. Supp. 1293, 1293 (D. Md. 1977).  Not only would Defendant's interpretation contradict that long-settled practice, it would also introduce significant "complications into criminal proceedings" for all current and former federal officials, including "threshold constitutional questions" of "whether the suspect is or was an officer of the United States," and "whether the offense is one for which he could be impeached."  OLC Immunity Memo at *3 (citing 1973 OLC Memo at 7).  The clash with historical practice and difficulties in application that would flow from Defendant's interpretation further confirm that it cannot be the correct reading of the Clause.

Finally, Defendant's interpretation of the Impeachment Judgment Clause would produce implausibly perverse results.  The Constitution permits impeachment and conviction for a limited category of offenses: "Treason, Bribery, or other high Crimes and Misdemeanors."  U.S. Const.

art. II, § 4.  Under Defendant's reading, if a President commits a crime that does not fall within

that limited category, and so could not be impeached and convicted, the President could never be

prosecuted for that crime.  Alternatively, if Congress does not have the opportunity to impeach

or convict a sitting President—perhaps because the crime occurred near the end of their term, or

is covered up until after the President has left office—the former President similarly could not be

prosecuted.  Defendant seems to suggest that this scenario, in which the former President would

be utterly unaccountable for their crimes, is simply the price we pay for the separation of powers.

*See* Reply in Support of Immunity Motion, ECF No. 122, at 6 (quoting *Morrison v. Olson*, 487

U.S. 654, 710 (1988) (Scalia, J., dissenting) ("While the separation of powers may prevent us

from righting every wrong, it does so in order to ensure that we do not lose liberty."))[3]  That

cannot be the Clause's meaning.  The constitutional limits on impeachment's penalties do not

license a President's criminal impunity.

  In sum, nothing in the Constitution's text supplies the immunity that Defendant claims.

To be sure, "a specific textual basis has not been considered a prerequisite to the recognition of

immunity," and so the inquiry is not confined to the express terms of our founding charter.

*Fitzgerald*, 457 U.S. at 750 n.31.  But the lack of supporting constitutional text does mean that a

former President's federal criminal immunity, if it exists, must arise entirely from "concerns of

public policy, especially as illuminated by our history and the structure of our government."  *Id.*

at 747–48.  Defendant's resort to those principles fares no better.

---

[3] Even assuming that former as well as sitting Presidents may be impeached, this hypothetical
would still produce problematic results.  Congress could enable a former President's criminal
prosecution by impeaching them after they have left office.  But it would raise serious
separation of powers concerns to restrain the core executive act of prosecuting a private
citizen—as a former President would then be—until Congress chose to do so.  *See infra*
Section III.B.2.

**B.  Structure**

The Supreme Court has cautioned against forms of Presidential liability that "rise to the level of constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions."  *Clinton v. Jones*, 520 U.S. 681, 702 (1997).  But the prospect of federal criminal liability for a former President does not violate that structural principle, either by imposing unacceptable risks of vexatious litigation or by otherwise chilling the Executive's decision-making process.  Indeed, it is likely that a President who knows that their actions may one day be held to criminal account will be motivated to take greater care that the laws are faithfully executed.  More fundamentally, federal criminal liability is essential to the public's interest in our "historic commitment to the rule of law . . . nowhere more profoundly manifest than in our view that 'the twofold aim of criminal justice is that guilt shall not escape or innocence suffer.'"  *Nixon*, 418 U.S. at 708–09 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)) (formatting modified).  The Presidency's unique responsibilities do not exempt its former occupants from that commitment.

In *Fitzgerald*, the Supreme Court explained the structural analysis for Presidential immunity.  In that case, civil plaintiff A. Ernest Fitzgerald claimed that President Richard Nixon had been involved in unlawfully firing him from his government job and sought money damages against the former President.  457 U.S. at 733–41.  The five-Justice majority noted it was "settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States."  *Id.* at 753–54 (citations omitted).  But it instructed that "a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch."  *Id.* at 754 (citations omitted).  "When judicial action is needed to serve broad public interests—as when the Court acts, not in derogation of the separation of powers, but to maintain their proper

balance, or to vindicate the public interest in an ongoing criminal prosecution—the exercise of jurisdiction has been held warranted." *Id.* (first citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), then citing *Nixon*, 418 U.S. 731).  Ultimately, the Court found that a "merely private suit for damages based on a President's official acts" did not serve those interests, and held that a former President could remain immune from such suits.  *Id.*  For a federal criminal prosecution, however, the analysis comes out the other way.

    1.  <u>Burdens on the Presidency</u>

At the outset, it bears noting that it is far less intrusive on the functions of the Executive Branch to prosecute a former President than a sitting one.  The Supreme Court has accepted at least "the initial premise" that the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties."  *Clinton*, 520 U.S. at 697–98.  And the Office of Legal Counsel has identified three burdens of criminal prosecution that could impede the performance of that constitutional role:

> (a) the actual imposition of a criminal sentence of incarceration, which would make it physically impossible for the President to carry out his duties; (b) the public stigma and opprobrium occasioned by the initiation of criminal proceedings, which could compromise the President's ability to fulfill his constitutionally contemplated leadership role with respect to foreign and domestic affairs; and (c) the mental and physical burdens of assisting in the preparation of a defense for the various stages of the criminal proceedings, which might severely hamper the President's performance of his official duties.

OLC Immunity Memo at *19.  But none of those burdens would result from the criminal prosecution of a former President, who is no longer performing official duties.  Accordingly, the separation-of-powers concerns are significantly diminished in this context.

*Fitzgerald* nonetheless suggested that the prospect of post-Presidency civil liability might "distract a President from his public duties, to the detriment of not only the President and his

office but also the Nation that the Presidency was designed to serve."  457 U.S. at 753.  The

Supreme Court highlighted two concerns: (1) the public interest in providing the President "the

maximum ability to deal fearlessly and impartially with the duties of his office," and (2) the fact

that given the "visibility of his office and the effect of his actions on countless people, the

President would be an easily identifiable target for suits for civil damages."  *Id.* at 752–53

(quotation omitted).  Defendant correspondingly focuses his arguments for immunity on (1) "the

chilling effect personal liability would have on the President's decision-making," and (2) the

"potential criminal prosecutions" former Presidents could face from "local, state, or subsequent

federal officials."  Immunity Motion at 9–10.  He contends that "[c]ognizance of this personal

vulnerability frequently could distract a President from his public duties, to the detriment of not

only the President and his office but also the Nation that the Presidency was designed to serve."

*Id.* at 10 (quoting *Fitzgerald*, 457 U.S. at 753).

Those concerns do not carry the same weight in the context of a former President's

federal criminal prosecution.  First, the Supreme Court has largely rejected similar claims of a

"chilling effect" from the possibility of future criminal proceedings.  During the Watergate

prosecution, President Nixon argued that if recordings of his conversations were subject to

criminal subpoena, the Presidential decision-making process would be compromised because his

staff would be less candid.  *Nixon*, 418 U.S. at 705–06.  The Court disagreed, stating that it

"cannot conclude that advisers will be moved to temper the candor of their remarks by the

infrequent occasions of disclosure because of the possibility that such conversations will be

called for in the context of a criminal prosecution."  *Id.* at 712.  The Court quoted Justice

Cardozo's unanimous opinion finding that a jury's decision-making process would not be

meaningfully chilled if jurors' conduct were later subject to criminal prosecution:

> A juror of integrity and reasonable firmness will not fear to speak his mind if the confidences of debate are barred to the ears of mere impertinence of malice. He will not expect to be shielded against the disclosure of his conduct in the event that there is evidence reflecting upon his honor. The chance that now and then there may be found some timid soul who will take counsel of his fears and give way to their repressive power is too remote and shadowy to shape the course of justice.

*Id.* n.20 (quoting *Clark v. United States*, 289 U.S. 1, 16 (1933)).

The same reasoning applies here. There is no doubt that "a President must concern himself with matters likely to arouse the most intense feelings." *Fitzgerald*, 457 U.S. at 752 (internal quotation marks omitted). But "[c]riminal conduct is not part of the necessary functions performed by public officials." *United States v. Isaacs*, 493 F.2d 1124, 1144 (7th Cir. 1974). By definition, the President's duty to "take Care that the Laws be faithfully executed" does not grant special latitude to violate them. U.S. Const., art. II, § 3. That is especially true when the violations require criminal intent, as is the case here, *see* Opp'n to Immunity Motion, ECF No. 109, at 31–32 (reviewing *mens rea* requirements for the Indictment's four counts); *cf. Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) (noting that even public officials "cloaked with absolute civil immunity . . . could be punished criminally" for their "willful acts"). Like his fellow citizens serving on juries, then, a President "of integrity and reasonable firmness" will not fear to carry out his lawful decision-making duties—even on hot-button political issues—and "will not expect to be shielded against the disclosure of his conduct in the event that there is evidence reflecting upon his honor." *Clark*, 289 U.S. at 16. The rationale for immunizing a President's controversial decisions from civil liability does not extend to sheltering his criminality.

Indeed, the possibility of future criminal liability might encourage the kind of sober reflection that would reinforce rather than defeat important constitutional values. If the specter of subsequent prosecution encourages a sitting President to reconsider before deciding to act with criminal intent, that is a benefit, not a defect. "Where an official could be expected to know

that certain conduct would violate statutory or constitutional rights, he should be made to hesitate." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  Consequently, to the extent that there are any cognizable "chilling effects" on Presidential decision-making from the prospect of criminal liability, they raise far lesser concerns than those discussed in the civil context of *Fitzgerald*.  Every President will face difficult decisions; whether to intentionally commit a federal crime should not be one of them.

Second, the possibility of vexatious post-Presidency litigation is much reduced in the criminal context.  Defendant protests that denying him immunity would subject future Presidents to "prosecution in countless federal, state, and local jurisdictions across the country," Immunity Motion at 10, but that is incorrect.  To begin, Defendant is only charged with federal crimes in this case, so any ruling here will be limited to that context and would not extend to state or local prosecutions—which in any event might run afoul of the Supremacy Clause, *see Vance*, 140 S. Ct. at 2428 ("The Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties. . . . Any effort to manipulate a President's policy decisions or to 'retaliat[e]' against a President for official acts . . . would thus be an unconstitutional attempt to 'influence' a superior sovereign 'exempt' from such obstacles." (citations omitted)).  And as Defendant well knows, *see infra* Section V.A, a person cannot "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const., amend. V.  Consequently, denying Defendant immunity here means only that a former President may face one federal prosecution, in one jurisdiction, for each criminal offense allegedly committed while in office.  That consequence stands in contrast to the civil context, where "the effect of [the President's] actions on countless people" could result in untold numbers of private plaintiffs suing for damages based on any number of Presidential acts.  *Fitzgerald*, 457 U.S. at 753.

Defendant also warns that if he is not given immunity here, criminal prosecutions will "bedevil[] every future Presidential administration and usher[] in a new era of political recrimination and division." Immunity Motion at 11. But, as the Supreme Court noted when faced with a similar argument in *Clinton*, that "predictive judgment finds little support in either history or the relatively narrow compass of the issues raised in this particular case." 520 U.S. at 702. As Defendant acknowledges, he is the only former President in United States history to face criminal charges for acts committed while in office. *See* Immunity Motion at 15. "If the past is any indicator, it seems unlikely that a deluge of such litigation will ever engulf the Presidency." *Clinton*, 520 U.S. at 702. Despite Defendant's doomsaying, he points to no evidence that his criminal liability in this case will open the gates to a waiting flood of future federal prosecutions.

The robust procedural safeguards attendant to federal criminal prosecutions further reduce the likelihood that former Presidents will be unjustly harassed. Prosecutors themselves are constitutionally bound to not abuse their office, which is why "courts presume that they have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15 (1926)). And a federal indictment is issued by a grand jury, which is similarly "prohibited from engaging in 'arbitrary fishing expeditions' and initiating investigations 'out of malice or an intent to harass.'" *Vance*, 140 S. Ct. at 2428 (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991)). Even after indictment, "in the event of such harassment, a [former] President would be entitled to the protection of federal courts," which "have the tools to deter and, where necessary, dismiss" vexatious prosecutions. *Id*. For instance, if a prosecution is politically motivated, as Defendant has argued in this case, that alone may warrant dismissal. *See* Motion to Dismiss Case for

Selective and Vindictive Prosecution, ECF No. 116.  And if a meritless prosecution somehow reached trial, a former President would still have the opportunity to put the government's proof to the test.  *See* U.S. Const., art. III, § 2, cl. 3.

In short, the concerns discussed in the civil context of *Fitzgerald* find no meaningful purchase here.  A former President accused of committing a crime while in office will be subject to only one federal prosecution for that offense, which in turn will only result in conviction if the grand jury finds probable cause and the prosecutor, judge, and all twelve petit jurors agree that the charges are legitimate and have been proven beyond a reasonable doubt.  Throughout that process, a former President "may avail himself of the same protections available to every other citizen." *Vance*, 140 S. Ct. at 2430.  In the rare case when a former President must do so, the Constitution does not proffer the sledgehammer of absolute immunity where the scalpel of procedural protections will suffice.  *See Burr*, 25 F. Cas. at 34 ("The guard, furnished to this high officer [the President], to protect him from being harassed by vexatious and unnecessary subpoenas, is to be looked for in the conduct of a court after those subpoenas have issued; not in any circumstance which is to [] precede their being issued.").  The possibility of future harassing federal criminal prosecution will not cast so "serious" a shadow on the Presidency that its current occupant cannot fulfill its duties. *Clinton*, 520 U.S. at 708.

2.  <u>Public interest</u>

On the other of side of the scale, the public interest in the prosecution of this case carries grave weight.  The Supreme Court has repeatedly underscored its judgment that "the public interest in fair and accurate judicial proceedings is at its height in the criminal setting." *Vance*, 140 S. Ct. at 2424.  It has correspondingly refused to permit other concerns, including those asserted by Presidents, to "prevail over the fundamental demands of due process of law in the fair administration of criminal justice." *Nixon*, 418 U.S. at 713; *see United States v. Gillock*, 445

U.S. 360, 373 (1980) (concluding that "principles of comity" must yield "where important federal interests are at stake, as in the enforcement of federal criminal statutes").  Despite their other vehement disagreements in *Fitzgerald*, all nine Justices unanimously endorsed that judgment with respect to former Presidents.  Justice Powell's majority opinion specifically contrasted the "lesser public interest in actions for civil damages than . . . in criminal prosecutions."  457 at 754 n.37.  Chief Justice Burger's concurrence made the same distinction.  *Id.* at 759–60 (distinguishing immunity "limited to civil damages claims" from "a *criminal* prosecution," as in *Burr* or *Nixon* (emphasis in original)).  And Justice White's four-member dissent stressed that no party had argued "that the President is immune from criminal prosecution in the courts[,] . . . [n]or would such a claim be credible."  *Id.* at 780.  *Fitzgerald* was thus undivided in contemplating that the public interest could require a former President's criminal liability.

Defendant resists that consensus in *Fitzgerald* by pointing to a single passage in the majority opinion where, in listing the "formal and informal checks" that could replace civil liability as a deterrent for Presidential misconduct, the Court did not specifically list criminal liability.  *Id.* at 757.  From that omission, Defendant infers that the Court intended to suggest that criminal liability would not be available either.  Immunity Motion at 13.  But the Court's unanimous emphasis that it was not immunizing former Presidents from federal criminal liability squarely refutes that inference.  If anything, the omission underscores that civil and criminal liability are so fundamentally distinct that they cannot be understood as substitutes for one another.  Accordingly, in the parallel context of cases "which have recognized an immunity from civil suit for state officials," the Supreme Court has explicitly "presumed the existence of federal

criminal liability as a restraining factor on the conduct of state officials." *Gillock*, 445 U.S. at 372.

It is no surprise that the Supreme Court has long recognized the special public interest in criminal law because of its distinctly communal character; that character is reflected in both the Constitution itself and the legal tradition from which it arose.  Unlike defendants in a civil matter, for example, federal criminal defendants are constitutionally guaranteed "a speedy and public trial" before a jury drawn from their community.  U.S. Const., amend VI; *id.*, art. III, § 2, cl. 3.  And the preeminent 18th-century legal commentator William Blackstone explained the reason for the community's special involvement in criminal cases:  Whereas civil injuries "are an infringement or privation of the civil rights which belong to individuals, considered merely as individuals," crimes "are a breach and violation of the public rights and duties due to the whole community, considered as a community."  4 William Blackstone, *Commentaries* *5.  The fundamentally public interest in a criminal prosecution explains why it "may proceed without the consent of the victim and why it is brought in the name of the sovereign rather than the person immediately injured by the wrong."  OLC Immunity Memo at *22.  Put differently, the very name of this case confirms the public's particular stake in its adjudication: it is the *United States of America v. Donald J. Trump*.

Congress has also affirmed the special public interests in enforcing the criminal law.  In the Sentencing Reform Act of 1984, it required every federal court to consider certain factors in imposing sentence, and declared "the need for the sentence imposed":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *see* Pub. L. 98-473, title II, § 212(a)(2) (1984).  The public has an undisputed interest in promoting respect for the law, deterring crime, protecting itself, and rehabilitating offenders.  All of those interests would be thwarted by granting former Presidents absolute criminal immunity.

The fact that Congress has spoken by criminalizing the conduct with which Defendant is charged also highlights the separation of powers principles that counsel in favor of the court retaining jurisdiction over this case.  "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb."  *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring).  Congress could have penalized the conduct alleged in this case— if it chose to penalize it at all—with mere civil liability, perhaps allowing for monetary damages should a private plaintiff choose to bring suit.  Instead, it expressed a far stronger condemnation by subjecting that conduct to the severe consequences of the criminal law.  "Whatever may be the case with respect to civil liability" for former Presidents, then, "the judicially fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress.'"  *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974) (quoting *Gravel v. United States*, 408 U.S. 606, 627 (1972)).  Indeed, stretching the doctrine so far would also "imped[e] . . . the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions," *Nixon*, 418 U.S. at 707, not to mention the current President's duty to enforce the criminal law, *see* U.S. Const., art. II, § 3.  Holding a former President absolutely immune would thus impinge on the functions of all three branches with respect to the criminal law: Congress's province to make it, the Executive's prerogative to enforce it, and the Judiciary's charge to apply it.

Most importantly, a former President's exposure to federal criminal liability is essential to fulfilling our constitutional promise of equal justice under the law.  "The government of the United States has been emphatically termed a government of laws, and not of men."  *Marbury v. Madison*, 5 U.S. 137, 163 (1803).  As the Supreme Court has stated, that principle must govern citizens and officials alike:

> No officer of the law may set that law at defiance with impunity.  All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.  It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

*United States v. Lee*, 106 U.S. 196, 220 (1882).

Perhaps no one understood the compelling public interest in the rule of law better than our first former President, George Washington.  His decision to voluntarily leave office after two terms marked an extraordinary divergence from nearly every world leader who had preceded him, ushering in the sacred American tradition of peacefully transitioning Presidential power—a tradition that stood unbroken until January 6, 2021.  In announcing that decision, however, Washington counseled that the newfound American independence carried with it a responsibility.  "The very idea of the power and the right of the people to establish government presupposes the duty of every individual to obey the established government."  Washington's Farewell Address, S. Doc. No. 106-21, at 13 (2d Sess. 2000), *available at* https://perma.cc/E5CZ-7NNP.  He issued a sober warning: "All obstructions to the execution of the laws," including group arrangements to "counteract" the "regular deliberation and action of the constituted authorities, are destructive of this fundamental principle."  *Id.* at 14.  In Washington's view, such obstructions would prove "fatal" to the Republic, as "cunning, ambitious, and unprincipled men will be enabled to subvert

the power of the people and to usurp for themselves the reins of government, destroying afterwards the very engines which have lifted them to unjust dominion."  *Id.*

In this case, Defendant is charged with attempting to usurp the reins of government as Washington forewarned:  The Government alleges that, with the help of political associates, he "spread lies that there had been outcome-determinative fraud in the election and that he had actually won," and "pursued unlawful means of discounting legitimate votes and subverting the election results," all because he "was determined to remain in power."  Indictment ¶¶ 2, 4.  In asserting absolute executive immunity, Defendant asks not for an opportunity to disprove those allegations, but for a categorical exemption from criminal liability because, in his view, "the indictment is based solely on President Trump's official acts."  Immunity Motion at 27–28.  That obstruction to the execution of the laws would betray the public interest.  "If one man can be allowed to determine for himself what is law, every man can.  That means first chaos, then tyranny."  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 312 (1947) (Frankfurter, J., concurring in the judgment).

For all these reasons, the constitutional consequences of federal criminal liability differ sharply from those of the civil liability at issue in *Fitzgerald*.  Federal criminal liability will not impermissibly chill the decision-making of a dutiful Chief Executive or subject them to endless post-Presidency litigation.  It will, however, uphold the vital constitutional values that *Fitzgerald* identified as warranting the exercise of jurisdiction: maintaining the separation of powers and vindicating "the public interest in an ongoing criminal prosecution."  457 U.S. at 753–54. Exempting former Presidents from the ordinary operation of the criminal justice system, on the other hand, would undermine the foundation of the rule of law that our first former President described: "Respect for its authority, compliance with its laws, [and] acquiescence in its

measures"—"duties enjoined by the fundamental maxims of true liberty."  Washington's

Farewell Address at 13.  Consequently, the constitutional structure of our government does not

require absolute federal criminal immunity for former Presidents.

## C.  History

Nothing in American history justifies the absolute immunity Defendant seeks.  As

discussed above, *supra* Section III.A, there is no evidence that the Founders understood the

Constitution to grant it, and since that time the Supreme Court "has never suggested that the

policy considerations which compel civil immunity for certain governmental officials also place

them beyond the reach of the criminal law."  *Imbler*, 424 U.S. at 429.  Moreover, the notion that

former Presidents cannot face federal criminal charges for acts they took in office is refuted by

the "presuppositions of our political history."  *Fitzgerald*, 457 U.S. at 745 (quoting *Tenney v.*

*Brandhove*, 341 U.S. 367, 376 (1951)).

Start with the Executive Branch itself.  "In the performance of assigned constitutional

duties each branch of the Government must initially interpret the Constitution, and the

interpretation of its powers by any branch is due great respect from the others."  *Nixon*, 418 U.S.

at 703.  The Executive's legal representatives—the Solicitor General and Office of Legal

Counsel—have expressly and repeatedly concluded that a former President may "be subject to

criminal process . . . after he leaves office or is removed therefrom through the impeachment

process."  OLC Immunity Memo at *12 (citing 1973 OLC Memo and 1973 SG Memo).

Naturally, the Special Counsel's decision to bring this case also reflects that judgment,

distinguishing the Department of Justice's position that former Presidents retain civil immunity.

*See* Brief for the United States as Amicus Curiae at 3 n.1 (filed Mar. 2, 2023), *Blassingame v.*

*Trump*, Nos. 22-5069, 22-7030, 22-7031 (D.C. Cir.).  Even on its own, the Executive's

longstanding and unwavering position on this issue weighs against this court unilaterally

blocking a considered prosecution by conferring absolute immunity.[4]

Historical practice also indicates that a President's actions may later be criminally

prosecuted. In the aftermath of Watergate, for example, President Ford granted former President

Nixon "full, free, and absolute pardon . . . for all offenses against the United States which he,

Richard Nixon, has committed or may have committed or taken part in during" while in office.

Gerald Ford, Presidential Statement at 7–8 (Sept. 8, 1974), *available at* https://perma.cc/2GNZ-

QQ3D. In so doing, President Ford specifically noted the "serious allegations" that, without a

pardon, would "hang like a sword over our former President's head" until he could "obtain a fair

trial by jury." *Id.* at 3; *see id. at* 4–5 (expressing concern about Nixon's rights to a presumption

of innocence and a speedy trial). And former President Nixon formally accepted that "full and

absolute pardon for any charges which might be brought against me for actions taken during the

time I was President of the United States," calling the pardon a "compassionate act." Richard

Nixon, Statement by Former President Richard Nixon at 1 (Sept. 8, 1974), *available at*

https://perma.cc/WV43-6E69. Both Ford's pardon and Nixon's acceptance arose from the desire

to prevent the former President's potential criminal prosecution, and both specifically refer to

that possibility—without which the pardon would have been largely unnecessary. Defendant's

view of his own immunity thus stands at odds with that of his predecessors in the Oval Office.

---

[4] Congress, the other political branch, has not spoken directly to this issue. But it has not
exempted actions taken during the Presidency from the criminal law, and "[u]nder the authority
of Art. II, § 2," it "has vested in the Attorney General the power to conduct the criminal
litigation of the United States Government" and "to appoint subordinate officers to assist him,"
which he has done "in th[is] particular matter[]" by appointing "a Special Prosecutor." *Nixon*,
418 U.S. at 694. The Government also notes the statements of individual members of
Congress—including some who voted to acquit Defendant during his impeachment trial—
anticipating that Defendant could later be criminally prosecuted for the conduct at issue. *See*
Opp'n to Immunity Motion at 14–15.

Granting the immunity Defendant seeks would also break with longstanding legal precedent that all government officials—even those immune from civil claims—may be held to criminal account.  In *Fitzgerald*, for instance, the Supreme Court analogized former President Nixon's civil immunity to the similar protections provided to judges and prosecutors.  457 U.S. at 745–48.  Unlike most government officials, who only receive "qualified" civil immunity, prosecutors and judges have absolute civil immunity due to "the especially sensitive duties" of their office and the public interest in their "liberty to exercise their functions with independence and without fear of consequences."  *Id.* at 745–46 (quotation omitted); *see, e.g.*, *Imbler*, 424 U.S. at 431 (state prosecutors possess absolute civil immunity for prosecutions); *Stump v. Sparkman*, 435 U.S. 349, 359–60 (1978) (state judges possess absolute civil immunity for judicial acts).  But notwithstanding their absolute civil immunity, prosecutors and judges are "subject to criminal prosecutions as are other citizens."  *Dennis v. Sparks*, 449 U.S. 24, 31 (1980); *see Imbler*, 424 U.S. at 429.  Thus, while in *Fitzgerald* the "careful analogy to the common law absolute immunity of judges and prosecutors" demonstrated history's support for the former President's civil immunity, *Vance*, 140 S. Ct. at 2426, here that same history compels the denial of a former President's criminal immunity.

Against the weight of that history, Defendant argues in essence that because no other former Presidents have been criminally prosecuted, it would be unconstitutional to start now. Immunity Motion at 15–16.  But while a former President's prosecution is unprecedented, so too are the allegations that a President committed the crimes with which Defendant is charged.  *See infra* Section VI.B.  The Supreme Court has never immunized Presidents—much less former Presidents—from judicial process merely because it was the first time that process had been

necessary.  *See, e.g.*, *Vance*, 140 S. Ct. at 2424–25; *Clinton*, 520 U.S. at 692; *Nixon*, 418 U.S. at 703; *Burr*, 25 F. Cas. at 32.  The court will not do so here.

In any event, Defendant's reasoning turns the relevant historical analysis on its head.  In *Clinton*, the President likewise argued that the relative dearth of cases in which "sitting Presidents ha[d] been defendants in civil litigation involving their actions prior to taking office" meant that the Constitution afforded him temporary immunity for such claims.  520 U.S. at 692; *see* Brief for the Petitioner, 1996 WL 448096, at *17–18, *Clinton v. Jones*, No. 95-1853 (U.S.).  The Court found instead that the dearth of similar cases meant that there was no "basis of precedent" for the immunity that President Clinton sought—and in fact showed that there was little risk of such litigation impeding the Presidency going forward.  *Clinton*, 520 U.S. at 692, 702.  In other words, a defendant cannot claim that history supports their immunity by pointing to the fact that their immunity has never been asserted.  Here, as in *Clinton*, that absence of precedent negates rather than validates Defendant's argument that history establishes his immunity from criminal prosecution.

*          *          *

For these reasons, the court cannot conclude that our Constitution cloaks former Presidents with absolute immunity for any federal crimes they committed while in office.  Our nation's "historic commitment to the rule of law" is "nowhere more profoundly manifest than in our view that 'the twofold aim of criminal justice is that guilt shall not escape or innocence suffer.'"  *Nixon*, 418 U.S. at 708–09 (quoting *Berger*, 295 U.S. at 88) (formatting modified).  Nothing in the Constitution's text or allocation of government powers requires exempting former Presidents from that solemn process.  And neither the People who adopted the Constitution nor those who have safeguarded it across generations have ever understood it to do so.  Defendant's

four-year service as Commander in Chief did not bestow on him the divine right of kings to evade the criminal accountability that governs his fellow citizens. "No man in this country," not even the former President, "is so high that he is above the law." *Lee*, 106 U.S. at 220.

Consistent with its duty to not "decide questions of a constitutional nature unless absolutely necessary to a decision," *Clinton*, 520 U.S. at 690 & n.11 (quoting *Burton v. United States,* 196 U.S. 283, 295 (1905)), the court emphasizes the limits of its holding here. It does not decide whether former Presidents retain absolute criminal immunity from non-federal prosecutions, or whether sitting Presidents are entitled to greater immunity than former ones. Similarly, the court expresses no opinion on the additional constitutional questions attendant to Defendant's assertion that former Presidents retain absolute criminal immunity for acts "within the outer perimeter of the President's official" responsibility. Immunity Motion at 21 (formatting modified). Even if the court were to accept that assertion, it could not grant Defendant immunity here without resolving several separate and disputed constitutional questions of first impression, including: whether the President's duty to "take Care that the Laws be faithfully executed" includes within its "outer perimeter" at least five different forms of indicted conduct;[5] whether inquiring into the President's purpose for undertaking each form of that allegedly criminal conduct is constitutionally permissible in an immunity analysis, and whether any Presidential conduct "intertwined" with otherwise constitutionally immune actions

---

[5] As another court in this district observed in a decision regarding Defendant's civil immunity, "[t]his is not an easy issue. It is one that implicates fundamental norms of separation of powers and calls on the court to assess the limits of a President's functions. And, historical examples to serve as guideposts are few." *Thompson v. Trump*, 590 F. Supp. 3d 46, 74 (D.D.C. 2022); *see id.* at 81–84 (performing that constitutional analysis). The D.C. Circuit recently affirmed that district court's decision with an extensive analysis of just one form of conduct—"speech on matters of public concern." *Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, slip op. at 23–42 (D.C. Cir. Dec. 1, 2023).

also receives criminal immunity.  *See id.* at 21–45.  Because it concludes that former Presidents do not possess absolute federal criminal immunity for any acts committed while in office, however, the court need not reach those additional constitutional issues, and it expresses no opinion on them.

## IV.   FIRST AMENDMENT

In his Constitutional Motion, Defendant first argues that the Indictment should be dismissed because it criminalizes his speech and therefore violates the First Amendment.  But it is well established that the First Amendment does not protect speech that is used as an instrument of a crime, and consequently the Indictment—which charges Defendant with, among other things, making statements in furtherance of a crime—does not violate Defendant's First Amendment rights.

### A.  The First Amendment and criminal prosecutions

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Generally, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. Am. Civ. Liberties Union*, 535 U.S. 564, 573 (2002)).  In restricting the government's power to control speech, the First Amendment "embodies 'our profound national commitment to the free exchange of ideas.'"  *Ashcroft*, 535 U.S. at 573 (citation omitted).

The right to freedom of speech is "not absolute," however.  *Id.*  It is fundamental First Amendment jurisprudence that prohibiting and punishing speech "integral to criminal conduct" does not "raise any Constitutional problem."  *Stevens*, 559 U.S. at 468–69 (citation omitted); *accord Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498–502 (1949).  "Many long established" criminal laws permissibly "criminalize speech . . . that is intended to induce or

commence illegal activities," *United States v. Williams*, 553 U.S. 285, 298 (2008), such as fraud, bribery, perjury, extortion, threats, incitement, solicitation, and blackmail, *see, e.g.*, *Stevens*, 559 U.S. at 468–69 (fraud); *Williams*, 553 U.S. at 298 (incitement, solicitation); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 356 (2010) (bribery); *Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 244 (4th Cir. 1997) (extortion, threats, blackmail, perjury). Prosecutions for conspiring, directing, and aiding and abetting do not run afoul of the Constitution when those offenses are "carried out through speech." *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 655–56 (D.C. Cir. 1994) (directing and aiding and abetting); *see Williams*, 553 U.S. at 298 (conspiring).

**B.  The Indictment does not violate the First Amendment**

The Indictment alleges that Defendant used specific statements as instruments of the criminal offenses with which he is charged: conspiring to fraudulently obstruct the federal function for collecting, counting, and certifying the results of the Presidential election, in violation of 18 U.S.C. § 371 (Count I); corruptly obstructing and conspiring to obstruct Congress's certification of the election results, in violation of 18 U.S.C. §§ 1512(c)(2) and (k) (Counts II and III); and conspiring to deprive citizens of their constitutional right to have their votes counted, in violation of 18 U.S.C § 241 (Count IV). *See* Indictment ¶¶ 5–130.

That Defendant's alleged criminal conduct involved speech does not render the Indictment unconstitutional. The Indictment notes that "Defendant had a right, like every American, to speak publicly about the election and even to claim, falsely, that there had been outcome-determinative fraud during the election and that he had won." *Id.* ¶ 3. And it enumerates Defendant's specific statements only to support the allegations that Defendant joined conspiracies and attempted to obstruct the election certification, such as the allegations that Defendant knowingly made false claims about the election results, *id.* ¶¶ 11–12, and deceived

state officials to subvert the election results, *id.* ¶ 13–52.  *See, e.g.*, *id.* ¶¶ 12, 19, 22, 31–35, 37, 41, 46, 50, 52 (referencing Defendant's statements).  The Indictment therefore properly alleges Defendant's statements were made in furtherance of a criminal scheme.

Defendant argues that the Indictment violates the First Amendment for three primary reasons: (1) the government may not prohibit Defendant's core political speech on matters of public concern, Constitutional Motion at 4–11; (2) "First Amendment protection . . . extends to statements advocating the government to act," *id.* at 12–14 (formatting modified); and (3) Defendant reasonably believed that the 2020 Presidential Election was stolen, *id.* at 15–17.

1. Core political speech on matters of public concern

Defendant first claims that his statements disputing the outcome of the 2020 election is "core political speech" that addresses a "matter[] of public concern."  *Id.* at 8–10.  Even assuming that is true, "core political speech" addressing "matters of public concern" is not "immunized from prosecution" if it is used to further criminal activity.  *United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999); *see Stevens*, 559 U.S. at 468–69.  That is the case even though Defendant was the President at the time.  *See Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, slip op. at 50 (D.C. Cir. Dec. 1, 2023) (Defendant is not entitled to immunity when he "engages in speech" that "removes him[] from the First Amendment's protections.").  As the D.C. Circuit has recognized, "an immunity for all presidential speech on matters of public concern …. is 'unsupported by precedent.'"  *Id.* at 27 (quoting *Clinton*, 520 U.S. at 695).

In support of his argument, Defendant first invokes various Justices' opinions in *United States v. Alvarez*, 567 U.S. 709 (2012).  Constitutional Motion at 4–7.  There was no majority opinion in *Alvarez*; a majority of the Justices agreed only that the Stolen Valor Act, which prohibits an individual from falsely representing that they have received "any decoration or medal authorized by Congress for the Armed Forces of the United States," violated the First

Amendment.  567 U.S. at 716, 729–30 (plurality opinion) (Kennedy, J., joined by Roberts. C.J., Ginsburg, J., and Sotomayor, J.); *id.* at 730 (Breyer, J. concurring in the judgment, joined by Kagan, J.).  One theme common to both the plurality and concurring opinions, however, was the concern that the Stolen Valor Act prohibited only false statements and *only because of their falsity*.  *See id.* at 717–22 (plurality opinion); *id.* at 732 (Breyer, J. concurring).  Indeed, each opinion reiterated that laws "implicat[ing] fraud or speech integral to criminal conduct" are constitutional.  *Id.* at 721 (plurality opinion); *accord id.* at 734–36 (Breyer, J., concurring in the judgment); *id.* at 747 (Alito, J., dissenting).  Because it confirmed that speech involved in the commission of a crime was not protected by the First Amendment, *Alvarez* did not undermine settled precedent allowing the prosecution of speech in furtherance of criminal activity.

Second, Defendant contends that "attempts to prohibit or criminalize claims on political disputes" constitute viewpoint discrimination.  Constitutional Motion at 9–10.  But Defendant is not being prosecuted for his "view" on a political dispute; he is being prosecuted for acts constituting criminal conspiracy and obstruction of the electoral process.  *Supra* Section I.  And any political motives Defendant may have had in doing so do not insulate his conduct from prosecution.  *E.g.*, *Rahman*, 189 F.3d at 116–17 (mixed motives do not insulate speech from prosecution); *see* Gov.'s Omnibus Opp'n to Def.'s Motions to Dismiss the Indictment on Statutory and Constitutional Grounds, ECF No. 139 at 33 (Opp'n to Constitutional Motion) (collecting other Circuit cases).  The Indictment does not unconstitutionally discriminate against Defendant based on viewpoint.

Third, Defendant argues that even if a higher level of scrutiny does not apply to the Indictment, it nonetheless is invalid "under any level of scrutiny" because it is "tailored to violate free-speech rights."  Constitutional Motion at 11.  Here, however, there is no level of scrutiny

that applies, because speech in furtherance of criminal conduct does not receive *any* First Amendment protection.  *E.g.*, *Stevens*, 559 U.S. at 468–69.  Moreover, Defendant cites no support for his argument that the Indictment is "tailored to *violate* free-speech rights," nor does he explain how the Indictment is so tailored.  *See* Constitutional Motion at 11 (emphasis added).

Finally, Defendant argues that the Indictment violates the First Amendment because "*all* the charged conduct constitutes First Amendment protected speech."  Def.'s Reply in Support of Motion to Dismiss Based on Constitutional Grounds, ECF No. 162 at 7–8 ("Constitutional Reply") (emphasis in original).  He contends that to qualify as speech in furtherance of criminal conduct, "the speech in question must 'be integral to' some criminal 'conduct' that *is not itself a form of First Amendment-protected speech or expression*."  *Id.* (emphasis added).  But again, the Indictment does not need to list other kinds of criminal conduct in addition to speech to comply with the First Amendment; the crimes Defendant is charged with violating may be carried out through speech alone.  *See Nat'l Org. for Women*, 37 F.3d at 656; *supra* Section IV.A.

2. <u>Statements advocating government action</u>

Defendant next claims the First Amendment protects "statements advocating the government to act."  Constitutional Motion at 12–14 (formatting modified).  He first contends the Petition Clause of the First Amendment provides an absolute right to make statements encouraging the government to act in a public forum, citing *McDonald v. Smith*, 472 U.S. 479 (1985).  Constitutional Motion at 12–13.  The Petition Clause provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Clause protects individuals' ability to "'communicate their will' through direct petitions to the legislature and government officials."  *McDonald*, 472 U.S. at 482 (quoting 1 *Annals of Congress* 738 (1789) (James Madison)).  In *McDonald*, however, the Supreme Court concluded that the Petition Clause did *not* immunize a

person from a libel suit based on letters the individual had sent to the President.  *Id.* at 480–81;
*see also* Opp'n to Constitutional Motion at 34.  The Court explained that the Petition Clause does
not have "special First Amendment status," so "there is no sound basis for granting greater
constitutional protection" under the Petition Clause "than other First Amendment expressions."
*McDonald*, 472 U.S. at 484–85.  Defendant's reliance on the Clause and its interpretation in
*McDonald* is therefore unavailing, as the Petition Clause does not prohibit prosecuting
Defendant's speech any more than the Speech Clause does.  The Petition Clause does not
insulate speech from prosecution merely because that speech also petitions the government.

Defendant also invokes *McDonnell v. United States*, 579 U.S. 550 (2016), to argue that
allowing this prosecution would risk criminalizing statements once thought to be false that
turned out to be true, such as statements made early in the COVID-19 pandemic that masks do
not stop the transmission of the virus.  Constitutional Motion at 13–14.  Not so.  First,
*McDonnell* did not involve the First Amendment but rather the proper interpretation of "official
act" under the federal bribery statute, 18 U.S.C. § 201(b)(2).  *McDonell*, 579 U.S. at 566; *see*
Opp'n to Constitutional Motion at 34 n.14.  And neither the Indictment nor the federal statutes
under which Defendant is charged involve an "official act."  Second, Defendant is not being
prosecuted simply for making false statements, *see supra* at 33–34, but rather for knowingly
making false statements in furtherance of a criminal conspiracy and obstructing the electoral
process.  Consequently, there is no danger of a slippery slope in which inadvertent false
statements alone are alleged to be the basis for criminal prosecution.

In his Reply brief, Defendant also raises overbreadth, arguing that under the
Government's interpretation, the underlying statutes charged in the Indictment are
unconstitutional because they "criminalize a wide range of perfectly ordinary acts of public

speech and petitioning the government."  Constitutional Reply at 9–10.  Assuming Defendant's

overbreadth challenge was properly raised for the first time in his Reply brief, the statutes are not

overbroad under the Government's view.  As an initial matter, Defendant's actions are not

entitled to First Amendment protection as "perfectly ordinary acts of public speech and

petitioning the government."  *Supra* Section IV.B.1–2; *infra* Section IV.B.3.  Moreover,

Defendant fails to identify any protected acts or speech that the statutes might render

impermissible under the Government's interpretation.  *See, e.g.*, *United States v. Hansen*, 599

U.S. 762, 769–70 (2023) (A litigant must "demonstrate[] that the statute 'prohibits a substantial

amount of protected speech' relative to its 'plainly legitimate sweep'" to succeed in overbreadth

challenge (citation omitted)).

3.   Defendant's statements on the 2020 Presidential Election

Finally, Defendant claims the First Amendment does not permit the government to

prosecute him for his reasonable belief that the 2020 Presidential Election was stolen.

Constitutional Motion at 15–17.  He argues that the truth or falsity of his belief is not "easily

verifiable" and there is "abundant public evidence providing a reasonable basis" for his view.  *Id.*

at 15–16.  He contends that he is "entitled to mistrust the word of . . . establishment-based

government officials and draw [his] own inferences from the facts."  *Id.* at 17.  At this stage,

however, the court must take the allegations in the Indictment as true, *supra* Section II, and the

Indictment alleges that Defendant made statements that he knew were false, *e.g.*, Indictment

¶¶ 11–12; *see also* Opp'n to Constitutional Motion at 26–27.  While Defendant challenges that

allegation in his Motion, and may do so at trial, his claim that his belief was reasonable does not

implicate the First Amendment.  If the Government cannot prove beyond a reasonable doubt at

trial that Defendant knowingly made false statements, he will not be convicted; that would not

mean the Indictment violated the First Amendment.

## V.    DOUBLE JEOPARDY

Defendant's Constitutional Motion next posits that the prosecution violates double jeopardy because Defendant was tried—and acquitted—in earlier impeachment proceedings arising out of the same course of conduct.  Constitutional Motion at 18–24.  But neither traditional double jeopardy principles nor the Impeachment Judgment Clause provide that a prosecution following impeachment acquittal violates double jeopardy.

### A.  <u>Double Jeopardy Clause</u>

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  To "be twice put in jeopardy of life or limb" means to face the possibility of "multiple *criminal* punishments for the same offense."  *Hudson v. United States*, 522 U.S. 93, 99 (citation omitted) (emphasis in original).  A purportedly civil penalty only counts in the double jeopardy context if "the statutory scheme was so punitive in either purpose or effect . . . as to 'transform'" it into a criminal penalty.  *Id.* (citation omitted).

As long as separate prosecutions charge an individual with violating different laws, the prosecutions are considered separate "offenses" under the Double Jeopardy Clause and the second prosecution passes constitutional muster.  *Denezpi v. United States*, 596 U.S. 591, 597–98 (2022).  When the same "act or transaction" violates two distinct provisions of the same statute, there are distinct offenses only if "each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  In contexts involving different sovereigns—such as the federal government and a state government—a person may be tried for violating laws that "have identical elements and could not be separately prosecuted if enacted by a single sovereign."  *Denezpi*, 596 U.S. at 597–98.

The Indictment here does not violate double jeopardy principles.  First, impeachment threatens only "removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States," U.S. Const. art. I, § 3, cl. 7, neither of which is a criminal penalty.  *See supra* at 9.  Nor does Defendant argue that they are civil penalties that should be construed as criminal penalties.  *See* Constitutional Motion at 23–24.  Second, the impeachment proceedings charged Defendant with "Incitement of Insurrection," which is not charged in the Indictment.  *See* Opp'n to Constitutional Motion at 60–62 (citing H.R. Res. 24, 117th Cong. (Jan. 11, 2021)).  Although there are few decisions interpreting the analogous federal statute that prohibits inciting "any . . . insurrection against the authority of the United States or the laws thereof," 18 U.S.C. § 2383, it is well-established that "incitement" typically means "advocacy . . . directed to inciting or producing imminent lawless action" that is "likely to incite or produce such action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).  None of the statutes under which Defendant is charged require the Government to prove incitement.  *See* 18 U.S.C. § 371; *id.* §§ 1512(c)(2), (k); *id.* § 241; *accord* Indictment ¶¶ 6, 126, 128, 130.  The impeachment proceedings and this prosecution therefore did not "twice put" Defendant "in jeopardy of life or limb" for the "same offense."

Defendant also contends his prosecution violates double jeopardy principles because the distinct branches of government are part of one single sovereign.  Constitutional Motion at 24.  But even assuming that is true, Defendant does not argue that impeachment carries a criminal sanction or that the impeachment proceedings were based on the same offense as charged in the Indictment.  *See id.* at 23–24.  Instead, he argues that different double jeopardy principles would apply to prosecutions following impeachments, referencing only the Impeachment Judgment Clause for support.  Constitutional Reply at 18–20.  But, as discussed below, the Impeachment

Judgment Clause provides only that prosecutions following convictions at impeachment are constitutionally permissible; it does not create special double jeopardy principles. *See* U.S. Const. art. I, § 3, cl. 7; *infra* Section V.B. Consequently, the Indictment does not violate the Double Jeopardy Clause.

## B. <u>Impeachment Judgment Clause</u>

The Impeachment Judgment Clause provides that "Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law." U.S. Const. art. I, § 3, cl. 7. As explained above, the first part of the Clause limits the remedies available in impeachment, and the second part provides that even if a person is convicted in impeachment proceedings, they may still be subject to criminal prosecution. *See supra* at 8–10. As the Office of Legal Counsel noted, the "second part makes clear that the restriction on sanctions in the first part was not a prohibition on further punishments; rather, those punishments would still be available but simply not to the legislature." OLC Double Jeopardy Memo at *10.

Defendant contends the Impeachment Judgment Clause contains a negative implication: if a person is *not* convicted in impeachment proceedings, they may *not* be prosecuted. Constitutional Motion at 18–23; Constitutional Reply at 10–11. In statutory interpretation, the *expressio unius* canon, which provides that "expressing one item of an associated group or series excludes another left unmentioned," does not apply unless "circumstances support a sensible inference that the term left out must have been meant to be excluded." *NLRB v. SW General, Inc.*, 580 U.S. 288, 302 (2017) (citations omitted). Because Defendant's reading is not supported by the structure of the Constitution, the historical context of the impeachment clauses, or prior

**Page 40 of 48**

constitutional precedents, *expressio unius* does not apply.  *Accord Thompson v. Trump*, 590 F. Supp. 3d 46, 86–87 (D.D.C. 2022).  The Impeachment Judgment Clause does not provide that acquittal by the Senate during impeachment proceedings shields a President from criminal prosecution after he leaves office.

1. Structure

Structural considerations support reading the Impeachment Judgment Clause as the plain language suggests.  First, as the Government notes, impeachment and prosecution serve distinct goals within the separation of powers.  *See* Opp'n to Constitutional Motion at 52–53.  Impeachment "is designed to enable Congress to protect the nation against officers who have demonstrated that they are unfit to carry out important public responsibilities," whereas prosecution is designed to "penalize individuals for their criminal misdeeds."  OLC Double Jeopardy Memo at *13.  Impeachment proceedings provide far fewer procedural safeguards than do prosecutions, *see id.*, and accordingly, Congress may not dispense criminal penalties in impeachment proceedings, *supra* Section V.A.  Impeachment is not a substitute for prosecution.

Second, the Senate may acquit in impeachment proceedings even when it finds that an official committed the acts alleged.  For example, the Senate may acquit because it believes the acts committed do not amount to "high Crimes and Misdemeanors," U.S. Const. art. II, § 4; because the Senate believes it lacks authority to try the official; or for partisan reasons.  OLC Double Jeopardy Memo at *14–15.  Indeed, the Framers anticipated that impeachments might spark partisan division.  *See* The Federalist No. 65, at 330–31 (Alexander Hamilton); Letter from Edmund Pendleton to James Madison, Oct. 8, 1787, 10 *The Documentary History of the Ratification of the Constitution* 1773 (1976); 10 *The Papers of James Madison* 223 (Rutland et al. ed., 1977); *accord* OLC Double Jeopardy Memo at *15.  Acquittal on impeachment does not establish the defendant's innocence.

Defendant contends that impeachment serves to protect officials from political attacks by their enemies, and allowing prosecution following impeachment acquittal would undermine that protection.  Constitutional Reply at 15–18.  But politics are likely to play even larger a role in impeachments than in prosecutions, given that impeachments are conducted by elected officials politically accountable to their constituents, whereas prosecutions are conducted by appointed officials, most of whom may not be removed without cause, *see Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492–93 (2010) (explaining for-cause removal).  And former officials like Defendant, rather than current officials, are also less likely to be politically attacked, because they no longer hold the power and authority of political office.

2.  Historical context

Defendant claims that his interpretation of the Impeachment Judgment Clause reflects the original public meaning of the impeachment clauses.  Constitutional Motion at 20–21; Constitutional Reply at 12–15.  Considerable historical research undermines that contention.  *See* OLC Double Jeopardy Memo at *7–12 ("We are unaware of any evidence suggesting that the framers and ratifiers of the Constitution chose the phrase 'the party convicted' with a negative implication in mind."); *accord Thompson*, 590 F. Supp. 3d at 87.  Most notably, the Founders repeatedly acknowledged that impeachment acquittals would not bar subsequent prosecutions.  For example, James Wilson, who participated in the Constitutional Convention, observed that officials who "may not be convicted on impeachment . . . may be tried by their country."  2 *The Documentary History of the Ratification of the Constitution* 492.  Edward Pendleton, who was President of the Virginia Ratifying Convention, similarly observed that "an Acquital would not bar," a "resort to the Courts of Justice," Letter from Edmund Pendleton to James Madison, Oct. 8, 1787, 10 *The Documentary History of the Ratification of the Constitution* 1773, a conclusion that James Madison called "extremely well founded," 10 *The Papers of James Madison* 223.

Page **42** of **48**

Justice Story too described that, following impeachment, "a second trial for the same offence could be had, either after an acquittal, or a conviction in the court of impeachments." 2 *Story's Commentaries* § 780.

Founding-era officials similarly acknowledged that an acquittal at impeachment proceedings would not bar a subsequent prosecution. For example, during the first federal impeachment trial, Representative Samuel Dana contrasted impeachment proceedings with criminal trials, stating that impeachment had "no conne[ct]ion with punishment or crime, as, whether a person tried under an impeachment be found guilty or acquitted, he is still liable to a prosecution at common law." 9 *Annals of Congress* 2475 (1798). None of the sources Defendant cites refute that conclusion. *See* Constitutional Motion at 20–21.

3. Prior precedent

Defendant's additional arguments invoking past constitutional precedents are similarly unavailing. He first cites Justice Alito's dissent in *Vance*. Constitutional Motion at 19–20. In *Vance*, the Supreme Court held that a sitting President is not immune from state criminal subpoenas, nor does a heightened standard apply to such requests. 140 S. Ct. at 2431. In so holding, the majority opinion reiterated that "no citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding." *Id.* Justice Alito's dissent, moreover, noted that under the Impeachment Judgement Clause, "criminal prosecution, like removal from the Presidency and disqualification from other offices, is a consequence that can come about only after the Senate's judgment, not during or prior to the Senate trial." *Id.* at 2444 (Alito, J., dissenting); *see* Constitutional Motion at 19. All Justice Alito's dissent observed is that, temporally, any prosecution must follow the judgment on impeachment; no official shall be subject to simultaneous impeachment proceedings and

criminal prosecution.  The dissent does not support the view that if impeachment proceedings end in acquittal, subsequent prosecution violates double jeopardy.

Defendant also cites *Fitzgerald* for the proposition that the threat of impeachment alone is the proper remedy against a President for any "official misfeasance."  Constitutional Motion at 22.  But as already explained, *Fitzgerald* is meaningfully distinguishable; it addressed immunity from civil suit, and all nine Justices took care to emphasize that their reasoning did not extend to the criminal context.  *See supra* Section III.B.1.

In sum, neither the Double Jeopardy Clause nor the Impeachment Judgment Clause prevent Defendant, who while President was acquitted in impeachment proceedings for incitement, from being prosecuted after leaving office for different offenses.

## VI.  DUE PROCESS

Finally, Defendant contends that the Indictment violates the Due Process Clause because he lacked fair notice that his conduct was unlawful.  Constitutional Motion at 25–31.

## A.  <u>Due process principles</u>

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  To comply with due process, a law must give "fair warning" of the prohibited conduct.  *United States v. Lanier*, 520 U.S. 259, 265 (1997) (citation omitted).  A law fails to give fair warning if the text of a statute is so unclear that it requires the Judicial and Executive Branches to "define what conduct is sanctionable and what is not," *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *see Lanier*, 520 U.S. at 266 (citation omitted), or a judge construes the statute in a manner that is "clearly at variance with the statutory language," *Bouie v. City of Columbia*, 378 U.S. 347, 356 (1964); *see Rogers v. Tennessee*, 532 U.S. 451, 457 (2001); *see also Lanier*, 520 U.S. at 266.

For instance, in 2015, the Supreme Court concluded that the residual clause of the Armed Career Criminal Act violated due process because it was so vague—and difficult to administer— that defendants lacked notice of how it would be applied in any given case. *Johnson v. United States*, 576 U.S. 591, 597 (2015). The Court explained that the residual clause required judges to imagine an "ordinary case" involving the crime with which the defendant was charged, and compare the defendant's actions to that "ordinary case." *Id.* at 597, 599. It further emphasized that its "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm[ed] its hopeless indeterminacy," *id.* at 598, noting that the clause had caused "numerous splits among the lower federal courts," *id.* at 601 (citation omitted).

A statute does not fail to give fair warning just "because it 'does not mean the same thing to all people, all the time, everywhere.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted). "Since words, by their nature, are imprecise instruments," laws "may have gray areas at the margins" without violating due process. *United States v. Barnes*, 295 F.3d 1354, 1366 (D.C. Cir. 2002). Indeed, statutes are rarely found unconstitutional because their text fails to give fair warning. *See, e.g.*, *Bronstein*, 849 F.3d at 1107 (statute upheld); *Barnes*, 259 F.3d at 1366 (same); *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1303–05 (D.C. Cir. 2023) (same); *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 728–30 (D.C. Cir. 2017) (same); *Agnew v. Gov't of D.C.*, 920 F.3d 49, 55–61 (D.C. Cir. 2019) (same).

Applying a novel judicial construction of a statute may also fail to give fair warning if it "unexpectedly broadens" the statute's reach and applies that expanded reach "retroactively." *Bouie*, 378 U.S. at 353–57; *see Rogers*, 532 U.S. at 457; *Reed v. Goertz*, 143 S. Ct. 955, 960–61 (2023). In *Bouie*, for example, defendants were convicted of violating a state law prohibiting "entry upon the lands of another . . . after notice from the other . . . prohibiting such entry" after

they remained on premises after being asked to leave, even though they did not re-enter the premises.  378 U.S. at 355.  The Supreme Court held that the state supreme court's construction of the statute failed to give the defendants fair notice because it was "clearly at variance with the statutory language" and had "not the slightest support in prior [state] decisions."  *Id.* at 356.

## B.  <u>The Indictment does not violate due process</u>

Defendant had fair notice that his conduct might be unlawful.  None of the criminal laws he is accused of violating—18 U.S.C. § 371; *id.* § 1512(k); *id.* § 1512(c)(2); and *id.* § 241— require the Executive or Judicial Branch to "guess" at the prohibited conduct, *Lanier*, 520 U.S. at 266.  Nor does finding that the Indictment complies with due process require the court to create a novel judicial construction of any statute.

Defendant notes that the "principle of fair notice has special force" in the First Amendment Context.  Constitutional Motion at 26–27.  While that may be true, even "special force" does not place Defendant's alleged conduct "outside the plain language of the charged statutes" as he alleges.  *See id.* at 27.  First, his argument does not contrast the allegations in the Indictment with the plain language of the statutes, but instead attempts to recast the factual allegations in the Indictment itself as no more than routine efforts to challenge an election.  *See id.* at 31 (claiming that "post-election challenges" like Defendant's "had been performed in 1800, 1824, 1876, and 1960 . . . without any suggestion [it was] criminal").  But again, at this stage, the court must take the allegations in the Indictment as true.  *Supra* Section II, IV.B.3.  The fact that Defendant disputes the allegations in the Indictment do not render them unconstitutional.  Second, the meaning of statutory terms "need not be immediately obvious to an average person; indeed, 'even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"  *Agnew*, 920 F.3d at 57 (citation omitted).  And due process does not entitle Defendant

to advance warning that his precise conduct is unlawful, so long as the law plainly forbids it. *See Lanier*, 520 U.S. at 271; *cf. United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("ignorance of the law is no defense").

Defendant also claims he lacked fair notice because there is a "long history" of government officials "publicly claiming that election results were tainted by fraud" or questioning election results, yet he is "the first person to face criminal charges for such core political behavior." Constitutional Motion at 25; *see id.* at 27–30. But there is also a long history of prosecutions for interfering with the outcome of elections; that history provided Defendant with notice that his conduct could be prosecuted. *See* Opp'n to Constitutional Motion at 39–40 (citing six examples of 18 U.S.C. § 241 prosecutions). Indeed, the Supreme Court has addressed more than one case in which officials were prosecuted for interfering with or discarding election ballots. *United States v. Mosley*, 238 U.S. 383, 385 (1915); *United States v. Saylor*, 322 U.S. 385, 386 (1944).

In addition, none of the contested elections Defendant invokes is analogous to this case. *See* Opp'n to Constitutional Motion at 40–47 (detailing the history of each election). As noted above, Defendant is not being prosecuted for publicly contesting the results of the election; he is being prosecuted for knowingly making false statements in furtherance of a criminal conspiracy and for obstruction of election certification proceedings. And in none of these earlier circumstances was there any allegation that any official engaged in criminal conduct to obstruct the electoral process. For instance, following the 2004 Presidential election, Representative Stephanie Tubbs Jones raised an objection to Ohio's electoral votes at the joint session; Senator Boxer signed the objection. 151 Cong. Rec. 199 (Jan. 6, 2005). As Representative Jones explained in a separate session, that objection was to allow "a necessary, timely, and appropriate

opportunity to review and remedy . . . the right to vote." *Id.*  Ohio's electoral votes were then counted for President Bush.  Defendant points to no allegation that Representative Jones' objection was in furtherance of a criminal conspiracy or designed to obstruct the electoral process.

Moreover, even if there were an analogous circumstance in which an official had escaped prosecution, the mere absence of prior prosecution in a similar circumstance would not necessarily mean that Defendant's conduct was lawful or that his prosecution lacks due process. The "exclusive authority and absolute discretion to decide whether to prosecute a case"—within bounds, *supra* at 19–20—is a cornerstone of the Executive Branch.  *Nixon*, 418 U.S. at 693 (citation omitted).

Finally, Defendant argues that, for the Indictment to comply with due process, the prosecution bears the burden to "provide examples where similar conduct was found criminal." Constitutional Reply at 21.  Under that theory, novel criminal acts would never be prosecuted. The Constitution does not so constrain the Executive Branch.

## VII.   CONCLUSION

For the foregoing reasons, the court will DENY Defendant's Motion to Dismiss Indictment Based on Presidential Immunity, ECF No. 74, and Motion to Dismiss the Indictment Based on Constitutional Grounds, ECF No. 113.  A corresponding Order will accompany this Memorandum Opinion.


Date: December 1, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA**, |
| v. |
| **DONALD J. TRUMP**, |
| Defendant. |

Criminal Action No. 23-257 (TSC)

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, ECF No. 171,

Defendant's Motion to Dismiss Based on Presidential Immunity, ECF No. 74, is hereby

DENIED; and Defendant's Motion to Dismiss Based on Constitutional Grounds, ECF No. 113,

is hereby DENIED.

Date: December 1, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

Page **1** of **1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DONALD J. TRUMP,

Defendant.

Criminal Action No. 23-257 (TSC)

## MEMORANDUM OPINION

The United States has charged former President Donald J. Trump with four counts of criminal conduct that he allegedly committed during the waning days of his Presidency.  *See* Indictment, ECF No. 1.  He has moved to dismiss the charges against him based on Presidential immunity, ECF No. 74 ("Immunity Motion"), and on constitutional grounds, ECF No. 113 ("Constitutional Motion").[1]  For the reasons set forth below, the court will DENY both motions.

## I.        BACKGROUND

At the motion to dismiss stage, the court assumes the truth of the Indictment's allegations.  *See, e.g.*, *United States v. Weeks*, 636 F. Supp. 3d 117, 120 (D.D.C. 2022). Defendant contends that the charges in the Indictment are based on his "public statements and tweets about the federal election and certification," "communications with the U.S. Department of Justice about investigating elections crimes and possibly appointing a new Acting Attorney

---

[1] Defendant has also moved to dismiss based on statutory grounds, ECF No. 114, and for selective and vindictive prosecution, ECF No. 116.  The court will address those motions separately.  The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citations omitted).  The court therefore rules first on the Immunity Motion and the Constitutional Motion—in which Defendant asserts "constitutional immunity from double jeopardy," *United States v. Scott*, 464 F.2d 832, 833 (D.C. Cir. 1972).

General," "communications with state officials about the federal election and the exercise of their official duties with respect to the election," "communications with the Vice President and Members of Congress about the exercise of their official duties in the election-certification proceedings," and "organizing slates of electors as part of the attempt to convince legislators not to certify the election against defendant."  Immunity Motion at 3–8 (formatting modified). Those generalized descriptions fail to properly portray the conduct with which he has been charged.  Accordingly, the court will briefly review the central allegations as set forth in the Indictment.

Defendant "was the forty-fifth President of the United States and a candidate for re-election in 2020."  Indictment ¶ 1.  "Despite having lost" that election, he "was determined to remain in power," so "for more than two months following election day on November 3, 2020, the Defendant spread lies that there had been outcome-determinative fraud in the election and that he had actually won."  *Id.* ¶ 2.  He "knew that [those claims] were false," but "repeatedly and widely disseminated them anyway—to make his knowingly false claims appear legitimate, create an intense national atmosphere of mistrust and anger, and erode public faith in the administration of the election."  *Id.*; *see id.* ¶ 12 (listing six such claims).  "In fact, the Defendant was notified repeatedly that his claims were untrue—often by the people on whom he relied for candid advice on important matters, and who were best positioned to know the facts and he deliberately disregarded the truth."  *Id.* ¶ 11.  Those people included the Vice President, "senior leaders of the Justice Department," the Director of National Intelligence, the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, "Senior White House attorneys," "Senior staffers on the Defendant's 2020 re-election campaign," state legislators and officials, and state and federal judges.  *Id.*

"Defendant also pursued unlawful means of discounting legitimate votes and subverting the election results." *Id.* ¶ 4. Specifically, he "targeted a bedrock function of the United States federal government: the nation's process of collecting, counting, and certifying the results of the presidential election." *Id.* The Indictment describes that process:

> The Constitution provided that individuals called electors select the president, and that each state determine for itself how to appoint the electors apportioned to it. Through state laws, each of the fifty states and the District of Columbia chose to select their electors based on the popular vote in the state. After election day, the [Electoral Count Act ("ECA")] required each state to formally determine—or 'ascertain'—the electors who would represent the state's voters by casting electoral votes on behalf of the candidate who had won the popular vote, and required the executive of each state to certify to the federal government the identities of those electors. Then, on a date set by the ECA, each state's ascertained electors were required to meet and collect the results of the presidential election—that is, to cast electoral votes based on their state's popular vote, and to send their electoral votes, along with the state executive's certification that they were the state's legitimate electors, to the United States Congress to be counted and certified in an official proceeding. Finally, the Constitution and ECA required that on the sixth of January following election day, the Congress meet in a Joint Session for a certification proceeding, presided over by the Vice President as President of the Senate, to count the electoral votes, resolve any objections, and announce the result—thus certifying the winner of the presidential election as president-elect.

*Id.* ¶ 9.

Defendant, along with at least six co-conspirators, *id.* ¶ 8, undertook efforts "to impair, obstruct, and defeat [that process] through dishonesty, fraud, and deceit," *id.* ¶ 10. Those efforts took five alleged forms:

*First*, they "used knowingly false claims of election fraud to get state legislators and election officials to subvert the legitimate election results and change electoral votes for the Defendant's opponent, Joseph R. Biden, Jr., to electoral votes for the Defendant." *Id.* ¶ 10(a). "That is, on the pretext of baseless fraud claims, the Defendant pushed officials in certain states to ignore the popular vote; disenfranchise millions of voters; dismiss legitimate electors; and

ultimately, cause the ascertainment of and voting by illegitimate electors in favor of the Defendant." *Id.*; *see id.* ¶¶ 13–52.

*Second*, they "organized fraudulent slates of electors in seven targeted states (Arizona, Georgia, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin), attempting to mimic the procedures that the legitimate electors were supposed to follow under the Constitution and other federal and state laws." *Id.* ¶ 10(b). "This included causing the fraudulent electors to meet on the day appointed by federal law on which legitimate electors were to gather and cast their votes; cast fraudulent votes for the Defendant; and sign certificates falsely representing that they were legitimate electors." *Id.*; *see id.* ¶¶ 53–69. They "then caused these fraudulent electors to transmit their false certificates to the Vice President and other government officials to be counted at the certification proceeding on January 6," 2021. *Id.* ¶ 10(b); *see id.* ¶¶ 53–69.

*Third*, they "attempted to use the power and authority of the Justice Department to conduct sham election crime investigations and to send a letter to the targeted states that falsely claimed that the Justice Department had identified significant concerns that may have impacted the election outcome; that sought to advance the Defendant's fraudulent elector plan by using the Justice Department's authority to falsely present the fraudulent electors as a valid alternative to the legitimate electors; and that urged, on behalf of the Justice Department, the targeted states' legislatures to convene to create the opportunity to choose the fraudulent electors over the legitimate electors." *Id.* ¶ 10(c); *see id.* ¶¶ 70–85.

*Fourth*, "using knowingly false claims of election fraud," they "attempted to convince the Vice President to use the Defendant's fraudulent electors, reject legitimate electoral votes, or send legitimate electoral votes to state legislatures for review rather than counting them." *Id.* ¶ 10(d). "When that failed, on the morning of January 6," they "repeated knowingly false claims

of election fraud to gathered supporters, falsely told them that the Vice President had the authority to and might alter the election results, and directed them to the Capitol to obstruct the certification proceeding and exert pressure on the Vice President to take the fraudulent actions he had previously refused." *Id.*; *see id.* ¶¶ 86–105.

*Fifth*, "on the afternoon of January 6," once "a large and angry crowd—including many individuals whom the Defendant had deceived into believing the Vice President could and might change the election results—violently attacked the Capitol and halted the proceeding," they "exploited the disruption by redoubling efforts to levy false claims of election fraud and convince members of Congress to further delay the certification based on those claims." *Id.* ¶ 10(e); *see id.* ¶¶ 106–124.

Based on this conduct, the Indictment charges Defendant with four counts: Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, *id.* ¶ 6; Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), *id.* ¶ 126; Obstruction of, and Attempt to Obstruct, an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2, *id.* ¶ 128; and Conspiracy Against Rights, in violation of 18 U.S.C. § 241, *id.* ¶ 130.

## II.    LEGAL STANDARD

A criminal defendant may move to dismiss based on a "defect in the indictment," such as a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). That motion may be based—as it is here—on constitutional challenges to the prosecution, including the assertion of immunity. *See, e.g.*, *United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019). "Because a court's use of its supervisory power to dismiss an indictment directly encroaches upon the fundamental role of the grand jury, dismissal is granted only in unusual circumstances." *United States v. Fischer*, 64 F.4th 329, 334–35 (D.C. Cir. 2023) (formatting modified).

### III.    EXECUTIVE IMMUNITY

Defendant contends that the Constitution grants him "absolute immunity from criminal prosecution for actions performed within the 'outer perimeter' of his official responsibility" while he served as President of the United States, so long as he was not both impeached and convicted for those actions.  Immunity Motion at 8, 11–13 (formatting modified).  The Constitution's text, structure, and history do not support that contention.  No court—or any other branch of government—has ever accepted it.  And this court will not so hold.  Whatever immunities a sitting President may enjoy, the United States has only one Chief Executive at a time, and that position does not confer a lifelong "get-out-of-jail-free" pass.  Former Presidents enjoy no special conditions on their federal criminal liability.  Defendant may be subject to federal investigation, indictment, prosecution, conviction, and punishment for any criminal acts undertaken while in office.

### A. <u>Text</u>

In interpreting the Constitution, courts ordinarily "begin with its text," *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997), but there is no provision in the Constitution conferring the immunity that Defendant claims.  The Supreme Court has already noted "the absence of explicit constitutional . . . guidance" on whether a President possesses any immunity.  *Nixon v. Fitzgerald*, 457 U.S. 731, 747 (1982) ("*Fitzgerald*"); *see also United States v. Nixon*, 418 U.S. 683, 705–06 n.16 (1974) ("*Nixon*") (observing "the silence of the Constitution" regarding a President's immunity from criminal subpoenas).  The Executive Branch has likewise recognized that "the Constitution provides no explicit immunity from criminal sanctions for any civil officer," including the current President.  *A Sitting President's Amenability to Indictment and Criminal Prosecution*, 24 U.S. Op. Off. Legal Counsel 222, 2000 WL 33711291, at \*9 (2000) ("OLC Immunity Memo") (quoting Memorandum for the United States Concerning the Vice

President's Claim of Constitutional Immunity at 4 (filed Oct. 5, 1973), *In re Proceedings of the Grand Jury Impaneled December 5, 1972: Application of Spiro T. Agnew, Vice President of the United States* (D. Md. 1973) (No. 73-965) ("1973 SG Memo"), *available at* 27 Hofstra L. Rev. 677, 775–97 (Appendix)) (alterations adopted).  There is no "Presidential Immunity" Clause.

The lack of constitutional text is no accident; the Framers explicitly created immunity for other officials.  The Constitution's Speech and Debate Clause provides that "Senators and Representatives . . . shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."  U.S. Const. art. I, § 6, cl. 1.  And some Founding-Era state constitutions, like those of Virginia and Delaware, unequivocally protected their Governor from certain penal sanctions, at least until "he [was] out of office."  Saikrishna Bangalore Prakash, *Prosecuting and Punishing Our Presidents*, 100 Tex. L. Rev. 55, 69 (2021) (quoting Va. Const. of 1776, art. XVI); *accord id.* at 69–70 (quoting Del. Const. of 1776, art. XXIII).  The U.S. Constitution contains no equivalent protections for the President.

Nor is the Constitution silent on the question because its drafters and ratifiers assumed the President would enjoy the immunity Defendant claims.  To the contrary, America's founding generation envisioned a Chief Executive wholly different from the unaccountable, almost omnipotent rulers of other nations at that time.  In Federalist No. 69—titled "The Real Character of the Executive"—Alexander Hamilton emphasized the "total dissimilitude between [the President] and the king of Great Britain," the latter being "sacred and inviolable" in that "there is no constitutional tribunal to which he is amenable; no punishment to which he can be subjected." *The Federalist Papers by Alexander Hamilton, James Madison and John Jay* 348–49 (Garry

Wills ed. 1982).[2]  Hamilton's contemporary commentators universally affirmed the crucial

distinction that the President would at some point be subject to criminal process.  *See* Prakash,

100 Tex. L. Rev. at 71–75 (collecting commentary); Response, Brian C. Kalt, *Criminal Immunity*

*and Schrödinger's President: A Response to* Prosecuting and Punishing Our Presidents, 100 Tex.

L. Rev. Online 79, 83–85 (2021) (acknowledging Founding-Era consensus that Presidents would

lack absolute criminal immunity, but noting that most commentary was ambiguous about

whether prosecution could occur during Presidency, or only after).  That widely acknowledged

contrast between the President and a king is even more compelling for a former President.  The

Constitution's silence on former Presidents' criminal immunity thus does not reflect an

understanding that such immunity existed.

Lacking an express constitutional provision, Defendant hangs his textual argument for

immunity on the Impeachment Judgment Clause, but it cannot bear the weight he places on it.

The Clause provides:

> Judgment in Cases of Impeachment shall not extend further than to removal from
> Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit
> under the United States: but the Party convicted shall nevertheless be liable and
> subject to Indictment, Trial, Judgment and Punishment, according to Law.

U.S. Const. art. I, § 3, cl. 7.  From this language, Defendant concludes "that the President may be

charged by indictment only in cases where the President has been impeached and convicted by

trial in the Senate."  Immunity Motion at 11.  But Defendant is not President, and reading the

Clause to grant absolute criminal immunity to former Presidents would contravene its plain

meaning, original understanding, and common sense.

---

[2] All subsequent citations to the Federalist Papers refer to this edition, and the Papers are also
available online at https://avalon.law.yale.edu/subject_menus/fed.asp.

The Clause has two parts.  The first limits the penalties of impeachment to removal and disqualification from office.  That limit marked a deliberate departure from the prevailing British tradition, in which an impeachment conviction "might result in a wide array of criminal penalties, including fines, imprisonment, and even execution."  *Whether A Former President May Be Indicted and Tried for the Same Offenses for Which He Was Impeached by the House and Acquitted by the Senate*, 24 U.S. Op. Off. Legal Counsel 110, 2000 WL 33711290, at *7 (2000) ("OLC Double Jeopardy Memo") (citing 2 Joseph Story, *Commentaries on the Constitution of the United States* 251–2 (1833; reprint 1994) ("*Story's Commentaries*"); 2 Richard Wooddeson, *A Systematical View of the Laws of England* 611–14 (1792); Raoul Berger, *Impeachment: The Constitutional Problems* 67 (1974)).  The second part of the Clause provides, however, that impeachment's limits do not preclude "the Party convicted" from later criminal prosecution in the courts—*i.e.*, that "further punishment[] . . . would still be available but simply not to the legislature."  *Id.* at *10.

Both parts of the Clause undercut Defendant's interpretation of it.  The first begins by defining the Clause's scope: "Judgment in Cases of Impeachment," indicating that the Clause is aimed primarily at identifying the permissible penalties associated with impeachment itself.  The Clause's second part confirms that purview.  Rather than stating that "the Party convicted shall *only then* be liable" to criminal prosecution, the Clause states that "the Party convicted shall *nevertheless* be liable."  U.S. Const. art. I, § 3, cl. 7 (emphasis added).  At the Founding, as now, "nevertheless" meant "notwithstanding that," and "notwithstanding that" meant "[w]ithout hindrance or obstruction from."  *Neverthele'ss*, Samuel Johnson, *A Dictionary Of The English Language* (1978) (4th ed. 1773), *available at* https://perma.cc/ST8E-RCMB; *id.*, *Notwithsta'nding*, *available at* https://perma.cc/A9ML-QK4Y.  In the Impeachment Judgment

Clause, the word "nevertheless" in the second part thus signifies that the first part—constraining impeachment's penalties—does not bear on whether the Party would also be subject to criminal prosecution.  *See* OLC Immunity Memo at *2 (citing *Amenability of the President, Vice President and other Civil Officers to Federal Criminal Prosecution while in Office* (1973) ("1973 OLC Memo"), *available at* https://perma.cc/DM28-LHT9).  As discussed at greater length below, the Clause's manifest purpose—and originally understood effect—was therefore "to permit criminal prosecution in spite of the prior adjudication by the Senate, *i.e.*, to forestall a double jeopardy argument."  *Id.* (citation omitted); *see infra* Section V.B.  That is quite different from establishing impeachment and conviction as a prerequisite to a former President's criminal prosecution.

The historical sources that Defendant cites do not move the needle.  First, he quotes Alexander Hamilton's twin statements in *The Federalist* that the "President of the United States would be liable to be impeached, tried, and, upon conviction of treason, bribery, or other high crimes or misdemeanors, removed from office; and would afterwards be liable to prosecution and punishment in the ordinary course of law," Federalist No. 69 at 348, and that the President would be "at all times liable to impeachment, trial, dismission from office, incapacity to serve in any other, and to forfeiture of life and estate by subsequent prosecution in the common course of law,"  Federalist No. 77 at 392.  Immunity Motion at 12.  But those statements merely echo the Clause's clarification that prosecution *may* follow impeachment; they do not say that those events *must* happen in that order.  Second, Defendant cites Founding Father James Wilson's remark during the ratification debates that the President "is amenable to [the laws] in his private character as a citizen, and in his public character by impeachment." J. Elliot, *Debates on The Federal Constitution* 480 (2d ed. 1863).  But Wilson was describing a President in office, *see id.*,

and that description is entirely consistent with a former President—having returned to life "as a citizen"—being subject to criminal prosecution. There is no evidence that any of the Constitution's drafters or ratifiers intended or understood former Presidents to be criminally immune unless they had been impeached and convicted, much less a widespread consensus that the Impeachment Judgment Clause would have that effect.

In addition to lacking textual or historical support, Defendant's interpretation of the Clause collapses under the application of common sense. For one, his reasoning is based on the logical fallacy of "denying the antecedent." *See, e.g.*, *New LifeCare Hosps. of N.C. LLC v. Azar*, 466 F. Supp. 3d 124, 136 n.7 (D.D.C. 2020). From the statement "if the animal is a cat, it can be a pet," it does not follow that "if the animal is not a cat, it cannot be a pet." Yet Defendant argues that because a President who is impeached and convicted may be subject to criminal prosecution, "a President who is *not* convicted may *not* be subject to criminal prosecution." Immunity Motion at 11. Even assuming that negative implication finds some traction when applied to sitting Presidents, *see, e.g.*, *Trump v. Vance*, 140 S. Ct. 2412, 2444–45 (2020) (Alito, J., dissenting) (discussing that implication); *but see* OLC Immunity Memo at *2–3 (restating the 1973 OLC Memo's rejection of the implication); *see also infra* Section V.B (discussing the implication for double jeopardy purposes), the logic certainly does not hold for former Presidents. That is because there is another way, besides impeachment and conviction, for a President to be removed from office and thus subjected to "the ordinary course of law," Federalist No. 69 at 348: As in Defendant's case, he may be voted out. The President "shall hold his Office during the Term of four Years." U.S. Const. art. II, § 1, cl. 1. Without reelection, the expiration of that term ends a Presidency as surely as impeachment and conviction. *See United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, Circuit

Justice) ("[T]he president is elected from the mass of the people, and, on the expiration of the time for which he is elected, returns to the mass of the people again.").  Nothing in the Impeachment Judgment Clause prevents criminal prosecution thereafter.

Defendant's reading of the Impeachment Judgment Clause also proves too much.  If the Clause required impeachment and conviction to precede criminal prosecution, then that requirement would apply not only to the President, but also to the "Vice President and all civil Officers of the United States"—who may likewise be impeached.  U.S. Const. art. II, § 4.  "The constitutional practice since the Founding, however, has been to prosecute and even imprison civil officers other than the President . . . prior to their impeachment."  OLC Immunity Memo at *2 (citing 1973 OLC Memo at 4–7 (collecting sources)).  For instance, then-Vice President Aaron Burr was indicted without being impeached, *see* 1973 SG Memo at 12, and the same fate might have befallen Vice President Spiro Agnew had he not resigned and entered a *nolo contendere* plea, *see United States v. Agnew*, 428 F. Supp. 1293, 1293 (D. Md. 1977).  Not only would Defendant's interpretation contradict that long-settled practice, it would also introduce significant "complications into criminal proceedings" for all current and former federal officials, including "threshold constitutional questions" of "whether the suspect is or was an officer of the United States," and "whether the offense is one for which he could be impeached."  OLC Immunity Memo at *3 (citing 1973 OLC Memo at 7).  The clash with historical practice and difficulties in application that would flow from Defendant's interpretation further confirm that it cannot be the correct reading of the Clause.

Finally, Defendant's interpretation of the Impeachment Judgment Clause would produce implausibly perverse results.  The Constitution permits impeachment and conviction for a limited category of offenses: "Treason, Bribery, or other high Crimes and Misdemeanors."  U.S. Const.

Page **12** of **48**

art. II, § 4.  Under Defendant's reading, if a President commits a crime that does not fall within that limited category, and so could not be impeached and convicted, the President could never be prosecuted for that crime.  Alternatively, if Congress does not have the opportunity to impeach or convict a sitting President—perhaps because the crime occurred near the end of their term, or is covered up until after the President has left office—the former President similarly could not be prosecuted.  Defendant seems to suggest that this scenario, in which the former President would be utterly unaccountable for their crimes, is simply the price we pay for the separation of powers. *See* Reply in Support of Immunity Motion, ECF No. 122, at 6 (quoting *Morrison v. Olson*, 487 U.S. 654, 710 (1988) (Scalia, J., dissenting) ("While the separation of powers may prevent us from righting every wrong, it does so in order to ensure that we do not lose liberty.")).[3]  That cannot be the Clause's meaning.  The constitutional limits on impeachment's penalties do not license a President's criminal impunity.

In sum, nothing in the Constitution's text supplies the immunity that Defendant claims. To be sure, "a specific textual basis has not been considered a prerequisite to the recognition of immunity," and so the inquiry is not confined to the express terms of our founding charter. *Fitzgerald*, 457 U.S. at 750 n.31.  But the lack of supporting constitutional text does mean that a former President's federal criminal immunity, if it exists, must arise entirely from "concerns of public policy, especially as illuminated by our history and the structure of our government."  *Id.* at 747–48.  Defendant's resort to those principles fares no better.

---

[3] Even assuming that former as well as sitting Presidents may be impeached, this hypothetical would still produce problematic results.  Congress could enable a former President's criminal prosecution by impeaching them after they have left office.  But it would raise serious separation of powers concerns to restrain the core executive act of prosecuting a private citizen—as a former President would then be—until Congress chose to do so.  *See infra* Section III.B.2.

Page **13** of **48**

**B.  Structure**

The Supreme Court has cautioned against forms of Presidential liability that "rise to the level of constitutionally forbidden impairment of the Executive's ability to perform its constitutionally mandated functions."  *Clinton v. Jones*, 520 U.S. 681, 702 (1997).  But the prospect of federal criminal liability for a former President does not violate that structural principle, either by imposing unacceptable risks of vexatious litigation or by otherwise chilling the Executive's decision-making process.  Indeed, it is likely that a President who knows that their actions may one day be held to criminal account will be motivated to take greater care that the laws are faithfully executed.  More fundamentally, federal criminal liability is essential to the public's interest in our "historic commitment to the rule of law . . . nowhere more profoundly manifest than in our view that 'the twofold aim of criminal justice is that guilt shall not escape or innocence suffer.'"  *Nixon*, 418 U.S. at 708–09 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)) (formatting modified).  The Presidency's unique responsibilities do not exempt its former occupants from that commitment.

In *Fitzgerald*, the Supreme Court explained the structural analysis for Presidential immunity.  In that case, civil plaintiff A. Ernest Fitzgerald claimed that President Richard Nixon had been involved in unlawfully firing him from his government job and sought money damages against the former President.  457 U.S. at 733–41.  The five-Justice majority noted it was "settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States."  *Id.* at 753–54 (citations omitted).  But it instructed that "a court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch."  *Id.* at 754 (citations omitted).  "When judicial action is needed to serve broad public interests—as when the Court acts, not in derogation of the separation of powers, but to maintain their proper

balance, or to vindicate the public interest in an ongoing criminal prosecution—the exercise of jurisdiction has been held warranted." *Id.* (first citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), then citing *Nixon*, 418 U.S. 731). Ultimately, the Court found that a "merely private suit for damages based on a President's official acts" did not serve those interests, and held that a former President could remain immune from such suits. *Id.* For a federal criminal prosecution, however, the analysis comes out the other way.

    1.   Burdens on the Presidency

       At the outset, it bears noting that it is far less intrusive on the functions of the Executive Branch to prosecute a former President than a sitting one. The Supreme Court has accepted at least "the initial premise" that the President "occupies a unique office with powers and responsibilities so vast and important that the public interest demands that he devote his undivided time and attention to his public duties." *Clinton*, 520 U.S. at 697–98. And the Office of Legal Counsel has identified three burdens of criminal prosecution that could impede the performance of that constitutional role:

> (a) the actual imposition of a criminal sentence of incarceration, which would make it physically impossible for the President to carry out his duties; (b) the public stigma and opprobrium occasioned by the initiation of criminal proceedings, which could compromise the President's ability to fulfill his constitutionally contemplated leadership role with respect to foreign and domestic affairs; and (c) the mental and physical burdens of assisting in the preparation of a defense for the various stages of the criminal proceedings, which might severely hamper the President's performance of his official duties.

OLC Immunity Memo at *19. But none of those burdens would result from the criminal prosecution of a former President, who is no longer performing official duties. Accordingly, the separation-of-powers concerns are significantly diminished in this context.

       *Fitzgerald* nonetheless suggested that the prospect of post-Presidency civil liability might "distract a President from his public duties, to the detriment of not only the President and his

office but also the Nation that the Presidency was designed to serve."  457 U.S. at 753.  The

Supreme Court highlighted two concerns: (1) the public interest in providing the President "the

maximum ability to deal fearlessly and impartially with the duties of his office," and (2) the fact

that given the "visibility of his office and the effect of his actions on countless people, the

President would be an easily identifiable target for suits for civil damages."  *Id.* at 752–53

(quotation omitted).  Defendant correspondingly focuses his arguments for immunity on (1) "the

chilling effect personal liability would have on the President's decision-making," and (2) the

"potential criminal prosecutions" former Presidents could face from "local, state, or subsequent

federal officials."  Immunity Motion at 9–10.  He contends that "[c]ognizance of this personal

vulnerability frequently could distract a President from his public duties, to the detriment of not

only the President and his office but also the Nation that the Presidency was designed to serve."

*Id.* at 10 (quoting *Fitzgerald*, 457 U.S. at 753).

Those concerns do not carry the same weight in the context of a former President's

federal criminal prosecution.  First, the Supreme Court has largely rejected similar claims of a

"chilling effect" from the possibility of future criminal proceedings.  During the Watergate

prosecution, President Nixon argued that if recordings of his conversations were subject to

criminal subpoena, the Presidential decision-making process would be compromised because his

staff would be less candid.  *Nixon*, 418 U.S. at 705–06.  The Court disagreed, stating that it

"cannot conclude that advisers will be moved to temper the candor of their remarks by the

infrequent occasions of disclosure because of the possibility that such conversations will be

called for in the context of a criminal prosecution."  *Id.* at 712.  The Court quoted Justice

Cardozo's unanimous opinion finding that a jury's decision-making process would not be

meaningfully chilled if jurors' conduct were later subject to criminal prosecution:

> A juror of integrity and reasonable firmness will not fear to speak his mind if the confidences of debate are barred to the ears of mere impertinence of malice. He will not expect to be shielded against the disclosure of his conduct in the event that there is evidence reflecting upon his honor. The chance that now and then there may be found some timid soul who will take counsel of his fears and give way to their repressive power is too remote and shadowy to shape the course of justice.

*Id.* n.20 (quoting *Clark v. United States*, 289 U.S. 1, 16 (1933)).

The same reasoning applies here. There is no doubt that "a President must concern himself with matters likely to arouse the most intense feelings." *Fitzgerald*, 457 U.S. at 752 (internal quotation marks omitted). But "[c]riminal conduct is not part of the necessary functions performed by public officials." *United States v. Isaacs*, 493 F.2d 1124, 1144 (7th Cir. 1974). By definition, the President's duty to "take Care that the Laws be faithfully executed" does not grant special latitude to violate them. U.S. Const., art. II, § 3. That is especially true when the violations require criminal intent, as is the case here, *see* Opp'n to Immunity Motion, ECF No. 109, at 31–32 (reviewing *mens rea* requirements for the Indictment's four counts); *cf. Imbler v. Pachtman*, 424 U.S. 409, 429 (1976) (noting that even public officials "cloaked with absolute civil immunity . . . could be punished criminally" for their "willful acts"). Like his fellow citizens serving on juries, then, a President "of integrity and reasonable firmness" will not fear to carry out his lawful decision-making duties—even on hot-button political issues—and "will not expect to be shielded against the disclosure of his conduct in the event that there is evidence reflecting upon his honor." *Clark*, 289 U.S. at 16. The rationale for immunizing a President's controversial decisions from civil liability does not extend to sheltering his criminality.

Indeed, the possibility of future criminal liability might encourage the kind of sober reflection that would reinforce rather than defeat important constitutional values. If the specter of subsequent prosecution encourages a sitting President to reconsider before deciding to act with criminal intent, that is a benefit, not a defect. "Where an official could be expected to know

that certain conduct would violate statutory or constitutional rights, he should be made to hesitate." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  Consequently, to the extent that there are any cognizable "chilling effects" on Presidential decision-making from the prospect of criminal liability, they raise far lesser concerns than those discussed in the civil context of *Fitzgerald*.  Every President will face difficult decisions; whether to intentionally commit a federal crime should not be one of them.

Second, the possibility of vexatious post-Presidency litigation is much reduced in the criminal context.  Defendant protests that denying him immunity would subject future Presidents to "prosecution in countless federal, state, and local jurisdictions across the country," Immunity Motion at 10, but that is incorrect.  To begin, Defendant is only charged with federal crimes in this case, so any ruling here will be limited to that context and would not extend to state or local prosecutions—which in any event might run afoul of the Supremacy Clause, *see Vance*, 140 S. Ct. at 2428 ("The Supremacy Clause prohibits state judges and prosecutors from interfering with a President's official duties. . . . Any effort to manipulate a President's policy decisions or to 'retaliat[e]' against a President for official acts . . . would thus be an unconstitutional attempt to 'influence' a superior sovereign 'exempt' from such obstacles." (citations omitted)).  And as Defendant well knows, *see infra* Section V.A, a person cannot "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const., amend. V.  Consequently, denying Defendant immunity here means only that a former President may face one federal prosecution, in one jurisdiction, for each criminal offense allegedly committed while in office.  That consequence stands in contrast to the civil context, where "the effect of [the President's] actions on countless people" could result in untold numbers of private plaintiffs suing for damages based on any number of Presidential acts.  *Fitzgerald*, 457 U.S. at 753.

Defendant also warns that if he is not given immunity here, criminal prosecutions will "bedevil[] every future Presidential administration and usher[] in a new era of political recrimination and division."  Immunity Motion at 11.  But, as the Supreme Court noted when faced with a similar argument in *Clinton*, that "predictive judgment finds little support in either history or the relatively narrow compass of the issues raised in this particular case."  520 U.S. at 702.  As Defendant acknowledges, he is the only former President in United States history to face criminal charges for acts committed while in office.  *See* Immunity Motion at 15.  "If the past is any indicator, it seems unlikely that a deluge of such litigation will ever engulf the Presidency."  *Clinton*, 520 U.S. at 702.  Despite Defendant's doomsaying, he points to no evidence that his criminal liability in this case will open the gates to a waiting flood of future federal prosecutions.

The robust procedural safeguards attendant to federal criminal prosecutions further reduce the likelihood that former Presidents will be unjustly harassed.  Prosecutors themselves are constitutionally bound to not abuse their office, which is why "courts presume that they have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15 (1926)).  And a federal indictment is issued by a grand jury, which is similarly "prohibited from engaging in 'arbitrary fishing expeditions' and initiating investigations 'out of malice or an intent to harass.'"  *Vance*, 140 S. Ct. at 2428 (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991)).  Even after indictment, "in the event of such harassment, a [former] President would be entitled to the protection of federal courts," which "have the tools to deter and, where necessary, dismiss" vexatious prosecutions.  *Id*.  For instance, if a prosecution is politically motivated, as Defendant has argued in this case, that alone may warrant dismissal.  *See* Motion to Dismiss Case for

Selective and Vindictive Prosecution, ECF No. 116.  And if a meritless prosecution somehow reached trial, a former President would still have the opportunity to put the government's proof to the test.  *See* U.S. Const., art. III, § 2, cl. 3.

In short, the concerns discussed in the civil context of *Fitzgerald* find no meaningful purchase here.  A former President accused of committing a crime while in office will be subject to only one federal prosecution for that offense, which in turn will only result in conviction if the grand jury finds probable cause and the prosecutor, judge, and all twelve petit jurors agree that the charges are legitimate and have been proven beyond a reasonable doubt.  Throughout that process, a former President "may avail himself of the same protections available to every other citizen." *Vance*, 140 S. Ct. at 2430.  In the rare case when a former President must do so, the Constitution does not proffer the sledgehammer of absolute immunity where the scalpel of procedural protections will suffice.  *See Burr*, 25 F. Cas. at 34 ("The guard, furnished to this high officer [the President], to protect him from being harassed by vexatious and unnecessary subpoenas, is to be looked for in the conduct of a court after those subpoenas have issued; not in any circumstance which is to [] precede their being issued.").  The possibility of future harassing federal criminal prosecution will not cast so "serious" a shadow on the Presidency that its current occupant cannot fulfill its duties.  *Clinton*, 520 U.S. at 708.

2.  Public interest

On the other of side of the scale, the public interest in the prosecution of this case carries grave weight.  The Supreme Court has repeatedly underscored its judgment that "the public interest in fair and accurate judicial proceedings is at its height in the criminal setting." *Vance*, 140 S. Ct. at 2424.  It has correspondingly refused to permit other concerns, including those asserted by Presidents, to "prevail over the fundamental demands of due process of law in the fair administration of criminal justice." *Nixon*, 418 U.S. at 713; *see United States v. Gillock*, 445

U.S. 360, 373 (1980) (concluding that "principles of comity" must yield "where important federal interests are at stake, as in the enforcement of federal criminal statutes").  Despite their other vehement disagreements in *Fitzgerald*, all nine Justices unanimously endorsed that judgment with respect to former Presidents.  Justice Powell's majority opinion specifically contrasted the "lesser public interest in actions for civil damages than . . . in criminal prosecutions."  457 at 754 n.37.  Chief Justice Burger's concurrence made the same distinction. *Id.* at 759–60 (distinguishing immunity "limited to civil damages claims" from "a *criminal* prosecution," as in *Burr* or *Nixon* (emphasis in original)).  And Justice White's four-member dissent stressed that no party had argued "that the President is immune from criminal prosecution in the courts[,] . . . [n]or would such a claim be credible."  *Id.* at 780.  *Fitzgerald* was thus undivided in contemplating that the public interest could require a former President's criminal liability.

Defendant resists that consensus in *Fitzgerald* by pointing to a single passage in the majority opinion where, in listing the "formal and informal checks" that could replace civil liability as a deterrent for Presidential misconduct, the Court did not specifically list criminal liability.  *Id.* at 757.  From that omission, Defendant infers that the Court intended to suggest that criminal liability would not be available either.  Immunity Motion at 13.  But the Court's unanimous emphasis that it was not immunizing former Presidents from federal criminal liability squarely refutes that inference.  If anything, the omission underscores that civil and criminal liability are so fundamentally distinct that they cannot be understood as substitutes for one another.  Accordingly, in the parallel context of cases "which have recognized an immunity from civil suit for state officials," the Supreme Court has explicitly "presumed the existence of federal

criminal liability as a restraining factor on the conduct of state officials." *Gillock*, 445 U.S. at 372.

It is no surprise that the Supreme Court has long recognized the special public interest in criminal law because of its distinctly communal character; that character is reflected in both the Constitution itself and the legal tradition from which it arose. Unlike defendants in a civil matter, for example, federal criminal defendants are constitutionally guaranteed "a speedy and public trial" before a jury drawn from their community. U.S. Const., amend VI; *id.*, art. III, § 2, cl. 3. And the preeminent 18th-century legal commentator William Blackstone explained the reason for the community's special involvement in criminal cases: Whereas civil injuries "are an infringement or privation of the civil rights which belong to individuals, considered merely as individuals," crimes "are a breach and violation of the public rights and duties due to the whole community, considered as a community." 4 William Blackstone, *Commentaries* *5. The fundamentally public interest in a criminal prosecution explains why it "may proceed without the consent of the victim and why it is brought in the name of the sovereign rather than the person immediately injured by the wrong." OLC Immunity Memo at *22. Put differently, the very name of this case confirms the public's particular stake in its adjudication: it is the *United States of America v. Donald J. Trump*.

Congress has also affirmed the special public interests in enforcing the criminal law. In the Sentencing Reform Act of 1984, it required every federal court to consider certain factors in imposing sentence, and declared "the need for the sentence imposed":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *see* Pub. L. 98-473, title II, § 212(a)(2) (1984).  The public has an undisputed interest in promoting respect for the law, deterring crime, protecting itself, and rehabilitating offenders.  All of those interests would be thwarted by granting former Presidents absolute criminal immunity.

The fact that Congress has spoken by criminalizing the conduct with which Defendant is charged also highlights the separation of powers principles that counsel in favor of the court retaining jurisdiction over this case.  "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb."  *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring).  Congress could have penalized the conduct alleged in this case— if it chose to penalize it at all—with mere civil liability, perhaps allowing for monetary damages should a private plaintiff choose to bring suit.  Instead, it expressed a far stronger condemnation by subjecting that conduct to the severe consequences of the criminal law.  "Whatever may be the case with respect to civil liability" for former Presidents, then, "the judicially fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress.'"  *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974) (quoting *Gravel v. United States*, 408 U.S. 606, 627 (1972)).  Indeed, stretching the doctrine so far would also "imped[e] . . . the primary constitutional duty of the Judicial Branch to do justice in criminal prosecutions," *Nixon*, 418 U.S. at 707, not to mention the current President's duty to enforce the criminal law, *see* U.S. Const., art. II, § 3.  Holding a former President absolutely immune would thus impinge on the functions of all three branches with respect to the criminal law: Congress's province to make it, the Executive's prerogative to enforce it, and the Judiciary's charge to apply it.

Most importantly, a former President's exposure to federal criminal liability is essential to fulfilling our constitutional promise of equal justice under the law.  "The government of the United States has been emphatically termed a government of laws, and not of men."  *Marbury v. Madison*, 5 U.S. 137, 163 (1803).  As the Supreme Court has stated, that principle must govern citizens and officials alike:

> No officer of the law may set that law at defiance with impunity.  All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.  It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

*United States v. Lee*, 106 U.S. 196, 220 (1882).

Perhaps no one understood the compelling public interest in the rule of law better than our first former President, George Washington.  His decision to voluntarily leave office after two terms marked an extraordinary divergence from nearly every world leader who had preceded him, ushering in the sacred American tradition of peacefully transitioning Presidential power—a tradition that stood unbroken until January 6, 2021.  In announcing that decision, however, Washington counseled that the newfound American independence carried with it a responsibility. "The very idea of the power and the right of the people to establish government presupposes the duty of every individual to obey the established government."  Washington's Farewell Address, S. Doc. No. 106-21, at 13 (2d Sess. 2000), *available at* https://perma.cc/E5CZ-7NNP.  He issued a sober warning: "All obstructions to the execution of the laws," including group arrangements to "counteract" the "regular deliberation and action of the constituted authorities, are destructive of this fundamental principle."  *Id.* at 14.  In Washington's view, such obstructions would prove "fatal" to the Republic, as "cunning, ambitious, and unprincipled men will be enabled to subvert

the power of the people and to usurp for themselves the reins of government, destroying afterwards the very engines which have lifted them to unjust dominion." *Id.*

In this case, Defendant is charged with attempting to usurp the reins of government as Washington forewarned:  The Government alleges that, with the help of political associates, he "spread lies that there had been outcome-determinative fraud in the election and that he had actually won," and "pursued unlawful means of discounting legitimate votes and subverting the election results," all because he "was determined to remain in power."  Indictment ¶¶ 2, 4.  In asserting absolute executive immunity, Defendant asks not for an opportunity to disprove those allegations, but for a categorical exemption from criminal liability because, in his view, "the indictment is based solely on President Trump's official acts."  Immunity Motion at 27–28.  That obstruction to the execution of the laws would betray the public interest.  "If one man can be allowed to determine for himself what is law, every man can.  That means first chaos, then tyranny."  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 312 (1947) (Frankfurter, J., concurring in the judgment).

For all these reasons, the constitutional consequences of federal criminal liability differ sharply from those of the civil liability at issue in *Fitzgerald*.  Federal criminal liability will not impermissibly chill the decision-making of a dutiful Chief Executive or subject them to endless post-Presidency litigation.  It will, however, uphold the vital constitutional values that *Fitzgerald* identified as warranting the exercise of jurisdiction: maintaining the separation of powers and vindicating "the public interest in an ongoing criminal prosecution."  457 U.S. at 753–54.  Exempting former Presidents from the ordinary operation of the criminal justice system, on the other hand, would undermine the foundation of the rule of law that our first former President described: "Respect for its authority, compliance with its laws, [and] acquiescence in its

measures"—"duties enjoined by the fundamental maxims of true liberty."  Washington's

Farewell Address at 13.  Consequently, the constitutional structure of our government does not

require absolute federal criminal immunity for former Presidents.

## C.  <u>History</u>

Nothing in American history justifies the absolute immunity Defendant seeks.  As

discussed above, *supra* Section III.A, there is no evidence that the Founders understood the

Constitution to grant it, and since that time the Supreme Court "has never suggested that the

policy considerations which compel civil immunity for certain governmental officials also place

them beyond the reach of the criminal law."  *Imbler*, 424 U.S. at 429.  Moreover, the notion that

former Presidents cannot face federal criminal charges for acts they took in office is refuted by

the "presuppositions of our political history."  *Fitzgerald*, 457 U.S. at 745 (quoting *Tenney v.*

*Brandhove*, 341 U.S. 367, 376 (1951)).

Start with the Executive Branch itself.  "In the performance of assigned constitutional

duties each branch of the Government must initially interpret the Constitution, and the

interpretation of its powers by any branch is due great respect from the others."  *Nixon*, 418 U.S.

at 703.  The Executive's legal representatives—the Solicitor General and Office of Legal

Counsel—have expressly and repeatedly concluded that a former President may "be subject to

criminal process . . . after he leaves office or is removed therefrom through the impeachment

process."  OLC Immunity Memo at *12 (citing 1973 OLC Memo and 1973 SG Memo).

Naturally, the Special Counsel's decision to bring this case also reflects that judgment,

distinguishing the Department of Justice's position that former Presidents retain civil immunity.

*See* Brief for the United States as Amicus Curiae at 3 n.1 (filed Mar. 2, 2023), *Blassingame v.*

*Trump*, Nos. 22-5069, 22-7030, 22-7031 (D.C. Cir.).  Even on its own, the Executive's

longstanding and unwavering position on this issue weighs against this court unilaterally

blocking a considered prosecution by conferring absolute immunity.[4]

Historical practice also indicates that a President's actions may later be criminally

prosecuted.  In the aftermath of Watergate, for example, President Ford granted former President

Nixon "full, free, and absolute pardon . . . for all offenses against the United States which he,

Richard Nixon, has committed or may have committed or taken part in during" while in office.

Gerald Ford, Presidential Statement at 7–8 (Sept. 8, 1974), *available at* https://perma.cc/2GNZ-

QQ3D.  In so doing, President Ford specifically noted the "serious allegations" that, without a

pardon, would "hang like a sword over our former President's head" until he could "obtain a fair

trial by jury."  *Id.* at 3; *see id. at* 4–5 (expressing concern about Nixon's rights to a presumption

of innocence and a speedy trial).  And former President Nixon formally accepted that "full and

absolute pardon for any charges which might be brought against me for actions taken during the

time I was President of the United States," calling the pardon a "compassionate act."  Richard

Nixon, Statement by Former President Richard Nixon at 1 (Sept. 8, 1974), *available at*

https://perma.cc/WV43-6E69.  Both Ford's pardon and Nixon's acceptance arose from the desire

to prevent the former President's potential criminal prosecution, and both specifically refer to

that possibility—without which the pardon would have been largely unnecessary.  Defendant's

view of his own immunity thus stands at odds with that of his predecessors in the Oval Office.

---

[4] Congress, the other political branch, has not spoken directly to this issue.  But it has not
exempted actions taken during the Presidency from the criminal law, and "[u]nder the authority
of Art. II, § 2," it "has vested in the Attorney General the power to conduct the criminal
litigation of the United States Government" and "to appoint subordinate officers to assist him,"
which he has done "in th[is] particular matter[]" by appointing "a Special Prosecutor."  *Nixon*,
418 U.S. at 694.  The Government also notes the statements of individual members of
Congress—including some who voted to acquit Defendant during his impeachment trial—
anticipating that Defendant could later be criminally prosecuted for the conduct at issue.  *See*
Opp'n to Immunity Motion at 14–15.

Granting the immunity Defendant seeks would also break with longstanding legal precedent that all government officials—even those immune from civil claims—may be held to criminal account.  In *Fitzgerald*, for instance, the Supreme Court analogized former President Nixon's civil immunity to the similar protections provided to judges and prosecutors.  457 U.S. at 745–48.  Unlike most government officials, who only receive "qualified" civil immunity, prosecutors and judges have absolute civil immunity due to "the especially sensitive duties" of their office and the public interest in their "liberty to exercise their functions with independence and without fear of consequences."  *Id.* at 745–46 (quotation omitted); *see, e.g.*, *Imbler*, 424 U.S. at 431 (state prosecutors possess absolute civil immunity for prosecutions); *Stump v. Sparkman*, 435 U.S. 349, 359–60 (1978) (state judges possess absolute civil immunity for judicial acts).  But notwithstanding their absolute civil immunity, prosecutors and judges are "subject to criminal prosecutions as are other citizens."  *Dennis v. Sparks*, 449 U.S. 24, 31 (1980); *see Imbler*, 424 U.S. at 429.  Thus, while in *Fitzgerald* the "careful analogy to the common law absolute immunity of judges and prosecutors" demonstrated history's support for the former President's civil immunity, *Vance*, 140 S. Ct. at 2426, here that same history compels the denial of a former President's criminal immunity.

Against the weight of that history, Defendant argues in essence that because no other former Presidents have been criminally prosecuted, it would be unconstitutional to start now.  Immunity Motion at 15–16.  But while a former President's prosecution is unprecedented, so too are the allegations that a President committed the crimes with which Defendant is charged.  *See infra* Section VI.B.  The Supreme Court has never immunized Presidents—much less former Presidents—from judicial process merely because it was the first time that process had been

necessary.  *See, e.g.*, *Vance*, 140 S. Ct. at 2424–25; *Clinton*, 520 U.S. at 692; *Nixon*, 418 U.S. at 703; *Burr*, 25 F. Cas. at 32.  The court will not do so here.

  In any event, Defendant's reasoning turns the relevant historical analysis on its head.  In *Clinton*, the President likewise argued that the relative dearth of cases in which "sitting Presidents ha[d] been defendants in civil litigation involving their actions prior to taking office" meant that the Constitution afforded him temporary immunity for such claims.  520 U.S. at 692; *see* Brief for the Petitioner, 1996 WL 448096, at *17–18, *Clinton v. Jones*, No. 95-1853 (U.S.).  The Court found instead that the dearth of similar cases meant that there was no "basis of precedent" for the immunity that President Clinton sought—and in fact showed that there was little risk of such litigation impeding the Presidency going forward.  *Clinton*, 520 U.S. at 692, 702.  In other words, a defendant cannot claim that history supports their immunity by pointing to the fact that their immunity has never been asserted.  Here, as in *Clinton*, that absence of precedent negates rather than validates Defendant's argument that history establishes his immunity from criminal prosecution.

*      *      *

  For these reasons, the court cannot conclude that our Constitution cloaks former Presidents with absolute immunity for any federal crimes they committed while in office.  Our nation's "historic commitment to the rule of law" is "nowhere more profoundly manifest than in our view that 'the twofold aim of criminal justice is that guilt shall not escape or innocence suffer.'"  *Nixon*, 418 U.S. at 708–09 (quoting *Berger*, 295 U.S. at 88) (formatting modified).  Nothing in the Constitution's text or allocation of government powers requires exempting former Presidents from that solemn process.  And neither the People who adopted the Constitution nor those who have safeguarded it across generations have ever understood it to do so.  Defendant's

Page **29** of **48**

four-year service as Commander in Chief did not bestow on him the divine right of kings to evade the criminal accountability that governs his fellow citizens.  "No man in this country," not even the former President, "is so high that he is above the law."  *Lee*, 106 U.S. at 220.

Consistent with its duty to not "decide questions of a constitutional nature unless absolutely necessary to a decision," *Clinton*, 520 U.S. at 690 & n.11 (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905)), the court emphasizes the limits of its holding here.  It does not decide whether former Presidents retain absolute criminal immunity from non-federal prosecutions, or whether sitting Presidents are entitled to greater immunity than former ones. Similarly, the court expresses no opinion on the additional constitutional questions attendant to Defendant's assertion that former Presidents retain absolute criminal immunity for acts "within the outer perimeter of the President's official" responsibility.  Immunity Motion at 21 (formatting modified).  Even if the court were to accept that assertion, it could not grant Defendant immunity here without resolving several separate and disputed constitutional questions of first impression, including: whether the President's duty to "take Care that the Laws be faithfully executed" includes within its "outer perimeter" at least five different forms of indicted conduct;[5] whether inquiring into the President's purpose for undertaking each form of that allegedly criminal conduct is constitutionally permissible in an immunity analysis, and whether any Presidential conduct "intertwined" with otherwise constitutionally immune actions

---

[5] As another court in this district observed in a decision regarding Defendant's civil immunity, "[t]his is not an easy issue.  It is one that implicates fundamental norms of separation of powers and calls on the court to assess the limits of a President's functions.  And, historical examples to serve as guideposts are few."  *Thompson v. Trump*, 590 F. Supp. 3d 46, 74 (D.D.C. 2022); *see id*. at 81–84 (performing that constitutional analysis).  The D.C. Circuit recently affirmed that district court's decision with an extensive analysis of just one form of conduct—"speech on matters of public concern."  *Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, slip op. at 23–42 (D.C. Cir. Dec. 1, 2023).

also receives criminal immunity. *See id.* at 21–45. Because it concludes that former Presidents do not possess absolute federal criminal immunity for any acts committed while in office, however, the court need not reach those additional constitutional issues, and it expresses no opinion on them.

## IV.    FIRST AMENDMENT

In his Constitutional Motion, Defendant first argues that the Indictment should be dismissed because it criminalizes his speech and therefore violates the First Amendment. But it is well established that the First Amendment does not protect speech that is used as an instrument of a crime, and consequently the Indictment—which charges Defendant with, among other things, making statements in furtherance of a crime—does not violate Defendant's First Amendment rights.

### A.  The First Amendment and criminal prosecutions

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Generally, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *Ashcroft v. Am. Civ. Liberties Union*, 535 U.S. 564, 573 (2002)). In restricting the government's power to control speech, the First Amendment "embodies 'our profound national commitment to the free exchange of ideas.'" *Ashcroft*, 535 U.S. at 573 (citation omitted).

The right to freedom of speech is "not absolute," however. *Id.* It is fundamental First Amendment jurisprudence that prohibiting and punishing speech "integral to criminal conduct" does not "raise any Constitutional problem." *Stevens*, 559 U.S. at 468–69 (citation omitted); *accord Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498–502 (1949). "Many long established" criminal laws permissibly "criminalize speech . . . that is intended to induce or

**Page 31 of 48**

commence illegal activities," *United States v. Williams*, 553 U.S. 285, 298 (2008), such as fraud, bribery, perjury, extortion, threats, incitement, solicitation, and blackmail, *see, e.g.*, *Stevens*, 559 U.S. at 468–69 (fraud); *Williams*, 553 U.S. at 298 (incitement, solicitation); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 356 (2010) (bribery); *Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 244 (4th Cir. 1997) (extortion, threats, blackmail, perjury).  Prosecutions for conspiring, directing, and aiding and abetting do not run afoul of the Constitution when those offenses are "carried out through speech."  *Nat'l Org. for Women v. Operation Rescue*, 37 F.3d 646, 655–56 (D.C. Cir. 1994) (directing and aiding and abetting); *see Williams*, 553 U.S. at 298 (conspiring).

## B.  <u>The Indictment does not violate the First Amendment</u>

The Indictment alleges that Defendant used specific statements as instruments of the criminal offenses with which he is charged: conspiring to fraudulently obstruct the federal function for collecting, counting, and certifying the results of the Presidential election, in violation of 18 U.S.C. § 371 (Count I); corruptly obstructing and conspiring to obstruct Congress's certification of the election results, in violation of 18 U.S.C. §§ 1512(c)(2) and (k) (Counts II and III); and conspiring to deprive citizens of their constitutional right to have their votes counted, in violation of 18 U.S.C § 241 (Count IV).  *See* Indictment ¶¶ 5–130.

That Defendant's alleged criminal conduct involved speech does not render the Indictment unconstitutional.  The Indictment notes that "Defendant had a right, like every American, to speak publicly about the election and even to claim, falsely, that there had been outcome-determinative fraud during the election and that he had won."  *Id.* ¶ 3.  And it enumerates Defendant's specific statements only to support the allegations that Defendant joined conspiracies and attempted to obstruct the election certification, such as the allegations that Defendant knowingly made false claims about the election results, *id.* ¶¶ 11–12, and deceived

state officials to subvert the election results, *id.* ¶¶ 13–52. *See, e.g., id.* ¶¶ 12, 19, 22, 31–35, 37, 41, 46, 50, 52 (referencing Defendant's statements). The Indictment therefore properly alleges Defendant's statements were made in furtherance of a criminal scheme.

Defendant argues that the Indictment violates the First Amendment for three primary reasons: (1) the government may not prohibit Defendant's core political speech on matters of public concern, Constitutional Motion at 4–11; (2) "First Amendment protection . . . extends to statements advocating the government to act," *id.* at 12–14 (formatting modified); and (3) Defendant reasonably believed that the 2020 Presidential Election was stolen, *id.* at 15–17.

### 1. Core political speech on matters of public concern

Defendant first claims that his statements disputing the outcome of the 2020 election is "core political speech" that addresses a "matter[] of public concern." *Id.* at 8–10. Even assuming that is true, "core political speech" addressing "matters of public concern" is not "immunized from prosecution" if it is used to further criminal activity. *United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999); *see Stevens*, 559 U.S. at 468–69. That is the case even though Defendant was the President at the time. *See Blassingame v. Trump*, Nos. 22-5069, 22-7030, 22-7031, slip op. at 50 (D.C. Cir. Dec. 1, 2023) (Defendant is not entitled to immunity when he "engages in speech" that "removes him[] from the First Amendment's protections."). As the D.C. Circuit has recognized, "an immunity for all presidential speech on matters of public concern …. is 'unsupported by precedent.'" *Id.* at 27 (quoting *Clinton*, 520 U.S. at 695).

In support of his argument, Defendant first invokes various Justices' opinions in *United States v. Alvarez*, 567 U.S. 709 (2012). Constitutional Motion at 4–7. There was no majority opinion in *Alvarez*; a majority of the Justices agreed only that the Stolen Valor Act, which prohibits an individual from falsely representing that they have received "any decoration or medal authorized by Congress for the Armed Forces of the United States," violated the First

Amendment.  567 U.S. at 716, 729–30 (plurality opinion) (Kennedy, J., joined by Roberts. C.J., Ginsburg, J., and Sotomayor, J.); *id.* at 730 (Breyer, J. concurring in the judgment, joined by Kagan, J.).  One theme common to both the plurality and concurring opinions, however, was the concern that the Stolen Valor Act prohibited only false statements and *only because of their falsity*.  *See id.* at 717–22 (plurality opinion); *id.* at 732 (Breyer, J. concurring).  Indeed, each opinion reiterated that laws "implicat[ing] fraud or speech integral to criminal conduct" are constitutional.  *Id.* at 721 (plurality opinion); *accord id.* at 734–36 (Breyer, J., concurring in the judgment); *id.* at 747 (Alito, J., dissenting).  Because it confirmed that speech involved in the commission of a crime was not protected by the First Amendment, *Alvarez* did not undermine settled precedent allowing the prosecution of speech in furtherance of criminal activity.

Second, Defendant contends that "attempts to prohibit or criminalize claims on political disputes" constitute viewpoint discrimination.  Constitutional Motion at 9–10.  But Defendant is not being prosecuted for his "view" on a political dispute; he is being prosecuted for acts constituting criminal conspiracy and obstruction of the electoral process.  *Supra* Section I.  And any political motives Defendant may have had in doing so do not insulate his conduct from prosecution.  *E.g.*, *Rahman*, 189 F.3d at 116–17 (mixed motives do not insulate speech from prosecution); *see* Gov.'s Omnibus Opp'n to Def.'s Motions to Dismiss the Indictment on Statutory and Constitutional Grounds, ECF No. 139 at 33 (Opp'n to Constitutional Motion) (collecting other Circuit cases).  The Indictment does not unconstitutionally discriminate against Defendant based on viewpoint.

Third, Defendant argues that even if a higher level of scrutiny does not apply to the Indictment, it nonetheless is invalid "under any level of scrutiny" because it is "tailored to violate free-speech rights."  Constitutional Motion at 11.  Here, however, there is no level of scrutiny

that applies, because speech in furtherance of criminal conduct does not receive *any* First Amendment protection.  *E.g.*, *Stevens*, 559 U.S. at 468–69.  Moreover, Defendant cites no support for his argument that the Indictment is "tailored to *violate* free-speech rights," nor does he explain how the Indictment is so tailored.  *See* Constitutional Motion at 11 (emphasis added).

Finally, Defendant argues that the Indictment violates the First Amendment because "*all* the charged conduct constitutes First Amendment protected speech."  Def.'s Reply in Support of Motion to Dismiss Based on Constitutional Grounds, ECF No. 162 at 7–8 ("Constitutional Reply") (emphasis in original).  He contends that to qualify as speech in furtherance of criminal conduct, "the speech in question must 'be integral to' some criminal 'conduct' that *is not itself a form of First Amendment-protected speech or expression*."  *Id.* (emphasis added).  But again, the Indictment does not need to list other kinds of criminal conduct in addition to speech to comply with the First Amendment; the crimes Defendant is charged with violating may be carried out through speech alone.  *See Nat'l Org. for Women*, 37 F.3d at 656; *supra* Section IV.A.

   2.  <u>Statements advocating government action</u>

Defendant next claims the First Amendment protects "statements advocating the government to act."  Constitutional Motion at 12–14 (formatting modified).  He first contends the Petition Clause of the First Amendment provides an absolute right to make statements encouraging the government to act in a public forum, citing *McDonald v. Smith*, 472 U.S. 479 (1985).  Constitutional Motion at 12–13.  The Petition Clause provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Clause protects individuals' ability to "'communicate their will' through direct petitions to the legislature and government officials."  *McDonald*, 472 U.S. at 482 (quoting 1 *Annals of Congress* 738 (1789) (James Madison)).  In *McDonald*, however, the Supreme Court concluded that the Petition Clause did *not* immunize a

person from a libel suit based on letters the individual had sent to the President.  *Id.* at 480–81; *see also* Opp'n to Constitutional Motion at 34.  The Court explained that the Petition Clause does not have "special First Amendment status," so "there is no sound basis for granting greater constitutional protection" under the Petition Clause "than other First Amendment expressions." *McDonald*, 472 U.S. at 484–85.  Defendant's reliance on the Clause and its interpretation in *McDonald* is therefore unavailing, as the Petition Clause does not prohibit prosecuting Defendant's speech any more than the Speech Clause does.  The Petition Clause does not insulate speech from prosecution merely because that speech also petitions the government.

Defendant also invokes *McDonnell v. United States*, 579 U.S. 550 (2016), to argue that allowing this prosecution would risk criminalizing statements once thought to be false that turned out to be true, such as statements made early in the COVID-19 pandemic that masks do not stop the transmission of the virus.  Constitutional Motion at 13–14.  Not so.  First, *McDonnell* did not involve the First Amendment but rather the proper interpretation of "official act" under the federal bribery statute, 18 U.S.C. § 201(b)(2).  *McDonell*, 579 U.S. at 566; *see* Opp'n to Constitutional Motion at 34 n.14.  And neither the Indictment nor the federal statutes under which Defendant is charged involve an "official act."  Second, Defendant is not being prosecuted simply for making false statements, *see supra* at 33–34, but rather for knowingly making false statements in furtherance of a criminal conspiracy and obstructing the electoral process.  Consequently, there is no danger of a slippery slope in which inadvertent false statements alone are alleged to be the basis for criminal prosecution.

In his Reply brief, Defendant also raises overbreadth, arguing that under the Government's interpretation, the underlying statutes charged in the Indictment are unconstitutional because they "criminalize a wide range of perfectly ordinary acts of public

speech and petitioning the government."  Constitutional Reply at 9–10.  Assuming Defendant's

overbreadth challenge was properly raised for the first time in his Reply brief, the statutes are not

overbroad under the Government's view.  As an initial matter, Defendant's actions are not

entitled to First Amendment protection as "perfectly ordinary acts of public speech and

petitioning the government."  *Supra* Section IV.B.1–2; *infra* Section IV.B.3.  Moreover,

Defendant fails to identify any protected acts or speech that the statutes might render

impermissible under the Government's interpretation.  *See, e.g.*, *United States v. Hansen*, 599

U.S. 762, 769–70 (2023) (A litigant must "demonstrate[] that the statute 'prohibits a substantial

amount of protected speech' relative to its 'plainly legitimate sweep'" to succeed in overbreadth

challenge (citation omitted)).

3.  Defendant's statements on the 2020 Presidential Election

Finally, Defendant claims the First Amendment does not permit the government to

prosecute him for his reasonable belief that the 2020 Presidential Election was stolen.

Constitutional Motion at 15–17.  He argues that the truth or falsity of his belief is not "easily

verifiable" and there is "abundant public evidence providing a reasonable basis" for his view.  *Id.*

at 15–16.  He contends that he is "entitled to mistrust the word of . . . establishment-based

government officials and draw [his] own inferences from the facts."  *Id.* at 17.  At this stage,

however, the court must take the allegations in the Indictment as true, *supra* Section II, and the

Indictment alleges that Defendant made statements that he knew were false, *e.g.*, Indictment

¶¶ 11–12; *see also* Opp'n to Constitutional Motion at 26–27.  While Defendant challenges that

allegation in his Motion, and may do so at trial, his claim that his belief was reasonable does not

implicate the First Amendment.  If the Government cannot prove beyond a reasonable doubt at

trial that Defendant knowingly made false statements, he will not be convicted; that would not

mean the Indictment violated the First Amendment.

## V.    DOUBLE JEOPARDY

Defendant's Constitutional Motion next posits that the prosecution violates double jeopardy because Defendant was tried—and acquitted—in earlier impeachment proceedings arising out of the same course of conduct.  Constitutional Motion at 18–24.  But neither traditional double jeopardy principles nor the Impeachment Judgment Clause provide that a prosecution following impeachment acquittal violates double jeopardy.

### A.  **Double Jeopardy Clause**

The Fifth Amendment provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  To "be twice put in jeopardy of life or limb" means to face the possibility of "multiple *criminal* punishments for the same offense."  *Hudson v. United States*, 522 U.S. 93, 99 (citation omitted) (emphasis in original).  A purportedly civil penalty only counts in the double jeopardy context if "the statutory scheme was so punitive in either purpose or effect . . . as to 'transform'" it into a criminal penalty.  *Id.* (citation omitted).

As long as separate prosecutions charge an individual with violating different laws, the prosecutions are considered separate "offenses" under the Double Jeopardy Clause and the second prosecution passes constitutional muster.  *Denezpi v. United States*, 596 U.S. 591, 597–98 (2022).  When the same "act or transaction" violates two distinct provisions of the same statute, there are distinct offenses only if "each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  In contexts involving different sovereigns—such as the federal government and a state government—a person may be tried for violating laws that "have identical elements and could not be separately prosecuted if enacted by a single sovereign."  *Denezpi*, 596 U.S. at 597–98.

The Indictment here does not violate double jeopardy principles.  First, impeachment threatens only "removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States," U.S. Const. art. I, § 3, cl. 7, neither of which is a criminal penalty.  *See supra* at 9.  Nor does Defendant argue that they are civil penalties that should be construed as criminal penalties.  *See* Constitutional Motion at 23–24.  Second, the impeachment proceedings charged Defendant with "Incitement of Insurrection," which is not charged in the Indictment.  *See* Opp'n to Constitutional Motion at 60–62 (citing H.R. Res. 24, 117th Cong. (Jan. 11, 2021)).  Although there are few decisions interpreting the analogous federal statute that prohibits inciting "any . . . insurrection against the authority of the United States or the laws thereof," 18 U.S.C. § 2383, it is well-established that "incitement" typically means "advocacy . . . directed to inciting or producing imminent lawless action" that is "likely to incite or produce such action," *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).  None of the statutes under which Defendant is charged require the Government to prove incitement.  *See* 18 U.S.C. § 371; *id.* §§ 1512(c)(2), (k); *id.* § 241; *accord* Indictment ¶¶ 6, 126, 128, 130.  The impeachment proceedings and this prosecution therefore did not "twice put" Defendant "in jeopardy of life or limb" for the "same offense."

Defendant also contends his prosecution violates double jeopardy principles because the distinct branches of government are part of one single sovereign.  Constitutional Motion at 24. But even assuming that is true, Defendant does not argue that impeachment carries a criminal sanction or that the impeachment proceedings were based on the same offense as charged in the Indictment.  *See id.* at 23–24.  Instead, he argues that different double jeopardy principles would apply to prosecutions following impeachments, referencing only the Impeachment Judgment Clause for support.  Constitutional Reply at 18–20.  But, as discussed below, the Impeachment

Judgment Clause provides only that prosecutions following convictions at impeachment are constitutionally permissible; it does not create special double jeopardy principles.  *See* U.S. Const. art. I, § 3, cl. 7; *infra* Section V.B.  Consequently, the Indictment does not violate the Double Jeopardy Clause.

## B.  Impeachment Judgment Clause

The Impeachment Judgment Clause provides that "Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law."  U.S. Const. art. I, § 3, cl. 7.  As explained above, the first part of the Clause limits the remedies available in impeachment, and the second part provides that even if a person is convicted in impeachment proceedings, they may still be subject to criminal prosecution.  *See supra* at 8–10.  As the Office of Legal Counsel noted, the "second part makes clear that the restriction on sanctions in the first part was not a prohibition on further punishments; rather, those punishments would still be available but simply not to the legislature."  OLC Double Jeopardy Memo at *10.

Defendant contends the Impeachment Judgment Clause contains a negative implication: if a person is *not* convicted in impeachment proceedings, they may *not* be prosecuted.  Constitutional Motion at 18–23; Constitutional Reply at 10–11.  In statutory interpretation, the *expressio unius* canon, which provides that "expressing one item of an associated group or series excludes another left unmentioned," does not apply unless "circumstances support a sensible inference that the term left out must have been meant to be excluded."  *NLRB v. SW General, Inc.*, 580 U.S. 288, 302 (2017) (citations omitted).  Because Defendant's reading is not supported by the structure of the Constitution, the historical context of the impeachment clauses, or prior

constitutional precedents, *expressio unius* does not apply. *Accord Thompson v. Trump*, 590 F. Supp. 3d 46, 86–87 (D.D.C. 2022). The Impeachment Judgment Clause does not provide that acquittal by the Senate during impeachment proceedings shields a President from criminal prosecution after he leaves office.

1. Structure

Structural considerations support reading the Impeachment Judgment Clause as the plain language suggests. First, as the Government notes, impeachment and prosecution serve distinct goals within the separation of powers. *See* Opp'n to Constitutional Motion at 52–53. Impeachment "is designed to enable Congress to protect the nation against officers who have demonstrated that they are unfit to carry out important public responsibilities," whereas prosecution is designed to "penalize individuals for their criminal misdeeds." OLC Double Jeopardy Memo at *13. Impeachment proceedings provide far fewer procedural safeguards than do prosecutions, *see id.*, and accordingly, Congress may not dispense criminal penalties in impeachment proceedings, *supra* Section V.A. Impeachment is not a substitute for prosecution.

Second, the Senate may acquit in impeachment proceedings even when it finds that an official committed the acts alleged. For example, the Senate may acquit because it believes the acts committed do not amount to "high Crimes and Misdemeanors," U.S. Const. art. II, § 4; because the Senate believes it lacks authority to try the official; or for partisan reasons. OLC Double Jeopardy Memo at *14–15. Indeed, the Framers anticipated that impeachments might spark partisan division. *See* The Federalist No. 65, at 330–31 (Alexander Hamilton); Letter from Edmund Pendleton to James Madison, Oct. 8, 1787, 10 *The Documentary History of the Ratification of the Constitution* 1773 (1976); 10 *The Papers of James Madison* 223 (Rutland et al. ed., 1977); *accord* OLC Double Jeopardy Memo at *15. Acquittal on impeachment does not establish the defendant's innocence.

Defendant contends that impeachment serves to protect officials from political attacks by their enemies, and allowing prosecution following impeachment acquittal would undermine that protection. Constitutional Reply at 15–18. But politics are likely to play even larger a role in impeachments than in prosecutions, given that impeachments are conducted by elected officials politically accountable to their constituents, whereas prosecutions are conducted by appointed officials, most of whom may not be removed without cause, *see Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 492–93 (2010) (explaining for-cause removal). And former officials like Defendant, rather than current officials, are also less likely to be politically attacked, because they no longer hold the power and authority of political office.

2. Historical context

Defendant claims that his interpretation of the Impeachment Judgment Clause reflects the original public meaning of the impeachment clauses. Constitutional Motion at 20–21; Constitutional Reply at 12–15. Considerable historical research undermines that contention. *See* OLC Double Jeopardy Memo at *7–12 ("We are unaware of any evidence suggesting that the framers and ratifiers of the Constitution chose the phrase 'the party convicted' with a negative implication in mind."); *accord Thompson*, 590 F. Supp. 3d at 87. Most notably, the Founders repeatedly acknowledged that impeachment acquittals would not bar subsequent prosecutions. For example, James Wilson, who participated in the Constitutional Convention, observed that officials who "may not be convicted on impeachment . . . may be tried by their country." 2 *The Documentary History of the Ratification of the Constitution* 492. Edward Pendleton, who was President of the Virginia Ratifying Convention, similarly observed that "an Acquital would not bar," a "resort to the Courts of Justice," Letter from Edmund Pendleton to James Madison, Oct. 8, 1787, 10 *The Documentary History of the Ratification of the Constitution* 1773, a conclusion that James Madison called "extremely well founded," 10 *The Papers of James Madison* 223.

Justice Story too described that, following impeachment, "a second trial for the same offence could be had, either after an acquittal, or a conviction in the court of impeachments." 2 *Story's Commentaries* § 780.

Founding-era officials similarly acknowledged that an acquittal at impeachment proceedings would not bar a subsequent prosecution. For example, during the first federal impeachment trial, Representative Samuel Dana contrasted impeachment proceedings with criminal trials, stating that impeachment had "no conne[ct]ion with punishment or crime, as, whether a person tried under an impeachment be found guilty or acquitted, he is still liable to a prosecution at common law." 9 *Annals of Congress* 2475 (1798). None of the sources Defendant cites refute that conclusion. *See* Constitutional Motion at 20–21.

3.  Prior precedent

Defendant's additional arguments invoking past constitutional precedents are similarly unavailing. He first cites Justice Alito's dissent in *Vance*. Constitutional Motion at 19–20. In *Vance*, the Supreme Court held that a sitting President is not immune from state criminal subpoenas, nor does a heightened standard apply to such requests. 140 S. Ct. at 2431. In so holding, the majority opinion reiterated that "no citizen, not even the President, is categorically above the common duty to produce evidence when called upon in a criminal proceeding." *Id.* Justice Alito's dissent, moreover, noted that under the Impeachment Judgement Clause, "criminal prosecution, like removal from the Presidency and disqualification from other offices, is a consequence that can come about only after the Senate's judgment, not during or prior to the Senate trial." *Id.* at 2444 (Alito, J., dissenting); *see* Constitutional Motion at 19. All Justice Alito's dissent observed is that, temporally, any prosecution must follow the judgment on impeachment; no official shall be subject to simultaneous impeachment proceedings and

criminal prosecution.  The dissent does not support the view that if impeachment proceedings end in acquittal, subsequent prosecution violates double jeopardy.

Defendant also cites *Fitzgerald* for the proposition that the threat of impeachment alone is the proper remedy against a President for any "official misfeasance."  Constitutional Motion at 22.  But as already explained, *Fitzgerald* is meaningfully distinguishable; it addressed immunity from civil suit, and all nine Justices took care to emphasize that their reasoning did not extend to the criminal context.  *See supra* Section III.B.1.

In sum, neither the Double Jeopardy Clause nor the Impeachment Judgment Clause prevent Defendant, who while President was acquitted in impeachment proceedings for incitement, from being prosecuted after leaving office for different offenses.

## VI.    DUE PROCESS

Finally, Defendant contends that the Indictment violates the Due Process Clause because he lacked fair notice that his conduct was unlawful.  Constitutional Motion at 25–31.

### A.  <u>Due process principles</u>

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  To comply with due process, a law must give "fair warning" of the prohibited conduct.  *United States v. Lanier*, 520 U.S. 259, 265 (1997) (citation omitted).  A law fails to give fair warning if the text of a statute is so unclear that it requires the Judicial and Executive Branches to "define what conduct is sanctionable and what is not," *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018); *see Lanier*, 520 U.S. at 266 (citation omitted), or a judge construes the statute in a manner that is "clearly at variance with the statutory language," *Bouie v. City of Columbia*, 378 U.S. 347, 356 (1964); *see Rogers v. Tennessee*, 532 U.S. 451, 457 (2001); *see also Lanier*, 520 U.S. at 266.

For instance, in 2015, the Supreme Court concluded that the residual clause of the Armed

Career Criminal Act violated due process because it was so vague—and difficult to administer—

that defendants lacked notice of how it would be applied in any given case. *Johnson v. United

States*, 576 U.S. 591, 597 (2015). The Court explained that the residual clause required judges to

imagine an "ordinary case" involving the crime with which the defendant was charged, and

compare the defendant's actions to that "ordinary case." *Id.* at 597, 599. It further emphasized

that its "repeated attempts and repeated failures to craft a principled and objective standard out of

the residual clause confirm[ed] its hopeless indeterminacy," *id.* at 598, noting that the clause had

caused "numerous splits among the lower federal courts," *id.* at 601 (citation omitted).

A statute does not fail to give fair warning just "because it 'does not mean the same thing

to all people, all the time, everywhere.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C.

Cir. 2017) (citation omitted). "Since words, by their nature, are imprecise instruments," laws

"may have gray areas at the margins" without violating due process. *United States v. Barnes*,

295 F.3d 1354, 1366 (D.C. Cir. 2002). Indeed, statutes are rarely found unconstitutional because

their text fails to give fair warning. *See, e.g., Bronstein*, 849 F.3d at 1107 (statute upheld);

*Barnes*, 259 F.3d at 1366 (same); *Woodhull Freedom Found. v. United States*, 72 F.4th 1286,

1303–05 (D.C. Cir. 2023) (same); *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 728–30 (D.C. Cir.

2017) (same); *Agnew v. Gov't of D.C.*, 920 F.3d 49, 55–61 (D.C. Cir. 2019) (same).

Applying a novel judicial construction of a statute may also fail to give fair warning if it

"unexpectedly broadens" the statute's reach and applies that expanded reach "retroactively."

*Bouie*, 378 U.S. at 353–57; *see Rogers*, 532 U.S. at 457; *Reed v. Goertz*, 143 S. Ct. 955, 960–61

(2023). In *Bouie*, for example, defendants were convicted of violating a state law prohibiting

"entry upon the lands of another . . . after notice from the other . . . prohibiting such entry" after

they remained on premises after being asked to leave, even though they did not re-enter the premises. 378 U.S. at 355. The Supreme Court held that the state supreme court's construction of the statute failed to give the defendants fair notice because it was "clearly at variance with the statutory language" and had "not the slightest support in prior [state] decisions." *Id.* at 356.

## B. The Indictment does not violate due process

Defendant had fair notice that his conduct might be unlawful. None of the criminal laws he is accused of violating—18 U.S.C. § 371; *id.* § 1512(k); *id.* § 1512(c)(2); and *id.* § 241— require the Executive or Judicial Branch to "guess" at the prohibited conduct, *Lanier*, 520 U.S. at 266. Nor does finding that the Indictment complies with due process require the court to create a novel judicial construction of any statute.

Defendant notes that the "principle of fair notice has special force" in the First Amendment Context. Constitutional Motion at 26–27. While that may be true, even "special force" does not place Defendant's alleged conduct "outside the plain language of the charged statutes" as he alleges. *See id.* at 27. First, his argument does not contrast the allegations in the Indictment with the plain language of the statutes, but instead attempts to recast the factual allegations in the Indictment itself as no more than routine efforts to challenge an election. *See id.* at 31 (claiming that "post-election challenges" like Defendant's "had been performed in 1800, 1824, 1876, and 1960 . . . without any suggestion [it was] criminal"). But again, at this stage, the court must take the allegations in the Indictment as true. *Supra* Section II, IV.B.3. The fact that Defendant disputes the allegations in the Indictment do not render them unconstitutional. Second, the meaning of statutory terms "need not be immediately obvious to an average person; indeed, 'even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Agnew*, 920 F.3d at 57 (citation omitted). And due process does not entitle Defendant

to advance warning that his precise conduct is unlawful, so long as the law plainly forbids it. *See Lanier*, 520 U.S. at 271; *cf. United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("ignorance of the law is no defense").

Defendant also claims he lacked fair notice because there is a "long history" of government officials "publicly claiming that election results were tainted by fraud" or questioning election results, yet he is "the first person to face criminal charges for such core political behavior." Constitutional Motion at 25; *see id.* at 27–30. But there is also a long history of prosecutions for interfering with the outcome of elections; that history provided Defendant with notice that his conduct could be prosecuted. *See* Opp'n to Constitutional Motion at 39–40 (citing six examples of 18 U.S.C. § 241 prosecutions). Indeed, the Supreme Court has addressed more than one case in which officials were prosecuted for interfering with or discarding election ballots. *United States v. Mosley*, 238 U.S. 383, 385 (1915); *United States v. Saylor*, 322 U.S. 385, 386 (1944).

In addition, none of the contested elections Defendant invokes is analogous to this case. *See* Opp'n to Constitutional Motion at 40–47 (detailing the history of each election). As noted above, Defendant is not being prosecuted for publicly contesting the results of the election; he is being prosecuted for knowingly making false statements in furtherance of a criminal conspiracy and for obstruction of election certification proceedings. And in none of these earlier circumstances was there any allegation that any official engaged in criminal conduct to obstruct the electoral process. For instance, following the 2004 Presidential election, Representative Stephanie Tubbs Jones raised an objection to Ohio's electoral votes at the joint session; Senator Boxer signed the objection. 151 Cong. Rec. 199 (Jan. 6, 2005). As Representative Jones explained in a separate session, that objection was to allow "a necessary, timely, and appropriate

opportunity to review and remedy . . . the right to vote." *Id.*  Ohio's electoral votes were then counted for President Bush.  Defendant points to no allegation that Representative Jones' objection was in furtherance of a criminal conspiracy or designed to obstruct the electoral process.

Moreover, even if there were an analogous circumstance in which an official had escaped prosecution, the mere absence of prior prosecution in a similar circumstance would not necessarily mean that Defendant's conduct was lawful or that his prosecution lacks due process. The "exclusive authority and absolute discretion to decide whether to prosecute a case"—within bounds, *supra* at 19–20—is a cornerstone of the Executive Branch.  *Nixon*, 418 U.S. at 693 (citation omitted).

Finally, Defendant argues that, for the Indictment to comply with due process, the prosecution bears the burden to "provide examples where similar conduct was found criminal." Constitutional Reply at 21.  Under that theory, novel criminal acts would never be prosecuted. The Constitution does not so constrain the Executive Branch.

## VII.   CONCLUSION

For the foregoing reasons, the court will DENY Defendant's Motion to Dismiss Indictment Based on Presidential Immunity, ECF No. 74, and Motion to Dismiss the Indictment Based on Constitutional Grounds, ECF No. 113.  A corresponding Order will accompany this Memorandum Opinion.

Date: December 1, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

Page **48** of **48**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

DONALD J. TRUMP,

          *Defendant*.

Case No. 1:23-cr-00257-TSC

## PRESIDENT TRUMP'S MOTION TO DISMISS THE INDICTMENT BASED ON CONSTITUTIONAL GROUNDS AND MEMORANDUM IN SUPPORT

1

## INTRODUCTION

The prosecution opens its indictment by stating that President Trump "had a right, like every American, to speak publicly about the election," including his deeply held view that there had been fraud and other irregularities "during the election and that he had won." Doc. 1 at ¶ 3 (Indictment). These points are not in dispute. Nonetheless, in an astonishing display of doublethink, the prosecution simultaneously claims that President Trump—simply by speaking his mind and petitioning for a redress of grievances—also somehow conspired to "defraud the United States," "oppress rights," and "obstruct an official proceeding." *Id*. at ¶ 5–6, 125–130. Attempting to explain this obvious contradiction, the prosecution argues that there was no "outcome-determinative fraud in the election" (whatever that means), *id*. at ¶ 2, and that President Trump supposedly knew this because some government officials "notified" him "that his claims were untrue," ¶ 11.

If there is any constant in our democratic system of governance, it is that the marketplace of ideas—not the mandates of government functionaries or partisan prosecutors—determines the scope of public debate. Countless millions believe, as President Trump consistently has and currently does, that fraud and irregularities pervaded the 2020 Presidential Election. As the indictment itself alleges, President Trump gave voice to these concerns and demanded that politicians in a position to restore integrity to our elections not just talk about the problem, but investigate and resolve it. *See id*. at ¶ 10(a) (state legislators and election officials) act); ¶ 10(b) (Vice President and other government officials); ¶ 10(c) (state officials); ¶ 10(d) (vice president); ¶ 10(e) (members of Congress).

The First Amendment embraces and encourages exactly this kind of behavior, and therefore states in the clearest of terms that "Congress shall make no law . . . abridging the freedom

of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The indictment, taken as true, violates this core principle as to each count. Accordingly, the Court should dismiss the indictment in its entirety.

Additionally, as the United States Senate has previously tried and acquitted President Trump for charges arising from the same course of conduct alleged in the indictment, the impeachment and double jeopardy clauses both bar retrial before this Court and require dismissal.

Finally, because of our country's longstanding tradition of forceful political advocacy regarding perceived fraud and irregularities in numerous Presidential elections, President Trump lacked fair notice that his advocacy in this instance could be criminalized. Thus, the Court should dismiss the indictment under the Due Process clause as well.

## ARGUMENT

"In ruling on a motion to dismiss for failure to state an offense, a district court is" typically "limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). "When considering a motion to dismiss, the court must review the face of the indictment," and "the indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings." *United States v. Weeks*, 636 F. Supp. 3d 117, 120 (D.D.C. 2022).

President Trump fully denies the allegations in the indictment which are referenced in this motion and memorandum. Rather, this memorandum sets forth the facts alleged in the indictment so that their legal sufficiency may be assessed for a motion to dismiss. *Id.*

3

I.      **The Indictment Should Be Dismissed Because It Seeks to Criminalize Core Political Speech and Advocacy Protected by the First Amendment.**

First and foremost, the indictment must be dismissed because it seeks to criminalize core political speech and advocacy that lies at the heart of the First Amendment.[1]

A.      **The Government May Not Prohibit Core Political Speech on Matters of Public Concern, Regardless of Its Supposed Truth or Falsity.**

In *United States v. Alvarez*, the Supreme Court reaffirmed the broad scope of the First Amendment, holding that it protects even the verifiably false claim that the speaker had been awarded the Congressional Medal of Honor. 567 U.S. 709, 729 (2012) (plurality opinion of Kennedy, J.); *id.* at 739 (Breyer, J., concurring in the judgment).

*Alvarez* produced multiple opinions, *see id.*, but on one key point, all nine Justices were unanimous: Under the First Amendment, the Government may not prohibit or criminalize speech on disputed social, political, and historical issues simply because the Government determines that some views are "true" and others are "false." *See id.* "Our constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Id.* at 723 (citing GEORGE ORWELL, NINETEEN EIGHTY–FOUR (1949) (Centennial ed. 2003)).

The four-Justice plurality opinion of Justice Kennedy was emphatic on this point, rejecting the notion that the "government [may] decree this speech [about receiving medals] to be a criminal offense, whether shouted from the rooftops or made in a barely audible whisper," as such an approach "would endorse government authority to compile a list of subjects about which false

---

[1] As explained in President Trump's Motion to Dismiss Based on Presidential Immunity, all acts charged in the indictment were performed within the "outer perimeter" of his official duties as President. Doc. 74, at 21-45. As explained in that Motion, and conceded in the Government's *Blassingame* amicus brief, the fact that President Trump's alleged actions were conducted within his official duties is fully consistent with those actions also involving the exercise of his First Amendment rights. *See, e.g., id.* at 26-27 ("[I]t is commonplace for a President's speech to have dual roles—both an official and personal character.").

4

statements are punishable. That governmental power has no clear limiting principle." *Id.* at 723.

Thus, disavowing "Oceania's Ministry of Truth," *id.*, Justice Kennedy rejected any rule that would

"give government a broad censorial power unprecedent in this Court's cases or in our

constitutional tradition. The mere potential for the exercise of that power casts a chill, a chill the

First Amendment cannot permit if free speech, thought, and discourse are likely to remain a

foundation of our freedom." *Id.* Instead,

> [t]he remedy for speech that is false is speech that is true. This is the ordinary course
> in a free society. The response to the unreasoned is the rational; to the uninformed,
> the enlightened; to the straightout lie, the simple truth.… The theory of our
> Constitution is "that the best test of truth is the power of the thought to get itself
> accepted in the competition of the market."… Freedom of speech and thought flows
> not from the beneficence of the state but from the inalienable rights of the person.
> And suppression of speech by the government can make exposure of falsity more
> difficult, not less so…. These ends are not well served when the government seeks
> to orchestrate public discussion through content-based mandates.

*Id.* at 727-28 (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

"Only a weak society needs government protection or intervention before it pursues its resolve to

preserve the truth. Truth needs neither handcuffs nor a badge for its vindication." *Id.* at 729.

Justice Breyer's two-Justice concurrence in *Alvarez* likewise endorsed this same point,

quoting Justice Alito for the proposition that "there are broad areas in which any attempt by the

state to penalize purportedly false speech would present a grave and unacceptable danger of

suppressing truthful speech," which include "[l]aws restricting false statements about philosophy,

religion, history, the social sciences, the arts, and the like." *See id.* at 731-32 (Breyer, J., concurring

in the judgment). These topics—which are often the subject of vigorous public debate—rarely

have clear or verifiable answers (hence, the controversy), and therefore citizens must be given

"breathing room" to speak their minds without fear of, as here, being criminally prosecuted by

government officials that do not like what they have to say. *See id*. at 733.

Indeed, Justice Breyer concluded that "the threat of criminal prosecution for making a false statement can inhibit the speaker from making true statements, thereby 'chilling' a kind of speech that lies at the First Amendment's heart." *Id.* at 733. Justice Breyer further emphasized that criminalizing supposedly "false" statements on such not "easily verifiable," politically controversial topics "provides a weapon to a government broadly empowered to prosecute falsity without more. And those who are unpopular may fear that the government will use that weapon selectively…." *Id.* at 734; *see also id.* at 736 (emphasizing that "in political contexts, … the risk of censorious selectivity by prosecutors is … high"); *id.* at 738 ("In the political arena … criminal prosecution is particularly dangerous … and consequently can more easily result in censorship of speakers and their ideas.").[2]

Justice Alito's three-Justice dissent in *Alvarez*—the opinion *least* protective of speech in that case—endorsed the same conclusion. As noted above, Justice Alito's dissent recognized that

> there are broad areas in which *any attempt by the state to penalize purportedly false speech would present a grave and unacceptable danger of suppressing truthful speech*. Laws restricting false statements about *philosophy, religion, history, the social sciences, the arts, and other matters of public concern* would present such a threat. The point is not that there is no such thing as truth or falsity in these areas or that the truth is always impossible to ascertain, but rather that *it is perilous to permit the state to be the arbiter of truth*.

*United States v. Alvarez*, 567 U.S. 709, 751–52 (2012) (Alito, J., dissenting) (emphasis added). "Even where there is a wide scholarly consensus concerning a particular matter, the truth is served by allowing that consensus to be challenged without fear of reprisal. Today's accepted wisdom sometimes turns out to be mistaken." *Id.* at 752. "And in these contexts, 'even a false statement

---

[2] Although Justice Breyer suggested false statements concerning "easily verifiable facts" might be afforded less First Amendment protection, as discussed *infra*, questions of election integrity are by no means "easily verifiable," and are certainly unlike the statements in *Alvarez* regarding receipt of the Medal of Honor, which Justice Breyer nonetheless concluded were protected by the First Amendment.

6

may be deemed to make a valuable contribution to public debate, since it brings about 'the clearer perception and livelier impression of truth, produced by its collision with error.'" *Id.* (quoting *New York Times v. Sullivan*, 376 U.S. at 279 n.19 (quoting JOHN STUART MILL, ON LIBERTY 15 (R. McCallum ed. 1947))).

In addition, "[a]llowing the state to proscribe false statements in these areas also opens the door for the state to use its power for political ends," *id.*—a concern that is maximal in this case, where a sitting President's Administration is prosecuting his chief political opponent for supposedly making "false" claims challenging the validity of the sitting President's election. "If some false statements about historical events may be banned, how certain must it be that a statement is false before the ban may be upheld? And who should make that calculation?" *Id.* "While our cases prohibiting viewpoint discrimination would fetter the state's power to some degree, *the potential for abuse of power in these areas is simply too great*." *Id.* (emphasis added).

Thus, *Alvarez* reflects the Supreme Court's unanimous consensus that claims about widely disputed social, political, and historical questions—*i.e.*, "matters of public concern," *id.* at 752—are protected by the First Amendment, regardless of the Government's view on supposed "truth" or "falsity." In fact, as Justice Alito's discussion demonstrates, such claims are protected by the First Amendment *especially* when the Government deems them "false." *See id.* Thus, claims about the integrity of the 2020 Presidential election—including claims that the election was "rigged," "stolen," and/or tainted by outcome-determinative fraud—are fully protected by the First Amendment, regardless of the Government's view of their truth or falsity. Indeed, in such areas, "it is perilous to permit the state to be the arbiter of truth." *Id.* at 752 (Alito, J., dissenting).

This conclusion that the First Amendment fully protects opinions and claims on widely disputed political and historical issues—such as the integrity of the 2020 Presidential election—

draws further support from the most basic principles of the Supreme Court's First Amendment jurisprudence. Such claims constitute (1) core political speech, on (2) matters of enormous public concern, where suppressing the speech constitutes (3) forbidden viewpoint discrimination.

**Speech on matters of public concern.** "Speech on matters of public concern is at the heart of the First Amendment's protection. That is because speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (cleaned up; citations omitted) (citing numerous cases). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* at 452-53. And Justice Alito's dissent in *Alvarez* explicitly stated that the areas where the First Amendment does not permit the criminalization of supposedly "false" statements can be summarized as those involving "matters of public concern." 567 U.S. at 751–52 (Alito, J., dissenting). Speech disputing the outcome of the 2020 election unquestionably constitutes speech on "matters of public concern." *See id.*

**Core political speech.** Indeed, such speech constitutes core political speech, and First Amendment protection is "at its zenith" when the government attempts to restrict "core political speech." *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186–87 (1999); *see also Meyer v. Grant*, 486 U.S. 414, 425 (1988) (speech that "at the core of our electoral process and of the First Amendment freedoms—an area … where protection of robust discussion is at its zenith") (citations and quotations omitted). Such "core political speech" encompasses any "advocacy of a politically controversial viewpoint." *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 347 (1995). "No form

8

of speech is entitled to greater constitutional protection than" core political speech. *Id.* This is especially true of speech relating to *elections*, since the First Amendment's "constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)).

*Viewpoint discrimination.* Further, attempts to prohibit or criminalize claims on political disputes—such as the integrity and outcome of the 2020 Presidential election—inevitably target speech on the basis of viewpoint, which is the least tolerable of First Amendment violations. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829. "Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id.*

The fact that the indictment alleges that the speech at issue was supposedly, according to the prosecution, "false" makes no difference. Under the First Amendment, each individual American participating in a free marketplace of ideas—*not* the federal Government—decides for him or herself what is true and false on great disputed social and political questions. As noted above, "[o]ur constitutional tradition stands against the idea that we need Oceania's Ministry of Truth." *Alvarez*, 567 U.S. at 723. "Permitting the government to decree this [false] speech to be a criminal offense … would endorse government authority to compile a list of subjects about which false statements are punishable. That governmental power has no clear limiting principle." *Id.*

Thus, "falsity alone may not suffice to bring the speech outside the First Amendment." *Id.* at 719.

"Absent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements. This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *Id.* at 718. "The erroneous statement is inevitable in free debate." *Id.* (quoting *New York Times v. Sullivan*, 376 U.S. 254, 271 (1964)).

***

The indictment therefore attempts to criminalize core political speech and political advocacy, which is categorically impermissible under the First Amendment. As the Supreme Court held in *Texas v. Johnson*, "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989) (citing 14 cases for this proposition). "[I]t is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (quoting *FCC v. Pacifica Foundation*, 438 U.S. 726, 745-46 (1978)). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

The indictment here does not merely criminalize conduct with an incidental impact on protected speech; instead, it directly targets core protected speech and activity. For this reason, it is categorically invalid under the First Amendment. "Clearly, government has no power to restrict

10

such activity because of its message." *Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972). That is precisely what the indictment attempts to do here.

For similar reasons, the indictment is invalid under any level of scrutiny. As noted above, the indictment imposes viewpoint-based restrictions on core political speech on matters of the highest public concern with extremely severe penalties, and thus if any scrutiny applies, it is the strictest form of scrutiny. Yet regardless, the prosecution cannot show any interest (let alone a compelling or substantial one) in punishing such First Amendment-protected activity. The prosecution has no valid interest in silencing disfavored viewpoints or preventing people from advocating such disfavored viewpoints to government officials. *See, e.g., United States v. Eichman*, 731 F. Supp. 1123, 1131 (D.D.C.), *aff'd*, 496 U.S. 310 (1990) ("However compelling the government may see its interests, they cannot justify restrictions on speech which shake the very cornerstone of the First Amendment."). Furthermore, no amount of tailoring can save such a restriction, because its entire impact is focused on punishing the exercise of core political speech. *See* Doc. 1; *see also, e.g., United States v. Popa*, 187 F.3d 672, 677 (D.C. Cir. 1999) ("Punishment of those who use the telephone to communicate a political message is obviously not 'essential to the furtherance of that [government] interest.'"). The indictment is precisely tailored to *violate* free-speech rights, not narrowly tailored to *avoid* violating them. *See id.* This is the antithesis of narrow tailoring.

Finally, if the indictment validly applies the language of the statute, that renders the statute both unconstitutional as applied and unconstitutional on its face, under the First Amendment overbreadth doctrine. Under the prosecution's interpretation, the statute sweeps in the criminalization of large amounts of "pure speech," and thus it suffers from "overbreadth" that is "not only … real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

11

**B.**     **The First Amendment Protection for Opinions on Politically Charged Disputes Extends to Statements Advocating the Government to Act.**

Because the First Amendment confers absolute protection on public statements about hotly disputed social, political, and historical topics and other matters of public concern, including those which are supposedly "false," it confers the same protection on the same statements made in advocating for government officials to *act* on one's views. The First Amendment protects the right "to petition the Government for a redress of grievances" in the same clause as "the freedom of speech." U.S. CONST. amend. I. When it comes to what speech is protected, the right to petition is coextensive with the right to speak—a claim protected under the Amendment's right to "freedom of speech" is equally protected when the same claim is made while "petition[ing] the Government." *Id.* As the Supreme Court stated, "[t]he right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

For this reason, in *McDonald*, the Supreme Court consulted the right to freedom of speech to determine what statements are protected when exercising the right to petition the government. *McDonald* concerned a libel lawsuit brought against a man who sent letters to President Reagan making allegedly libelous claims about a potential political appointee. 472 U.S. at 480-81. The libel defendant claimed that he had absolute immunity from libel suit because the allegedly libelous statements were made in the course of petitioning the Government. *Id.* at 481-82. The Supreme Court rejected this claim, holding instead that the scope of First Amendment protection for claims made while petitioning government officials is *coextensive* with the scope of First Amendment protection for public statements under the Free Speech Clause. *Id.* at 484-85. Because libel falls within a well-established First Amendment exception, libel made in statements to government officials is likewise unprotected under the Petition Clause of the First Amendment.

*Id.* at 485. In so holding, the Supreme Court made clear that the Free Speech Clause and the Petition Clause are on identical footing, establishing the same levels of protection for speech:

> To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. *These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.*

Id. at 485 (citations omitted) (emphasis added). The same logic applies here. Just as there is "no sound basis for granting *greater* protection to statements made in a petition … than other First Amendment expressions," *id.*, so also there is no sound basis for granting *lesser* constitutional protection to the same statements. After all, the Petition Clause reflects "the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble." *Id.* Thus, speech that is protected by the Free Speech Clause when made in a public forum retains its full protection when it is made to Government officials in the course of petitioning them to action. *See id.*

This conclusion draws further support from *McDonnell v. United States*, 579 U.S. 550 (2016). In *McDonnell*, the Government prosecuted the Governor of Virginia using an interpretation of the phrase "official act" in 18 U.S.C. § 201 that would have criminalized a broad range of ordinary political lobbying of public officials: "Section 201 prohibits *quid pro quo* corruption—the exchange of a thing of value for an 'official act.' In the Government's view, nearly anything a public official accepts—from a campaign contribution to lunch—counts as a *quid*; and nearly anything a public official does—from arranging a meeting to inviting a guest to an event— counts as a *quo*." *Id.* at 575. The Supreme Court unanimously held that "[i]n addition to being inconsistent with both text and precedent, the Government's expansive interpretation of 'official act' would raise significant constitutional concerns," *id.* at 574, precisely because it threatened to

criminalize a broad range of ordinary political activity done in furtherance of petitioning the Government under the First Amendment:

> [C]onscientious public officials arrange meetings for constituents, contact other officials on their behalf, and include them in events all the time. The basic compact underlying representative government *assumes* that public officials will hear from their constituents and act appropriately on their concerns…. The Government's position could cast a pall of potential prosecution over these relationships….. Officials might wonder whether they could respond to even the most commonplace requests for assistance, and *citizens with legitimate concerns might shrink from participating in democratic discourse*.

*Id.* at 575 (second emphasis added). So also here, permitting the prosecution to criminalize First Amendment-protected statements simply because they were made to government officials would violate "[t]he basic compact of representative government" and cause "citizens with legitimate concerns" to "shrink from participating in democratic discourse." *Id.* Consider any number of disfavored claims on a host of controversial topics, all deemed to be demonstrably "false" and "disinformation" by the Government at various times—such as claiming that masks do not stop the transmission of COVID-19, that vaccines do not stop the transmission of COVID-19, that COVID-19 originated from a lab in Wuhan, China, and that the 2020 Presidential election was stolen. Can the Government prosecute a citizen for attempting to "defraud the United States" by making supposedly "false" statements to government officials for (1) opposing mask mandates by telling legislators that they don't stop transmission, (2) opposing vaccine mandates by telling legislators that they don't stop transmission, and/or (3) urging the investigation of China by telling government officials that COVID-19 leaked from a lab? Under the First Amendment, the answer is "no"—and that absolutely applies to claims that the 2020 Presidential election was stolen as well.

### C.   The First Amendment Does Not Permit the Government to Prosecute a Citizen for Claiming That the 2020 Presidential Election Was Stolen.

Thus, under the First Amendment, the prosecution cannot criminalize claims that the 2020 Presidential election was stolen; and it cannot, by prosecution, seek to impose its view on a disputed political question like the integrity of the 2020 Presidential election. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 641 (1994). Neither the federal Executive Branch nor the Judicial Branch, both of which are bound by the First Amendment, may dictate that such claims are criminally "false."

Claims about the integrity of the 2020 Presidential election—including claims that the election was "rigged" and/or "stolen," or that fraud and irregularities tainted the outcome in certain States or across the Nation—implicate all the fundamental First Amendment principles discussed above. They constitute (1) core political speech (2) expressing a specific disfavored viewpoint (3) on matters of enormous public concern (4) that relate to a widely disputed historical, social, and political question (5) that is not readily verifiable or falsifiable. Thus, they lie at the heartland of the First Amendment's protection, and the federal government may not dictate whether such claims are true or false—nor prosecute the purveyors of the allegedly "false" views.

This is especially true because claims that the 2020 Presidential election was "rigged" or tainted by fraud and irregularity—unlike the libel claims at issue in *McDonald*, *see supra*—do not involve "easily verifiable facts." *Alvarez*, 567 U.S. at 732 (Breyer, J., concurring in the judgment). Such claims require the assessment of mountains of information from which each person will draw

competing inferences based on facts as well as their personal, deep-seated political views and presuppositions. They are not readily verifiable or falsifiable, they relate to politically charged issues, and people's assessment of them is deeply linked to their political predispositions and their trust in institutions, including governmental institutions. This is why Americans' opinions on these issues are profoundly divided, very much to this day. The First Amendment does not permit the prosecution to dictate what is "true" and what is "false" on such broad, vigorously disputed, politically charged questions—*especially* not in the context of a criminal prosecution that effectively seeks to criminalize a political *viewpoint* shared by over 100 million Americans.[3]

Many millions of reasonable people believe that the 2020 Presidential election was unfairly rigged against President Trump, and that fraud and other irregularities tainted the election results. There is abundant public evidence providing a reasonable basis for these opinions. What is critical is that how one interprets this evidence depends on one's deep-seated political views, including one's trust in government institutions and government officials, among others. Different people will draw different inferences from such public evidence based on their deep-seated political views—and that is exactly what the First Amendment permits—even celebrates.[4]

---

[3] Almost 40 percent of Americans, including almost 70 percent of Republicans, believe that the 2020 Presidential election was tainted by fraud or irregularity—a number that is increasing and has increased since 2020. *See, e.g.,* Jennifer Agiesta, et al*., CNN Poll: Percentage of Republicans Who Think Biden's 2020 Win Was Illegitimate Ticks Back Up Near 70%*, CNN (Aug. 3, 2023), at https://www.cnn.com/2023/08/03/politics/cnn-poll-republicans-think-2020-election-illegitimate/index.html. "The share of Republicans and Republican-leaning independents who believe that President Joe Biden's 2020 election win was not legitimate has ticked back up, according to a new CNN poll fielded throughout July. … 69% of Republicans and Republican-leaners say Biden's win was not legitimate, up from 63% earlier this year and through last fall…. Overall, 61% of Americans say Biden did legitimately win enough votes to win the presidency, and 38% believe that he did not. Among registered voters who say they cast a ballot for Trump in 2020, 75% say they have doubts about Biden's legitimacy." *Id.*

[4] *Compare, e.g.,* Mollie Hemingway, *Rigged: How the Media, Big Tech, and the Democrats Seized Our Elections* (Regnery 2021) (423-page book discussing changes to election procedures, flooding the system with absentee ballots, use of mail-in ballots without signature verification or other

This unconstitutional dynamic appears on the face of the indictment itself. The indictment repeatedly alleges that President Trump made "*knowingly* false claims of election fraud." Doc. 1, ¶ 7 (emphasis added). But in every case, the indictment's basis for the allegation that President Trump's claims were "knowingly" false is that *a member of the political establishment assured President Trump that they were false. See, e.g., id.* ¶¶ 11(a)-(h) (alleging that a series of government officials assured President Trump that his concerns about the election's integrity were unwarranted). Under the First Amendment, President Trump and his supporters are entitled to mistrust the word of such establishment-based government officials and draw their own inferences from the facts. And neither the federal Executive Branch (through the prosecution) nor the Judicial Branch (through this Court) may dictate what President Trump and others are required to believe, or *say*, about this hotly disputed political question.

The prosecution, of course, may come to its own conclusions about such matters. It may hold hearings and conduct investigations to try to establish its own view and convince others of them. It may insist that the opinions of others—including President Trump—are wrong, baseless, stupid—even false and malicious. But it may not require Americans to subscribe to its views or punish them for expressing and advocating for different views. To do so violates the First Amendment. Under the First Amendment, the question of whether the 2020 Presidential election

---

safeguards against fraud, widespread ballot harvesting, censorship by social-media platforms, private funding of election administration concentrated in Democratic precincts, exclusion of observers from vote-counting processes, and other developments to argue that the 2020 election was "rigged" against President Trump), *with* Molly Ball, *The Secret History of the Shadow Campaign That Saved the 2020 Election*, TIME (Feb. 4, 2021), at https://time.com/5936036/secret-2020-election-campaign/ (feature-length article discussing many of the same developments as Hemingway's book; describing "an extraordinary shadow effort" to influence the election against President Trump, made up of "a well-funded cabal of powerful people … working together behind the scenes to influence perceptions, change rules and laws, steer media coverage and control the flow of information"; and concluding that this "shadow effort" and "cabal" provide evidence that the 2020 election was one of the fairest in modern history).

was stolen from President Trump must be decided in "the free marketplace of ideas," not in criminal prosecutions. *Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335, 2358 (2020) (Breyer, J., concurring in the judgment with respect to severability and dissenting in part).

For the foregoing reasons, the indictment violates the First Amendment *in toto*. It should be dismissed with prejudice.

## II.    President Trump's Acquittal by the U.S. Senate Bars Criminal Prosecution for Offenses Arising from the Same Course of Conduct.

The indictment must be dismissed because President Trump was impeached, tried by the Senate, and *acquitted* on articles of impeachment that arise from the same course of conduct as the criminal indictment. Under our system of separated powers, the Executive Branch lacks authority to second-guess the decision of the Legislative Branch on an issue that lies within the Legislative Branch's exclusive purview. The Constitution's plain text, structural principles of separation of powers, our history and tradition, and principles of Double Jeopardy bar the Executive Branch from seeking to re-charge and re-try a President who has already been impeached and acquitted in a trial before the U.S. Senate.

### A.    The text of the Constitution bars the prosecution of a President who has been tried and *acquitted* by the Senate.

The text of the Constitution straightforwardly provides that only a "Party *convicted*" by the Senate may be charged by "Indictment, Trial, Judgment and Punishment"—not a party *acquitted*. As the Senate acquitted President Trump, the prosecution may not re-try him in this Court.

To be removed from office, the President must be convicted by trial in the Senate, which has exclusive authority under the Constitution for such trials: "The Senate shall have the sole Power to try all Impeachments. … And no Person shall be convicted without the Concurrence of two thirds of the Members present." U.S. CONST. art. I, § 3, cl. 6. "Judgment in Cases of

Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but *the Party convicted* shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law." U.S. Const. art. I, § 3, cl. 7 (emphasis added).

Because the Constitution specifies that only "the Party *convicted*" by trial in the Senate may be "liable and subject to Indictment, Trial, Judgment and Punishment," *id.*, it presupposes that a President who is *not* convicted may *not* be subject to criminal prosecution. *Id.* As Justice Alito notes, "[t]he plain implication" of the phrase "the Party convicted" in this Clause "is that criminal prosecution, like removal from the Presidency and disqualification from other offices, is a consequence *that can come about only after the Senate's judgment*, not during or prior to the Senate trial." *Trump v. Vance*, 140 S. Ct. 2412, 2444 (2020) (Alito, J., dissenting) (emphasis added). "This was how Hamilton explained the impeachment provisions in the Federalist Papers. He wrote that a President may 'be impeached, tried, and, upon conviction ... would *afterwards* be liable to prosecution and punishment in the ordinary course of law.'" *Id.* (quoting THE FEDERALIST No. 69, p. 416 (C. Rossiter ed. 1961) (emphasis added)); *see also* THE FEDERALIST No. 77, at 464 (A. Hamilton) (a President is "at all times liable to impeachment, trial, [and] dismission from office," but any other punishment must come only "by *subsequent* prosecution in the common course of law") (emphasis added).

Justice Alito's interpretation of the Clause is well-founded. The longstanding canon of interpretation *expressio unius est exclusio alterius* (or the "negative-inference canon") reflects "the principle that specification of the one implies exclusion of the other validly describes how people express themselves and understand verbal expression." SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, § 10, p. 107 (2012). "When a car dealer promises a low

19

financing rate to 'purchasers with good credit,' it is entirely clear that the rate is *not* available to purchasers with spotty credit." *Id.* So also here, when the Constitution provides that "the Party convicted" in the Senate may be subject to criminal prosecution, "it is entirely clear that" the Party *acquitted* in a Senate trial "is *not*" subject to criminal prosecution for official acts. *Id.* This is true because the phrase "the Party convicted" "can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." *Id.* Because there are only two possible outcomes from a Senate trial—conviction or acquittal—specifying the implications of only *one* outcome clearly means that those implications do *not* apply to the other outcome. *See id.*

This interpretation reflects the original public meaning of the impeachment clauses. "James Wilson—who had participated in the Philadelphia Convention at which the document was drafted—explained that, although the President … is amenable to [the laws] in his private character as a citizen, and *in his public character by impeachment*.'" *Clinton v. Jones*, 520 U.S. 681, 696 (1997) (emphasis added) (quoting 2 J. ELLIOT, DEBATES ON THE FEDERAL CONSTITUTION 480 (2d ed. 1863) (cleaned up). "With respect to acts taken in his 'public character'—that is, official acts— the President may be disciplined principally by impeachment…." *Id.*

In addition, in Federalist No. 43, James Madison indicated that concerns about politically motivated prosecutions led to the adoption of the definition of "treason" in Article III, Section 3, Clause 1 of the Constitution:

> As treason may be committed against the United States, the authority of the United States ought to be enabled to punish it; but as *new fangled and artificial treasons, have been the great engines, by which violent factions, the natural offspring of free governments, have usually wreaked their alternate malignity on each other*, the [Constitutional] convention have with great judgment opposed a barrier to this peculiar danger, by inserting a constitutional definition of the crime, fixing the proof necessary for conviction of it, and restraining the congress, even in punishing it, from extending the consequences of guilt beyond the person of its author.

20

THE FEDERALIST No. 47 (Madison) (emphasis added). In Federalist No. 65, Alexander Hamilton explained that the Constitution entrusted impeachment trials to the Senate because the risk of politically motivated criminal trials, which would inevitably be tainted by factionalism and partisanship, was too great in the courts, including even the Supreme Court:

> A well constituted court for the trial of impeachments, is an object not more to be desired than difficult to be obtained in a government wholly elective. The subjects of its jurisdiction are those offenses which proceed from the misconduct of public men, or in other words from the abuse or violation of some public trust. They are of a nature which may with peculiar propriety be denominated POLITICAL, as they relate chiefly to injuries done immediately to the society itself. *The prosecution of them, for this reason, will seldom fail to agitate the passions of the whole community, and to divide it into parties, more or less friendly or inimical, to the accused*. In many cases, it will connect itself with the pre-existing factions, and will inlist all their animosities, partialities, influence and interest on one side, or on the other; and in such cases there will always be the greatest danger, that the decision will be regulated more by the compar[a]tive strength of parties than by the real demonstrations of innocence or guilt.

THE FEDERALIST No. 65 (Hamilton) (emphasis added). Hamilton went on to argue that even the Supreme Court should not handle prosecutions of major political figures: "The awful discretion, which a court of impeachments must necessarily have, to doom to honor or to infamy the most confidential and the most distinguished characters of the community, *forbids the commitment of the trust to a small number of persons*. These considerations seem alone sufficient to authorise a conclusion, that the Supreme Court would have been an improper substitute for the Senate, as a court of impeachments." *Id.* (emphasis added).

In addition, treating impeachment as the exclusive remedy for alleged crimes committed in office is consistent with the Supreme Court's immunity decisions as to other sensitive officials, such as federal judges. The Supreme Court has held that judges are absolutely immune from civil liability and criminal prosecution for their official acts, and that the sole remedy is impeachment: "But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, *the judges of these courts can only be reached by public*

21

*prosecution in the form of impeachment*, or in such other form as may be specially prescribed."
*Bradley v. Fisher*, 80 U.S. 335, 354 (1871) (emphasis added).

In *Nixon v. Fitzgerald*, the Supreme Court reinforced this conclusion by emphasizing that the proper remedy against a President for official misfeasance is "the threat of impeachment," not criminal prosecution:

> A rule of absolute immunity for the President will not leave the Nation without sufficient protection against misconduct on the part of the Chief Executive. There remains the constitutional remedy of impeachment. In addition, there are formal and informal checks on Presidential action…. The President is subjected to constant scrutiny by the press. Vigilant oversight by Congress also may serve to deter Presidential abuses of office, as well as to make credible the threat of impeachment. Other incentives to avoid misconduct may include a desire to earn reelection, the need to maintain prestige as an element of Presidential influence, and a President's traditional concern for his historical stature.

*Nixon v. Fitzgerald*, 457 U.S. 731, 757 (1982). *See also, e.g., Bradley v. Fisher*, 80 U.S. 335, 354 (1871) ("But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts [i.e., Article III courts] can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed.").

Here, President Trump is not a "Party convicted" in an impeachment trial by the Senate. U.S. CONST. art. I, § 3, cl. 7. In January 2021, he was impeached by the House on articles arising from the same course of conduct at issue in the indictment. H. RES. 24 (117th Cong. 1st Sess.), *at* https://www.congress.gov/bill/117th-congress/house-resolution/24/text. Among other things, the articles of impeachment charged that President Trump "repeatedly issued false statements asserting that the Presidential election results were the product of widespread fraud and should not be accepted by the American people or certified by State or Federal officials;" made "false claims" in a speech on January 6; engaged in "prior efforts to subvert and obstruct the certification of the results of the 2020 Presidential election," including through a phone call to the Georgia secretary

of state; and "threatened the integrity of the democratic system." *Id.* The indictment here rests on the very same alleged facts. President Trump was acquitted of these charges after trial in the Senate. He is thus not a "Party convicted" under Article I, Section 3, Clause 7, and he is not subject to "Indictment, Trial, Judgment and Punishment" for the same course of conduct. U.S. CONST. art. I, § 3, cl. 7.

In sum, under the Constitution, the Executive Branch—including the prosecution—lacks authority to second-guess the determination of acquittal made by the United States Senate, the body to which the Constitution explicitly entrusts this authority. To do so violates the Impeachment Clause and the principles of separation of powers, by unlawfully encroaching on authority exclusively vested in Congress. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585-89 (1952). "The Founders of this Nation entrusted the [impeachment] power to the Congress alone in both good and bad times." *Id.* at 589.

### B.     The Prosecution Is Barred by Principles of Double Jeopardy.

Applying principles of double jeopardy leads to the same conclusion. The Fifth Amendment states, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Clause prevents the same sovereign from subjecting a defendant to multiple, sequential charges based on the same operative facts or the same course of conduct. *See, e.g., United States v. Coughlin*, 610 F.3d 89, 95 (D.C. Cir. 2010) (holding that "a prong of double jeopardy analysis known as 'issue preclusion' … bars the government from prosecuting a defendant on a charge that depends on facts that a previous acquittal on a different charge necessarily decided in the defendant's favor"). Under those principles, the prosecution cannot proceed against President Trump for conduct of which he was acquitted by the Senate.

23

The fact that different branches of the federal government are at issue makes no difference. "In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns. This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). With respect to the federal government and the States, there are distinct sovereignties: "The States are no less sovereign with respect to each other than they are with respect to the Federal Government. Their powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment." *Id.* at 89. The same is not true, however, with respect to different branches of the federal government, all of which derive their power from the same source—the U.S. Constitution. *See id.* Thus, the Executive and Judicial Branches cannot seek to place President Trump in jeopardy for conduct of which the Legislative Branch has absolved him—all three Branches are co-equal parts of the same "sovereign" deriving their "power and authority" from the same "source[]." *Id.*

The government—through Congress—already put President Trump on trial once, placing him in jeopardy for an alleged criminal offense arising from the same course of conduct alleged in the indictment.[5] Having failed to obtain a conviction, President Trump's acquittal in the United States Senate must stand, and the prosecution may not seek a retrial in this forum.

---

[5] *See* U.S. CONST. art. III, § 2, cl. 3 (referring to impeachment trials as trials for crimes – "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury. . .").

### III.     The Indictment Violates the Fair Notice Doctrine of the Due Process Clause.

The indictment charges President Trump with crimes arising from his political advocacy on matters of public concern made in the middle of a disputed Presidential campaign and election. President Trump's actions were inspired by and fully consistent with examples from many similar contested election disputes in our Nation's history. There is a long history in our Nation—dating back to 1800 and encompassing elections in 1800, 1824, 1876, 1960, 2000, 2004, and 2016, among many others—of disputing the outcome of close Presidential elections, publicly claiming that election results were tainted by fraud, filing legal actions to challenge election results, lobbying Congress to certify disputed election results in one side's favor or the other, and organizing alternate, contingent slates of electors to assist in such efforts. In other words, all the chief alleged acts charged in the indictment have a long historical pedigree in American electoral history, and they have long been decided in the political arena. President Trump is the first person to face criminal charges for such core political behavior as disputing the outcome of an election. He is charged, moreover, under statutes that facially have nothing to do with his alleged conduct, and whose language the Special Prosecutor stretches beyond recognition. *See* President Trump's Motion to Dismiss Based on Statutory Grounds (filed separately) ("Statutory Mot."). As a result, President Trump could not possibly have received fair notice that his conduct was supposedly criminal when he performed it. The indictment should be dismissed with prejudice for violation of the fair notice requirement of the Due Process Clause.

"[A] criminal statute must give fair warning of the conduct it makes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964). "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). The Supreme Court has compared the "fair

warning" standard to the "clearly established" standard applied to civil cases under § 1983 or *Bivens* cases. *United States v. Lanier*, 520 U.S. 259, 271–72 (1997). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The fair-notice requirement cannot be satisfied by post-conduct judicial interpretation of the statutes at issue. "If the Fourteenth Amendment is violated when a person is required 'to speculate as to the meaning of penal statutes,' … or to 'guess at (the statute's) meaning and differ as to its application,' … the violation is that much greater when, because the uncertainty as to the statute's meaning is itself not revealed until the court's decision, a person is not even afforded an opportunity to engage in such speculation before committing the act in question." *Bouie*, 378 U.S. at 352 (citations omitted). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Id.*; *see also Rogers v. Tennessee*, 532 U.S. 451, 457 (2001) ("Deprivation of the right to fair warning … can result both from vague statutory language and from an unforeseeable and retroactive judicial expansion of statutory language that appears narrow and precise on its face."); *Karem v. Trump*, 960 F.3d 656, 666 (D.C. Cir. 2020) ("Although courts routinely 'clarify the law and apply that clarification to past behavior,' 'the principle of fair warning requires that novel standards announced in adjudications must not be given retroactive effect ... where they are unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue[.]'") (alterations and citations omitted).

This principle of fair notice has special force here, where the lack of fair notice directly implicates First Amendment rights. *See supra* Part I. "The general test of vagueness applies with

particular force in review of laws dealing with speech. Stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech….” *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976)) (modifications omitted); *see also, e.g., Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (“Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal…. Where First Amendment rights are involved, an even ‘greater degree of specificity’ is required.”); *NAACP v. Button*, 371 U.S. 415, 432 (1963) (“[S]tandards of permissible statutory vagueness are strict in the area of free expression.”); *Nebraska Press Ass’n v. Stuart*, 427 U.S. 539, 568 (1976).

Here, President Trump’s alleged conduct—publicly and politically disputing the outcome of the election, attempting to convince Congress to act, and allegedly organizing alternate slates of electors—falls outside the plain language of the charged statutes, as discussed in President Trump’s Motion to Dismiss Based on Statutory Grounds, filed separately. *See* Statutory Mot. No court has ever applied these statutes to similar conduct. And the statutes’ meaning cannot be expanded by judicial re-interpretation after the fact without violating the Due Process Clause’s fair-notice requirement.

The extensive history of disputing elections in our Nation further demonstrates that none of these statutes provide fair notice that the alleged conduct is criminal. As for public statements and claims that the Presidential election was rigged and fraudulent, such claims have been a staple of American political discourse for decades. As one commentator has quipped, “If questioning the results of a presidential election were a crime, as many have asserted in the wake of the controversial 2020 election and its aftermath, then much of the Democratic Party and media establishment should have been indicted for their behavior following the 2016 election. In fact, the

last time Democrats fully accepted the legitimacy of a presidential election they lost was in 1988." Hemingway, *supra*, at vii.[6] Democratic members of Congress have voted to refuse to certify electors after the elections of 2004 and 2016, and there have been extensive attempts to submit alternate electors and dispute the outcome of Republican Presidential victories in recent decades.[7]

---

[6] *See, e.g.,* Ari Berman, *Hillary Clinton on Trump's Election: "There Are Lots of Questions about Its Legitimacy"*, Mother Jones (Nov. 17, 2017), *at* https://www.motherjones.com/politics/2017/11/hillary-clinton-on-trumps-election-there-are-lots-of-questions-about-its-legitimacy/ ("A year after her defeat by Donald Trump in the 2016 presidential election, Hillary Clinton says 'there are lots of questions about its legitimacy'…"); *"I Would Be Your President": Clinton Blames Russia, FBI Chief for 2016 Election Loss*, National Post (May 2, 2017), *at* https://nationalpost.com/news/world/i-would-be-your-president-clinton-blames-russia-fbi-chief-for-2016-election-loss (noting Clinton "declaring herself 'part of the resistance' to Donald Trump's presidency" as an "activist citizen"); Dan Mangan, *Democratic Party Files Suit Alleging Russia, the Trump Campaign, and WikiLeaks Conspired to Disrupt the 2016 Election*, CNBC (Apr. 20, 2018), *at* https://www.cnbc.com/2018/04/20/democratic-party-files-suit-alleging-russia-the-trump-campaign-and-wikileaks-conspired-to-disrupt-the-2016-election-report.html ("The Democratic Party on Friday sued President Donald Trump's presidential campaign, the Russian government and the Wikileaks group, claiming a broad illegal conspiracy to help Trump win the 2016 election."); Rachael Revesz, *Computer Scientists Say They Have Strong Evidence Election Was Rigged against Clinton in Three Key States*, Independent (Nov. 23, 2016), *at* https://www.independent.co.uk/news/world/americas/wisconsin-michigan-pennsylvania-election-hillary-clinton-hacked-manipulated-donald-trump-swing-states-scientists-lawyers-a7433091.html ("A group of renowned computer scientists and lawyers have urged Hillary Clinton to challenge the election results in three key states after they gathered 'evidence' to suggest the election results were potentially manipulated."); *see also* Dan Merica, *Clinton Opens Door to Questioning Legitimacy of 2016 Election*, CNN.com (Sept. 18, 2017), *at* https://www.cnn.com/2017/09/18/politics/hillary-clinton-russia-2016-election/index.html; Sean Davis, *Nearly Half of Democrats Think the 2016 Election Was "Rigged"*, The Federalist (Nov. 18, 2016), *at* https://thefederalist.com/2016/11/18/nearly-half-democrats-think-election-rigged/.

[7] Bob Franken, *Democrats Challenge Certification of Florida Bush-Gore Election Results*, CNN.com (Nov. 16, 2000), *at* http://www.cnn.com/2000/LAW/11/16/certification.update.02.pol/index.html (noting "Florida Democrats and Al Gore presidential campaign…challenging the certification of election results in the state contested state); Jill Zuckman, et al., *Black Caucus Can't Block the Final Tally*, Chicago Tribune (Jan. 7, 2001), *at* https://www.chicagotribune.com/news/ct-xpm-2001-01-07-0101070449-story.html ("members of the Congressional Black Caucus on Saturday tried to stop the formal recording of the Electoral College tally during a joint session of Congress… lawmakers who supported [Democrat Al Gore] for president objected vociferously to the proceedings. One after another, the representatives rose to prevent the electoral votes from Florida from being counted."); Ted Barrett, *Democrats Challenge Ohio Electoral Votes*, CNN.com (Jan. 6, 2005), *at* https://www.cnn.com/2005/ALLPOLITICS/01/06/electoral.vote.1718/ ("Alleging widespread

Additional historic precedent in close and contested elections supports the lawfulness of the actions alleged in the indictment. For example, in the disputed elections of both 1876 and 1960, competing slates of electors were sent to Congress. William Josephson & Beverly J. Ross, *Repairing the Electoral College*, 22 J. LEGIS. 145, 156-57, 166 (1996); *see also* 146 CONG. REC. E2180 (daily ed. Dec. 13, 2000) (statement of Rep. Mink) ("Based on the earlier certified results [in Hawaii in 1960], the Republican electors met and cast their three votes for Nixon. The Democratic electors also met and cast their votes for Kennedy *even though they did not have a certificate of election from the State*.") (emphasis added). In 1800, Vice President Jefferson unilaterally made the decision to accept questionable electoral votes from Georgia that favored him. Bruce Ackerman and David Fontana, *How Jefferson Counted Himself In*, THE ATLANTIC (Mar. 2004), *at* https://www.theatlantic.com/magazine/archive/2004/03/how-jefferson-counted-himself-in/302888/. In 1824, when his disputed election with Andrew Jackson was decided in the House of Representatives, President John Quincy Adams successfully lobbied the House to decide the election in his favor—even though Jackson far exceeded his totals in both the popular vote and electoral college—so successfully, in fact, that Jackson's supporters accused him of striking a

---

'irregularities' on Election Day, a group of Democrats in Congress objected Thursday to the counting of Ohio's 20 electoral votes, delaying the official certification of the 2004 presidential election results."); Brenna Williams, *11 Times VP Biden Was Interrupted during Trump's Electoral Vote Certification*, CNN.com (Jan. 6, 2017), *at* https://www.cnn.com/2017/01/06/politics/electoral-college-vote-count-objections/index.html ("During the course of the certification, House Democrats tried to object to electoral votes from multiples states" claiming, *inter alia*, "electors were not lawfully certified"); Rachael Revesz, *Computer Scientists Say They Have Strong Evidence Election Was Rigged against Clinton in Three Key States*, Independent (Nov. 23, 2016), *at* https://www.independent.co.uk/news/world/americas/wisconsin-michigan-pennsylvania-election-hillary-clinton-hacked-manipulated-donald-trump-swing-states-scientists-lawyers-a7433091.html ("So far, six electoral college voters said they would not vote for Mr Trump. Meanwhile more than 4.5 million people have signed a petition for more electoral college delegates to defy the instructions given to them in their state.").

"corrupt bargain" with House Speaker Henry Clay, whom Adams soon appointed Secretary of State. And in 1960, Vice President Nixon—himself a candidate—decided which competing slate of electors to accept from Hawaii. Herb Jackson, *What Happens When a State Can't Decide on its Electors*, ROLL CALL (Oct. 26, 2020), *at* https://rollcall.com/2020/10/26/we-the-people-what-happens-when-a-state-cant-decide-on-its-electors/; *see also* 146 CONG. REC. E2180 (daily ed. Dec. 13, 2000) (statement of Rep. Mink) ("Vice President Nixon, sitting as the presiding officer of the joint convention of the two Houses, suggested that the electors named in the certificate of the Governor dated January 4, 1961 be considered the lawful electors from Hawaii. There was no objection to the Vice President's suggestion . . ."). In the 2000 election contest, three Supreme Court justices pointed to the Hawaii situation in 1960 to emphasize that competing slates of electors could be submitted to Congress and that Congress could make the decision on which slate to accept:

> But, as I have already noted, those provisions [of the Electoral Count Act] merely provide rules of decision *for Congress to follow when selecting among conflicting slates of electors*. They do not prohibit a State from counting what the majority concedes to be legal votes until a bona fide winner is determined. Indeed, in 1960, *Hawaii appointed two slates of electors and Congress chose to count* the one appointed on January 4, 1961, well after the Title 3 deadlines.

*Bush*, 531 U.S. 98, 127 (2000) (Stevens, J., dissenting) (internal citations omitted) (emphasis added). In addition, the actions charged in the indictment against President Trump were consistent with the provisions of the then-current version of the Electoral Count Act, as it then provided before its recent revisions. 3 U.S.C. § 15 (2020). Indeed, the very fact that Congress decided to amend the Electoral Count Act at all demonstrates that it did not prohibit (let alone criminalize) mechanisms such as alternate electors or lobbying the Vice President, all of which further proves that this criminal prosecution violates the fair notice provisions of the Due Process Clause.

30

At the time of the allegations in the indictment, the only relevant judicial precedent, from 2000, treated post-election challenges as lawful and included a dissent arguing that competing elector slates could be submitted to Congress for Congress to decide which to accept. Furthermore, the actions listed in the Indictment had been performed in 1800, 1824, 1876, and 1960, among others, without any suggestion they were criminal. Scores of people have been involved in similar conduct over the years of American history, and none has faced criminal prosecution. On these facts, at best, "men of common intelligence must necessarily guess" if President Trump's conduct violated the statute, and the charges thus violate the Due Process Clause. *Hynes*, 425 U.S. at 620 (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926)).

## CONCLUSION

The Court should dismiss the indictment with prejudice.


Dated: October 23, 2023                    Respectfully submitted,


Todd Blanche, Esq. (PHV)                   */s/John F. Lauro*
toddblanche@blanchelaw.com                 John F. Lauro, Esq.
Emil Bove, Esq. (PHV)                      D.C. Bar No. 392830
Emil.Bove@blanchelaw.com                   jlauro@laurosinger.com
BLANCHE LAW                                Gregory M. Singer, Esq. (PHV)
99 Wall St., Suite 4460                    gsinger@laurosinger.com
New York, NY 10005                         Filzah I. Pavalon, Esq. (PHV)
(212) 716-1250                             fpavalon@laurosinger.com
                                           LAURO & SINGER
                                           400 N. Tampa St., 15th Floor
                                           Tampa, FL 33602
                                           (813) 222-8990
                                           *Counsel for President Trump*

31

Although courts have in rare instances exercised their discretion to permit third-party submissions in criminal cases, neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules contemplate the filing of amicus curiae briefs. At this time, the court does not find it necessary to depart from the ordinary procedural course by permitting this filing.

**LEAVE TO FILE DENIED**

*Tanya S. Chutkan*
11/9/2023

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 1:23-cr-00257-TSC |
| | § | |
| Donald Trump, Defendant | § | |

## MOTION FOR LEAVE TO FILE AMICUS

Comes Now Brady Byrum, (hereinafter Byrum), before this Honorable Court, on this the 30th day of October, 2023, filing this MOTION FOR LEAVE TO FILE AMICUS.

In this grand experiment known the United States of America, where the government is formed **by the people, of the people and for the people**, and where freedom shines brighter here than at any other place around the world, **Byrum is a member of the sovereignty**, per the unoverturned Supreme Court cases of **Yick Wo v. Hopkins**, 118 U.S. 356, **Julliard v. Greenman**, 110 U.S 421 and **Appleby v. New York**, 271 U.S. 364, and as such, Byrum is a member of the body politic **from whom** all public servants in all three branches of government, and in all levels, derive *their* delegated sovereignty, and Byrum is therefore **entitled** to file the attached AMICUS CURIAE document and its exhibits into the above captioned Federal Felony Criminal Case.

Byrum declares herein that (a) because there is NOTHING in any Congressional Act that forbids AMICI from being entered in any case or controversy by members of the sovereignty, and (b) because Byrum has a DUTY and OBLIGATION to file same, and (c) because said AMICUS is EXCULPATORY to the Defendant on all charges, any denial of entry thereof, would violate Byrum's First Amendment Right of Redress against the acts of **Jack Smith**, and would be an automatic deprivation of the Defendant's Substantive and Procedural Due Process Rights as protected by the 5th Amendment and 14th Amendment of the Constitution for the United States of America.

x _____
Brady Byrum, Paralegal Researcher
member of the sovereignty
Propria persona, sui juris, jus sanguinis

RECEIVED

NOV -6 2023

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**      §
                                  §
**v.**                            §      **1:23-cr-00257-TSC**
                                  §
**Donald Trump, Defendant**       §

# AMICUS CURIAE
# ENTRY OF NEWLY DISCOVERED
# EXCULPATORY EVIDENCE
# BY SWORN AFFIDAVIT

State of Texas            §
County of Dallas          §      ss:

Comes Now Brady Byrum, (hereinafter also, "I", "me", "my" and "mine"), before this Honorable Court, declaring that I am over the age of 21, of no legal disability, having no felony convictions, having no convictions of crimes of moral turpitude, am a follower of Yashua the Messiah in the laws of The Almighty Supreme Creator YHVH, first and foremost and the laws of man when they are not in conflict per Leviticus 18:3, 4.

1.  I affirm that pursuant to Matthew 5:33-37 and James 5:12, I am to speak the truth at all times, as supported by your Federal Public Law 97-280, 96 Stat. 1211.