**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

<u>**GOVERNMENT'S MOTION IN LIMINE**</u>[1]

Through public statements, filings, and argument in hearings before the Court, the defense has attempted to inject into this case partisan political attacks and irrelevant and prejudicial issues that have no place in a jury trial. Although the Court can recognize these efforts for what they are and disregard them, the jury—if subjected to them—may not. The Court should not permit the defendant to turn the courtroom into a forum in which he propagates irrelevant disinformation, and should reject his attempt to inject politics into this proceeding. To ensure that the jury remains focused on its fact-finding duty and applies the law as instructed by the Court, the defendant's improper evidence and argument should be excluded.

I.      **APPLICABLE LAW**

The Court "has the responsibility to maintain decorum in keeping with the nature of the proceeding; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.'" *United States v. Young*, 470 U.S. 1, 10 (1985) (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)). Part of this responsibility is to shield the jury from

---

[1] The Court has determined that the deadlines in the Pretrial Order are "held in abeyance" while the defendant's appeal of the denial of certain of his motions to dismiss are pending. ECF No. 186 at 2. Nonetheless, to provide the Court and defendant notice and to promote the prompt resumption of the pretrial schedule if and when the mandate returns, the Government will continue to meet its own deadlines as previously determined by the Court.

improper evidence and argument. *See* FED. R. EVID. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

To that end, the Court must exclude any evidence that is irrelevant. FED. R. EVID. 402 ("Irrelevant evidence is not admissible."); *United States v. Tarantino*, 846 F.2d 1384, 1410 (D.C. Cir. 1988) (defendant could not introduce evidence that "bears no relevance to any elements of the crimes charged or to any affirmative defenses to those crimes"). Because relevant evidence is that which "has any tendency to make a fact more or less probable," so long as "the fact is of consequence in determining the action," FED. R. EVID. 401, it "exists only as a relation between an item of evidence and a matter properly provable in the case," FED. R. EVID. 401 advisory committee's note to 1972 proposed rules; *see also United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993) ("The initial step in determining relevancy is therefore to identify the matter properly provable.") (cleaned up). Evidence is not relevant upon a party's mere say-so; it must be connected to the charges in the indictment or to a legitimate defense supported by sufficient evidence. *See United States v. Easterday*, No. 22-cr-404, 2023 WL 6646384, at *3 (D.D.C. Oct. 12, 2023) (prohibiting January 6 defendant's argument absent "sufficient evidence from which a reasonable [factfinder] could find for the defendant on that theory") (citing *United States v. Carpenter*, No. 21-cr-305, 2023 WL 1860978, at *3 (D.D.C. Feb 9, 2023)). The proponent of the evidence bears the burden of establishing relevancy. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if evidence is relevant, the Court may exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's

right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions"); *United States v. Libby*, 475 F. Supp. 2d 73, 91 (D.D.C. 2007) (right to present defense "extends only to relevant evidence" and is subject to Rule 403) (citations omitted). Indeed, it is incumbent on a court to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection" to those issues. *Holmes v. South Carolina*, 547 U.S. 319, 330 (2006); *accord United States v. Bennett*, No. 21-cr-312, 2023 WL 6460026, at *2 (D.D.C. Oct. 4, 2023). A court's obligation to focus the trial and to maintain proper order extends to appropriate limits on the scope of cross-examination. *See United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court nonetheless has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses"); FED. R. EVID. 611.

Significantly here—where the defendant repeatedly has levied baseless political claims—evidence or argument that serves only to support a jury nullification argument has no relevance to guilt or innocence and must be excluded. *See United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming exclusion of evidence that "might have led the jury to exonerate" a defendant but was "irrelevant to the issue of . . . guilt or innocence of the offenses charged"); *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 . . ., is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant."). As the D.C. Circuit has explained, a "jury has no more 'right' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law." *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983). This is because "[t]he right to equal justice

under law inures to the public as well as to individual parties to specific litigation, and that right is debased when juries at their caprice ignore the dictates of established precedent and procedure." *Gorham*, 523 F.2d at 1098.

## II.  ARGUMENT

The defendant has made clear his intent to introduce evidence and make arguments that are improper—whether because they have no bearing on his guilt or innocence, are otherwise irrelevant, or are substantially more prejudicial than probative.[2]  The Court should exclude them.

### A.  The Court Should Exclude Evidence and Argument that Does Not Bear on Guilt or Innocence.

Following his indictment in this District, the defendant has made unsupported and politicized claims of selective and vindictive prosecution, indicated that he intends to explore irrelevant issues related to the Government's investigation, and complained that the grand jury's indictment and the Court's trial date will interfere with his political activities.  None of these issues goes to the defendant's guilt or innocence; all of them should be excluded.

#### 1.  The Court should prohibit the defendant from introducing evidence, making arguments, or framing questions to advance a theory of selective or vindictive prosecution, or to otherwise improperly inject politics into the trial.

The defendant has made a baseless claim of selective and vindictive prosecution, *see* ECF No. 141 (opposing defendant's selective and vindictive prosecution motions), and repeatedly has

---

[2] The Government bases certain of its arguments in this motion on topics that the defendant has explicitly and implicitly indicated—through statements or filings—he may raise.  For instance, the defendant moved to compel discovery on many of the areas the Government now moves to exclude from evidence at trial, *see* ECF Nos. 166-1 and 167, and the Government thus reiterates in this filing certain arguments made in its opposition brief to the discovery motions, *see* ECF No. 181.  In addition, if the defendant raises in the future additional topics that should not be permitted at trial, the Government may file additional motions in limine to exclude them in accord with any future scheduling order.

levied the false accusation that the indictment—returned by a grand jury of citizens of this District on a finding of probable cause—was directed by the current president as a form of election interference.[3]   In addition to being wrong, these allegations are irrelevant to the jury's determination of the defendant's guilt or innocence, would be prejudicial if presented to the jury, and must be excluded.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself." *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *see* FED. R. CRIM. P. 12(b)(3)(iv).  Because "it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged," whether a prosecution was improperly instituted must be decided by the Court, not a jury.  *Washington*, 705 F.2d at 495.  Consequently, once the Court resolves the defendant's pending Rule 12 motion to dismiss on the basis of selective and vindictive prosecution, the defendant should be prohibited from raising these issues—whether in the form of argument[4] or through the use of terminology such as the "Injustice Department,"[5] "Biden Indictment,"[6] or similar phrases—in the presence of the jury.  *See, e.g.*, *United States v. Navarro,* 651 F. Supp. 3d 212, 242 (D.D.C. 2023) (granting motion in limine to exclude evidence and arguments that "simply repackage Defendant's selective prosecution defense").

For the same reason, the defendant should be precluded from raising irrelevant political issues or arguments in front of the jury.  Doing so would improperly suggest to the jury that it

---

[3] *See* https://truthsocial.com/@realDonaldTrump/posts/111575762863965514.

[4] ECF No. 29 at 16 (defense counsel arguing that "the prosecutors decided to bring this case in the middle of the campaign"); ECF No. 103 at 19 (same); ECF No. 38 at 34 (defense counsel arguing that "this prosecution provides an advantage to these prosecutors' boss, who is running a political campaign against [the defendant]").

[5] *See* https://truthsocial.com/@realDonaldTrump/111322135133905277.

[6] *Id.*

should base its verdict on something other than the evidence at trial—to which the defendant's current political activities bear no relevance. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged."). Before this Court, the defense has repeatedly used rhetoric that may be acceptable on the campaign trail but not in a trial. *See, e.g.*, ECF Nos. 14 at 4, 30 at 1, 50 at 8, 111 at 2, 167 at 4, & 189-1 (describing the defendant's 2024 presidential candidacy); ECF No. 103 at 28-30 (defense counsel declaring that the defendant's comments attacking the venire in this District were borne of concern for "deep problems in this city that need to be addressed"). These appeals, while permissible in the political arena regardless of their accuracy, would be impermissible if made to the jury because they risk jurors' "substitution of individual standards" for the legal standards governing the jury's determination of guilt or innocence—that is, jury nullification. *Washington*, 705 F.2d at 494; *see also Wallace v. Davis*, 362 F.3d 914, 921 n.2 (7th Cir. 2004) (Williams, J., concurring) (observing that "mitigation strategies which seek the 'equivalent of jury nullification' on the basis of religious beliefs are unreasonable"); ECF No. 29 at 23 (The Court: "I intend to keep politics out of this."). The Court should not allow them.

> **2.    The Court should prohibit the defendant from trying to baselessly inject politics into the trial in the name of "impeaching" the investigation.**

Through his groundless demand for discovery of evidence regarding "investigative misconduct," ECF No. 167 at 34-36, the defendant has suggested that he intends to impeach the integrity of the investigation by raising wholly false claims such as the Government's non-existent "coordination with the Biden Administration" and other empty allegations recycled from the selective and vindictive prosecution motion that he based on anonymous sources in newspaper

articles.  Although the defendant is entitled to cross-examine the Government's law enforcement witnesses about matters fairly within the scope of their direct testimony, he cannot raise wholly irrelevant topics in an effort to confuse and distract the jury.  Much as the defendant would like it otherwise, this trial should be about the facts and the law, not politics.

A general claim of government misconduct "is, like a claim of selective prosecution, ultimately separate from the issue of [a defendant's] factual guilt," and is not an issue properly put before the jury.  *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also United States v. Wylie*, 625 F.2d 1371, 1378-79 (9th Cir. 1980) (claim of "outrageous involvement by the government agents" was for the court to decide, not the jury).  Although the defendant has suggested he will try to raise such a claim in the guise of "impeaching the investigation," see ECF No. 167 at 34-36, it is merely his unsupported selective and vindictive prosecution claim by another name, and should not be submitted to the jury.

### 3.     The Court should prohibit the defendant from arguing to the jury any legal issues properly reserved for the Court.

Like his selective and vindictive prosecution claim, the defendant has filed other Rule 12 motions raising legal issues that are properly addressed to the Court—including that he is immune from prosecution and that his fraudulent statements are protected by the First Amendment.  The Court properly denied defense motions predicated on these claims.  *See* ECF No. 171.  The defendant should not be permitted to make legal arguments like these to the jury.  *See United States v. Gaudin*, 515 U.S. 506, 513 (1995) (a jury in a criminal case does not have the power to decide "pure questions of law" (citing *Sparf v. United States*, 156 U.S. 51, 105-106 (1895) (jury's function is to apply the law as the judge determines it))).  Any attempt to suggest or argue to the jury that it should acquit based on principles of immunity or the First Amendment would usurp the Court's role to decide legal issues and invite impermissible jury nullification.  *See, e.g., United States v.*

*Grady*, 18 F.4th 1275, 1290 (11th Cir. 2021) (affirming trial court's ruling that defendant could not "relitigate" before the jury a legal defense that the Court rejected at the motion-to-dismiss phase), *cert. denied*, 142 S. Ct. 2871 (2022).

>    4.    **The Court should prohibit evidence, questions, or argument regarding potential consequences of the defendant's criminal case or conviction.**

As in any other case, the consequences that the defendant may face as a result of the criminal case against him are irrelevant to guilt or innocence and may not be considered by the jury.  These include the consequences that the defendant may face if convicted, as well as the burden of trial itself.  The defendant should not be permitted to raise such issues in front of the jury.

"The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury."  *Shannon*, 512 U.S. at 579.  Besides being "irrelevant to the jury's task," such "information invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  *Id.*  Accordingly, a jury "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  *Id.* (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).  Under this well-established law, the defendant must be prohibited from referencing in the presence of the jury, whether directly or indirectly, the penalties associated with the charged offenses, or any collateral consequences that the proceedings may cause for the defendant, his livelihood, or his other activities.  In this trial just as in any other, "evidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is prejudicial and inadmissible when otherwise irrelevant."  *United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) (quoting Wharton's Criminal Evidence 164 at 304 (13th ed. 1972)).  Here, the effect of prosecution on the defendant's professional pursuits or his family, resources, or livelihood

is not only irrelevant; it invites jury confusion and nullification and is thus prejudicial to the jury's determination of his guilt or innocence.  *See United States v. Perez*, 459 F. App'x 191, 198 (3d Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification"); *United States v. Copeland*, 291 F. App'x 94, 97 (9th Cir. 2008) (evidence of defendant's hardship excluded because "possible prejudice to the government of jury nullification based on sympathy"); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C. 1963) (reputation evidence "clearly designed solely to arouse sympathy for defendant" was "properly excluded").  Such improper appeals to the jury, in any form, should be precluded.

**B.      The Court Should Exclude Irrelevant and Prejudicial Evidence and Argument Regarding January 6, 2021.**

Throughout this litigation, and in his public comments, the defendant has sought to blame others for the attack on the Capitol for which he is responsible, including law enforcement, military forces, unidentified secret agents, and foreign influence.  The defendant should be precluded from introducing within the courtroom the disinformation he has propagated outside of it.

**1.      The Court should exclude evidence regarding agency preparation for, and responses on, January 6.**

The defendant has signaled his intention to blame the events of January 6 on the Capitol Police, National Guard, and the District's Mayor.  *See* ECF No. 167 at 19-20 (blaming riot on National Guard and demanding "information relating to security at the Capitol on January 6"); CNN, Town Hall with Donald Trump (May 10, 2023) (attributing riot to Congress and District's Mayor, who allegedly "were in charge, as you know, of security, and they did not do their job").[7] This defense strategy is factually false and precluded by the Rules of Evidence.

---

[7] *See* www.cnn.com/2023/05/11/politics/transcript-cnn-town-hall-trump/index.html.

Courts in this District have overwhelmingly rejected attempts by other January 6 defendants to "shift the blame to law enforcement." *United States v. Griffith*, No. 21-cr-244, 2023 WL 2043223, at *4-5 (D.D.C. Feb. 16, 2023) (finding irrelevant that "additional measures could have been taken to further restrict the area" and that "a minitrial on law enforcement alleged security failures would be an utter waste of time"). And as a legal matter, the alleged shortcomings of law enforcement do not sanction the defendant's criminal conduct. *See United States v. Williams*, No. 21-cr-377, ECF No. 87 at 3 (D.D.C. 2022) ("Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct."); *accord United States v. Chwiesiuk*, No. 21-cr-536, 2023 WL 3002493, at *6 (D.D.C. 2023). A bank robber cannot defend himself by blaming the bank's security guard for failing to stop him. A fraud defendant cannot claim to the jury that his victims should have known better than to fall for his scheme. And the defendant cannot argue that law enforcement should have prevented the violence he caused and obstruction he intended.

The defendant's proffered criticism of law enforcement agencies also fails the Rule 403 balancing test. While it is of no probative value, it also risks a series of collateral minitrials on issues—like whether certain agencies or the District's Mayor could have better responded to the crimes that occurred on January 6—bearing, at best, "only a very weak logical connection to the central issues." *Holmes*, 547 U.S. at 330; *United States v. Fonseca*, 435 F.3d 369, 375 (D.C. Cir. 2006) ("Because evidence regarding collateral matters is more likely to implicate those problems, while being of lesser probative value, trial courts are afforded considerable leeway in deciding whether to admit such evidence."). In addition, as part of its Rule 403 analysis, the Court should take into account the security concerns the evidence's use may raise. *See United States v. Baez*, No. 21-cr-507, 2023 WL 6364648, at *6 (D.D.C. 2023) (precluding defendant from introducing

evidence regarding Secret Service operations on January 6 because it was "irrelevant and would

be inappropriate and immaterial to the question of guilt" and "may create a security risk") (cleaned

up); *Easterday*, 2023 WL 6646384, at *2 (barring defense from "questioning witnesses about the

precise location" of Capitol surveillance cameras, in part based on "significant national-security

concerns").

> **2.     The Court should exclude evidence regarding purported undercover officers or government sources at the Capitol.**

The defendant also appears poised to blame undercover agents, government informants, or

confidential human sources (collectively, "undercover actors") for the violence at the Capitol on

January 6.   *See* ECF No. 167 at 23-24; ECF No. 166-4 (defense discovery request);

@realDonaldTrump Post, Nov. 22, 2023[8] (promoting internet article regarding undercover

officers).   Information on this topic is irrelevant to any charge or valid defense, and allowing it

would only confuse the jury and waste time on a collateral issue.   The Court should exclude it.

Evidence about undercover actors holds no probative value here.   As the defendant has

acknowledged (ECF No. 167 at 23-24), in cases in this District in which January 6 defendants have

sought to use such evidence, courts have found such evidence irrelevant unless defendants can

establish that an undercover actor affected the defendant's actions or mental state.[9]   *See United*

*States v. Brock*, 628 F. Supp. 3d 85, 101 (D.D.C. 2022), *aff'd*, 2023 WL 3671002 (D.C. Cir. May

---

[8] *See* https://truthsocial.com/@realDonaldTrump/posts/111454929050147375.

[9] Courts also have recognized that the "government enjoys a qualified though 'time-honored privilege to withhold the identity of its informants from criminal defendants." *United States v. Edelin*, 128 F. Supp. 2d 23, 33 (D.D.C. 2001) (quoting *United States v. Brodie*, 871 F.2d 125, 128 (D.C. Cir. 1989)).   A defendant bears the "heavy burden" of establishing the necessity—*i.e.*, relevance and importance—of the identity, *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994), and "mere speculation that the informer might possibly be of some assistance is not sufficient" to meet that burden.   *Edelin*, 128 F. Supp. 2d at 34 (quoting *United States v. Magnum*, 100 F.3d 164, 172 (D.C. Cir. 1996)).

25, 2023); *United States v. Zink*, No. 21-cr-191, 2023 WL 5206143, at *3 (D.D.C. Aug. 14, 2023); *cf. Williams*, No. 21-cr-377, ECF No. 87 at 3 (evidence of law enforcement action cannot be relevant to defendant's mens rea when the defendant was unaware of it).  There is certainly no evidence that the defendant here had contact with or knew of any undercover actor anywhere on January 6—and certainly not at the Capitol, where the defendant promised his supporters he would join them.  No such actor, therefore, "could have affected or did affect [his] conduct or state of mind." *Zink*, 2023 WL 5206143, at *3.  If instead the defendant seeks to blame undercover actors for causing rioters to perpetrate violence and obstruct the certification proceeding, that argument is inadmissible for the same reasons as the defendant's efforts to blame others, including law enforcement, discussed above, or foreign influence campaigns, discussed below.  *See Griffith*, 2023 WL 2043223, at *5 ("Whether others (including, in Defendant's meritless view, law enforcement protecting the Capitol) were disruptive does not make it particularly less likely that Defendant in fact disrupted Congressional business.").

Even if the defendant could provide a cogent argument for the relevance of any of this information, the Court should properly exclude it for posing "an undue risk of confusion of the issues." *United States v. Edwards*, 901 F. Supp. 2d 12, 18 (D.D.C. 2012); Fed. R. Evid. 403. Allowing the defendant to introduce evidence about undercover actors would inevitably lead to confusing minitrials on collateral issues, such as the identities and intentions of the alleged undercover actors.  For example, it may require the Government to introduce evidence to show that people whom the defendant alleges were undercover actors actually were his vehement supporters. *See, e.g.*, *United States v. Nichols*, No. 21-cr-117, 2023 WL 6809937, at *10 (D.D.C. Oct. 16, 2023) (noting that individuals Nichols claimed were government agents were actually

January 6 offenders prosecuted for their conduct at the Capitol).  Such evidence should therefore be excluded.

### 3.     The Court should exclude evidence of alleged foreign influence.

The defendant has indicated that he intends to introduce evidence of foreign influence in the 2020 presidential election to show that (1) he was personally tricked by foreign disinformation, and/or (2) the January 6 riot resulted from "efforts by foreign actors to influence public opinion." ECF No. 167 at 26-27 (defense motion to compel discovery); ECF No. 181 at 19-28 (Government opposition brief).  Such evidence should be excluded as an irrelevant and confusing sideshow.

As to any claim that the defendant was fooled by foreign influence, absent a concrete showing that the defendant (1) relied in good faith on (2) specific foreign disinformation when (3) making a particular false claim, such evidence will be irrelevant to the defendant's mens rea and will only distract the jury from the issues properly before it.  *See United States v. Mock*, No. 21-cr-444, 2023 WL 3844604, at *3 (D.D.C. 2023) ("unobserved behavior could not possibly have influenced [Mock's] state of mind on January 6 and would therefore be irrelevant"); *Zink*, 2023 WL 6206143, at *2 (same); *United States v. Secord*, 726 F. Supp. 845, 848 (D.D.C. 1989) ("To affect Defendant's state of mind, his specific intent, a piece of information must have been perceived by him personally, or been conveyed to him via his contacts in the Executive Branch.").  Moreover, shifting attention to purported false claims made by unspecified foreign actors poses the acute risk of jury confusion and for that reason, too, should be excluded.

Next, any argument that foreign actors—rather than the defendant, and his ceaseless, knowingly false claims of election fraud—were responsible for inflaming his followers and causing the Capitol riot is nothing more than an infirm third-party guilt defense.  Evidence of third-party guilt fails the balancing test prescribed by Rule 403 where the accused does not sufficiently

connect the third party to the crime, the probative value of the evidence is speculative, or the evidence of the third party's guilt would not actually exculpate the defendant. *See United States v. Moore*, 590 F. Supp. 3d 277, 283 (D.D.C. 2022). *See generally Holmes v. South Carolina*, 547 U.S. 319 (2006). Evidence of purported foreign influence fails all three prongs.

Courts weighing the probative value of such evidence "generally require that it evince a clear connection between the alleged third-party perpetrator and the crime charged." *Moore*, 590 F. Supp. at 283. On the other side of the Rule 403 equation, evidence of third-party guilt "frequently poses an acute risk of sidetracking the jury into consideration of factual disputes only tangentially related to the case," "confusing the jury," and inviting the jury "to render its findings based on emotion or prejudice." *Id.* at 284 (internal quotation marks omitted). Here, any defense argument that a third party was responsible for the defendant's crimes contravenes Rule 403. To begin with, the defendant has not pointed to a single piece of evidence indicating that foreign influence—rather than his own lies—motivated rioters on January 6. And in any event, whether others—be they civilians or foreign actors—said untrue things on the internet does not exonerate the defendant for the lies he told to his followers or the criminal steps he took to illegally retain power. For this reason alone—that the actions of foreign countries would not "establish the defendant's innocence," *United States v. Cabrerra*, No. 95-352, 1996 WL 135718, at *2 (D.C. Cir. Feb. 15, 1996)—the Court should preclude the proposed third-party guilt defense.

### 4. The Court should exclude evidence of post-crime changes to election law.

After the 2020 election, governments and courts made changes to various laws and rules regulating elections. For instance, although the Electoral Count Act (ECA) already prohibited the defendant's criminal attempt to misuse the Vice President's ministerial role in the congressional certification to overturn the 2020 presidential election results, Congress revised the ECA in

December 2022 to ensure that the defendant's unprecedented and undemocratic efforts would not be repeated.[10]  In public statements, however, the defendant has claimed that subsequent election-related revisions, including to the ECA, somehow legitimize his criminal efforts to pressure the Vice President to exceed his authority under the prior version of the ECA.  *See, e.g.*, @realDonaldTrump Post, Nov. 5, 2023[11] ("So, if the Vice President didn't have the power to act . . . why did the RINOS & Democrats get together and CHANGE THE LAW . . ."); CNN, Town Hall with Donald Trump (May 10, 2023) (when interviewer told the defendant that the ECA never provided the Vice President with the authority to reject valid elector certificates, defendant responded, "why did they change the law, then, saying that you can't do it?" and "they strengthened [the law], meaning you could do it").[12]

The Court should exclude any evidence of post-crime changes to election laws.  Such changes have no bearing on whether the defendant's fraud claims were true, and could not have been relevant to the defendant's state of mind or intent.  *See Mock*, 2023 WL 3844604, at *3; *cf.* FED. R. EVID. 407 (recognizing principle in civil context that subsequent remedial measures are not admissible to prove earlier conduct).  Given this lack of probative value, evidence of changes to the law should be excluded because it is highly likely to confuse and mislead the jury and waste time on a tangential issue.  If the Court were to permit the defendant to introduce such evidence, it would risk presenting the jury with legal issues rather than questions of fact appropriate for jurors' consideration.  *See United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) (determination of whether agency's provision was ambiguous was a legal question).

---

[10] *See* Consolidated Appropriations Act, H.R. 2617, 117th Cong., Title I §§ 102-110 (2002) (enacted).

[11] *See* https://truthsocial.com/@realDonaldTrump/111361158323359915.

[12] *See* www.cnn.com/2023/05/11/politics/transcript-cnn-town-hall-trump/index.html.

Evidence of post-conspiracy changes to the ECA also would cause a time-consuming minitrial on the legislation.  The Government, for instance, would have to respond with proof of the many reasons that Congress chose to update the century-old law, whether any revision was actually necessary, and whether any revisions were considered but not undertaken.  This could potentially require a large number of witnesses, since hundreds of Members of Congress voted for the legislation in question, each based on his or her own rationale.  The Court should not permit the defendant to derail trial with such a tangent, which would dilute relevant facts and delay the conclusion of these proceedings.

### C.  The Court Should Prevent the Defendant from Introducing or Eliciting Other Improper Evidence.

Finally, the defendant should not be permitted to introduce or elicit improper evidence that constitutes speculation regarding his thoughts or beliefs, or seeks privileged information that is otherwise irrelevant.

### 1.  The Court should exclude inadmissible testimony regarding the defendant's alleged state of mind.

The defendant's state of mind during the charged conspiracies will be a key issue at trial. Both parties will introduce circumstantial evidence of the defendant's state of mind, and the defendant may choose to testify himself.  But the defendant should be precluded from eliciting speculative testimony from any witnesses other than himself about the defendant's state of mind or beliefs about the election or his claims of election fraud.  In the particular circumstances here, such testimony—which would go to an ultimate issue for the jury's consideration—would be speculative, unhelpful to the jury, and unfairly prejudicial, and should thus be excluded.

Eliciting such speculation from witnesses about what the defendant knew or believed would violate Rule 602's precept that all non-expert witnesses must testify based only on "personal

knowledge," and Rule 701's requirement that non-expert witnesses can provide opinion testimony only if it is based on personal knowledge and is helpful to the jury.  FED. R. EVID. 602; FED. R. EVID. 701; *United States v. Hampton*, 718 F.3d 978, 981 (D.C. Cir. 2013) (lay opinion testimony "must be rationally based on the witness's perception and helpful to the jury in understanding the witness's testimony or the determination of a 'fact in issue'").  Instead, the defendant should only be permitted to examine witnesses about what they personally observed about him.  *See Barnett v. PA Consulting Grp., Inc.*, 35 F. Supp. 3d 11, 21-22 (D.D.C. 2014) (court permitted the witness to testify about the "defendant's interactions" with others, but not what was inside the defendant's head); *Coles v. Perry*, 217 F.R.D. 1, 8 (D.D.C. 2003) ("While [witness] might be able to testify as to what she saw and heard, her divination of why [employer] acted crosses the line from a legitimate opinion based on a perception to a speculation as to [the employer's] motives."). Notably, a witness cannot properly form an opinion based on personal knowledge if its basis is merely the defendant's own hearsay statements—which would be the situation in this case if the defendant attempted to elicit speculation from witnesses about what the defendant believed based on his hearsay statements about what he believed.  *See United States v. Davis*, 596 F.3d 852, 856 (D.C. Cir. 2010) (upholding district court's exclusion of defendant's spouse's testimony, which was based in part on defendant's explanations to her, because if "testimony on its face purports to be based on direct perception of the facts described but is actually based on an out-of-court statement about those facts, the objection should be lack of personal knowledge") (citations omitted).

Furthermore, if a witness testifies about personal observations, his speculation beyond those observations about the defendant's views on election fraud or the outcome of the election would not be helpful to the jury and would risk prejudicing the jury's objective scrutiny of the

evidence.  This was the Second Circuit's conclusion in *United States v. Rea*, a fraud case in which a trial witness improperly gave the speculative lay opinion that the defendant "had to know" that he was assisting in tax evasion when he was asked to incorrectly document invoices.  958 F.2d 1206, 1214-16, 1218 (2d Cir. 1992).  The problem with such testimony, the Second Circuit explained, was that after a witness has testified fully about his first-hand observations, the "witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to [the defendant's state of mind]."  *Id*. at 1216-17 (stating further that "it will be rare that the court can safely accept lay opinion testimony" under similar circumstances).

Finally, beyond failing to meet the requirements for admission under Rules 602 and 701, a witness's guess at what the defendant might have thought or believed about the outcome of the election should be prohibited because it will only confuse and mislead the jury and be unfairly prejudicial.  *See Rea*, 958 F.2d at 1216 ("even those lay opinions that pass Rule 701's dual test of admissibility may be excluded by the court under FED. R. EVID. 403").  Allowing witnesses to share their personal views about the defendant's state of mind likely will only distract the jury from its duty to assess and weigh the facts, as opposed to the speculation of fact witnesses.  Because a witness's personal opinion about the defendant's beliefs or knowledge has little or no probative value, any weight the jury gives to it is likely to be undue and based on improper considerations.  *See United States v. Van Eyl*, 468 F.3d 428, 437 (7th Cir. 2006) (barring testimony from lay witnesses "about their beliefs that Van Eyl's actions were unlawful because . . . the jury would inappropriately use those witnesses' opinions to determine Van Eyl's state of mind").  This is particularly true if the speculation concerns an ultimate issue for the jury to determine, which is the case with the defendant's state of mind here.  *See United States v. Babichenko*, No. 18-cr-258,

2021 WL 2364361, at *2 (D. Idaho June 9, 2021) ("The Court is somewhat skeptical as to how a lay opinion as to a Defendant's state of mind can be offered without invading the jury's province to determine such issues in a criminal proceeding."). Accordingly, while witnesses may be permitted to testify as to their observations of the defendant's actions and statements (within the confines of Rule 801 and others governing hearsay), they should be precluded from offering their opinions about the defendant's state of mind, knowledge, or beliefs.

### 2.    The Court should prohibit cross-examination attempting to elicit irrelevant protected information.

The Government anticipates calling witnesses with knowledge of information protected by certain privileges, including the attorney-client privilege and the Speech or Debate privilege. If questioned about such information, those witnesses reasonably could assert the privilege that attaches. The defendant should be precluded from questioning witnesses about otherwise protected information on cross-examination unless he receives pre-clearance from the Court.

Allowing the defendant to question witnesses about information for which a witness either must or would be likely to assert a privilege—in open court, in front of the jury—runs the risk of unfairly and improperly suggesting to the jury that the witness lacks candor and presenting to the jury otherwise inadmissible evidence. There are many legitimate reasons a witness might invoke a privilege. For example, the privilege may not be the witness's to waive, or the witness may deem it necessary to invoke the privilege for institutional rather than personal purposes. None of these purposes bear on the witness's candor, bias, or any other relevant consideration for the jury; and any out-of-court statements or other evidence the defense might use to press the privilege claim would be irrelevant and inadmissible. *See Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 479-80 n.25 (3d Cir. 2005) ("it is improper to draw an inference of bad faith from the assertion of the attorney-client privilege"). Accordingly, such cross-examination is improper. *Cf.*

*Namet v. United States*, 373 U.S. 179, 186-87 (1963) (reversible error occurs where the prosecution "makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" or where "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination"); *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986) ("Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be employed as a mere subterfuge to get before the jury evidence not otherwise admissible.") (internal quotations omitted); *Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (stating, in the Fifth Amendment context, that it "is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege" and that relatedly, "a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury" because "[t]his would only invite the jury to make an improper inference").

## III.    CONCLUSION

The Court should exclude the evidence and argument described above that have no bearing on the defendant's guilt or innocence, are otherwise irrelevant, or are substantially more prejudicial than probative.

Respectfully submitted,

JACK SMITH
Special Counsel

/s/ Molly Gaston
Molly Gaston
Thomas P. Windom
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530