## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. 23-cr-257 (TSC)** |
| | * | |
| **DONALD J. TRUMP,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## GOVERNMENT'S SUR-REPLY TO DEFENDANT'S DISCOVERY MOTIONS

The Court ordered the defendant to supplement his discovery motions by identifying in his reply "any specific evidence related to Presidential immunity that Defendant believes the Government has improperly withheld," ECF No. 233 at 2 ¶ 2, so that he could subsequently "review any additional discovery he receives and incorporate it into his immunity briefing," ECF No. 243 at 5. The defendant did not comply. Instead, he filed a reply designed to disrupt the Court's previously ordered schedule. With respect to immunity demands—over which the defendant failed to confer with the Government before filing—the defendant's requests are too vague or irrelevant to be helpful to the Court's factbound immunity determinations, or they seek materials that the Government long ago produced in discovery. The defendant otherwise uses his reply to improperly demand dismissal and seek reconsideration of several of the Court's previous decisions, including the current briefing schedule for addressing immunity issues. The Court should reject all of the defendant's non-immunity-based discovery requests and reserve ruling on the defendant's immunity-based demands until he pursues them fulsomely, first by reviewing the Government's immunity brief and the disclosures he has already been provided, and then—and only if necessary—by including in his immunity filing due on October 17 any clear requests for specific, discoverable evidence on Presidential immunity that he still claims he lacks.

I.      **The Defendant's Immunity-Based Requests are Designed to Disrupt the Court's Schedule**

The defendant's conduct in this litigation suggests that he is less concerned with promptly receiving and using additional immunity-based discovery—which the Government does not believe exists—and more interested in using the discovery process to delay the Court's immunity briefing schedule.  First, despite the Government's direct invitation of specific immunity-related discovery requests and the Court's explicit expectation that the parties "meet and confer and discuss potential discovery issues," ECF No. 232 at 63, the defendant made no outreach about immunity-based discovery prior to filing his reply, *see* ECF No. 235 at 6 n.3 (promising to "transmit specific immunity-related discovery requests" to the Government).[1]  Next, he filed his reply, in which he fails to identify "specific evidence" he claims to be necessary for his immunity filing and instead declares that the Court should abandon its considered briefing schedule for conducting the immunity analysis that the Supreme Court directed on remand.  And on September 25, only after the Court granted the Government permission to file this sur-reply and rejected the defendant's unwarranted demand to upend the briefing schedule, the defendant sent the Government a letter purportedly requesting discovery on immunity issues.  That letter does particular damage to the defendant's false suggestion here of "ongoing discovery violations in this case," ECF No. 235 at 1, because it makes multiple requests for material that the Government already produced.  This series of actions suggests that the defendant will use his deficient discovery demands—and the fact that he will have obtained no new material through them—to try to delay his immunity filing and disrupt the Court's entire schedule.  The Court should not countenance it.

Overall, the Court should not credit the defendant's claims that he lacks the discovery to which he is entitled because he does not appear to have command of the materials that the

---

[1] References to the defendant's reply cite to his pagination, not to the ECF header.

Government has already produced.  As described throughout this sur-reply, the defendant's reply repeatedly demands materials that the Government has already provided him.  And in the discovery letter that the defendant sent to the Government last week, *see* Attachment A (defendant's September 25 and 29 discovery letters, and Government's October 1 response), he asks for multiple categories of information that he has had for more than a year, including reports and transcripts for two interviews of a particular witness, *id*. at 4 and 9; text messages for specific individuals, *id*. at 4 and 9-10; and Presidential Daily Diaries (PDDs), *id*. at 4 and 9—all of which he received in the Government's first discovery production on August 11, 2023, as is evident from the Government's detailed Source Logs.  *See* ECF No. 166-8.  The defendant's request for PDDs is particularly notable because they are the defendant's own records, to which he has access even outside the criminal discovery process and which the Government received only after the defendant's designated representatives reviewed them in October 2022.  *See* 44 U.S.C. § 2205(3) ("[T]he Presidential records of a former President shall be available to such former President or the former President's designated representative."); 36 C.F.R. § 1270.44(c)-(d) ("The Archivist promptly notifies the President (or their representative) during whose term of office the record was created . . . of a request for records" for consideration of "assert[ing] a claim of constitutionally based privilege against disclosing the record . . . .").  The Government responded to the defendant's discovery letter earlier today, *see* Attachment A, and stands ready, as always, to assist the defendant in locating all relevant materials already in his possession.

## II.     The Defendant's Immunity-Based Discovery Requests are Deficient

The entirety of the defendant's immunity-related contentions in his 34-page reply boil down to the following: (1) that the Supreme Court's decision in *Trump v. United States*, 144 S. Ct. 2312 (2024), requires the Government to conduct "a new case-file review based on a lawfully defined prosecution team," ECF No. 235 at 2; (2) that the defendant is entitled to attorney work-

product and internal deliberations on Justice Department officials' views of the scope of Executive authority and any "dangers of intrusion" on the Executive Branch posed by this prosecution, *id.* at 5; and (3) that the Government has failed to provide discovery that would provide "context" for the charged conduct that this Court will examine as part of its immunity determinations, including regarding his power to speak publicly, *id.* at 7, 8.  All of these claims fail.  Of them, only his requests for information providing context for his charged conduct would be material to the task at hand—providing briefing to the Court as it makes immunity determinations—if the requests sought legitimately discoverable information that the Government had not already provided.  The defendant's requests, however, do not.

Below, the Government takes the defendant's contentions in turn and explains why (a) the defendant's new arguments continue to misstate the applicable legal standard; (b) the Government has already thoroughly reviewed its case file; (c) the defendant is not entitled to materials related to internal Justice Department deliberations; and (d) the defendant's requests for information related to context are unsound.

**a. The Supreme Court's decision did not change the applicable legal standard for discovery.**

The defendant urges a rudderless approach to discovery by seeking to do away with the materiality standard for discovery demands.  Having previously argued—by misquoting the relevant law—that he was entitled to discovery with "some abstract logical relationship to the issues in the case," ECF No. 167 at 5, the defendant now abandons that erroneous test in favor of no materiality standard at all, ECF No. 235 at 21-22.  To muddy the applicable standard, the defendant cites a single district court opinion, *United States v. Sutton*, No. 21-098-01, 2022 WL 2383974, at *9 (D.D.C. July 1, 2022), which does not reflect the overall state of the law in this District.  *See United States v. Libby*, 429 F. Supp. 2d 1, 6 n.10 (D.D.C. 2006) (explicitly

rejecting the overly broad approach to discovery—"that the government's search was to be limited only by the 'rule of reason'"—in another case by the same district court that later decided *Sutton* because, the *Libby* court stated, it "needs not (nor does it believe it could) adopt such a broad reading of the applicable caselaw in this Circuit").

The applicable discovery rules all incorporate a materiality standard. *See United States v. Graham*, 83 F.3d 1466, 1473-74 (D.C. Cir. 1996) (discussing *Brady* and Rule 16 materiality standards); L. Cr. R. 5.1(a) (referencing *Brady* to require disclosure of favorable evidence "material either to guilt or punishment").  And as the Government previously laid out, ECF No. 181 at 6, and as the defendant previously conceded, ECF No. 167 at 6, materiality is inherently tied to the allegations in the indictment, *see Libby*, 429 F. Supp. 2d at 7 ("a court must first start with the indictment when determining what is material"); it is likewise tied to the evidence the Government plans to introduce at trial, which it laid out in detail in its Motion for Immunity Determinations, *see* ECF No. 245-1.  The governing materiality standard rejects overbroad, speculative, vague, or tangentially relevant requests.  *See* ECF No. 181 at 6-8 (citing cases regarding materiality standard); *id.* at 27, 31 (citing cases addressing speculative and vague discovery demands).

In addition, and contrary to the defendant's arguments throughout his reply (ECF No. 235 at 9, 29), the Court must account for relevance and cumulativeness in deciding materiality, even if such factors are not dispositive.  *See, e.g.*, *United States v. Nichols*, No. 21-0117, 2023 WL 6809937, at *11 (D.D.C. Oct. 16, 2023) ("Because the government has already produced video evidence on the requested topic, any further, duplicative evidence . . . is not material under either *Brady* or Rule 16."); *United States v. Cousin*, No. 20-10071, 2022 WL 314853, at *21 (D. Mass. Feb. 2, 2022) ("information in the other redacted portions of the SRT report is cumulative

and not material under either *Brady* or Rule 16"); *United States v. Flynn*, 411 F. Supp. 3d 15, 30 (D.D.C. 2019) (denying request for information that was "irrelevant" to defendant's "underlying offense"). These considerations are consistent with the principle that a defendant cannot undertake a "fishing expedition," *United States v. Williamson*, No. 14-151, 2014 WL 12695538, at *2 (D.D.C. Oct. 23, 2014), and instead must show that the discovery sought would enable him "significantly to alter the quantum of proof in his favor," *Graham*, 83 F.3d at 1474.

Specific to Local Criminal Rule 5.1, the defendant asserts that the Government "has ignored" that Rule, ECF No. 235 at 8, which he argues requires additional disclosures, including (as described further below) on the topic of presidential immunity. *Id.* at 8, 14. He is wrong. Overall, Local Criminal Rule 5.1 is coextensive with and confirms the mandate of *Brady v. Maryland*, 373 U.S. 83 (1963), requiring disclosure of things like information inconsistent with the defendant's guilt; mitigation evidence; evidence of "an articulated and legally cognizable defense"; and credibility or impeachment information. L. Cr. R. 5.1(a)-(b). The Rule requires the Government "to disclose such information to the defense as soon as reasonably possible after its existence is known," *id.* at (a), which the Government has done. Indeed, far from ignoring that Rule, the Government has exceeded its obligations and provided broad and early discovery. The discovery has included information bearing on the defendant's immunity defense and, in compliance with Rule 5.1(e) in particular, material from "government officials who have participated in the investigation and prosecution" of pending charges. L. Cr. R. 5.1(e). *See, e.g.*, ECF No. 181 at 12 (noting production of FBI materials); *id.* at 12 n.3 (production of DOJ-OIG and NARA-OIG materials). Although the defendant urges the Court to distrust the Government's "discovery compliance representations," ECF No. 235 at 8, he identifies no specific information purportedly withheld in contravention of Rule 5.1 or any other rule.

**b. The Government has already thoroughly reviewed its case files.**

The Supreme Court's decision in *Trump* did not expand the scope of the prosecution team, as the defendant implies, *see* ECF No. 235 at 14, and the Government already conducted a thorough review of materials in the prosecution team's possession and produced any discoverable material to the defendant. Contrary to the defendant's contention that the Government "cannot meet their obligations by arguing that they took a broad approach to discovery at the outset . . . and insisting that their initial collection adequately encompassed discoverable information relating to Presidential immunity," *id*. at 1-2, that is exactly the case—because as the Government has repeatedly explained throughout this matter, it routinely produced materials above and beyond its obligations under Rule 16, *Brady*, *Giglio*, *Jencks*, and their progeny. As a result of this expansive approach to discovery, the Government has already produced all of the evidence in its possession regarding the context of the defendant's acts. For example, the Government did not simply produce evidence of what the defendant said in his speech on January 6, 2021, but also the evidence that the Government possesses regarding the preparation, planning, and funding for that event. No new discovery review or production—apart from the Government's usual and continuing obligation—is necessary because it has already been done.

The expansive nature of the Government's previous searches—and resulting productions to the defendant—is evident from the Government's Motion for Immunity Determinations and accompanying Appendix. *See* ECF Nos. 245-1 and 245-2 to 245-5. With the exception of a handful of publicly available sources, the Government long ago produced this material to the defendant in discovery, even though much of it was arguably not discoverable. This includes material that goes to context and that the defendant incorrectly claims he does not already have— such as proof of the funding and organization of the Ellipse rally at which the defendant spoke on January 6; evidence about the defendant's actions surrounding meetings and communications that

- 7 -

the Government contends are unofficial; and other information indicating private, rather than official conduct, like Hatch Act warnings and use of private email accounts.  The defendant's assertion that he does not have such material appears based on the faulty assumption that the Government did not already produce it, as it did.  *See* ECF No. 232 at 60 (counsel "assuming" there is discovery that has not been turned over "because the Government never had to really look at issues relating to immunity before").

     **c.  The defendant's request for information about internal legal analyses is not discoverable or relevant to the Court's factbound analysis.**

     The defendant makes a broad request for material regarding determinations of official conduct and for "information relating to actual or threatened 'dangers of intrusion on the authority and functions of the Executive Branch.'"  ECF No. 235 at 5.  To this end, he seeks discovery of the government's "prior positions" on the scope of Executive authority.  *Id*.  These legally unsupported demands seek disclosure of work product, legal opinions, and other material that is wholly irrelevant to any valid defense on the issue of presidential immunity or to the Court's factbound immunity determinations.

     First, the government's prior non-public positions on Executive authority in other cases or contexts—to the extent they even exist—are not material to the issues in this case and are not discoverable.  The Supreme Court remanded the case to this Court to determine whether the defendant's acts and statements were official and, if so, whether the presumption of immunity can be overcome.  This exercise requires a factbound analysis of the defendant's words and actions, not consideration of the government's "prior positions" on purported exercises of Executive authority.

     The defendant cites to two cases in which the government was either ordered or agreed to disclose Executive Branch decisions or deliberative documents.  *Id*. at 6 (citing *United States v.*

*Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989), and *United States v. George*, 786 F. Supp. 56, 64 (D.D.C. 1992)).  In both cases, however, the Court ordered discovery of certain documents found to bear on the defendant's *mens rea:* they both related to specific acts charged in the indictment and were relevant to the defendant's motive and beliefs at the time of the alleged crimes.  The presidential immunity inquiry in this case is decidedly different: it is an "objective analysis" of the defendant's conduct, *see Trump*, 144 S. Ct. at 2340, and his motives are specifically not to be considered, *id.* at 2333 ("In dividing official from unofficial conduct, courts may not inquire into the President's motives.").

The defendant cannot explain how the government's "prior positions" on Executive authority could be relevant and discoverable.  He suggests that such material could lead to "testimony from current or former government officials who disagree with the [Special Counsel] Office's anticipated position on issues" related to presidential immunity.  ECF No. 235 at 25.  By advancing this near-limitless rationale, however, the defendant continues to ignore settled law confirming that government work product, opinions on legal issues, and mental impressions are not discoverable.  *See* ECF No. 181 at 37; FED. R. CRIM. P. 16(a)(2); *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25-26 (D.D.C. 1991).

The defendant's reliance on *Poindexter*, 727 F. Supp. 1470, for this issue is misplaced.  In *Poindexter*, the defendant was charged with obstruction crimes in connection with his alleged participation in a scheme to conceal the National Security Council's Iran-Contra activities from Congress.  *Id*. at 1473.  The court found that contemporaneous Executive Branch documents supporting the legality of those activities that were known to the defendant could show that he lacked a motive to lie to Congress, which could in turn negate the specific intent element required

for the charged crimes. *Id*. at 1476. The court further found discoverable certain documents "regarding the knowledge of other high government officials of the NSC's Iran-Contra activities," but only after discerning specific ways such knowledge could bear on the defendant's motive or *mens rea*. *Id*. at 1476-77. Implicit in the court's reasoning was that the knowledge of others would be relevant if the defendant knew at the time of the alleged crimes what others knew. Without the defendant's knowledge, what others knew could have no bearing on his *mens rea* or motive, as the courts in *United States v. Secord* and *George* later explained:

> In *United States v. Poindexter,* 727 F. Supp. 1470 (D.D.C. 1989), Judge Greene permitted discovery concerning the knowledge of others involved in Iran–Contra because such discovery might tend to show that the defendant had no intent to conceal information and that he thought his actions were legal. In *United States v. Secord,* 726 F. Supp. 845 (D.D.C. 1989), former Chief Judge Robinson denied this sort of discovery to the defendant on the grounds that the defendant had not been able to establish (nor had even proffered) that the defendant *knew* what information others had. Without this crucial link, the discovery was not material to the defense because it revealed nothing about the defendant's state of mind. This court believes that Judge Robinson has the better of the argument. It is immaterial what Congress knew unless the defendant was aware of their knowledge.

*George*, 786 F. Supp. at 64.

In other words, *Poindexter* does not hold, as the defendant suggests, that Executive Branch documents, or evidence of what others knew or believed at the time of the alleged crimes, are *per se* disclosable, even if they may touch on the subject matter in an abstract sense. Rather, there must be a specific and articulable relationship to an issue in the case, whether it be the immunity determination or the defendant's *mens rea*. *See* ECF No. 181 at 6-8; *Poindexter*, 727 F. Supp. at 1478-79 (requiring detailed proffer to meet the materiality standard); *George*, 786 F. Supp. at 60-61 (finding that defendant failed to meet materiality standard for broad requests). Here, the defendant fails to show any logical connection between evidence of the government's "prior

positions" on Executive authority and the context-driven "factbound" immunity determinations before the court.

### d. The defendant's requests for discovery regarding alleged context are irrelevant, vague, and call for material the Government has already produced.

The defendant further requests, broadly and without specificity, "discovery regarding the 'context' in which the alleged conduct took place."  ECF No. 235 at 7.  As with all requests, this demand must meet the ordinary requirements of discovery, namely, (1) whether the requested documents are within the possession of the prosecution team, in that they are held by an entity that is "closely aligned with the prosecution" and thus can be easily and fairly obtained by the Government; and (2) whether the defendant has established that the requested documents meet the test of materiality to the defense for which it is sought.  *See Libby*, 429 F. Supp. 2d at 9-17 (assessing both scope and materiality); ECF No. 181 at 2-8 (setting forth requirements).

In this respect, "context" is not an infinitely elastic term justifying vague discovery demands.  For context evidence to be material to an immunity defense, it must logically bear on the immunity determination before the Court—that is, whether the specific acts of the defendant to be proven in the case are official and, if so, whether the immunity presumption can be rebutted. In imposing a requirement that the Court consider context, the Supreme Court in *Trump* offered the example of the defendant's communications on January 6, stating that "what else was said contemporaneous to the excerpted communications, or who was involved in transmitting the electronic communications and in organizing the rally, could be relevant to the classification of each communication."  *Trump*, 144 S. Ct. at 2340.  The Supreme Court's reliance on *Snyder v. Phelps*, 562 U.S. 443, 453 (2011), is also a guide; there, in reviewing the context of the speech at issue in that case, the Supreme Court considered where the speech occurred.  *Id*. at 454.  To be sure, relevant context evidence may be narrower or broader depending on the act or speech under

consideration.  But at a minimum, there must exist an articulable and logical connection between the purported "context" and the specific allegation to be proven or the evidence to be admitted at trial.  In making his ill-defined demands for "context" discovery, the defendant has not even attempted to meet this standard.

In any event, the Government previously disclosed to the defendant all discoverable information that it possessed relevant to context, and it went a step further in its filing on September 26 when, in ECF No. 245-1, it provided the defendant with a detailed, fact-based proffer of its case-in-chief.  That proffer shows that the defendant's demands for contextual discovery are either irrelevant because they pertain to conduct that is not charged in the superseding indictment and that the Government does not plan to use at trial, or the defendant already has all responsive material within the Government's possession.

Take, for example, the defendant's demands for disclosures regarding his public statements.  *See* ECF No. 235 at 8.  The Government has already provided the defendant with voluminous and complete discovery related to the context of this conduct relevant to the superseding indictment, including information in the Government's possession regarding the timing, drafting, and funding of those statements.  And the Government's extensive factual proffer and contextual analysis of these issues in its Motion for Immunity Determinations and accompanying Appendix, *see* ECF Nos. 245-1 and 245-2 to 245-5, provide the defendant with specific references to evidence regarding his public statements that the Government previously produced to him in discovery.  The voluminous Appendix, for instance, includes interview transcripts and reports, PDDs, emails and text messages, and other relevant records that the defendant has long possessed, and the Motion explains to the defendant how the Government

believes these records are material.  Because the defendant's demand regarding his public statements is so vague, it is unclear what more he seeks.

Similarly, the defendant makes a generalized request for national security information like the 2016 and 2020 Election Intelligence Community Assessments, *see* ECF No. 235 at 25-26, and new arguments regarding SolarWinds, *id.* at 26 (both of which the Government addresses further in its classified supplement), and he again demands information related to requests for security at the Capitol on January 6, *id.* at 26-27.  Here too the Government already provided to the defendant all discoverable materials in its possession on these issues.  But in addition, as is clear from the superseding indictment and the Government's factual proffer, none of these materials is relevant to any defense to the evidence of the defendant's private conduct that the Government will present at trial, *see Libby*, 429 F. Supp. 2d at 7 (required Rule 16(a)(1)(E)(i) discovery limited to the "defendant's response to the Government's case in chief"), or to the Court's consideration of context as it makes its immunity determinations.

### III.     The Court Should Reserve Ruling on the Defendant's Immunity-Related Demands and Order Him to Perfect Them in His October 17 Filing

For all of these reasons, the Court should reserve ruling on the defendant's immunity-related demands.  Specifically, the Court should direct the defendant to try again to do what it previously ordered, and what he could easily have done in the three months since the Supreme Court's decision: to thoroughly review the expansive discovery he has already received and then make clear demands for any specific contextual evidence related to Presidential immunity that he believes is in the Government's possession and has been improperly withheld.  The Government is confident that no such additional material exists.  But such a process would ensure that the Court has the benefit of all information relevant to its immunity determinations.

This process—necessitated by the defendant's delay tactics—should be incorporated into, rather than delay, the Court's ongoing schedule for briefing on immunity determinations. The Government's opening immunity filing not only provided the defendant with a detailed roadmap of its case-in-chief and evidence regarding context; it also provided him with a voluminous Appendix pointing him to material that the Government long ago produced to him in discovery, much of which directly answers variations of the requests the defendant submitted in his discovery letter the day before the Government's filing. In light of the defendant's deficient discovery demands here, the Court should order the defendant to review the material he has already received and include in his responsive immunity filing, due October 17, any properly specific remaining demands. Such a process will clarify any live discovery issues for the Court's resolution or otherwise confirm that no further discovery is necessary before the Court makes its immunity determinations.

There is another reason the Court should reserve ruling: to ensure that it makes all of its immunity-related decisions, even those regarding discovery, at the same time in a single order. Given the history of this litigation, the defendant's repeated efforts to resist the Court's schedule for addressing immunity issues, *see* ECF Nos. 235 and 242, and his implied preference for successive, inefficient rounds of appellate review, *see* ECF No. 242 at 4 (claiming that a schedule that leads to only one additional interlocutory appeal is "extralegal"), the defendant may attempt to use any interim denial of his deficient immunity-related discovery demands as the basis for a frivolous interlocutory appeal (an appeal that the Government would contest). *Cf. United States v. Zone*, 403 F.3d 1101, 1106-07 (9th Cir. 2005) (per curiam) (discussing appealability of discovery demands in conjunction with a double-jeopardy-based interlocutory appeal). The Court should thus refrain from entering an order denying the defendant's frivolous immunity-related discovery

demands at this time and should instead direct him to perfect them, as part of the Court's ongoing process of addressing all immunity-related issues.

Adopting this course will advance the Court's "responsibility to police the prejudgment tactics of litigants," *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985), and avoid "piecemeal, prejudgment appeals" that "undermine[] 'efficient judicial administration,'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citation omitted).  It also will not prejudice the defendant.  If the Court ultimately grants the defendant's motion to dismiss on immunity grounds, then any immunity-related discovery requests will become moot.  And if the Court instead addresses the defendant's immunity-related discovery demands in the same ruling in which it makes its other immunity determinations, the defendant may pursue an interlocutory appeal on any denial of additional immunity-based discovery at the same time he seeks any review of the merits of the Court's other immunity determinations.  *See United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000).

## IV.    The Court Should Deny the Defendant's Non-Immunity-Related Discovery Requests and Improper Requests for Dismissal and Reconsideration

For the reasons in the Government's Opposition, ECF No. 181, the Court should deny the defendant's non-immunity-based discovery demands.  The defendant also uses his reply as an opportunity to improperly request additional relief—dismissal and reconsideration of several of the Court's previous sound rulings.  First, the defendant dramatically seeks dismissal of the charges against him, pronouncing at the outset of his brief that "[t]his case should be dismissed.  Promptly." ECF No. 235 at 1.  Yet he offers no authority for his requested dismissal and, apart from his opening salvo, never mentions it again.  Then, the defendant attempts to seek reconsideration, without any basis, of the Court's September 5 scheduling Order, ECF No. 233—which the Court has already denied, *see* ECF No. 243 at 6—and the Court's Order denying his motion to dismiss

for vindictive and selective prosecution, ECF No. 199.  *See* ECF No. 235 at 3-5, 7, 28.  For both, the defendant simply recycles arguments already offered to, and rejected by, the Court, and he does not even address the standard for reconsideration—likely because he cannot possibly meet it. *See United States v. Purdy*, No. 22-29, 2024 WL 2720444, at *2 (D.D.C. May 28, 2024) (laying out bases for reconsideration and finding it "not warranted" where a defendant "mostly reiterates the reasons already rejected by the Court and any additional reasons fall short of a significant change that would justify reconsideration"); *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80-81 (D.D.C. 2015) (same).  The Court should deny the defendant's improper efforts to seek dismissal and relitigate his empty selective and vindictive prosecution claims just as it did his rehashing of complaints about the briefing schedule.

## V.      Conclusion

The defendant's arguments in support of his discovery motions, including those invoking the issue of presidential immunity, fail to provide any factual or legal basis for his broad requests. His attempts to secure dismissal of this case and reconsideration of the Court's prior orders are equally meritless.  The Court should deny the defendant's non-immunity-related motions and should reserve ruling on the defendant's immunity-related demands until after the defendant addresses the deficiencies in them in the course of the Court's schedule for immunity briefing.

Respectfully submitted,

JACK SMITH
Special Counsel

By:      /s/Molly Gaston
Molly Gaston
Thomas P. Windom
Senior Assistant Special Counsels
950 Pennsylvania Avenue NW
Room B-206
Washington, D.C. 20530