IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:23-cr-00257-TSC |
| DONALD J. TRUMP, | |
| *Defendant.* | |

**PRESIDENT DONALD J. TRUMP'S**
**MOTION TO CONTINUE STAY OF ORDER**

President Donald J. Trump respectfully requests that the Court temporarily continue the stay of its October 10, 2024, Order (Doc. 260, the "Order"), through November 14, 2024, to allow for the concurrent filing of the parties' respective immunity appendices. In support, President Trump states as follows:

**BACKGROUND**

On September 26, 2024, the Special Counsel sought leave to file its immunity brief and accompanying appendix (the "SC Appendix") under partial seal. Doc. 246. The Special Counsel represented that it had "redacted non-public Sensitive Materials" from the SC Appendix "in their entirety," but stated that the SC Appendix still contained other (supposedly already public) materials. *Id*. at 3.

President Trump objected to the public release of the Special Counsel's filings, arguing, *inter alia*, that: (1) the Constitution as well as the rules of criminal procedure do not permit the Special Counsel to pre-emptively defend its own lawless superseding indictment, prior to any defense motion, and (2) publication of cherry-picked materials, which the Special Counsel describes as "a detailed statement of [its] case," Doc. 252 at 2, would prejudice potential jurors and endanger potential witnesses—especially in light of the extraordinary media coverage of this

1

case (and immunity filings specifically) and the Presidential election that is less than 3 weeks away—and also irreparably harm President Trump. Docs. 248, 259; *see also* ECF No. 1 at 1, *In Re Press Application for Access to the Government's Motion for Immunity Determinations in Case No. 23-Cr-357, United States of America v. Donald J. Trump*, No. 1:24-mc-00122 (D.D.C.) (listing press organizations seeking immunity material).

On October 2, 2024, the Court overruled President Trump's objections as to the Special Counsel's redacted immunity brief and ordered its immediate public release. Doc. 251. Significant press coverage followed, including in this District. *See, e.g.*, [Trump and the federal election case against him: Key passages from prosecutors' latest court filing](#), NBC Washington (Oct. 3, 2024). The incumbent Vice President—whose administration the Special Counsel serves—also began featuring the Special Counsel's brief in political advertisements for the 2024 Presidential Election. [Kamala Harris](#), YouTube (Oct. 6, 2024). Thus, without any semblance of due process—including President Trump's right to cross-examine witnesses and call his own witnesses in a court proceeding—the public has been poisoned by a one-sided prosecutorial narrative that is being used for political purposes by the incumbent administration.

Thereafter, on October 10, 2024, the Court determined the redacted SC Appendix should also be released, but stayed implementation of that Order for seven days to permit President Trump to evaluate further litigation options. Doc. 260 at 2. This motion follows.

## DISCUSSION

District Courts possess "inherent power to temporarily stay" proceedings, including the implementation of an order. *Scoma Chiropractic, P.A. v. Kabbage, Inc. Gulfco Leasing, LLC*, No. 2:16-CV-143-FTM-38CM, 2016 WL 6836076, at *1 (M.D. Fla. Nov. 21, 2016). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket

2

with economy of time and effort for itself, for counsel, and for litigants." *Id*. (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Deciding whether to issue a stay is an "exercise of judgment" in which the Court "must weigh competing interests and maintain an even balance." *Id*. (quoting *Landis*, 299 U.S. at 255). Thus, "[i]n determining whether to grant a stay, courts examine general factors such as whether a stay will unduly prejudice or tactically disadvantage the non-moving party; simplify the issues and streamline trial; and reduce the burden of litigation on the parties and on the court." *Id*. (citation omitted).

Here, President Trump requests only that the Court briefly continue its existing stay of the Order, such that the redacted versions of the SC Appendix and President Trump's forthcoming appendix may be released concurrently. Although this stay will not eliminate the harms President Trump identified in his prior opposition filings, Docs. 248, 259, certain harms will be mitigated. For example, if the Court immediately releases the Special Counsel's cherry-picked documents, potential jurors will be left with a skewed, one-sided, and inaccurate picture of this case. Those same potential jurors may not see President Trump's later responsive filing, and even if some do, "first impressions are prone to remain." *United States v. Reed*, 376 F.2d 226, 229 (7th Cir. 1967). That is especially so as this Court's gag order, Doc. 105 (as narrowed by the D.C. Circuit, Doc. 187-2), unconstitutionally restricts President Trump's ability to utilize First Amendment-protected political speech to publicly comment on these proceedings, including the SA Appendix.

Conversely, if the appendices are released simultaneously, at least some press outlets will attempt to report both sides of this case, reducing (although, again, not eliminating) the potential for irreversible prejudice. Similarly, the risk to witnesses will be somewhat reduced, as the public will have a more balanced picture of their testimony and how it connects to this case.

3

The public interest—which the Court has previously relied on in making scheduling and redaction decisions—also strongly supports simultaneous releases.[1] As the Supreme Court has held, the determination of immunity "raises multiple unprecedented and momentous questions about the powers of the President and the limits of his authority under the Constitution" and will have "enduring consequences upon the balanced power structure of our Republic." *Trump v. United States*, 144 S. Ct. 2312, 2326, 2332 (2024). It is therefore essential that the public fully understand the arguments and documents on both sides of this momentous issue, and is not misled by one-sided submissions. Indeed, limiting the public's access to only one side of this important debate, even temporarily, would grievously harm its understanding of this case.

Moreover, asymmetric releases exacerbate the very harms immunity exists to prevent—including that the prospects of criminal prosecutions "chill [the President] from taking the bold and unhesitating action required of an independent Executive." *Id.* at 2331 (citation and quotation marks omitted). If, as here, a prosecutor, during a highly contested political campaign, is granted leave to submit enormous filings publicly examining a President's decision-making while in office, future Presidents will be far more reluctant to take the "bold and unhesitating action" required of them. This is true even if ordinary procedures are followed, with the President making the first submission, but it is especially problematic where neither the Constitution, nor the rules of criminal procedure based on our founding principles, have been followed, thus wrongly allowing the prosecution to file first, in anticipation of a motion to dismiss. Although, again, a stay will not

---

[1] *See* Doc. 38 at 6 ([The Court]: "[T]he [Speedy Trial] act was designed with the public interest firmly in mind. . . . the public has an interest in the fair and timely administration of justice."); *see also* Doc. 55 at 8 ("Preventing witness intimidation is a compelling interest for the individuals whose information has been redacted, for the government's law enforcement purposes, and for 'the public interest in the due administration of justice' in this case." (quoting *United States v. Jackson*, 513 F.2d 456, 459 (D.C. Cir. 1975)).

4

eliminate these harms, it will at least bring these proceedings closer to a structure mandated by the Supreme Court and Constitutionally required.

Finally, whether or not the Special Counsel is politically motivated, *see* Doc. 116, the asymmetric release of charged allegations and related documents during early voting creates a concerning appearance of election interference, as noted by recognized legal commentators with vast prosecutorial experience. *See, e.g.,* Jack Goldsmith, *Jack Smith Owes Us an Explanation*, THE New York Times (Oct. 9, 2024):

> The department could have asked the judge to set the filing date after the election without affecting the prosecution. Because it didn't need to disclose the new details now, and because it was foreseeable that the disclosures would cause approximately half the country to suspect the department's motives, it is hard to understand any reason to go forward this close to the election other than to influence it — a motive that would clearly violate department policy. Especially given the damage to the Justice Department from its previous missteps against Mr. Trump, it is imperative that the department explain in detail why this inference is false and why its actions comported with past department practices and understandings.

*See also* Elie Honig, *Jack Smith's October Cheap Shot*, New York Magazine (Oct. 3, 2024). These concerns are particularly poignant given the incumbent Vice President's targeted and ongoing, and false, use of these proceedings in election advertising. *See, e.g.,* Alex Gangitano, *Harris campaign highlights Jack Smith revelations in Trump case in new ad*, The Hill (Oct. 7, 2024) ("Harris's campaign has made Trump's actions on Jan. 6 a focus of her rebukes against him, arguing that he is a threat to democracy if reelected, especially after the immunity decision."); David B. Rivkin Jr. and Elizabeth Price Foley, *What Jack Smith Gets Wrong About Immunity*, The Wall Street Journal (Oct. 14, 2024)  (describing "critical legal" errors in the Special Counsel's immunity brief and noting "[t]he [Supreme] [C]ourt has rejected Mr. Smith's cramped view of presidential authority on several occasions.").

Although the Court has decided, over President Trump's objections, that the "'political consequences of these proceedings' is not a cognizable legal prejudice," Order at 1 (quoting Doc.

251 at 4–5), the Court has not addressed the public's interest in ensuring that this case does not unduly interfere, or appear to interfere, with the ongoing election. A temporary stay would serve that interest by ensuring that the redacted SA Appendix is accompanied by President Trump's rebuttal, reducing (but again not eliminating) this case's improper impact on the election, as well as the potential for voter confusion. Additionally, a stay would promote public confidence in the integrity of these proceedings and a court's duty to remain apolitical.

On the other side of the issue, the Special Counsel cannot advance any principled reason for immediately releasing the SA Appendix. The requested stay will end with the public filing of President Trump's appendix, so the public will still receive, well in advance of any decision by this Court, all of the "information 'upon which the court's review [must] be based,' and on which its decisions will 'rely,' as 'required by Supreme Court precedent,'" at least to the extent the Court has decided to release such information. Doc. 251 at 5 (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 668 (D.C. Cir. 2017).

For the same reason, continuing the stay will not cause the Special Counsel any cognizable prejudice. The information it wishes to release publicly will still be released publicly. Moreover, the Special Counsel's immunity brief is already in the public domain, despite President Trump's objections, and the Special Counsel represents that the components of the SA Appendix that it will release have themselves already seen the light of day. The relief sought herein will not cause any meaningful harm to the Special Counsel, but will mitigate a great deal of harm to President Trump and the public.

## CONCLUSION

For the foregoing reasons, the Court should continue its stay of the Order through November 14, 2024, in order to permit the concurrent filing of the parties' respective immunity

6

appendices. Counsel for President Trump requested a position from the Special Counsel by email on October 16, 2024, and again on October 17, 2024. As of the time of this filing, the Special Counsel has not responded.

Dated: October 17, 2024                                      Respectfully submitted,

/s/ Todd Blanche / Emil Bove                                 /s/ John F. Lauro / Gregory Singer
Todd Blanche, Esq. (PHV)                                     John F. Lauro, Esq.
ToddBlanche@blanchelaw.com                                   D.C. Bar No. 392830
Emil Bove, Esq. (PHV)                                        jlauro@laurosinger.com
Emil.Bove@blanchelaw.com                                     Gregory M. Singer, Esq. (PHV)
BLANCHE LAW PLLC                                             gsinger@laurosinger.com
99 Wall St., Suite 4460                                      Filzah I. Pavalon, Esq. (PHV)
New York, NY 10005                                           fpavalon@laurosinger.com
(212) 716-1250                                               LAURO & SINGER
                                                             400 N. Tampa St., 15th Floor
                                                             Tampa, FL 33602
                                                             (813) 222-8990
                                                             *Counsel for President Donald J. Trump*