UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **DONALD J. TRUMP**, <br><br> Defendant. | Criminal Action No. 23-257 (TSC) |

**OPINION AND ORDER**

Before the court is Defendant's Motion to Continue Stay of Order, ECF No. 264 ("Motion"). On October 10, 2024, the court granted leave for the Government to file a redacted version of the Appendix to its Motion for Immunity Determinations. Order at 2, ECF No. 260. The court stayed the public docketing of that Appendix for seven days, however, granting Defendant's request for time to "evaluate litigation options." *Id.* (citation omitted). The option Defendant has evidently chosen is asking the court to extend that stay until November 14, 2024. Motion at 1, 6. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. Exercising that judgment, the court cannot conclude that an extended stay is appropriate.

As the court has explained, there is "an important presumption in favor of public access to all facets of criminal court proceedings." *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). In light of that presumption, the court may keep criminal case documents under seal only after considering six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Childs. Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996); *see, e.g.*, Op. & Order at 2–6, ECF No. 251; Op. & Order at 3–8, ECF No. 55.  Likewise, the court must ensure that the sealing comports with the First Amendment's right of public access to criminal proceedings, where applicable.  *United States v. Thompson*, 199 F. Supp. 3d 3, 8 (D.D.C. 2016); *see Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8–9 (1986).  The court weighed each of these considerations in determining that the Appendix should be filed under partial seal—redacting only certain sensitive information as proposed by the Government, and releasing the remainder to the public.  Order at 1, ECF No. 260 (citing Op. & Order, ECF No. 251).

Defendant's request does not engage with the six relevant factors for sealing.  Instead, he argues that keeping the Appendix under seal for another month will serve other interests.  Ultimately, none of those arguments are persuasive.

First, Defendant asserts that releasing the redacted Appendix now will poison the jury pool, giving potential jurors "a skewed, one-sided, and inaccurate picture of this case" because they "may not see [his] later responsive filing" and even then could rely unduly on "first impressions."  Motion at 3 (citation omitted).  Even on its own terms, this argument is too speculative to support an extended stay:  Both sides' filings will be publicly available (other than necessary redactions), and whether potential jurors will be exposed to either of them, and in what order, is unknown.  More importantly, however, a potential juror's exposure to information about the case is precisely the kind of issue best addressed at *voir dire*, during which the parties and court can ask individualized questions to probe potential bias or impartiality.  *In re Nat'l Broad.*

*Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981) ("[V]oir dire has long been recognized as an effective method of rooting out such bias.").

Second, Defendant argues that it is "essential that the public fully understand the arguments and documents on both sides of this momentous [immunity] issue, and is not misled by one-sided submissions," and that "limiting the public's access to only one side of this important debate, even temporarily, would grievously harm its understanding of this case." Motion at 4. Setting aside the oxymoronic proposition that the public's understanding of this case will be enhanced by withholding information about it, any public debate about the issues in this case has no bearing on the court's resolution of those issues. "Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. State of Cal.*, 314 U.S. 252, 271 (1941). And in any event, the court is not "limiting the public's access to only one side," Motion at 4; Defendant is free to submit his legal arguments and factual proffers regarding immunity at any point before the November 7, 2024 deadline. *See* October 3, 2024 Min. Order. This "is simply how litigation works: Each side presents arguments and proffers evidence on disputed issues." Op. & Order at 3, ECF No. 243.

Third, Defendant contends that "asymmetric releases" of the parties' immunity arguments and proffers "exacerbate the very harms immunity exists to prevent," Motion at 4— *i.e.*, a chilling effect on what the Supreme Court has called "the 'bold and unhesitating action' required of an independent Executive." *Trump v. United States*, 144 S. Ct. 2312, 2330–31 (2024) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 745 (1982)). But the Supreme Court instructed this court to turn directly to briefing addressing the "close" and "fact specific" analysis "of the indictment's extensive and interrelated allegations." *Id.* at 2339. Those instructions nowhere suggested that such submissions need be simultaneous. And indeed, Defendant's true

concern does not appear to be with that "asymmetry"—which his own proposed briefing schedule shared. *See* Joint Status Report at 4, ECF No. 229. Rather, his objection is to the Appendix's release "during a highly contested political campaign." Motion at 4. But a President's "capacity . . . as a candidate for office" is "unofficial" and does not implicate the concerns animating his official immunity. *Id.* at 2340; *see id.* at 2332. Accordingly, the court has repeatedly stressed that "Defendant's concern with the political consequences of these proceedings does not bear on the pretrial schedule." Op. & Order at 3, ECF No. 243.

Finally, and relatedly, Defendant claims that the "asymmetric release of charged allegations and related documents during early voting creates a concerning appearance of election interference." Motion at 5. There is undoubtedly a public interest in courts not inserting themselves into elections, or appearing to do so. *See id.* at 6. But litigation's incidental effects on politics are not the same as a court's intentional interference with them. As a result, it is in fact Defendant's requested relief that risks undermining that public interest: If the court withheld information that the public otherwise had a right to access solely because of the potential political consequences of releasing it, that withholding could itself constitute—or appear to be—election interference. The court will therefore continue to keep political considerations out of its decision-making, rather than incorporating them as Defendant requests. Any argument about "what needs to happen before or shouldn't happen before the election is not relevant here." Tr. of Arraignment and Status Conference at 29, ECF No. 232.

For these reasons, Defendant's Motion to Continue Stay of Order, ECF No. 264, is hereby DENIED.  In a separate order on October 18, 2024, the court will lift the stay and direct the Clerk of the Court to docket the Appendix, with the Government's proposed redactions.

Date: October 17, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge